# EXHIBIT "E"

## IN THE COURT OF COMMON PLEAS
## WASHINGTON COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | ) | |
| | ) | |
| vs. | ) | No.  01186 of 2020, |
| | ) | and 00205 of 2020 |
| CHRISTIE DEE HARR, | ) | |
| | ) | |
| Defendant. | ) | |

TYPE OF PLEADING:

**DEFENDANT'S OMNIBUS PRETRIAL MOTION WITH MOTION FOR LEAVE TO FILE; AND, BRIEF IN SUPPORT**

FILED ON BEHALF OF:

Defendant, Christie Dee Harr.

COUNSEL OF RECORD:

J. Allen Roth, Esq
805 S. Alexandria Street
Latrobe, PA 15650
(724) 537-0939
lawmatters@yahoo.com

FILED

2021 AUG -5  PM 2: 19
CLERK OF COURTS
WASHINGTON CO PA

1

## IN THE COURT OF COMMON PLEAS
## WASHINGTON COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,      )
                                    )
                vs.             ) No. 01186 of 2020,
                                    ) and 0000205 of 2020
CHRISTIE DEE HARR,                  )
                                    )
            Defendant.         )

**DEFENDANT'S OMNIBUS PRETRIAL MOTION WITH MOTION FOR
LEAVE TO FILE; AND, BRIEF IN SUPPORT**

Defendant Christie Dee Harr ("Harr"), by and through her undersigned counsel,

hereby files this, her Omnibus Pretrial Motion with Motion for Leave to File; and Brief in

Support:

I.   **Motion**

1.   Pursuant to Pennsylvania Rule of Criminal Procedure 579, Harr requests leave
     to file this Omnibus Pretrial Motion out of time on the basis that the
     information contained in this motion was not available at the time of
     arraignment. In fact, Harr had to resort to *Right to Know* laws to seek the data
     and still cannot conclusively determine the facts. As to the discovery issues,
     such as the video, only recently did the Commonwealth admit to the existence
     of video taken by the participants in the search, but will not provide the full,
     original footage.

2.   Because it does not appear that the Washington Area Humane Society Humane

2

Police Officer was authorized pursuant to 22 P.S. 3703 and 3708(a) to operate in Westmoreland County, and due to the incorrect representation to the Westmoreland County District Judge that the Humane Police Offcer maintained statewide jurisdiction, the Information must be quashed or all evidence gathered as a result of the Westmoreland County investigation and search warrants must be excluded, along with fruits thereof.

3. Because the Westmoreland County search warrants were not approved by the Westmoreland County District Attorney as required by 22 P.S. 3710, the evidence gathered from the Westmoreland County warrants must be excluded and all charges stemming from that County quashed or dismissed.

4. Because the search warrants did not state what items were to be seized and became general warrants, and considering the Washington Area Humane Society grossly exceeded the scope of any animal rights investigation, all evidence must be suppressed. U.S.C.A. 4th and 14th Amendments.

5. Because this Court lacks venue over the Westmoreland County charges, all counts stemming from that jurisdiction must be transferred to the Court of Common Pleas of Westmoreland County, Pennsylvania.

6. Because the Commonwealth will only provide evidence in their possession, and will not require the Humane Police Officer's sponsoring organization, the Washington Area Humane Society and the Humane Society of the United States, to provide *Brady* and discovery material, an appropriate discovery Order must be entered that compels both the Commonwealth and the private police organizations to provide the discovery materials including video evidence, inspection of electronic devices, lists of participants in the search, among other things.

3

7.  The Commonwealth must return all property not authorized by the warrants or which will not be used as evidence.

## II. Brief

Presently before this Court is a case of overreach by a private organization, the Washington Area Humane Society (WAHS), which acted as a police agency and the national Humane Society of the United States that maintains no lawful authority in Pennsylvania to act as police.

This case also presents a strange procedure posture where most of the alleged conduct occurred in Westmoreland County, not Washington County, and involves search warrants obtained without authority of the District Attorney in that county.

### a.  Leave must be granted to file this motion out of time.

Most of the information contained in this motion was learned after the time to file this Omnibus Motion expired. In fact, Harr has had to rely on *Right to Know* requests to gain the information since she only received circles from her inquiries as to the authority of the Washington Area Humane Society and their Private Humane Police Officer, Glen Thomson.

Moreover, Mr. Thomson passed away and there was no way to easily obtain the information because of this. Specifically, the Pennsylvania Department of Agriculture removed references to him and referred to Westmoreland County officials.

The search warrants from Westmoreland County have only recently been provided to counsel. The evidence and discovery issues contained herein have continually been negotiated.

4

If leave is denied, Harr will have been denied effective representation in contravention of her right to due process pursuant to both the federal and Pennsylvania constitution.

**b.   Because Glen Thomson and the Washington Area Humane Society Appears to Have Committed Criminal Conduct by Conducting Police Activity in Westmoreland County without legal authority, the information must be quashed or dismissed; in the alternative, the evidence gathered from Westmoreland County Excluded and Suppressed.**

Pennsylvania allows private Humane Society Police Officers subject to strict limitations. 22 P.S. 3701, *et seq*. Violations and deviating from the procedures is not merely procedural, but constitutes a crime-- a third degree misdemeanor. 22 P.S. 3709.

"It shall be unlawful for any individual to hold himself as a humane society police officer unless the individual has obtained an appointment pursuant to this chapter." 22 P.S. 3703. Authority is limited to the county of appointment. 22 P.S. 3708(a). The individual "has no power or authority to exercise the powers... in any other county whose court of common pleas has not issued an appointment." *Id.*

In this case, Washington Area Humane Society Police Officer Glen Thomson went to a magisterial district judge in Apollo, Pennsylvania and represented himself as a humane Police Officer appointed by the Commonwealth. *See* Exhibit A (search warrant). However, the Commonwealth does not appoint humane Police officers. Rather, the county court of common pleas does. Officer Thomson's appointment was from Washington County only, not Westmoreland. Therefore, he committed a crime by holding himself out to be an officer allowed to conduct investigations in Westmoreland County. There exists no evidence that Officer Thomson could operate in Westmoreland County and pursuant to 22 P.S. 3708(a) he maintained no authority.

Yet most of the evidence and the charges in these two cases originate from

5

Westmoreland County. The charges are inextricably intertwined and linked. Information from the Westmoreland County matters are contained in the Washington County search warrants as well. Therefore, the Information must be quashed in its entirety. Alternatively, the search warrants must be quashed and the evidence suppressed.

Alternatively, this Court must dismiss all counts of the Information relating to Westmoreland County or where evidence was gathered from Westmoreland County.

### c. The Westmoreland County Search Warrant Failed to Have the Required Approval. 22 P.S. 3710.

22 P.S. 3710 requires that any search warrant "filed in connection with alleged violations of cruelty to animals laws must have the approval of the district attorney in the county of the alleged offense prior to filing." In this case, Washington Area Humane Society Police Officer Glen Thomson had no authority in Westmoreland County. Regardless, he did not seek approval of the Westmoreland County District Attorney as required by 22 P.S. 3710. The search warrant bears no claim that the district attorney approved it. *See* Exhibit A. Indeed, his failing to obtain approval of the Westmoreland County District Attorney constitutes a crime. 22 P.S. 3709.

For this reason, the search warrant from Apollo, Westmoreland County, Pennsylvania, must be quashed and all evidence gathered pursuant to that warrant quashed.

### d. The Washington Area Humane Society Obtained General Warrants

In this case, the Private Humane Police Officer received search warrants from magisterial district justices in both Westmoreland County and Washington County. Where the warrants were to list the precise evidence to be seized, the Humane Police Officer described the premises to be searched. When the search occurred, the law enforcement

officers seized lawfully possessed weapons, gear, personal medication belonging to Harr, and items not authorized by the warrant. General warrants are prohibited by the Fourth Amendment. In order to prevent the police from conducting a general, exploratory rummaging, a warrant must give a particular description of the things to be seized. *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976).

Because the judge signing the warrants never listed the items to be seized, only the locations, the warrants were improper general warrants. Because the law enforcement officials and private humane police officers seized medicine, medical supplies, lawfully possessed weapons, armor, tools, and other items not related to animal cruelty, all of the warrants must be quashed and the evidence suppressed.

### e. This Court lacks venue over the Westmoreland County charges

Clearly, all of the alleged animal cruelty charges that are based in Westmoreland County did not occur in Washington County. Therefore, this Court lacks venue and those charges must be bifurcated  and transferred to the Westmoreland County Court of Common Pleas. This is especially so where an unlawful warrant was obtained in Westmoreland County, a place where Glen Thomson maintained no jurisdiction to conduct an investigation or represent himself to be a humane police officer.

In *Commonwealth v. Gross*, 627 Pa. 383, 101 A3d 28 (2014), the Supreme Court of Pennsylvania explained that the proper remedy where a criminal charge was filed in the wrong county was to transfer the charges to the correct county. In this case, Harr does not consent to being brought to trial in Washington County for matters that occurred in Westmoreland County where Humane Police Officer Glen Thomson maintained no jurisdiction or authority.

7

f. Because the Commonwealth will only provide evidence in their possession, and will not require the Humane Police Officer's sponsoring organization, the Washington Area Humane Society and the Humane Society of the United States, to provide *Brady* and discovery material, an appropriate discovery Order must be entered that compels both the Commonwealth and the private police organizations to provide the discovery materials.

During the searches in Westmoreland and in Washington County, instead of simply using a trained officer certified in Pennsylvania, they arrived with a battery of civilians and unlicensed agents from the Humane Society of the United States, a Maryland corporation. The WAHS and HSUS used untrained civilians who are not certified police to rummage through property under Harr's control and to alter, use, modify, and damage electronic items with evidentiary value. The Commonwealth never supervised the WAHS, never demand a chain of custody of the evidence, allowed the WAHS to give the seized animals away to third parties outside the jurisdiction of this Commonwealth, and never reviewed the records, communications, and files of the WAHS and HSUS to look for exculpatory evidence and statements. Instead, they have allowed the WAHS to spearhead the prosecution and required no accountability from the agencies.

## 1. The Commonwealth and WAHS are Concealing All Raw Video of the Searches and Condition of the Animals

The Commonwealth repeatedly represented to Harr and counsel that no video evidence existed. When Harr's counsel advised the Commonwealth that the United States Humane Society published a heavily edited and redacted video of the search on Youtube.com, the Commonwealth responded by providing counsel with the same exact link to the Youtube Video that counsel provided to the Commonwealth.

8

Counsel provided the Commonwealth with the link to show that videos were taken. The published video was heavily edited, contained the addition of logos, voiceovers, and commentary. Certainly, since this video exists, raw footage exists as well. The Commonwealth is obligated to provide it. The video evidence in its totality, without modifications or edits, shows the conditions of the animals and is exculpatory.

The Commonwealth (WAHS) appears to be attempting to evade its discovery obligations by either refusing to produce clearly discoverable information, or by declining to create records for the purpose of avoiding its obligation to produce the same, or some combination of the two. The Commonwealth, thus far, has failed to produce numerous categories of discoverable information in spite of its obligations under *Brady v. Maryland,* 373 U.S. 83 (1963), *Giglio v. United States,* 405 U.S. 150 (1972), and Pennsylvania Rule of Criminal Procedure 573, denying Harr her right to due process under the United States and Pennsylvania constitutions. P.R.Cr.P. 573 does not alleviate the Commonwealth's duties under *Brady* or *Giglio. Commonwealth v. Maldonodo,* 173 A3d 769, 774 (Pa. Super. 2017).

After making several informal requests for such documents and information, counsel conferred with the Commonwealth as required by Pennsylvania Rule of Criminal Procedure 573(A) in an effort to obtain the discovery requested herein without Court intervention. Counsel sent multiple emails as well. Those efforts, however, have proven unsuccessful. Accordingly, Ms. Harr respectfully requests that this Court order the Commonwealth to produce the discovery discussed herein pursuant to Pennsylvania Rule of Criminal Procedure 573(E).

As explained in *Commonwealth v. Johnson,* 174 A.3d 1050, 1056 (Pa. 2017), "[t]he Commonwealth violates Brady by failing to disclose exculpatory evidence as well as evidence that may be used to impeach a prosecution witness" and finding that the accused was entitled

9

to a new trial because the Commonwealth had suppressed police reports impeaching the credibility of the witnesses. Here, the police are the WAHS and HSUS, private organizations that still maintain a duty to disclose the exculpatory information, emails, etc., as they acted under color of law. Where witness credibility is of paramount importance, the prosecution reasonably should know that the issue of apparent truthfulness could determine the outcome.... Because this is so, when reliability of a witness may be determinative of the outcome, evidence affecting the credibility of that witness must be disclosed." *Commonwealth v. Hanford*, 937 A.2d 1094, 1100 (Pa. Super. 2007). In this case, the Commonwealth failed to even begin to examine the records and communications of the WAHS and HSUS.

### 2. The Commonwealth has a Duty to Disclose WAHS and USHS Evidence, or this Court must Order the WAHS and USHS to provide it

In this case, the Commonwealth is allowing the WAHS and unauthorized USHS to dictate what evidence to provide. The Commonwealth failed to examine the internal records of this so-called police enforcement agency. It is well-established that the "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 438-39 (1995); *Commonwealth v. Burke*, 781 A.2d 1136, 1142-43 (Pa. 2001); *Commonwealth v. Adams*, 177 A.3d 359, 372 (Pa. Super. 2017) ("Prosecutors must perform their duties under *Brady* in conjunction with the police, and a *Brady* violation may occur where evidence in the possession of the police is not disclosed to the defendant, even if the prosecutor did not know about it."). Indeed, as the Pennsylvania Supreme Court has stated, "under *Kyles*, the prosecution's *Brady* obligation clearly extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution. To the extent that Rule 305(B) [

10

now Rule 573] and the cases construing it could be read to suggest otherwise, such readings must bow to *Kyles* elaboration of the prosecutor's Brady duty respecting exculpatory evidence." *Burke*, 781 A.2d at 1142 (emphasis supplied).

### 3. The Identities and Notes of All Non-Law Enforcement Persons Present are Being Concealed

While the WAHS maintains a paid law enforcement officer certified in Pennsylvania, they brought many civilian persons along with them to rummage through the properties. These civilians have not been identified and their notes and evidence, that form impeachment materials, and provide the identities of witnesses, have not been turned over. These civilians were deputized by the WAHS and are under the control of the Commonwealth.

### 4. The Spoilage and Removal of the Evidence

The Commonwealth, without permission from this Court, removed most of the animals from the jurisdiction of the Court. The WAHS placed the evidence in the hands of third parties without receiving permission to do so. Some of the animals have been destroyed or placed in harmful and abusive conditions. Ms. Harr is entitled to full disclosure of all records of the health of the animals, the location, the treatment, and any photographs and video evidence of the animals under the control of the WAHS and the third-parties that the Commonwealth allowed to possess the evidence without a Court Order. The Commonwealth must immediately identify the present location of each animal seized.

### 5. All Correspondence Between Ms. Harr and the WAHS

The WAHS had many communications with Ms. Harr in an effort to entrap her by promising assistance with the animals then not rendering it. After Ms. Harr relied on the

11

promises of the WAHS, they instead obtained a search warrant despite being complicit in the alleged conditions the animals were held. The correspondence is not in Ms. Harr's possession as a result of damage done to her electronic devices by the WAHS after seizure. However, the WAHS, the law enforcement agency involved in this case, possesses all correspondence, letters, emails, and notes pertaining to the communications. This is exculpatory material that must be turned over.

6. **All Writings Inconsistent With the Commonwealth's Planned Witnesses and other *Brady/Giglio* Materials**

*Brady* and *Giglio* require the Commonwealth to provide copies of the various inconsistent statements that are contained in the emails, notes, etc., held by the WAHS, along with other exculpatory evidence. The Commonwealth continues to misunderstand that the WAHS, although a private organization, acted as a police force in this case and the District Attorney's Office has an obligation to examine all of the records relating to this matter to seek out *Brady* and *Giglio* materials. To date, the Commonwealth has not even asked the WAHS to provide this material to it and has allowed the WAHS to pick and choose what it discloses.

7. **Police Reports and Building Inspector Reports Not Provided**

Various civil agencies (Washington Area Humane Society and the United States Humane Society) and law enforcement agencies, including the state police, Monessen police, Donora police, and code enforcement officials supported the searches. The agencies assisted detain Ms. Harr and directed her not to return to the properties she possessed. None of the police reports and building inspector reports have been provided outlining the

involvement of local police, their communications with WAHS, and their disallowing Ms. Harr to enter the buildings despite her clear right to do so.   Harr maintains a right to receive the notes and reports of these agencies and officers.

### 8. Disclosure of Condition and List of Destroyed Animals

Harr is entitled to know which animals were put down and destroyed by the United States Humane Society and to know the condition of the animals including all photographs, videos, and notes in the possession of the WAHS and USHS.

### 9. Box of Miscellaneous Items

The WAHS and police seized a box of "miscellaneous items" and has provided no information as to what the content of these items are. Ms. Harr is entitled to a full and clear inventory as to what the "miscellaneous items" are. She is entitled to the return of all "miscellaneous items" that do not relate to the case or exceed the scope of the warrant. For "miscellaneous items" properly retained by the Commonwealth through their confederacy with the WAHS, Ms. Harr is entitled to a full description and, if necessary, examination of said items.

### 10. Evidence and Files of the Humane Society of the United States

Even though the Commonwealth, through the WAHS, applied for a search warrant allowing the agency to seize certain items, the WAHS brought agents from the Maryland-based Humane Society of the United States into the Commonwealth to take part in the raids. The HSUS maintains no authority in this Commonwealth, is not incorporated

here, and lacks any credentials or authority under 22 P.S. 3701, et seq. Yet the Commonwealth allowed for their participation and for them to act as law enforcement agents. As a result, all exculpatory and inculpatory materials in the possession of the HSUS, including the communications in emails, notes, and files must be provided to Ms. Harr for examination. These items are subject to disclosure pursuant to Pa. R. Crim. P. 573(B)(2)(a)(ii). *See also Commonwealth v. Alston*, 864 A.2d 539, 546 (Pa. Super. 2004)("The Pennsylvania Rules of Criminal Procedure provide for disclosure, at the request of the defense ... all written statements and 'substantially verbatim oral statements' of eyewitnesses that the Commonwealth intends to call at trial.... [W]here either the Commonwealth or the defense have pretrial statements of its witnesses that were reduced to writing that concern the witness's trial testimony, those statements are subject to discovery.") (citing *Commonwealth v. Brinkley*, 480 A.2d 980, 984 (Pa. 1984)).

## 11. Seized Telephones, Computers, and Electronics for Forensic Evaluation

The Commonwealth, through the WAHS and unauthorized civilians, seized Ms. Harrs telephones, computers, and electronic equipment. The telephone, computers, and some electronic equipment contained certain video and text information and files that the WAHS improperly tampered with and deleted. In addition, the devices contain files needed for Ms. Harr's defense. Ms. Harr wishes to have the telephones and computers examined by a forensic expert to determine whether the exculpatory files thereon can be recovered and to demonstrate the tampering, modification, and alternative of the exculpatory evidence so that she may seek remedial relief.

Harr is entitled to have this electronic evidence sent to a third party lab for inspection and review. She has obtained a lab with proper credentials that will perform a

14

forensic examination of the items.

### g.  The Items Exceeding the Scope of Search Warrant or Not Needed as Evidence Must be Returned

The Commonwealth, through the WAHS and its civilian unauthorized persons, seized and took items beyond the scope of the search warrants or that are not being used in the prosecution including Ms. Harr's vest, her medication, firearms, display knives, so-called "miscellaneous items," surveillance cameras that were inoperable, along with other items that play no proper role in the prosecution. These items must be returned forthwith along with any other items not being used by the Commonwealth at trial.

WHEREFORE, Defendant Christie Harr respectfully requests that this Court grant this Omnibus Motion.

Respectfully submitted,

J. Allen Roth, Esq. (PA ID 30347)
865 S. Alexandria St
Latrobe PA 15650
(724) 537-0939
lawmatters@yahoo.com

ATTORNEY FOR DEFENDANT

15

CERTIFICATE OF SERVICE

I, J. Allen Roth, certify that I served a copy of this document by emailing and handing a copy to Assistant District Attorney John Lewis on this 6th day of August, 2021.

J. Allen Roth

8.5.21.

MENU

# Purdon's Pennsylvania Statutes and Consolidated Statutes Annotated. Title 22 Pa.C.S.A. Detectives and Private Police. Chapter 37. Humane Society Police Officers.

Share |

- **Primary Citation:**   22 Pa.C.S.A. § 3701 - 3718
- **Country of Origin:**   United States
- **Last Checked:**   March, 2021

more + Historical:

> Summary: These statutes enable and regulate Pennsylvania's grant of police powers to humane society agents. Topics within these statutes include the appointment, termination, powers granted to, and training of humane society police officers.

§ 3701. Scope of chapter

§ 3702. Definitions

§ 3703. Appointment required

§ 3704. Appointment by nonprofit corporations

§ 3705. Qualifications for appointment

§ 3706. Suspension, revocation, limitation and restriction of appointment; restoration of appointment

§ 3707. Termination of appointment

§ 3708. Powers and authority; jurisdiction

§ 3709. Penalties

§ 3710. Search warrants

§ 3711. Limitation on possession of firearms

FILED
2021 AUG -5 PM 2: 20
CLERK OF COURTS
WASHINGTON CO PA

§ 3712. Training program

§ 3713. Continuing education program

§ 3714. Statewide registry

§ 3715. Humane Society Police Officer Advisory Board

§ 3716. Costs

§ 3717. Disposition of moneys

§ 3718. Applicability to currently appointed individuals

## § 3701. Scope of chapter

This chapter deals with humane society police officers.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005.

## § 3702. Definitions

The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

"Agricultural animal." Any bovine animal, equine animal, sheep, goat, pig, poultry, bird, fowl, wild or semiwild animal or fish or other aquatic animal that is being raised, kept, transported or utilized for the purpose of or pursuant to agricultural production.

"Agricultural production." The production and preparation for market of agricultural animals and their products and of agricultural, agronomic, horticultural, silvicultural and aquacultural crops and commodities.

"Board." The Humane Society Police Officer Advisory Board.

"Complainant." Any person who has evidence that an individual appointed as a humane society police officer has performed in a manner that is contrary to the standards, requirements and qualifications

prescribed in this chapter for appointment of individuals as humane society police officers. The term also includes a district attorney or a municipal solicitor.

"Convicted." A finding or verdict of guilt, an admission of guilt or a plea of nolo contendere or receiving probation without verdict, disposition in lieu of trial or an Accelerated Rehabilitative Disposition in the disposition of felony charges.

"Cruelty to animals laws." The provisions of 18 Pa.C.S. Ch. 55 Subch. B (relating to cruelty to animals).

"Department." The Department of Agriculture of the Commonwealth.

"Humane society police officer." Any person who holds a current appointment under this chapter to act as a humane society police officer for a society or association for the prevention of cruelty to animals. The term shall include an individual who is an agent of a society or association for the prevention of cruelty to animals as "agent" is used in 18 Pa.C.S. Ch. 55 Subch. B (relating to cruelty to animals), provided that individual holds a current appointment under this chapter.

"Secretary." The Secretary of Agriculture of the Commonwealth.

"Serious misdemeanor." A criminal offense for which more than one year in prison can be imposed as a punishment.

"Society or association." A nonprofit society or association duly incorporated pursuant to 15 Pa.C.S. Ch. 53 Subch. A (relating to incorporation generally) for the purpose of the prevention of cruelty to animals.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005. Amended 2017, June 28, P.L. 215, No. 10, § 5, effective in 60 days [Aug. 28, 2017].


§ 3703. Appointment required

It shall be unlawful for any individual to hold himself forth as a humane society police officer unless the individual has obtained an appointment pursuant to this chapter.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005.


§ 3704. Appointment by nonprofit corporations

(a) Application for appointment.--A society or association may apply to the court of common pleas in any county for the appointment of an individual as a humane society police officer for that county by providing proof of qualification under section 3705 (relating to qualifications for appointment) to the court of common pleas and to the district attorney. The court, upon reviewing the application and considering the recommendation, if any, of the district attorney, may by order appoint such person to be a humane society police officer.

(a.1) Notice to department.--Upon action by the court of common pleas to order an appointment, the clerk of courts of the county shall forward such information to the department for the purpose of the Statewide registry established under section 3714 (relating to Statewide registry).

(b) Oath.--Every individual appointed as a humane society police officer pursuant to this chapter shall, before entering upon the duties of the office, take and subscribe to the oath required by Article VI of the Constitution of Pennsylvania.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005. Amended 2017, June 28, P.L. 215, No. 10, § 6, effective in 60 days [Aug. 28, 2017]; 2018, Oct. 2, P.L. 511, No. 77, § 1, effective in one year [Oct. 2, 2019].

## § 3705. Qualifications for appointment

In order for an individual to be considered for appointment as a humane society police officer, the society or association must submit proof satisfactory to the court of common pleas and the district attorney in each county for which the society or association directs the individual to act as a humane society police officer that the individual:

(1) Has been a resident of this Commonwealth for the previous 12 months.

(2) Has successfully completed the training program established pursuant to section 3712 (relating to training program).

(3) Has obtained a criminal history report from the Pennsylvania State Police pursuant to 18 Pa.C.S. Ch. 91 (relating to criminal history record information) or a statement from the Pennsylvania State Police that the Pennsylvania State Police central repository contains no pertinent information relating to the individual who is the subject of the application. The criminal history record information shall be limited to that which may be disseminated pursuant to 18 Pa.C.S. § 9121(b)(2) (relating to general regulations).

(4) Has not been convicted of an offense graded a felony or a serious misdemeanor.

(5) Has not been convicted of any violation, including a summary offense, of 18 Pa.C.S. Ch. 55 Subch. B (relating to cruelty to animals).1

(6) Has not been convicted of an offense in another jurisdiction, state, territory or country in accordance with the laws of that jurisdiction, state, territory or country equivalent to an offense graded a felony or a serious misdemeanor or an offense of cruelty to animals.

(7) Has not had an appointment as a humane society police officer revoked for cause in another county or another state.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005. Amended 2017, June 28, P.L. 215, No. 10, § 6, effective in 60 days [Aug. 28, 2017]; 2018, Oct. 2, P.L. 511, No. 77, § 2, effective in one year [Oct. 2, 2019].

§ 3706. Suspension, revocation, limitation and restriction of appointment; restoration of appointment

(a) Grounds for suspension, revocation, limitation or restriction.—By its own action, on petition by a district attorney or pursuant to a written affidavit filed by a complainant, the court of common pleas may, after conducting a hearing, suspend, revoke, limit or restrict an appointment of an individual to act as a humane society police officer in the county if the court determines any of the following:

(1) Being convicted of a felony or a serious misdemeanor in any Federal or State court or being convicted of the equivalent of a felony in any foreign country, territory or possession.

(2) Being convicted of an offense of cruelty to animals in any Federal or State court or being convicted of the equivalent of a cruelty to animals offense in any foreign country, territory or possession.

(3) Presenting false credentials or documents or making a false or misleading statement in the application for appointment or a certification of completion of additional training or submitting an application for appointment or a certification for completion of additional training containing a false or misleading statement.

(4) Carrying or possessing a firearm in the performance of his or her duties without certification pursuant to section 3711 (relating to limitation on possession of firearms).

(5) The individual has conducted his or her authority to enforce animal cruelty laws in a manner that is substandard of conduct normally expected of humane society police officers.

(6) The individual is not a resident of this Commonwealth.

(7) The individual has had an appointment as a humane society police officer revoked for cause in another county or another state.

(b) Notice to department.-- Upon action by the court of common pleas to suspend, revoke, limit or restrict an appointment, the clerk of courts of the county shall forward such information to the department for the purpose of the Statewide registry established pursuant to section 3714 (relating to Statewide registry).

(c) Restoration.-- The court of common pleas may restore a suspended appointment of an individual if the individual provides to the court evidence sufficient to warrant restoration and the court determines the grounds for suspension have been satisfactorily corrected and the individual otherwise qualifies for appointment.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005. Amended 2017, June 28, P.L. 215, No. 10, § 6, effective in 60 days [Aug. 28, 2017]; 2018, Oct. 2, P.L. 511, No. 77, § 2, effective in one year [Oct. 2, 2019].

§ 3707. Termination of appointment

(a) General rule.-- All powers and authority granted to an individual under section 3708 (relating to powers and authority; jurisdiction) shall immediately terminate upon notice to the individual from the society or association for which appointed that services are no longer required of the individual.

(b) Notice to court.-- The society or association must file notice within ten days of a termination of an individual as a humane society police officer with the clerk of courts in each county in which the individual has been appointed as a humane society police officer.

(c) Notice to department.-- The society or association must file notice within ten days of a termination of an individual as a humane society police officer with the department for the purpose of providing information relevant to the Statewide registry established pursuant to section 3714 (relating to Statewide registry).

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005.

§ 3708. Powers and authority; jurisdiction

(a) Authority limited to county of appointment.--An individual appointed as a humane society police officer in accordance with this chapter shall have power and authority to exercise the powers conferred under 18 Pa.C.S. Ch. 55 Subch. B (relating to cruelty to animals) 1 in enforcement of animal cruelty laws only within the particular county whose court of common pleas issued the appointment. The individual has no power or authority to exercise the powers conferred under 18 Pa.C.S. Ch. 55 Subch. B in any other county whose court of common pleas has not issued an appointment.

(b) Notice to district attorney.--Prior to exercising the power and authority set forth by this chapter within a county, each appointed humane society police officer shall file notice, along with a copy of the appointment granted under this chapter, with the district attorney of the county.

(c) Shield.--Every individual appointed as a humane society police officer under this chapter shall possess a metallic shield with the words "humane society police officer" and the name of the society or association for which the individual is appointed displayed thereon.

(d) Photo identification.--Every individual appointed as a humane society police officer under this chapter shall have a photo identification card issued by the department that contains the following:

    (1) A photo of the individual taken within the previous 24 months.

    (2) The name of the individual.

    (3) The signature of the individual.

    (4) The name of the society or association for which the individual is appointed as a humane society police officer.

    (5) The address and telephone number of the society or association for which the individual is appointed as a humane society police officer.

    (6) The date of issuance of the photo identification card.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005. Amended 2017, June 28, P.L. 215, No. 10, § 6, effective in 60 days [Aug. 28, 2017].


§ 3709. Penalties

(a) Criminal penalties.--A person who violates this chapter commits a misdemeanor of the third degree and shall, upon conviction, be sentenced to pay a fine of up to $1,000 or to imprisonment for not more than 90 days, or both.

(b) Civil penalties.-- In addition to any criminal penalties or other civil remedy, a person, association or society who violates this chapter may be subject to a civil penalty of up to $1,000.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005.

§ 3710. Search warrants

Notwithstanding contrary provisions of 18 Pa.C.S. Ch. 55 Subch. B (relating to cruelty to animals)1 and in addition to the requirements of existing law, all search warrant applications filed in connection with alleged violations of cruelty to animals laws must have the approval of the district attorney in the county of the alleged offense prior to filing.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005. Amended 2017, June 28, P.L. 215, No. 10, § 6, effective in 60 days [Aug. 28, 2017].

§ 3711. Limitation on possession of firearms

No individual appointed as a humane society police officer shall carry, possess or use a firearm in the performance of that individual's duties unless that individual holds a current and valid certification in the use and handling of firearms pursuant to at least one of the following:

(1) 53 Pa.C.S. Ch. 21 Subch. D (relating to municipal police education and training).

(2) The act of October 10, 1974 (P.L. 705, No. 235), known as the Lethal Weapons Training Act.

(3) The act of February 9, 1984 (P.L. 3, No. 2), known as the Deputy Sheriffs' Education and Training Act.

(4) Any other firearms program that has been determined by the Commissioner of the Pennsylvania State Police to be of sufficient scope and duration as to provide the participant with basic training in the use and handling of firearms.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005.

§ 3712. Training program

(a) Required training.--Every individual, prior to the society or association making application for appointment as a humane society police officer, shall successfully complete the minimum requirements for initial training prescribed in the program for initial training of humane society police officers established in accordance with subsections (b), (c), (d) and (e).

(b) Contracts.--The secretary, with the advice of the board, shall contract with an accredited college or university, including a community college, or other public or private entity, for the establishment of a program for the training of individuals to act as humane society police officers. The contracted entity shall forward information pertaining to an individual's successful completion of the initial training program to the department for the purpose of maintaining the Statewide registry established pursuant to section 3714 (relating to Statewide registry).

(c) Minimum requirements.--The program for the training of humane society police officers shall include at a minimum 80 hours of instruction in accordance with subsection (d).

(d) Curriculum.--The program for the training of humane society police officers shall provide instruction in the following instructional areas:

   (1) At least 40 hours of instruction shall be provided on the following:

      (i) Pennsylvania cruelty to animal laws.

      (ii) Pennsylvania Rules of Criminal Procedure.

      (iii) Proper procedure for filing citations and warrants, including how and when to contact Federal, State or local law enforcement.

      (iv) Proper execution of search warrants.

      (v) Proper search and seizure practices.

      (vi) Any other areas relating to law enforcement duties.

   (2) At least 40 hours of instruction shall be provided on the following:

      (i) Animal husbandry practices constituting normal agricultural operation.

      (ii) Practices accepted in the agricultural industry in the raising, keeping and production of agricultural animals.

      (iii) Characteristics of agricultural animals likely evidencing care that is in violation of the cruelty to animal laws.

(iv) Proper care, treatment and handling of agricultural and other animals pursuant to enforcement of the cruelty to animals laws.

(v) Treatments administered and research conducted during the normal scope of veterinarian practices.

(vi) Agricultural biosecurity protocols.

(vii) General farm orientation, safety and security practices, including instruction in measures for discovery of conditions and implementation of precautionary actions to prevent harm or damage to persons, animals or property.

(3) In conducting the training listed in paragraph (2), the program of instruction shall include at least one on-site visit to a normal agricultural operation that includes agricultural animals and is at least ten acres in contiguous area.

(e) Final examination.--The training program shall require individuals, as a prerequisite to successful completion of the program, to take and pass a final examination that sufficiently measures the individuals's knowledge and understanding of the instructional material.

(f) Current officers.--Individuals who have been appointed as humane society police officers prior to the effective date of this chapter are exempt from the initial training requirements pursuant to this section provided that the individual can provide proof to the secretary of successful completion of a similar training program for humane society police officers established under the act of December 12, 1994 (P.L. 956, No. 135),1 known as the Humane Society Police Officer Enforcement Act. This subsection shall expire on the effective date of subsection (f.1).2

(f.1) Exemption.--Individuals who have been appointed as humane society police officers and have successfully completed initial training under this chapter prior to June 30, 2018, shall be exempt from the initial training requirements under this section provided that the individual can provide proof to the secretary of successful completion of continuing education training under section 3713 (relating to continuing education program) within six months of the effective date of this subsection.2

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005. Amended 2018, Oct. 2, P.L. 511, No. 77, § 3, effective in one year [Oct. 2, 2019].

Footnotes

1 3 P.S. § 456.1 et seq. (repealed); see 22 Pa.C.S.A. § 3701 et seq.

2 Subsection (f.1) added by 2018, Oct. 2, P.L. 511, No. 77, § 3, effective in one year [Oct. 2, 2019].

## § 3713. Continuing education program

(a) Required training.--During each two-year period following the date in which an individual has been initially appointed as a humane society police officer, the individual shall successfully complete the minimum requirements for additional training prescribed in the program for continuous education of humane society police officers established in accordance with subsections (b), (c), (d) and (e).

(b) Contracts.--

    (1) The secretary, with the advice of the board, shall contract with an accredited college or university, including a community college, or other public or private entity, for the establishment of a continuing education program for the training of individuals to act as humane society police officers.

    (2) The contracted entity shall forward information pertaining to an individual's successful completion of the continuing education program to the department for the purpose of maintaining the Statewide registry established pursuant to section 3714 (relating to Statewide registry.)

(c) Minimum requirements.--The continuing education program for the training of humane society police officers shall include at a minimum 16 hours of instruction in accordance with subsection (d).

(d) Curriculum.--The program for the training of humane society police officers shall provide instruction in the following instructional areas:

    (1) At least eight hours of instruction shall be provided on the following:

        (i) Pennsylvania cruelty to animals laws.

        (ii) Pennsylvania Rules of Criminal Procedure.

        (iii) Proper procedure for filing citations and warrants, including how and when to contact Federal, State or local law enforcement.

        (iv) Proper completion of search warrants.

        (v) Proper search and seizure practices.

        (vi) Any other areas relating to law enforcement duties.

    (2) At least eight hours of instruction shall be provided on the following:

        (i) Animal husbandry practices constituting normal agricultural operation.

(ii) Practices accepted in the agricultural industry in the raising, keeping and production of agricultural animals.

(iii) Characteristics of agricultural animals likely evidencing care that is in violation of the cruelty to animals laws.

(iv) Proper care, treatment and handling of agricultural and other animals pursuant to enforcement of the cruelty to animals laws.

(v) Treatments administered and research conducted during the normal scope of veterinarian practices.

(vi) Agricultural biosecurity protocols.

(vii) General farm orientation, safety and security practices, including instruction in measures for discovery of conditions and implementation of precautionary actions to prevent harm or damage to persons, animals or property.

(3) In conducting the training listed in paragraph (2), the program of instruction shall include at least one on-site visit to a normal agricultural operation that includes agricultural animals and is at least ten acres in contiguous area.

(e) Automatic suspension.--

(1) Failure to complete the continuing education program as prescribed in subsection (a) shall result in an individual's automatic suspension of the powers and authority set forth in section 3708 (relating to powers and authority; jurisdiction) until such time as the individual successfully completes the continuing education requirements.

(2) The department shall notify, within one week of the suspension, the court of common pleas and district attorney of each county to which the individual is appointed as a humane society police officer of the suspension.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005. Amended 2018, Oct. 2, P.L. 511, No. 77, § 4, effective in one year [Oct. 2, 2019].

§ 3714. Statewide registry

(a) Establishment.--There is hereby established a Statewide registry within the department for the purpose of maintaining information relating to individuals appointed as humane society police

officers.

(a.1) Inclusion in registry.--A humane society police officer shall make, upon appointment, an application to the department for inclusion in the registry on a form provided by the department. The application shall include confirmation of the appointment by the court of common pleas, proof of completion of the necessary education and a criminal history report from the Pennsylvania State Police under 18 Pa.C.S. Ch. 91 (relating to criminal history record information).

(a.2) Renewals.--A humane society police officer shall apply for renewal of inclusion in the registry every two years on the anniversary of the date of appointment as a humane society police officer. The renewal shall occur in a form and manner as determined by the department and shall include proof of completion of the continuing education required under section 3713 (relating to continuing education program) and a criminal history report from the Pennsylvania State Police under 18 Pa.C.S. Ch. 91.

(b) Access to registry.--The information included within the Statewide registry shall be made accessible to the public through the department's World Wide Web site and shall include the following:

(1) The name of each individual appointed as a humane society police officer.

(2) The name and address of the society or association for which each individual is appointed as a humane society police officer.

(3) The counties in which the individual has been appointed as a humane society police officer and dates of appointment.

(4) The counties in which the individual has had an appointment revoked, suspended, limited or restricted, the action taken by the court and dates of action.

(5) The dates of successful completion of the training program established in section 3712 (relating to training program) and the continuing education program established in section 3713 (relating to continuing education program).

(c) Updates.--The department shall update the registry within ten days of receiving information required for inclusion on the Statewide registry.

(d) Confidential information.--At no time shall the home address or any other related personal information of an individual appointed as a humane society police office be made public through the Statewide registry.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005. Amended 2018, Oct. 2, P.L. 511, No. 77, § 5, effective in one year. [Oct. 2, 2019].

§ 3715. Humane Society Police Officer Advisory Board

(a) Advisory board.--The secretary shall appoint a Humane Society Police Officer Advisory Board to advise him in the administration of this chapter.

(b) Membership.--The board shall consist of the following:

(1) The secretary or his designee, who shall act as a chairman.

(2) A representative of an organization in this Commonwealth of societies or associations for the prevention of cruelty to animals.

(3) A humane society police officer.

(4) A representative of a Statewide veterinary medical association.

(5) A representative of a farm organization.

(6) A district attorney or his designee.

(7) A representative of the police.

(8) A district justice.

(9) A court of common pleas judge or his designee.

(10) A clerk of courts.

(11) A representative of the Pennsylvania Game Commission.

(c) Terms.--The length of the initial term of each appointment to the board shall be set by the secretary and shall be staggered so that the terms of approximately one-third of the appointments expire every other year.

(d) Absences.--Three consecutive unexcused absences from regular board meetings or failure to attend at least 50% of the regularly scheduled board meetings in any calendar year shall be considered cause for termination of appointment unless the secretary, upon written request of the member, finds that the member should be excused from attending a meeting because of illness or death of a family member or for a similar emergency.

(e) Vacancies.--Vacancies in the membership of the board shall be filled for the balance of an unexpired term in the same manner as the original appointment.

(f) Recommendations.--The board may make nonbinding recommendations to the secretary on all matters related to the provisions of this chapter.

(g) Training program approval.--The board shall review and recommend programs required under sections 3712 (relating to training program) and 3713 (relating to continuing education program).

(h) Meetings.--The board shall meet at least once annually or on a basis as necessary to sufficiently advise the secretary and comply with subsection (g).

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005. Amended 2018, Oct. 2, P.L. 511, No. 77, § 6, effective in one year [Oct. 2, 2019].


§ 3716. Costs

In addition to any fines, fees or other penalties levied or imposed under this chapter or any other statute, a cost of $50 shall be imposed upon conviction for any violation of 18 Pa.C.S. Ch. 55 Subch. B (relating to cruelty to animals)1 other than a summary offense. Costs collected under this section shall be disposed of in accordance with section 3717 (relating to disposition of moneys).

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005. Amended 2017, June 28, P.L. 215, No. 10, § 6, effective in 60 days [Aug. 28, 2017].


§ 3717. Disposition of moneys

Notwithstanding the provisions of 42 Pa.C.S. §§ 3571 (relating to Commonwealth portion of fines, etc.) and 3573 (relating to municipal corporation portion of fines, etc.), all costs imposed and collected under sections 3709 (relating to penalties) and 3716 (relating to costs) by a division of the unified judicial system existing under section 1 of Article V of the Constitution of Pennsylvania and 42 Pa.C.S. § 301 (relating to unified judicial system) shall be remitted to the Commonwealth for use by the department for administering this chapter.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005.

## § 3718. Applicability to currently appointed individuals

Any individual appointed prior to the effective date of this chapter as a humane society police officer in the county of the registered office of the society or association for which the individual was previously appointed shall not be required to apply for appointment by the court of common pleas in that county under this chapter. Such individual shall be required to apply for appointment pursuant to section 3704 (relating to appointment by nonprofit corporations) in each county other than the initial county of appointment if directed by the society or association.

Credits

2004, Nov. 30, P.L. 1603, No. 205, § 2, effective May 31, 2005.

Share |

Full Site Search

- Site Information
- Contact Us
- Make a donation
- Home

© 2021 Michigan State University College of Law. This site is not a law firm and cannot offer legal advice.





Oct. 29, 2019 x 2:51PM

# Commonwealth of Pennsylvania

## COUNTY OF WESTMORELAND

### APPLICATION FOR
### SEARCH WARRANT
### AND AUTHORIZATION

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

| Glen Thomson | Washington Area Humane Society | (724) 470-9711 | 10/28/19 |
|---|---|---|---|
| AFFIANT NAME | AGENCY | PHONE NUMBER | DATE OF APPLICATION |

**IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED (be as specific as possible):**

With respect to the location named below, Your Affiant requests authorization to search all buildings, curtilage, outbuildings attached or unattached, surrounding areas, other structures, all vehicles or trailers used for the transport of animals, and any place where animals may be confined for evidence of unlawful cruelty to animals pursuant to 18 Pa.C.S. 55 Subch. B.
The Washington Area Humane Society and HSUS requests approval to use body cam and photography to document the events.

**SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED (Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.):**

670 Reed Ave. Monessen, PA 15062
The property located at 670 REED AVE., MONESSEN, PA 15062-1031 in WESTMORELAND COUNTY, Assessor's Parcel Number 20-02-02-0-391, is described in tax assessor records as SINGLE FAMILY RESIDENCE – TOWNHOUSE, Land Use is Residential. The land acreage is 0.2759.

**NAME OF OWNER, OCCUPANT, OR POSSESSOR OF SAID PREMISES TO BE SEARCHED (if proper name is unknown, give alias and/or description):**

Chris Harr

| VIOLATION OF (Describe conduct or specify statute): | DATE(S) OF VIOLATION: |
|---|---|
| 18:5532, and 18:5534 | |

☐ **Warrant Application Approved by District Attorney – DA File No.** ____
(If DA approval required per Pa.R.Crim.P. 202(A) with assigned File No. per Pa.R.Crim.P. 507)

☒ **Additional Pages Attached (Other than Affidavit of Probable Cause)**

☒ **Probable Cause Affidavit(s) MUST be attached (Unless sealed below)   Total number of pages:** 26

**THE UNDERSIGNED TOTAL OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED BELOW.**

The below named Affiant, being duly sworn (or affirmed) before the issuing Authority according to law, deposes and says that there is probable cause to believe that the items or property identified and evidence or the fruit of a crime, or are contraband, or are expected to be otherwise unlawfully possessed or subject of, seizure, and that these items or property are or are expected to be located on the particular person or at the particular place described above. I certify that this Affidavit complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

| _signature_ Glen McInnis | Washington Area Humane Society | 577 |
|---|---|---|
| Signature of Affiant | Agency or Address if Private Affiant | Badge Number |

Sworn to and subscribed before me this ___ day of October, 2019, Mag. Dist. No. ____

| _signature_ | 1210 Bernardino Lane Apollo PA 15613 | (SEAL) |
|---|---|---|
| Signature of Issuing Authority | Office Address | |

## SEARCH WARRANT
### TO LAW ENFORCEMENT OFFICER:

WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described in the affidavit(s) and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

☒ This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM

☐ This Warrant shall be served as soon as practicable and may be served any time during the day or night but in no event later than ____

☒ This Warrant shall be returned to judicial officer

\* The issuing authority should specify a date not later than two (2) days after issuance. Pa.R.Crim.P. 205(4).
\*\* If the issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit(s) and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 206(7).

Issued under my hand this ___ day of October, 2019 at ____ M, o'clock

| _signature_ | 10-3-05 | Jason Buczek |
|---|---|---|
| Signature of Issuing Authority | Mag. Dist. or Judicial Dist. No. | Magisterial District Judge |
| | | Magisterial District 10-3-05 |
| | | Westmoreland County, PA |
| | | Date Commission Expires: |

Title of Issuing Authority:  ☒ Magisterial District Judge    ☐ Common Pleas Judge

☐ **For good cause stated in the affidavit(s) the Search Warrant Affidavit(s) are sealed for** ____ **days by my certification and signature.  (Pa.R.Crim.P. 211)**

_____    (Date)    (SEAL)
Signature of Issuing Authority (Judge of the Court of Common Pleas or Appellate Court Justice or Judge)

My Commission Expires
1st Monday in January 2026

TO BE COMPLETED BY THE ISSUING AUTHORITY

1

Oct. 29, 2019  2:52PM
10-29-19;02:23PM;

NO. 0823  P. 3
;00                                              # 3/ 26

# Commonwealth of Pennsylvania

## COUNTY OF WESTMORELAND



## AFFIDAVIT OF
## PROBABLE CAUSE

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

Your affiant, Officer Glen Thomson, is a humane society police officer, Badge No. 677, ORI No. AC680021, holding a current appointment with the Commonwealth to act as a humane society officer for the prevention of cruelty to animals pursuant the statutory authority conferred under 22 Pa.C.S.A. §§ 3701-3718.

I have been employed as a humane society police officer by the Washington Area Humane Society for three years. Every year I investigate more than 500 complaints of animal cruelty ranging from neglect to abuse and hoarding.

I have the power and authority to exercise the powers conferred under 18 Pa.C.S. Ch. 55 Subch. B (relating to cruelty to animals) in enforcement of animal cruelty laws in the county where I was appointed pursuant to 22 Pa.C.S.A. § 3709(a). Pennsylvania statutes that criminalize cruelty to animals also vest me with the same powers to initiate criminal proceedings provided for police officers by the Pennsylvania Rules of Criminal Procedure and to enjoin violations. 18 Pa.C.S.A. § 5551. I am also authorized to obtain search warrants for buildings and enclosures where criminal cruelty violations have occurred or are occurring, to seize evidence related to such crimes, including, but not limited to, the animals who are victims of the prohibited conduct. 18 Pa.C.S.A. § 5583.

Section 5559 further provides that seized animals can receive reasonably necessary care including euthanasia when they are beyond reasonable hope of recovery. Costs of keeping, caring, and euthanasia of animals seized under § 5553 shall be paid by the owner and such claims shall constitute a lien upon the animals.

When criminal charges have been filed, seized animals are subject to Pennsylvania's Costs of Care of Seized Animal Act, ("the Act"), 18 P.S. §§ 30.1-30.10. The Act allows humane society's, animal welfare organizations, and/or municipal officers to file a petition in a civil proceeding that is separate from the criminal case for an order requiring the owner to pay costs of care for the duration of the pending proceedings requiring the seized animals to be held in protective custody.

I, THE UNDERSIGNED AFFIANT, BEING A DULY APPOINTED HUMANE SOCIETY POLICE OFFICER AND BEING DULY SWORN, ON OATH MAKES THE FOLLOWING STATEMENTS:

(a) There are two locations which are the subject of an ongoing pattern of criminal conduct including an attempt to evade enforcement by relocating to a new county so that the criminal conduct can continue. The properties are in Washington County and are described and located as follows:

(1) 820 2ND ST., DONORA, PA 15033-1551 in WASHINGTON COUNTY;

(2) 676 REED AVE., MONESSEN, PA 15062-1031 in WESTMORELAND COUNTY;

Jason Buczak
Magisterial District Judge
Magisterial District 10-3-05
Westmoreland County, PA
My Commission Expires
in January 2026

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF. I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

| | | (SEAL) |
|---|---|---|
| Affiant Signature | 10/29/19 | |
| Date | Issuing Authority Signature | Date |

10084



# Commonwealth of Pennsylvania

## COUNTY OF WESTMORELAND

# AFFIDAVIT OF PROBABLE CAUSE
## CONTINUATION PAGE

| Docket Number (Issuing Authority): | Police Incident Number: 900-2019 | Warrant Control Number: |
|---|---|---|

### AFFIDAVIT OF PROBABLE CAUSE CONTINUATION

(b) The Washington County property is listed as a residential and business address and includes the residence, including any outbuildings and appurtenances thereto, located at 320 2ND ST., DONORA, PA 15033-1551 as well as the business address located at 320 2ND ST, BUILDING B, DONORA, PA 15033-1551, including any outbuildings and appurtenances thereto.

(c) Tax assessor records describe the property located at 320 2ND ST., DONORA, PA 15033-1551 as a commercial property, Assessor's Parcel No. 2400270002001200, lot acreage 0.7180, and the Legal Description is: LTS 27 THRU 31 INC MULTI BUILDINGS.

(d) A search of public records and tax assessor records have not identified a separate property located at 320 2ND ST., DONORA, PA 15033-1551 known as "BUILDING B." Photos of the property available on the tax assessor's website depict two buildings located on the parcel. The "Main Building" is a residential structure built in 1910. The "Commercial" property is categorized as "RELIGIOUS" under the assessor's structure code. The tax assessor photos for the buildings occupying the parcel are provided below along with a satellite photo depicting the parcel and the layout of the buildings. (See Attachment A)

(e) The property located at 676 REED AVE., MONESSEN, PA 15062-1031 in WESTMORELAND COUNTY, Assessor's Parcel Number 20-02-02-0-381, is described in tax assessor records as "SINGLE FAMILY RESIDENCE ~ TOWNHOUSE", Land Use is Residential. The land acreage is 0.2759. Various images of the property and the parcel are provided below. (See attachment B)

676 REED AVE., MONESSEN, PA 15062-1031 in WESTMORELAND COUNTY,
Tax Assessor's Parcel Number: 20-02-02-0-381

II. SAID SUSPECTED LOCATIONS ARE EITHER CONTROLLED OR IN THE POSSESSION OF THE FOLLOWING PARTIES WHO HAVE ACCESS TO AND ARE IN CUSTODY OF EVIDENCE, TO WIT:

(a) Christie D. Harr, is the Owner, Founder, and Chief Executive Officer of "Animal Orphans Animal Rescue and Pet Sanctuary" a registered domestic nonprofit organization. Documents filed with the Pennsylvania Department of State, Corporation Bureau in 2010 include an Application for Registration of Fictitious Name submitted by Christie D. Harr, address 320 2nd Street, Donora, PA 15033. The Application for Registration of Fictitious Name was for an entity known as: "Animal Orphans Animal Rescue and Pet Sanctuary" and the address listed as the "principal place of business" was: 320 2ndStreet, Building B, Donora PA, 15033." Christie D. Harr of 320 2nd St. Donora PA 15033 is listed as the "individual interested in the business[.]". AOAR's website directs visitors to send donations to 320 2nd Street, Donora, PA 15033.

Jason Buczak
Magisterial District Judge
Magisterial District 10-3-05
Westmoreland County, PA
My Commission Expires
1st Monday in January 20

Affiant Signature

Oct. 29, 2019  2:32PM                                                    NO. 0823   PP. 5
                                                                          :00        # 5/ 26

# Commonwealth of Pennsylvania

## COUNTY OF WESTMORELAND

# AFFIDAVIT OF
# PROBABLE CAUSE
## CONTINUATION PAGE

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

### AFFIDAVIT OF PROBABLE CAUSE CONTINUATION

(b) Christie D. Harr, is the Owner, Founder, and Chief Executive Officer of "Animal Orphans Animal Rescue and Pet Sanctuary" a registered domestic nonprofit organization who has acquired a residential property located at 676 REED AVE., MONESSEN, PA 15062-1031 in WESTMORELAND COUNTY. According to various published statements on social media, Harr is seeking to relocate her so-called sanctuary to the location in Westmoreland County. It is unclear how many animals have been transferred to the new residence, but Harr has represented to law enforcement that she has relocated some of the animals who have been or are currently enduring conditions that violate the cruelty statutes in this state.

III. IT IS THE BELIEF OF AFFIANT, AND AFFIANT HEREBY STATES THAT SAID SUSPECTED PARTY HAS POSSESSION OF AND IS CONCEALING AT SAID SUSPECTED PLACES IN VIOLATION OF THE LAWS OF PENNSYLVANIA THE FOLLOWING DESCRIBED ANIMALS AND PERSONAL PROPERTY, TO WIT:

(a) Domestic and other felines, of varying ages, and in varying states of health or injury.

(b) Computer graphic file(s) and visual image(s) depiction(s), and any other computer graphic files.

(c) Computer hardware, that is, all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes (but is not limited to) any data processing devices (such as central processing units, memory typewriters, and self-contained laptop or notebook computers); internal and peripheral storage devices such as computer disks, magnetic media, floppy disks, tape systems, hard drives, disk drives, tape drives, translator-like binary device's, and other memory storage devices; and any externally attached peripheral input/output devices such as keyboards, printers, scanners, plotters, video display monitors, and optical readers; and related communications devices such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices; as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks);

(d) Business records, correspondence, notes, papers, ledgers, personal telephone and address books, telephone toll records, telephone message slips, memoranda, facsimiles, documents which reflect, purchase, transmission and/or distribution of material.

(e) Any photographs, negatives, photographic slides, videotapes, or other visual depictions of equipment including materials stored on cellular phones, computer hard drives, or other devices used to store, transmit or document such media.

(f) Any cellular phone(s) that can transmit and receive text messages using various text message applications, E-mails, Facebook, Twitter, and other messages.

(g) Any medications, poisons, narcotics or other materials used for veterinary purposes and treatment records related thereto.

10/29/19

Jason Buczak
Magisterial District Judge
Magisterial District 10-3-05
Westmoreland County, PA
My Commission Expires
1st Monday in January 2026

Affiant Signature

Page ___ of ___

Oct. 29. 2019  2:31PM                                          ;00        No. 0823  PP. 6
                                                                          # 8/ 26



# Commonwealth of Pennsylvania

## COUNTY OF WESTMORELAND

# AFFIDAVIT OF PROBABLE CAUSE
## CONTINUATION PAGE

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

### AFFIDAVIT OF PROBABLE CAUSE CONTINUATION

IV. AFFIANT HAS PROBABLE CAUSE TO BELIEVE VIOLATIONS OF PENNSYLVANIA'S CRUELTY TO ANIMALS STATUTE HAVE BEEN AND ARE CONTINUING TO OCCUR BY REASON OF THE FOLLOWING FACTS AND CIRCUMSTANCES.

(a) On Jan. 28, 2016 at approximately 2:00 P.M, I received a call from an unknown individual who claimed cats were being mistreated at the address of 320 2nd St. in Donora, PA. The caller claimed there was at least 100 cats in the church on the property. At approximately 3:00 P.M. that same day, I arrived at the above address and made contact with the owner, Christie "Chris" Harr. Harr explained that she was a non-profit cat rescue and she housed the cats in the church.

(b) When I first arrived at the property, I noticed the roof of the church was collapsing. Chris told me she was talking with contractors to get it repaired (discussed in more detail below).

(c) Chris allowed me to enter the church to check on the cats. Upon entering the church I witnessed approximately 100 cats inside the main room of the church. Some were in cages and some were running loose.

(d) While there I observed a lot of fur stuck to the interior and exterior of the cages. This indicated a lack of sanitary conditions for the cats confined in cages and an overall failure to adhere to routine sanitation practices for animals confined in cages. Significant accumulations of fur on cages takes time and raises concerns that animals are left in cages for extended periods of time where they cannot perform natural movements or engage in exercise or appropriate behaviors.

(e) Some of the cats showed physically observable signs of upper respiratory infections including cats who had discharge from their eyes and noses and other symptoms such as coughing. Upper respiratory infections in cats are highly infectious and contagious and spread easily when cats are housed in groups. Upper respiratory infections are more common in animals housed in unsanitary conditions and are more often seen in those living in unsanitary conditions, crowded conditions, and cats suffering from immunosuppression caused by feline leukemia or feline immunodeficiency virus. Some of the cats also had other serious health problems. The cats had severe diarrhea. In almost every single cage we saw massive amounts of diarrhea. Chris Harr claimed that was from grain free diet. Most of the cats had mucus discharge coming out of nose and eyes. On close inspection the cats had ear mites. Many cats had matted fur and mucus like material on fur. Food was all over the floor appearing that is was regurgitated. All of these point to potential illnesses including giardia, ear mites, and other parasites in intestine and stomach.

(f) I told Chris to clean up, to sanitize the cages and remove the accumulations of hair on the cages, and to take the sick and injured cats to a veterinarian.

(g) Chris responded by explaining the substandard conditions were because she was the only person caring for the cats.

(h) On Nov. 18, 2016 AORA posted a photo on its Facebook page showing some of the interior roof damage on the roof (See Attachment C)

Jason Buczak
Magisterial District Judge
Magisterial District 10-3-06
Westmoreland County, PA
My Commission Expires
1st Monday in January 2028

Affiant Signature

Page ___ of ___

**Commonwealth of Pennsylvania**

**COUNTY OF** WESTMORELAND



**AFFIDAVIT OF PROBABLE CAUSE**

**CONTINUATION PAGE**

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

*AFFIDAVIT OF PROBABLE CAUSE CONTINUATION*

(i) On Feb 27, 2016 AORA posted a desperate plea for help regarding the collapsing roof. "I am reaching out in sheer desperation! I need a licensed & insured roofer that can do an invisible seamed metal roof on the church that is now our animal rescue. I have gone to several dozen roofers now. They either say no outright or lead me to believe that they are working on an estimate that, months later, they never produce.

There are grants I can apply for to pay for the roof but I need a list of supplies & a labor estimate to submit in order to be considered for such a grant. I will get an approval or refusal within 45 days of submitting the application. Is anyone willing to take the job?

It's now or never. If this is to be fixed this spring or the city will force me to tear the building down & the refuge will close & all the animals will be euthanized. This is the end of the road for Animal Orphans' Animal Rescue & Pet Sanctuary unless someone takes the job!"

(j) On Jan. 23, 2017 I received a call from Chris Harr who claimed another rescue (Homeless Cat Management Team) stole some of her cats. I investigated the matter and learned that Chris owed money to the Homeless Cat Management Team for veterinary care the Homeless Cat Management Team had provided for some of the cats. Chris refused to repay the debts she incurred for the treatment of the cats who were sick and injured and the Homeless Cat Management Team refused to return the animals until Chris resolved the debt. I informed Chris that she would have to go to police since the matter appeared to involve claims of criminal conduct and allegations of stolen property. This incident caused me to begin investigating the conditions of the animals confined in the dilapidated property where Chris ran her so-called rescue.

(k) On April 22, 2017 Chris Harr contacted the Washington Area Humane Society to surrender ownership of approximately 100-200 cats her organization had acquired. Chris said she needed to surrender the cats because she had too many and could not properly care for them all by herself.

(l) In response to Chris' request to relinquish 100-200 cats, I proceeded to access a network of "no-kill" rescues and shelters and began making plans with these entities to take the cats and care for them. However, when the time came for Chris to surrender the cats she could not care for, Chris stated she had changed her mind and did not want to accept the help we had gone to great lengths to secure.

(m) On June 19, 2018, I received a fax from Michele Harris from the Borough of Donora code enforcement. The fax consisted of multiple failures to comply with code enforcement regarding garbage pile up and the state of the building's decay.

(n) On June 20, 2018 at approximately 1:40 P.M. I called Chris Harr and we spoke over the phone. Chris told me there were approximately 80 cats in the church and explained that the exposed roof had not been repaired. Chris claimed she had contacted 120 roofers to repair the damage that left the building exposed to the elements but said she had not been able to find anyone willing to make the repairs.

(o) Later that day I obtained a warrant to enter the property with a veterinarian to assess the conditions and health of the cats in the church and to obtain an accurate count of the number of animals confined inside. I spoke to Chris, reiterated my prior instructions at my last visit where Chris agreed to obtain veterinary care for the cats and to maintain a healthy population but that it appeared Chris failed to take the necessary actions and it seemed nothing had changed.

10/29/19

Jason Buczak
Magisterial District Judge
Magisterial District 10-3-05
Westmoreland County, PA
My Commission Expires
(18 months) in January 2026

**Affiant Signature**



# Commonwealth of Pennsylvania



**COUNTY OF** WESTMORELAND

## AFFIDAVIT OF PROBABLE CAUSE
### CONTINUATION PAGE

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

### *AFFIDAVIT OF PROBABLE CAUSE CONTINUATION*

(p) On Aug. 16, 2019, AORA made a Facebook post concerning HCMT accusing the HCMT "cronies" of filing "false complaints" which lead to another inspection. Kelly Proudfit responded saying the Washington Area Humane Society had received numerous complaints and offered to meet with Chris and Glen Thompson to discuss the situation and plans to move the animals.

(q) Chris Harr, the apparent author of the comment posted by AORA on Aug. 17, 2019, lambasted Ms. Proudfit and said: "We are doing nothing wrong but I will invite you in again just like I did last time so there is no need to obtain another illegal warrant from a notoriously crooked judge this time, just like there was no need to do it last time." The relevant portion of the post from Aug. 17, 2019 is pasted below:

---

(r) The initial visit in 2016 combined with new complaints we received in the following the initial visit. It appeared that we had an ongoing pattern and practice of systematic cruelty involving numerous violations of law including, but not limited to, neglect under 18 Pa.C.S.A. § 5532, cruelty to animals under 18 Pa.C.S.A. § 5533, and aggravated cruelty under 18 Pa.C.S.A. § 5534.

(s) The cumulative and ongoing nature of the crimes combined with the owner's refusal to correct the conditions and refusal to accept help lead to the execution of a discovery search warrant on June 22, 2019. The search was executed by myself, veterinarian Dr. Friend, and veterinary technician Chelsea Flaegel.

(t) Dr. Friend documented 104 cats in the church.

(u) Conditions had substantially deteriorated since my 2016 visit. There were no signs of visible progress and the conditions in the building were far worse.

(v) Most of the cats had signs of ear mite infestations and physically observable symptoms of untreated upper respiratory infections.

(w) We seized a cat named Linus who was so ill we feared he would perish without immediate veterinary care.

(x) Chris agreed to bring six cats in need of surgery and vaccinations in an effort to show she was cooperating with our efforts to address cats in immediate distress within five days, by June 25, 2019.

(y) Chris brought the cats in for treatment. All presented with ear mites, and appeared dirty and showed signs of poor health. The cats Chris brought in were named Mateo, Linus, No Name, Dotaray, Cuddles, and Catnise. All were spayed or neutered with the exception of Linus.

(z) Linus was a very sick cat and tested positive for Feline Leukemia. Feline Leukemia virus causes a highly contagious and potentially fatal retroviral infection that weakens a cat's immune system, making him susceptible to illness and secondary infections.

10/29/19

Jason Buczak
Magisterial District Judge
Magisterial District 10-3-05
Westmoreland County, PA
My Commission Expires
in January 2026

*Affiant Signature*

# Commonwealth of Pennsylvania

## COUNTY OF WESTMORELAND



# AFFIDAVIT OF PROBABLE CAUSE
## CONTINUATION PAGE

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

### AFFIDAVIT OF PROBABLE CAUSE CONTINUATION

(aa) Linus was so ill and weakened from his untreated illness that he wasn't a safe candidate for surgery to neuter him. When this was relayed to Chris she became agitated and angry. We asked Chris to surrender the seven sick and injured cats to the Washington Area Humane Society so that we could provide the cats with the rehabilitative and supportive care they needed. Chris refused to allow the cats to receive the care we offered to provide and as she became increasingly agitated Chris said we would kill the cats. Kelly, whose office is near the front desk, attempted to de-escalate the situation by assuring Chris her fears were unwarranted and to let us provide the life-saving care the cats needed as we had initially agreed to do. Chris refused, demanded that all current care be withheld and ceased and left with all the cats, including Linus.

(bb) The Washington Area Humane Society lacked the resources to intervene given the magnitude of the problem, including housing and caring for more than 100 sick and injured cats. At the time we were in the middle of "kitten season" and were already overwhelmed and operating at maximum capacity. Without Chris willing to cooperate the shelter could not seize the animals as it would shut the shelter down. We pursued additional sources of potential help but were ultimately unsuccessful.

(cc) On May 3, 2019 I received an email from a concerned citizen (Rivky Blumberger) regarding the cats at the address of 320 2nd St. Donora PA. Ms. Blumberger claimed to have spoken to Chris Harr about some of her cats that had stomatitis, a severe dental issue that causes extremely painful symptoms that can hinder eating, sometimes leading to dehydration and malnutrition.

(dd) Ms. Blumberger offered to help by paying for some surgeries and other needed procedures for a few of the cats, which Chris Harr accepted. Ms. Blumberger booked a dental for one of the cats for July 17, 2019. On July 2, 2019 Chris Harr allegedly backed out of the appointment, claiming that it was a trap.

(ee) On August 22, 2019 my director had a phone conversation with Chris Harr. Chris told my director she has 140+ cats. Around 120 in the church, 19 in her house and 3 dogs. She said she has no treatment plans for cats and she can't get veterinarians to help and said no one will help her. Chris said the church is paying in, she is in debt, and is using credit cards to avoid paying for services rendered. Chris said she owes back taxes and only has two people to help her relocate the cats to the facility in Monessen.

(ff) Chris said she purchased the new property using money from a settlement she obtained resulting from a worker's compensation claim. Chris admitted that none of the cats have current rabies vaccines and that she stockpiles veterinary medications which she uses to treat the cats without veterinary supervision. Chris said she had a surgery scheduled for August 30 and would have all the cats moved to a new jurisdiction by then. Chris admitted the conditions were poor but stated the cats were fine.

(gg) On August 26, 2019, my executive director of WAHS, Kelly Proudfit, and I visited the Donora Church property. We were escorted by a Donora police officer. We knocked on the front door of Chris Harr's house. When she opened the door the smell of feces and ammonia was overwhelming. Chris came outside with her mother to talk to us and quickly shut the door behind her so we could not see into the house. We heard barking from inside the house. Chris agreed to show us the cats in the church. She asked us to wait until she was ready. We waited in the parking lot and her father showed up and he talked with us.

10/29/19

Jason Buczak
Magisterial District Judge
Magisterial District 10-3-05
Westmoreland County, PA
My Commission Expires
1st Monday in January 2026

Affiant Signature



# Commonwealth of Pennsylvania

# AFFIDAVIT OF PROBABLE CAUSE
## CONTINUATION PAGE

## COUNTY OF WESTMORELAND

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

*AFFIDAVIT OF PROBABLE CAUSE CONTINUATION*

(hh) After about 20 minutes Chris finally came outside. She led us through her back yard past piles of garbage bags full of cat food cans. She took us to the front entrance of the church and unlocked large doors held shut with chains and padlocks. Inside the entry to the church were stacks of food and other garbage. She unlocked inner doors to another room. Inside this room, (See pictures at Attachment B). There were roughly 98 cats. We stopped counting at 89.

(ii) The majority of the cats were caged. Roughly 15-20 cats were running free. The water in the cages was filthy. The smell of feces and ammonia was very evident. The cages were coated in fur, rust and debris. Many of the cats I recognized from our visit in 2018. Many had diarrhea in their litter boxes, crusted eyes, and dirty fur. Along the back left wall, the floor was covered in feces. Additionally, we noticed many piles of regurgitated food all along the floor area. The ceiling above was clearly water damaged from the damaged roof. Chris moved all the cats to the center of the room so that they were not under the water leaking from the ceiling. (See Attachment E)

(jj) Chris took Kelly Proudfit up into the main area of the church so she could see the damage to the roof. She once again told Kelly that she has approximately another 40 cats in her house and four dogs. (See attachment F)

(kk) After we left the church we went outside. Chris Han's father was gone. She then offered to take us to her new house she purchased in Monessen 10 miles away to show us how she is moving these cats to the new location. We agreed and followed her. Upon arrival at 676 Reed Ave, Monessen PA 15062 Chris took us inside her home. When we entered there were 15 cat carriers with cats inside None of the cats had water or food. Some carriers had 2-3 kittens. We heard a dog barking upstairs. One of the cats looked familiar. Kelly asked if it was Linus. Chris answered yes and took him out of the cat carrier. He was coated in mucus and filth and appeared very sick. Chris had brought Linus to us a year prior to have neuter surgery. He was very sick and we tried to get her to surrender him in 2018 without success.

(ll) The front room of the new house was filled with piles of junk. When we asked what it was all for Chris said it was her office for her rescue and all her fundraising items.

(mm) We asked if she had moved the animals to the new location and she said they were moving them that day. We felt it was staged to look that way but nothing in the house suggested the property was ready.

(nn) Chris told Kelly on a prior phone call that the county code enforcement hadn't approved her to move in to the new property yet. AORA posted a comment on Facebook that appears to confirm this statement: see attachment H)

Chris said he was doing great and just needed a bath. On leaving the Reed Avenue home we heard a dog barking from upstairs. Chris told us that was one of her dogs she has who she keeps upstairs. (See attachment G)

Jason ? ?ak
Magisterial District Judge
Magisterial District 10-3-06
Westmoreland County, PA
My Commission Expires
1st Monday in January 2025

*Affiant Signature*

Page ___ of ___

(Oct. 29, 2019  2:55PM)
10-29-19(02:23PM)
NO. 0823  PP. 11



# Commonwealth of Pennsylvania

## COUNTY OF WESTMORELAND

# AFFIDAVIT OF PROBABLE CAUSE
## CONTINUATION PAGE

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

*AFFIDAVIT OF PROBABLE CAUSE CONTINUATION*

(oo) October 27th, 2019 Chris Harr posted on her website that she still needed cages for her rescue and no one had purchased items for her rescue. She could no longer operate if she didn't get new cages and needed items. The address the wish list ships to is the 676 Reed Avenue, Monessen, PA. Additionally the address noted as the rescue address on her Facebook page is the Reed Avenue address.

(pp) October 28, 2019, Donora Code enforcement officer Kenny went to the church property to do a routine inspection. The code enforcement officer reported a strong odor of urine and feces outside the church. He also saw a gray tabby cat and an orange tabby cat roaming the property. Chris Harr was not answering the door but her car was there. He took photos of the roof that showed no improvement or efforts to fix. Later that day director Kelly Proudfit and this affiant drove by the church property. We saw a gray tabby cat run from direction of the Victorian house, stop and look at us, and then run into the bushes. We also noticed a large amount of white garbage bags piled on her front porch. These were the same type we saw when we went in August 2019, and they were full of metal cat food tins empty, immediately leaving the Donora property we drove to 676 Reed Avenue, Monessen, PA 15062-1031. We did not see any activity at this property, although we observed all windows were covered and a camera points at front door. Neighbors were outside directly across the street at 666 Reed Avenue. We drove down and spoke to the owner and his daughter. She was busy getting her young child on a bus. She told us she hears cats meowing as recent as last week. She said they meow loudly from inside the house. She said that sometimes it sounds like they are fighting in the house or the sound of cats fighting. She said she heard it is a cat rescue, but has not seen the owner at all.

V. THESE FACTS AND CIRCUMSTANCES FORM THE BASIS FOR THE AFFIANT'S CONCLUSION THAT THERE IS PROBABLE CAUSE TO BELIEVE THE ITEMS OF PROPERTY AND EVIDENCE OF THE CRIMES ARE EXPECTED TO BE UNLAWFULLY POSSESSED AND SUBJECT TO SEIZURE AT THE LOCATIONS AND PARTICULAR PLACES DESCRIBED HEREIN.

PLACES TO BE SEARCHED

(1) 320 2ND ST., DONORA, PA 15033-1551 in WASHINGTON COUNTY; as described on the Tax Assessor's website which describes two parcels filed under the same parcel number. The first parcel is described as COMMERCIAL, Front Footage 56, Depth 100, Calculated Acres 0.170, Description: LTS 27 THRU 31 INC.MULTI BUILDINGS. The second parcel is classified as RESIDENTIAL, Front Footage 170, Depth 167, Calculated Acres 1.0476, Description: LOTS 23 THRU 26 & 32; and,

(2) 676 REED AVE., MONESSEN, PA 15062-1031 in WESTMORELAND COUNTY, including the property as described in the legal description in the deed of conveyance, Instrument: 201809050028313, to wit UPI: 20-00830-00000, Sub: MONESSEN, Lt 234 236, Muni: MONESSEN CITY, Tax Map ID: 20-02-02-0-361.

PROPERTY TO BE SEARCHED FOR AND SEIZED

(3) With respect to the locations named above, your Affiant requests authorization to search all buildings, curtilage, outbuildings attached or unattached, surrounding areas, other structures, all vehicles or trailers used for the transport of animals; and any place where animals may be confined for evidence of unlawful cruelty to animals pursuant to 18 Pa.C.S, Ch. 55 Subch. B.

Jason Buczak
Magisterial District Judge
Magisterial District 10-3-05
Westmoreland County, PA
My Commission Expires
1st Monday in January 2020

*Affiant Signature*

# Commonwealth of Pennsylvania



## AFFIDAVIT OF PROBABLE CAUSE CONTINUATION PAGE

**COUNTY OF** WESTMORELAND

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

### AFFIDAVIT OF PROBABLE CAUSE CONTINUATION

(4) All animals living or deceased, born or unborn, above or below the ground, contained or free roaming, inside or outside. All cages, crates, containers, or other items or objects that could be used for the confinement or shelter of an animal. All related animal records written or electronically kept (e.g. cell phones, tablets, computers, CD's DVD's, thumb drives) including medical treatment, drugs and other prescribed items, intake or export, sales receipts, food and water bills, proof of ownership documents, care and boarding contracts and agreements, and photographs and videos. Any and all implements for the training, breeding, care, medical treatment, control or transport of animals. All food, supplies, medications. And all documents, communications, and correspondence, however stored, related to the operations of Animal Orphans Animal Rescue and its Founder and CEO, Christie Harr.

(5) The Washington Area Humane Society (WAHS) and its lone humane police officer lack the resources, personnel, and equipment to safely carry out such a large-scale animal seizure operation involving more than 100 sick, injured, infectious, contagious, and cruelly treated animals who are expected to be seized and require provide temporary sheltering treatment, and rehabilitation.

(6) WAHS has requested assisted from the Humane Society of the United States' Animal Rescue Team to prove law enforcement aid and assistance in executing the warrant. This operation involves the potential seizure of more than a hundred animals in need of immediate and urgent intervention. Given the scope and scale of the operation, WAHS and all participating law enforcement agencies will require personnel with training and expertise in forensic documentation of cruelty with photos and videos, animal handling, animal triage, systematic identification and impound protocols, and safe transport to the temporary shelter in climate-controlled vehicles. Agents with the Humane Society Animal Rescue Team will document conditions with photos and video.

(7) Civilians participating in the seizure at the request of WAHS will operate under the supervision and direction of law enforcement to aid in executing the warrant. These civilians will include members of the Humane Society of the United States Animal Rescue and Disaster Response Team, on-site veterinarians, and WAHS personnel.

(8) The Washington Area Humane Society requests approval to use body cam and photography to document the events.

10/29/19

Jason Buczak
Magisterial District Judge
Magisterial District 10-3-05
Westmoreland County, PA
My Commission Expires
1st Monday in January 2026

Affiant Signature

Page ____ of ____



240-027-00-03-0012-00  04/21/2014 | 240-027-00-03-0012-00  04/21/2014

The main residential building. | The commercial building.

**ATTACHMENT A**



2400270003001200  320 SECOND ST DONORA

The main residential building.

The main commercial building.



ATTACHMENT C




ATTACHMENT B

## ATTACHMENT G



Cat  Named Linus                    Carriers on floor at Reed Address

## ATTACHMENT H

**Animal Orphans Animal Rescue & Pet Sanctuary** It is a non-profit organization and therefore can be ran out of a residential building. There was no one to ask when I bought the building because the entire city council had been fired and we're eventually replaced. I looked up what ordinance that I could find. There didn't seem to be any stipulations pertaining to cats. I did talk with the new ordinance officer after the fact and all seemed well but someone called a complaint into his supervisor and now he's being ordered to investigate. I ran the rescue for 11 years out of a building zoned residential in Donora. Although the council was not happy about it, there was nothing they could do because I wasn't breaking any ordinance codes.

Like  Reply  15w



ATTACHMENT F

## ATTACHMENT D

to move. We are doing nothing wrong but I
will invite you in again just like I did last time
so there is no need to obtain another illegal
warrant from a notoriously crooked judge this
time, just like there was no need to do it last
time either. I'm just letting you know that this
time the entire ordeal will be video taped and
there will be several witnesses present since
Glenn likes to change his story in order to get
warrants. I wouldn't do any of this if I didn't
feel I was being wrongfully persecuted.

¹ The full Facebook post is *available at*
https://www.facebook.com/AOAR.org/photos/a.1084165928302902/2639778636074949/?type
=3&theater (last accessed Oct. 27, 2019).

## ATTACHMENT E





Home   About   Events   Photos   Videos

I can't say thank you enough. This person is
truly selfless. We were able to stop all our
shut off notices, pay our fall taxes, order
cages, order medical supplies and a woods
Lamp, get a used refrigerator for the
volunteer room, get the parts to get the "cat
mobile" back on the road and so much more!
Your kindness is beyond words. Sending
LOVE to wherever you may be!

So now we need everyone else to get
involved with a $5 monthly donation so that
we don't fall behind again. If everyone does a
little, no one needs to do a lot!

Bless all our supporters, big and small! We
could never do this without each and
everyone of your generosity and kindness.

Donate through PayPal:
https://www.paypal.com/cgi-bin/webscr?
cmd=_s-
xclick&hosted_button_id=XQ56MTBDLBKGQ

Checks made out to AOAR Pet Sanctuary or
Animal Orphans Animal Rescue can be mailed
to 320 2nd Street Donora Pa 15033





3:31

Home   About   Events   Photos   Videos

 **Animal Orphans Animal Rescue & Pet Sanctuary** is 😌 feeling blessed.
October 8 at 4:35 PM · 🌐

So last week we received a money order from an Anonymous donor for $5,000, a week's order of cat food waiting for us at tractor supply along with $100 in gift cards for the Dollartree to buy cleaning supplies!

I can't say Thank you enough! This person is truly selfless. We were able to stop all our shut off notices, pay our fall taxes, order cages, order medical supplies and a woods Lamp, get a used refrigerator for the volunteer room, get the parts to get the "cat mobile" back on the road and so much more! Your kindness is beyond words. Sending LOVE to wherever you may be!

So now we need everyone else to get involved with a $5 monthly donation so that we don't fall behind again. If everyone does a little, no one needs to do a lot!

Bless all our supporters, big and small! We could never do this without each and



3:32

<  **Animal Orphans Animal Rescue & Pet Sanctuary**
Saturday, at 10:05 PM ·

6 shares

## Most Relevant ∨

**Susan Hudachek**
Happy Birthday! Food and some beds are on their way to you!

1d   Like   Reply

 **Jessica Cocciolone**
I get paid on Wednesday.. what would you like the most?

1d   Like   Reply   1

**Animal Orphans Animal Rescue & Pet Sanctuary**
Either a large or intermediate crate. Some of our cages are in terrible shape and just need replaced. Either will do. 😊 Thank you!

I just updated the links to the least expensive ones.

Write a comment.

            



Home    About    Events    Photos    Videos

 **Animal Orphans Animal Rescue & Pet Sanctuary**
Saturday at 10:05 PM · 🌐

I know you shouldn't expect to get anything for your birthday but I was truly hoping we would get 2 or 3 items on my wishlist donated to the rescue. To date we have not received anything on our list and only received 27 shares.

Please don't forget that we are still here and desperately need your help to continue daily operations! Your shares could mean the difference between us staying open or closing our doors. And it doesn't... See More

 **Animal Orphans Animal Rescue & Pet Sanctuary**
October 11 at 8:54 PM · 🌐

So tomorrow is my Birthday and below is my birthday wishlist from Chewy.com. Remember, over $50 i...



🛈 **Learn More**

0 Comments     eIntaxid

♡ Recommend      ▼ Tweet     f Share

Leana Storfront

Sort by Best

EINTAXID

**EIN 45-5506979 - Org De Iglesia Cristiana Josue 1:9, Cleveland, Ohio**

— Yes.

**EIN 20-3773160 - Rrb Investments Corp., Monarch Beach, California**

— my name is Lori Tina and we just received paperwork that you bought our mortgage. we have owned our home

**EIN 95-2580864 - Howroyd Wright Employment Agency, Inc., Glendale,**

— what is Applebees Georgia EIN?

**EIN 81-1266511 - Rleaveena Inc, Mission Viejo, California**

— I ordered 15 shirts from your company and they were suppose to be vin.rd/white

Employer Identification Number (EIN): The Employer Identification Number (EIN), also known as the Federal Employer Identification Number (FEIN) or the Federal Tax Identification Number (FTIN), is a unique nine-digit number assigned by the Internal Revenue Service (IRS) (format: XXXXXXXXX) to business entities operating in the United States for the purposes of identification and employment tax reporting. Other commonly used terms for EIN are Taxpayer Id, IRS Number, Tax Id, Taxpayer Identification Number (TIN) etc.

A business needs an EIN in order to pay employees and to file business tax returns. To be considered a Partnership, LLC, Corporation, S Corporation, Non-profit, etc.

EIN 27-4661120 - Animal Orphans Animal Rescue & Pet Sanctuary Inc, Donora, Pennsylvania        https://eintaxid.com/company/274661120/animal-orphans-animal-rescue-pet-sanctuary-inc/

## Accounting Details for Animal Orphans Animal Rescue & Pet Sanctuary Inc

| | |
|---|---|
| Asset | 0 |
| Income | 0 |
| Filing Requirement | 990 - Required to file Form 990-N - Income less than $25,000 per year |
| PF Filing Requirement | No 990-PF return |
| Accounting Period | December |
| Income Amount | (USD) 0 |
| Revenue Amount | (USD) 0 |
| NTEE Classification | Animal Protection & Welfare |

is a unique nine-digit number assigned by the Internal Revenue Service (IRS) (format: XX-XXXXXXXXX) to business entities operating in the United States for the purposes of identification and employment tax reporting.

## What are tax-exempt Organizations?

A company or non-profit which are not liable to pay taxes to IRS are known as tax-exempt organizations. Various organizations such as non-profits, charitable, churches & religious groups, political parties etc. may be tax-exempted by IRS.

EIN 27-4661120 - Animal Orphans Animal Rescue & Pet Sanctuary Inc, Donora, Pennsylvania      https://eintaxid.com/company/274661120-animal-orphans-animal-rescue-pet-sanctuary-inc/

| | |
|---|---|
| EIN (Taxpayer Id) | 27-4661120 |
| Secondary Name Line | Animal Orphans Animal Rescue & Pet |

Contact Address:

| | |
|---|---|
| Care of Name | % Christie Harr |
| Address Line | 320 2nd Street Bldg B |
| City | Donora |
| State | Pennsylvania |
| Zip | 15033-1551 |

Tax Exemption Details for Animal Orphans Animal Rescue & Pet Sanctuary Inc

| | |
|---|---|
| Category under which organization may be exempt | Organization to Prevent Cruelty to Animals |
| Ruling Date | September, 2014 |
| Deductibility | Contributions are deductible |
| Foundation Type | Organization which receives a substantial part of its support from a governmental unit or the general public 170(b)(1)(A)(vi) |
| Organization | Corporation |
| Exempt Organization Status | Unconditional Exemption |

St Nicholas Orthodox Church (/company/237230781-st-nicholas-orthodox-church/)
EIN Number: 23-7230781
Address: 1 Saint Nicholas Dr, Donora, Pennsylvania, 15033-2123

Donora Historical Society Inc (/company/237278382-donora-historical-society-inc/)
EIN Number: 23-7278382
Address: Po Box 522, Donora, Pennsylvania, 15033-0522

Polish Roman Catholic Union Of America (/company/237579771-polish-roman-catholic-union-of-america/).
EIN Number: 23-7579771
Address: 557 Meldon Ave, Donora, Pennsylvania, 15033-1392

What is a EIN Number?

The Employer Identification Number (EIN), also known as the Federal Employer Identification Number (FEIN) or the Taxpayer Identification Number (TIN),

# Animal Orphans Animal Rescue & Pet Sanctuary Inc in Donora, Pennsylvania

Home (//eintaxid.com/)      Companies with 'A' (//eintaxid.com/companies/a/)      Animal Orphans Animal Rescue & Pet Sanctuary Inc

*Organization Profile*                                                                                                    *Search EIN*

Animal Orphans Animal Rescue & Pet
Sanctuary Inc (Animal Orphans Animal
Rescue & Pet) is a tax-exempt
organization located in Donora,
Pennsylvania. The Employer
Identification Number (EIN) for Animal
Orphans Animal Rescue & Pet Sanctuary
Inc is 274661120. EIN is also referred to
as FEIN (Federal Employer Identification
Number) or FTIN (Federal Tax
Identification Number).

The organization type for Animal Orphans
Animal Rescue & Pet Sanctuary Inc is
Corporation and its contribution deductibility status is Contributions are deductible.
Animal Orphans Animal Rescue & Pet Sanctuary Inc is exempted by IRS under the
category of Organization to Prevent Cruelty to Animals. The organization is an
independent organization or an independent auxiliary. The latest return for the tax period
was filed in December, 2017.

## Basic Profile

| Organization Name | Animal Orphans Animal Rescue & Pet Sanctuary Inc. |

---

**Search**

*Similar Tax-Exempt Organizations*

**Christian Life Ministries** (/company
/232879967-christian-life-
ministries/)
EIN Number: 23-2879967
Address: Po Box 136, Donora,
Pennsylvania, 15033-0136

**Pennsylvania Rehabilitation
Association** (/company
/236441418-pennsylvania-
rehabilitation-association/)
EIN Number: 23-6441418
Address: 406 Prospect Ave, Donora,
Pennsylvania, 15033-1831

| Commonwealth of Pennsylvania | | APPLICATION FOR SEARCH WARRANT AND AUTHORIZATION |
|---|---|---|
| COUNTY OF Washington | | |

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

| Glen Thomson | Washington Area Humane Society | (724) 470-9711 | 10/28/19 |
|---|---|---|---|
| AFFIANT NAME | AGENCY | PHONE NUMBER | DATE OF APPLICATION |

(IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED (as as specific a possible))

With respect to the location named below, Your Affiant requests authorization to search all buildings, curtilage, outbuildings attached or unattached, surrounding areas, other structures, all vehicles or trailers used for the transport of animals, and any place where animals may be confined for evidence of unlawful cruelty to animals pursuant to 18 Pa.C.S. 55 Subch. B.

The Washington Area Humane Society and HSUS requests approval to use body cam and photography to document the events

SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED (Street and No, Apt. No., Vehicle, Safe Deposit Box, etc.):

320 2nd St. Donora, PA. 15033-1551

NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED (if proper name is unknown, give alias and/or description):

Owner, Gene Jeffries, Occupant, Chris Harr.

| VIOLATION OF (Describe conduct or specify statute): | DATE(S) OF VIOLATION: |
|---|---|
| 18:5532 and 18:5534 | Jan 26th 2016 — 0428 2019 |

☒ Warrant Application Approved by District Attorney – DA File No. _____
(if DA approval required per Pa.R.Crim.P. 202(A) with assigned File No. per Pa.R.Crim.P. 507)

☐ Additional Pages Attached (Other than Affidavit of Probable Cause)

☐ Probable Cause Affidavit(s) MUST be attached (unless sealed below)   Total number of pages: _____

***(SEE NOTE)*** TOTAL NUMBER OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED.***

The below named Affiant, being duly sworn (or affirmed) before the Issuing Authority according to law, deposes and says that there is probable cause to believe that the items or property identified as evidence or the fruit of a crime, or are contraband, or are expected to be otherwise unlawfully possessed or subject to seizure, and that these items or property are or are expected to be located on the particular person or at the particular place described above. I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

| _signature_ | Washington Area Humane Society | 677 |
|---|---|---|
| Signature of Affiant | Agency or Address of Private Affiant | Badge Number |

Sworn to and subscribed before me this 29th day of _____ 219, Mag. Dist. No. 37-1-4-2

6048 Park Ave Monongahela PA 15063
Signature of Issuing Authority                    Office Address:

**SEARCH WARRANT**
TO LAW ENFORCEMENT OFFICER:

WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.**

☒ This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later than:**

☐ This Warrant shall be served as soon as practicable and may be served any time during the day or night but in no event later than:** 1:55 P. M, o'clock  October 31st 2019

☐ This Warrant shall be returned to judicial officer

* The issuing authority should specify a date not later than two (2) days after issuance. Pa.R.Crim.P. 205(4).
** If the issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit(s) and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 206(7).

Issued under my hand this 29th day of OCTOBER 2019 at 1:55 P M, o'clock

| _signature_ | 37-1-02 | 1st Mon. Jan. 2025 |
|---|---|---|
| Signature of Issuing Authority | Mag. Dist. or Judicial Dist. No. | Date Commission Expires |

Title of Issuing Authority: ☒ Magisterial District Judge   ☐ Common Pleas Judge ☐ ___

☐ For good cause stated in the affidavit(s) the Search Warrant Affidavit(s) are sealed for _____ days by my certification and signature.  (Pa.R.Crim.P. 211)

_____ (Date)  (SEAL)
Signature of Issuing Authority (Judge of the Court of Common Pleas or Appellate Court Justice or Judge)

1



# Commonwealth of Pennsylvania

COUNTY OF WASHINGTON

# AFFIDAVIT OF PROBABLE CAUSE

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

Your affiant, Officer Glen Thomson, is a humane society police officer, Badge No. 577, ORI No. AC630021, holding a current appointment with the Commonwealth to act as a humane society officer for the prevention of cruelty to animals pursuant the statutory authority conferred under 22 Pa.C.S.A. §§ 3701-3716.

I have been employed as a humane society police officer by the Washington Area Humane Society for three years. Every year I investigate more than 500 complaints of animal cruelty ranging from neglect to abuse and hoarding.

I have the power and authority to exercise the powers conferred under 18 Pa.C.S. Ch. 55 Subch. B (relating to cruelty to animals) in enforcement of animal cruelty laws in the county where I was appointed pursuant to 22 Pa.C.S.A. § 3708(a). Pennsylvania statutes that criminalize cruelty to animals also vest me with the same powers to initiate criminal proceedings provided for police officers by the Pennsylvania Rules of Criminal Procedure and to enjoin violations. 18 Pa.C.S.A. § 5551. I am also authorized to obtain search warrants for buildings and enclosures where criminal cruelty violations have occurred or are occurring, to seize evidence related to such crimes, including, but not limited to, the animals who are victims of the prohibited conduct. 18 Pa.C.S.A. § 5553.

Section 5553 further provides that seized animals can receive reasonably necessary care including euthanasia when they are beyond reasonable hope of recovery. Costs of keeping, caring, and euthanasia of animals seized under § 5553 shall be paid by the owner and such claims shall constitute a lien upon the animals.

When criminal charges have been filed, seized animals are subject to Pennsylvania's Costs of Care of Seized Animal Act, ("the Act"), 18 P.S. §§ 30.1–30.10. The Act allows humane society's, animal welfare organizations, and/or municipal officers to file a petition in a civil proceeding that is separate from the criminal case for an order requiring the owner to pay costs of care for the duration of the pending proceedings requiring the seized animals to be held in protective custody.

I, THE UNDERSIGNED AFFIANT, BEING A DULY APPOINTED HUMANE SOCIETY POLICE OFFICER AND BEING DULY SWORN, ON OATH MAKES THE FOLLOWING STATEMENTS:

(a) There are two locations which are the subject of an ongoing pattern of criminal conduct including an attempt to evade enforcement by relocating to a new county so that the criminal conduct can continue. The properties are in Washington County and are described and located as follows:

(1) 320 2ND ST., DONORA, PA 15033-1551 in WASHINGTON COUNTY;

(2) 676 REED AVE., MONESSEN, PA 15062-1031 in WESTMORELAND COUNTY.

(b) The Washington County property is listed as a residential and business address and includes the residence, including any outbuildings and appurtenances thereto, located at 320 2ND ST., DONORA, PA 15033-1551 as well as the business address located at 320 2ND ST. BUILDING B, DONORA, PA 15033-1551, including any outbuildings and appurtenances thereto.

(c) Tax assessor records describe the property located at 320 2ND ST., DONORA, PA 15033-1551 as a commercial property, Assessor's Parcel No. 2400270003001200, lot acreage 0.7160, and the Legal Description is: LTS 27 THRU 31 INC MULTI BUILDINGS;

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THIS AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF. I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

| Affiant Signature | Date | Issuing Authority Signature | Date | (SEAL) |

2

**Commonwealth of Pennsylvania**

COUNTY OF  washington



**AFFIDAVIT OF PROBABLE CAUSE**

CONTINUATION PAGE

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

*AFFIDAVIT OF PROBABLE CAUSE CONTINUATION*

(d) A search of public records and tax assessor records have not identified a separate property located at 320 2ND ST., DONORA, PA 15033-1551 known as "BUILDING B." Photos of the property available on the tax assessor's website depict two buildings located on the parcel. The "Main Building" is a residential structure built in 1910. The "Commercial" property is categorized as "RELIGIOUS" under the assessor's structure code. The tax assessor photos for the buildings occupying the parcel are provided below along with a satellite photo depicting the parcel and the layout of the buildings. (See Attachment A)

(e) The property located at 676 REED AVE., MONESSEN, PA 15062-1031 in WESTMORELAND COUNTY, Assessor's Parcel Number: 20-02-02-0-361, is described in tax assessor records as SINGLE FAMILY RESIDENCE – TOWNHOUSE, Land Use is Residential. The land acreage is 0.2755. Various images of the property and the parcel are provided below: (See attachment B)

676 REED AVE., MONESSEN, PA 15062-1031 in WESTMORELAND COUNTY.
Tax Assessor's Parcel Number: 20-02-02-0-361

II. SAID SUSPECTED LOCATIONS ARE EITHER CONTROLLED OR IN THE POSSESSION OF THE FOLLOWING PARTIES WHO HAVE ACCESS TO AND ARE IN CUSTODY OF EVIDENCE, TO WIT:

(a) Christie D. Harr, is the Owner, Founder, and Chief Executive Officer of "Animal Orphans Animal Rescue and Pet Sanctuary" a registered domestic nonprofit organization. Documents filed with the Pennsylvania Department of State Corporation Bureau in 2010 include an Application for Registration of Fictitious Name submitted by Christie D. Harr, address 320 2rid Street, Donora, PA 15033. The Application for Registration of Fictitious Name was for an entity known as: "Animal Orphans Animal Rescue and Pet Sanctuary" and the address listed as the "principal place of business" was: 320 2nd Street, Building, B, Donora PA, 15033," Christie D. Harr of 320 2nd St, Donora PA 15033 is listed as the "individual interested in the business[,]" AOAR's website directs visitors to send donations to 320 2nd Street, Donora, PA 15033.

(b) Christie D. Harr, is the Owner, Founder, and Chief Executive Officer of "Animal Orphans Animal Rescue and Pet Sanctuary" a registered domestic nonprofit organization who has acquired a residential property located at 676 REED AVE., MONESSEN, PA 15062-1031 in WESTMORELAND COUNTY. According to various published statements on social media, Harr is seeking to relocate her so-called sanctuary to the location is Westmoreland County. It is unclear how many animals have been transferred to the new residence, but Harr has represented to law enforcement that she has relocated some of the animals who have been or are currently enduring conditions that violate the cruelty statutes in this state.

III. IT IS THE BELIEF OF AFFIANT, AND AFFIANT HEREBY STATES THAT SAID SUSPECTED PARTY HAS POSSESSION OF AND IS CONCEALING AT SAID SUSPECTED PLACES IN VIOLATION OF THE LAWS OF PENNSYLVANIA THE FOLLOWING DESCRIBED ANIMALS AND PERSONAL PROPERTY, TO WIT:

(a) Domestic and other felines, of varying ages, and in varying states of health or injury.

(b) Computer graphic file(s) and visual image(s) depiction(s), and any other computer graphic files.

*Affiant Signature*

Page ____ of ____

# Commonwealth of Pennsylvania

**COUNTY OF** washington



# AFFIDAVIT OF PROBABLE CAUSE

CONTINUATION PAGE

| Docket Number: (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

*AFFIDAVIT OF PROBABLE CAUSE CONTINUATION*

(c) Computer hardware, that is, all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes (but is not limited to) any data processing devices (such as central processing units, memory typewriters, and self-contained laptop or notebook computers); internal and peripheral storage devices such as computer disks, magnetic media, floppy disks, tape systems, hard drives, disk drives, tape drives, transistor-like binary devices; and other memory storage devices; and any externally attached peripheral input/output devices such as keyboards; printers, scanners, plotters, video display monitors, and optical readers; and related communications devices such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices; as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

(d) Business records, correspondence, notes, papers, ledgers, personal telephone and address books, telephone toll records, telephone message slips, memoranda, facsimiles, documents which reflect, purchase, transmission and/or distribution of material.

(e) Any photographs, negatives, photographic slides, videotapes, or other visual depictions or equipment including materials stored on cellular phones, computer hard drives, or other devices used to store, transmit, or document such media.

(f) Any cellular phone(s) that can transmit and receive text messages using various text message applications, E-mails, Facebook, Twitter, and other messages.

(g) Any medications, poisons, narcotics or other materials used for veterinary purposes and treatment records related thereto.

IV. AFFIANT HAS PROBABLE CAUSE TO BELIEVE VIOLATIONS OF PENNSYLVANIA'S CRUELTY TO ANIMALS STATUTE HAVE BEEN AND ARE CONTINUING TO OCCUR BY REASON OF THE FOLLOWING FACTS AND CIRCUMSTANCES.

(a) On Jan. 26, 2019 at approximately 2:00 P.M. I received a call from an unknown individual who claimed cats were being mistreated at the address of 320 2nd St. in Donora, PA. The caller claimed there was at least 100 cats in the church on the property. At approximately 3:00 P.M. that same day, I arrived at the above address and made contact with the owner, Christie "Chris" Harr. Harr explained that she was a non-profit cat rescue and she housed the cats in the church.

(b) When I first arrived at the property, I noticed the roof of the church was collapsing. Chris told me she was talking with contractors to get it repaired (discussed in more detail below).

(c) Chris allowed me to enter the church to check on the cats. Upon entering the church I witnessed approximately 100 cats inside the main room of the church. Some were in cages and some were running loose.

*Affiant Signature*

Commonwealth of Pennsylvania

COUNTY OF washington

**AFFIDAVIT OF PROBABLE CAUSE**
**CONTINUATION PAGE**

Docket Number (Issuing Authority):

Police Incident Number: 300-2019

Warrant Control Number:

***AFFIDAVIT OF PROBABLE CAUSE CONTINUATION***

(d) While there I observed a lot of fur stuck to the interior and exterior of the cages. This indicated a lack of sanitary conditions for the cats confined in cages and an overall failure to adhere to routine sanitation practices for animals confined in cages. Significant accumulations of fur on cages takes time and raises concerns that animals are left in cages for extended periods of time where they cannot perform natural movements or engage in exercise or appropriate behaviors.

(e) Some of the cats showed physically observable signs of upper respiratory infections including cats who had discharge from their eyes and noses and other symptoms such as coughing. Upper respiratory infections in cats are highly infectious and contagious and spread easily when cats are housed in groups. Upper respiratory infections are more common in animals housed in unsanitary conditions and are more often seen in those living in unsanitary conditions, crowded conditions, and cats suffering from immunosuppression caused by feline leukemia or feline immunodeficiency virus. Some of the cats also had other serious health problems. The cats had severe diarrhea. In almost every single cage we saw massive amounts of diarrhea. Chris Harr claimed that was from grain free diet. Most of the cats had mucus discharge coming out of nose and eyes. On close inspection the cats had ear mites. Many cats had matted fur and mucus like material on fur. Food was all over the floor appearing that is was regurgitated. All of these point to potential illnesses including giardia, ear mites, and other parasites in intestine and stomach.

(f) I told Chris to clean up, to sanitize the cages and remove the accumulations of hair on the cages, and to take the sick and injured cats to a veterinarian.

(g) Chris responded, by explaining the substandard conditions were because she was the only person caring for the cats.

(h) On Nov. 18, 2015 AORA posted a photo on its Facebook page showing some of the interior roof damage on the roof: (See Attachment C)

(i) On Feb 27, 2016 AORA posted a desperate plea for help regarding the collapsing roof: "I am reaching out in shear desperation! I need a licensed & insured roofer that can do an invisible seamed metal roof on the church that is now our animal rescue. I have gone to several dozen roofers now. They either say no outright or lead me to believe that they are working on an estimate that, months later, they never produce.

There are grants I can apply for to pay for the roof but I need a list of supplies & a labor estimate to submit in order to be considered for such a grant. I will get an approval or refusal within 45 days of submitting the application. Is anyone willing to take the job?

It's now or never. It has to be fixed this spring or the city will force me to tear the building down & the rescue will close & all the animals will be euthanized. This is the end of the road for Animal Orphans Animal Rescue & Pet Sanctuary unless someone takes the job!"

Affiant Signature

| Commonwealth of Pennsylvania |  | AFFIDAVIT OF |
|---|---|---|
| | | PROBABLE CAUSE |
| COUNTY OF washington | | CONTINUATION PAGE |

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

*AFFIDAVIT OF PROBABLE CAUSE CONTINUATION*

(j) On Jan. 23, 2017 I received a call from Chris Harr who claimed another rescue (Homeless Cat Management Team) stole some of her cats. I investigated the matter and learned that Chris owed money to the Homeless Cat Management Team for veterinary care the Homeless Cat Management Team had provided for some of the cats. Chris refused to repay the debts she incurred for the treatment of the cats who were sick and injured and the Homeless Cat Management Team refused to return the animals until Chris resolved the debt. I informed Chris that she would have to go to police since the matter appeared to involve claims of criminal conduct and allegations of stolen property. This incident caused me to begin investigating the conditions of the animals confined in the dilapidated property where Chris ran her so-called rescue.

(k) On April 22, 2017 Chris Harr contacted the Washington Area Humane Society to surrender ownership of approximately 100-200 cats her organization had acquired. Chris said she needed to surrender the cats because she had too many and could not properly care for them all by herself.

(l) In response to Chris' request to relinquish 100-200 cats, I proceeded to access a network of "no-kill" rescues and shelters and began making plans with these entities to take the cats and care for them. However, when the time came for Chris to surrender the cats she could not care for, Chris stated she had changed her mind and did not want to accept the help we had gone to great lengths to secure.

(m) On June 19, 2018, I received a fax from Michele Harris from the Borough of Donora code enforcement. The fax consisted of multiple failures to comply with code enforcement regarding garbage pile up and the state of the building's decay.

(n) On June 20, 2018 at approximately 1:40 P.M. I called Chris Harr and we spoke over the phone. Chris told me there were approximately 80 cats in the church and explained that the exposed roof had not been repaired. Chris claimed she had contacted 120 roofers to repair the damage that left the building exposed to the elements but said she had not been able to find anyone willing to make the repairs.

(o) Later that day I obtained a warrant to enter the property with a veterinarian to assess the conditions and health of the cats in the church and to obtain an accurate count of the number of animals confined inside. I spoke to Chris, reiterated my prior instructions at my last visit where Chris agreed to obtain veterinary care for the cats and to maintain a healthy population but that it appeared, she failed to take the necessary actions and it seemed nothing had changed.

(p) On Aug. 16, 2019, AORA made a Facebook post concerning HCMT accusing the HCMT "cronies" of filing "false complaints" which lead to another inspection. Kelly Proudfit responded saying the Washington Area Humane Society had received numerous complaints and offered to meet with Chris and Glen Thompson to discuss the situation and plans to move the animals.

(q) Chris Harr, the apparent author of the comment posted by AORA on Aug. 17, 2019, lambasted Ms. Proudfit and said: "We are doing nothing wrong but I will invite you in again just like I did last time so there is no need to obtain another illegal warrant from a notoriously crooked judge this time, just like there was no need to do it last time." The relevant portion of the post from Aug. 17, 2019 is pasted below:

Affiant Signature

**Commonwealth of Pennsylvania**

**COUNTY OF** washington



**AFFIDAVIT OF PROBABLE CAUSE**
**CONTINUATION PAGE**

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

*AFFIDAVIT OF PROBABLE CAUSE CONTINUATION*

but not limited to, neglect under 18 Pa.C.S.A. § 5532, cruelty to animals under 18 Pa.C.S.A. § 5533, and aggravated cruelty under 18 Pa.C.S.A. § 5534.

(s) The cumulative and ongoing nature of the crimes combined with the owner's refusal to correct the conditions and refusal to accept help lead to the execution of a discovery search warrant on June 22, 2018. The search was executed by myself, veterinarian Dr. Friend, and veterinary technician, Chelsea Fleegal.

(t) Dr. Friend documented 104 cats in the church.

(u) Conditions had substantially deteriorated since my 2016 visit. There were no signs of visible progress and the conditions in the building were far worse.

(v) Most of the cats had signs of ear mite infestations and physically observable symptoms of untreated upper respiratory infections.

(w) We seized a cat named Linus who was so ill we feared he would perish without immediate veterinary care.

(x) Chris agreed to bring six cats in need of surgery and vaccinations in an effort to show she was cooperating with our efforts to address cats in immediate distress within five days, by June 26, 2018.

(y) Chris brought the cats in for treatment. All presented with ear mites, and appeared dirty and showed signs of poor health. The cats Chris brought in were named Mateo, Linus, No Name, Dotersy, Cuddles, and Catniss. All were spayed or neutered with the exception of Linus.

(z) Linus was a very sick cat and tested positive for Feline Leukemia. Feline Leukemia virus causes a highly contagious and potentially fatal retroviral infection that weakens a cat's immune system, making him susceptible to illness and secondary infections.

(aa) Linus was so ill and weakened from his untreated illness that he wasn't a safe candidate for surgery to neuter him. When this was relayed to Chris she became agitated and angry. We asked Chris to surrender the seven sick and injured cats to the Washington Area Humane Society so that we could provide the cats with the rehabilitative and supportive care they needed. Chris refused to allow the cats to receive the care we offered to provide and as she became increasingly agitated Chris said we would kill the cats. Kelly, whose office is

near the front desk, attempted to deescalate the situation by assuring Chris her fears were unwarranted and to let us provide the life-saving care the cats needed as we had initially agreed to do. Chris refused, demanded that all current care be withheld and ceased and left with all the cats, including Linus.

(bb) The Washington Area Humane Society lacked the resources to intervene given the magnitude of the problem, including housing and caring for more than 100 sick and injured cats. At the time we were in the middle of "kitten season" and were already overwhelmed and operating at maximum capacity. Without Chris Harr willing to cooperate the shelter could not seize the animals as it would shut the shelter down. We pursued additional sources of potential help but were ultimately unsuccessful.

_Affiant Signature_



# Commonwealth of Pennsylvania

COUNTY OF  washington

# AFFIDAVIT OF PROBABLE CAUSE CONTINUATION PAGE

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

## AFFIDAVIT OF PROBABLE CAUSE CONTINUATION

(cc) On May 3, 2019 I received an email from a concerned citizen (Rivky Blumberger) regarding the cats at the address of 320 2nd St. Donora PA. Ms. Blumberger claimed to have spoken to Chris Harr about some of her cats that had stomatitis, a severe dental issue that causes extremely painful symptoms that can hinder eating, sometimes leading to dehydration and malnutrition.

(dd) Ms. Blumberger offered to help by paying for some surgeries and other needed procedures for a few of the cats, Which Chris Harr accepted, Ms. Blumberger booked a dental for one of the cats for July 17, 2019. On July 2, 2019 Chris Harr allegedly backed out of the appointment, claiming that it was a trap.

(ee) On August 22, 2019 my director had a phone conversation with Chris Harr. Chris told my director she has 140+ cats. Around 120 in the church, 19 in her house and 3 dogs. She said she has no treatment plans for cats and she can't get veterinarians to help and said no one will help her. Chris said the church is caving in, she is in debt, and is using credit cards to avoid paying for services rendered. Chris said she owes back taxes and only has two people to help her relocate the cats to the facility in Monessen.

(ff) Chris said she purchased the new property using money from a settlement she obtained resulting from a worker's compensation claim. Chris admitted that none of the cats have current rabies vaccines and that she stockpiles veterinary medications which she uses to treat the cats without veterinary supervision. Chris said she had a surgery scheduled for August 30 and would have all the cats moved to a new jurisdiction by then. Chris admitted the conditions were poor but stated the cats were fine.

(gg) On August 26, 2019, my executive director of WAHS, Kelly Proudfit, and I visited the Donora Church property. We were escorted by a Donora police officer. We knocked on the front door of Chris Harr's house. When she opened the door the smell of feces and ammonia was overwhelming. Chris came outside with her mother to talk to us and quickly shut the door behind her so we could not see into the house. We heard barking from inside the house. Chris agreed to show us the cats in the church. She asked us to wait until she was ready. We waited in the parking lot and her father showed up and he talked with us.

(hh) After about 20 minutes Chris finally came outside. She led us through her back yard past piles of garbage bags full of cat food cans. She took us to the front entrance of the church and unlocked large doors held shut with chains and padlocks. Inside the entry to the church were stacks and stacks of food and other garbage. She unlocked inner doors to another room. Inside this room, (See pictures at Attachment D). There were roughly 88 cats. We stopped counting at 88.

(ii) The majority of the cats were caged. Roughly 16-20 cats were running free. The water in the cages was filthy. The smell of feces and ammonia was very evident. The cages were coated in fur, rust and debris. Many of the cats I recognized from our visit in 2018. Many had diarrhea in their litter boxes, crusted eyes, and dirty fur. Along the back left wall, *the floor was covered in feces*. Additionally, we noticed many piles of regurgitated food all along the floor area. The ceiling above was clearly water damaged from the damaged roof. Chris moved all the cats to the center of the room so that they were not under the water leaking from the ceiling. (See attachment E)

Affiant Signature

Page ____ of ____

# Commonwealth of Pennsylvania

COUNTY OF washington



# AFFIDAVIT OF PROBABLE CAUSE

CONTINUATION PAGE

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

### AFFIDAVIT OF PROBABLE CAUSE CONTINUATION

(jj) Chris took Kelly Proudfit up into the main area of the church so she could see the damage to the roof. She once again told Kelly that she has approximately another 40 cats in her house and four dogs. (See attachment F)

(kk) After we left the church we went outside. Chris Harr's father was gone. She then offered to take us to her new house she purchased in Monessen 10 miles away to show us how she is moving these cats to the new location. We agreed and followed her. Upon arrival at 676 Reed Ave, Monessen PA 15062 Chris took us inside her home. When we entered there were 16 cat carriers with cats inside None of the cats had water or food. Some carriers had 2-3 kittens. We heard a dog barking upstairs. One of the cats looked familiar. Kelly asked if it was Linus, Chris answered yes and took him out of the cat carrier. He was coated in mucus and filth and appeared very sick. Chris had brought Linus to us a year prior to have neuter surgery. He was very sick and we tried to get her to surrender him in 2018 without success. Chris said he was doing great and just needed a bath. On leaving the Reed Avenue home we heard a dog barking from upstairs. Chris told us that was one of her dogs she has who she keeps upstairs. (See attachment G)

(ll) The front room of the new house was filled with piles of junk. When we asked what it was all for Chris said it was her office for her rescue and all her fundraising items.

(mm) We asked if she had moved the animals to the new location and she said they were moving them that day. We felt it was staged to look that way but nothing in the house suggested the property was ready.

(nn) Chris told Kelly on a prior phone call that the county code enforcement hadn't approved her to move into the new property yet. AORA posted a comment on Facebook that appears to confirm this statement. see attachment H)

(oo) October 27th, 2019 Chris Harr posted on her website that she still needed cages for her rescue and no one had purchased items for her rescue. She could no longer operate if she didn't get new cages and needed items. The address the wish list ships to is the 676 Reed Avenue, Monessen, PA. Additionally the address listed as the rescue address on her Facebook page is the Reed Avenue address.

(pp) October 28, 2019, Donora Code enforcement officer Kenny went to the church property to do a routine inspection. The code enforcement officer reported a strong odor of urine and feces outside the church. He also saw a gray tabby cat and an orange tabby cat roaming the property. Chris Harr was not answering the door but her car was there. He took photos of the roof that showed no improvement or efforts to fix. Later that day director Kelly Proudfit and this affiant drove by the church property. We saw a gray tabby cat run from direction of the Victorian house, stop and look at us, and then run into the bushes. We also noticed a large amount of white garbage bags piled on her front porch. Those were the same type we saw when we went in August 2019, and they were full of metal cat food tins empty. Immediately leaving the Donora property we drove to 676 Reed Avenue, Monessen, PA, 15062-1031. We did not see any activity at this property, although we observed all windows were covered and a camera points at front door. Neighbors were outside directly across the street at 699 Reed Avenue. We drove down and spoke to the owner and his daughter. She was busy getting her young child on a bus. She told us she hears cats meowing as recent as last week. She said they meow loudly from inside the house. She said that sometimes it sounds like they are fighting in the house or the sound of cats fighting. She said she heard it is a cat rescue, but has not seen the owner at all.

_Affiant Signature_

| Commonwealth of Pennsylvania |  | AFFIDAVIT OF PROBABLE CAUSE |
|---|---|---|
| COUNTY OF washington | | CONTINUATION PAGE |

| Docket Number (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

### AFFIDAVIT OF PROBABLE CAUSE CONTINUATION

V. THESE FACTS AND CIRCUMSTANCES FORM THE BASIS FOR THE AFFIANT'S CONCLUSION THAT THERE IS PROBABLE CAUSE TO BELIEVE THE ITEMS OF PROPERTY AND EVIDENCE OF THE CRIMES ARE EXPECTED TO BE UNLAWFULLY POSSESSED AND SUBJECT TO SEIZURE AT THE LOCATIONS AND PARTICULAR PLACES DESCRIBED HEREIN.

PLACES TO BE SEARCHED:

(1) 320 2ND ST., DONORA, PA 15033-1551 in WASHINGTON COUNTY, as described on the Tax Assessor's website which describes two parcels filed under the same parcel number. The first parcel is described as COMMERCIAL, Front Footage 66, Depth 100, Calculated Acres 0.176, Description: LTS 27 THRU 31 INC.MULTI BUILDINGS. The second parcel is classified as RESIDENTIAL, Front Footage 170, Depth 167, Calculated Acres 1.0478, Description: LOTS 23 THRU 26 & 32; and,

(2) 676 REED AVE., MONESSEN, PA 15062-1031 in WESTMORELAND COUNTY, including the property as described in the legal description in the deed of conveyance, Instrument: 201609050028313, to wit: UPI: 20-00680-00000, Sub: MONESSEN, Lt 234 236, Muni: MONESSEN CITY, Tax Map ID: 20-02-02-0-361.

PROPERTY TO BE SEARCHED FOR AND SEIZED

(3) With respect to the locations named above, your Affiant requests authorization to search all buildings, curtilage, outbuildings attached or unattached, surrounding areas, other structures, all vehicles or trailers used for the transport of animals, and any place where animals may be confined for evidence of unlawful cruelty to animals pursuant to 18 Pa.C.S, Ch. 55 Subch. B;

(4) All animals living or deceased, born or unborn, above or below the ground, contained or free roaming, inside or outside. All cages, crates, containers, or other items or objects that could be used for the confinement or shelter of an animal. All related animal records written or electronically kept (e.g. cell phones, tablets, computers, CD's DVD's, thumb drives) including medical treatment, drugs and other prescribed items, intake or export, sales receipts, food and water bills, proof of ownership documents, care and boarding contracts and agreements, and photographs and videos. Any and all implements for the training, breeding, care, medical treatment, control or transport of animals. All food, supplies, medications. And all documents, communications, and correspondence, however stored, related to the operations of Animal Orphans Animal Rescue and its Founder and CEO, Christie Harr.

(5) The Washington Area Humane Society (WAHS) and its lone humane police officer lack the resources, personnel, and equipment to safely carry out such a large-scale animal seizure operation involving more than 100 sick, injured, infectious, contagious, and cruelly treated animals who are expected to be seized and require provide temporary sheltering, treatment, and rehabilitation.

(6) WAHS has requested assisted from the Humane Society of the United States' Animal Rescue Team to prove law enforcement aid and assistance in executing the warrant. This operation involves the potential seizure of more than a hundred animals in need of immediate and urgent intervention. Given the scope and scale of the operation, WAHS and all participating law enforcement agencies will require personnel with training and expertise in forensic documentation of cruelty with photos and videos, animal handling, animal triage, systematic identification and impound protocols, and safe transport to the temporary shelter in climate-controlled vehicles. Agents with the Humane Society Animal Rescue Team will document conditions with photos and video.

Affiant Signature

Page ___ of ___

| Commonwealth of Pennsylvania | | AFFIDAVIT OF PROBABLE CAUSE |
|---|---|---|
| COUNTY OF  washington | | CONTINUATION PAGE |

| Docket Number: (Issuing Authority): | Police Incident Number: 300-2019 | Warrant Control Number: |
|---|---|---|

*AFFIDAVIT OF PROBABLE CAUSE CONTINUATION*

(7) Civilians participating in the seizure at the request of WAHS will operate under the supervision and direction of law enforcement to aid in executing the warrant. These civilians will include members of the Humane Society of the United States Animal Rescue and Disaster Response Team, on-site veterinarians, and WAHS personnel.

(8) The Washington Area Humane Society requests approval to use body cam and photogr

*Affiant Signature*

Page ___ of ___