**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTIE HARR, ) | Civil Action No: 2:21-cv-1560 |
| ) | |
| Plaintiff, ) | |
| vs. ) | Honorable W. Scott Hardy |
| ) | |
| WASHINGTON AREA HUMANE SOCIETY, ) | |
| HUMANE SOCIETY OF THE UNITED ) | |
| STATES, HUMANE ANIMAL RESCUE, ) | |
| ESTATE OF GLEN L. THOMSON, LAURA ) | |
| KOIVULA, SHALIMAR OLIVER, SAMUEL ) | |
| JENESKY, LEANA STORMONT, KELLY ) | |
| PROUDFIT, KEN JERICHO, STEVEN ) | |
| TOPRANI, MARVIN DAVIS, JOHN W. ) | |
| PECK, JAMES R. HOPSON, JOHN DOES 1 ) | |
| THROUGH 50, ) | |
| Defendants. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### I.    INTRODUCTION

Plaintiff, Christie Harr ("Harr"), brings this lawsuit against The Humane Society of the United States, Shalimar Oliver, Leana Stormont, and Laura Koivula (hereinafter the "HSUS Defendants"), and numerous other Defendants, claiming her constitutional rights were violated when warrants authorizing the search of properties she controlled and occupied were obtained and executed. The evidence and animals obtained pursuant to the warrants resulted in animal cruelty/neglect charges against Harr, which concluded with two neglect of animal convictions in state court. During the criminal matter, Harr raised the same challenges to the search warrants, which she now claims monetary and injunctive relief for in this civil lawsuit, and lost. As such, she is collaterally estopped from re-litigating the validity of the search warrants, and her claims against the HSUS Defendants should be dismissed. Moreover, because of her criminal

convictions, Harr's constitutional claims against the HSUS Defendants are barred by the Supreme Court's decision in *Heck v. Humphrey*. Therefore, Harr has otherwise failed to state a claim to impose liability against the HSUS Defendants, and any claims against them should be dismissed form the Complaint with prejudice.

## II.    FACTUAL BACKGROUND

At the heart of this case are two search warrants which authorized the search of Harr's properties and the seizure of her animals. One search warrant was issued by Magisterial District Judge Mark Wilson in Washington County (the "Washington County search warrant"). The other search warrant was issued by Magisterial District Judge Jason Buczak in Westmoreland County (the "Westmoreland County search warrant"). Both warrants were signed and sealed by the respective Magisterial District Judges on October 29, 2019. (The Washington County search warrant is attached hereto as **Exhibit A**, and the Westmoreland County search warrant is attached hereto as **Exhibit B**).[1]

The warrants authorized the search of the properties located at 320 2nd Street, Donora, Pennsylvania and 676 Reed Ave., Monessen, Pennsylvania and the seizure of animals thereon. (Ex. A, at pp. 10-1; Ex. B, at p. 10-1). Importantly, the search warrants expressly permitted the assistance of the HSUS given the scope and scale of the operation and also permitted the HSUS to document the operation with photographs and video. (Ex. A at pp. 10-1; Ex. B at p. 11). Following the searches, criminal charges related to animal neglect/cruelty were brought against Harr in the

---

[1] Generally, a court may not consider documents outside the pleadings when deciding a motion to dismiss. However, "a court may consider a document that is 'integral to or explicitly relied upon' in the complaint." *In re Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 492 (3d Cir. 2017) (citing *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, Harr has challenged the validity and execution of the search warrants, so the warrants are integral to her Complaint.

Court of Common Pleas for Washington County at docket numbers CR-0205-2020 and CR-1186-2020.

Harr's claims against the HSUS Defendants in this action relate to the search warrants and the searches and seizures authorized by the warrants. The averments of the Complaint are separated into eight "Parts," the following six of which mention the HSUS Defendants:

- Part I claims the HSUS Defendants, among other Defendants, (1) organized an appointment with a Magisterial District Judge to issue a search warrant in Westmoreland County; (2) caused Defendant Glen C. Thompson to sign the search warrant; (3) participated in the search of the property in Monessen, Pennsylvania; and (4) urged the Westmoreland County District Attorney to issue a letter of permission to the Washington Area Humane Society. Harr claims these actions violated her rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and that these actions constituted conversion and intrusion upon seclusion. (ECF No. 1-3, Compl. at pp. 6-7).

- Part II claims the HSUS Defendants, among other Defendants, searched and damaged Harr's property in Washington County. She claims these actions violated her rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and that these actions constituted conversion. (*Id.* at pp. 7-8).

- Part III claims the HSUS Defendants, among other Defendants, "[d]uring and/or after the searches," deleted photographs from Harr's phone. She claims these actions violated her rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and that these actions constituted conversion. (*Id.* at p. 8).

- Part IV claims the HSUS Defendants, among other Defendants, failed to provide Harr a copy of the Washington County search warrant when they executed same. She claims these actions violated her rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and that these actions constituted an invasion of privacy (intrusion upon seclusion). (*Id.* at pp. 8-9).

- Part V claims members of the HSUS went through Harr's phone and deleted photographs "as described in Part III," after she was thrown to the ground and placed in handcuffs by other Defendants. She claims these actions violated her rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and that these actions constituted assault and negligence. (*Id.* at p. 9).

- Part VIII claims HSUS, among other Defendants, left animals on Harr's property and did not permit her to rescue the animals. She claims these actions constituted intentional infliction of emotional distress. (*Id.* at pp. 10-1).

Importantly, Harr raised some of these issues in defense of the corresponding criminal charges brought against her. Specifically, she filed an Omnibus Pre-Trial Motion seeking the suppression of evidence uncovered by the searches, arguing that: Officer Thompson did not have jurisdiction to obtain the Westmoreland County search warrant, the Westmoreland County search warrant was illegally issued without approval from the Westmoreland County District Attorney, and the scope of both search warrants was exceeded. (A copy of Harr's Omnibus Pre-Trial Motion is attached hereto as **Exhibit C**).

The Court of Common Pleas of Washington County rejected Harr's arguments. (A copy of that court's April 4, 2022 Order and Opinion denying Harr's Omnibus Pre-Trial Motion is attached hereto as **Exhibit D**). It ruled that Officer Thompson did not exceed his power to obtain the Westmoreland County search warrant since the Pennsylvania State Police assisted in obtaining the warrant, and Pennsylvania State Police Corporal Teagarden served as a co-affiant on same. (**Ex. D** at pp. 3-4). The court also held that the issuance of the Westmoreland County search warrant was proper and did not need approval from the District Attorney's office because Corporal Teagarden was a co-affiant. Lastly, the court held that both search warrants provided a sufficiently particular description of the items to be seized and that the scope of the warrants was not exceeded during execution.

Ultimately, on September 9, 2022, Harr pled nolo contendere to two counts of Neglect of Animal, 18 Pa.C.S.A. § 5532(a)(1). (The Pleas of Nolo Contendere at docket nos. CR-205-2020 and CR-1186-2020 are collectively attached hereto as **Exhibit E**). As part of her plea agreement, Harr was sentenced to two years of probation. As special conditions of her probation, she is not to

possess any types of animals, and she is not to have any contact with the animals seized. (A copy of the September 9, 2022 Order of Sentence is attached hereto as **Exhibit F**).[2]

Despite the rulings by the criminal court and Harr's nolo contendere pleas, in this lawsuit, Harr is claiming she is entitled to damages and four forms of declaratory/injunctive relief: (1) a declaration that the Defendants cannot participate in any search warrant signed by a Humane Police Officer unless it is approved by the county's District Attorney; (2) a declaration that the Defendants cannot take part in any operation with purported Humane Police Officers who are not registered in the county; (3) an injunction requiring the Defendants to have certification of the status of the Humane Police Officer prior to rendering assistance with search warrants; and (3) an injunction requiring the Defendants to return all property seized from Harr. (Compl. at pp. 11-2, ECF No. 1-3). Based on the organization of the Complaint, it is not clear which forms of relief are sought against which Defendants.

### III.    LEGAL STANDARD

A complaint may be properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) where, as here, it does not allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the

---

[2] Related to the underlying criminal case, the Washington Area Humane Society ("WAHS") initiated an action against Harr pursuant to the Costs of Care of Seized Animals Act to recover costs associated with the seizure of 206 animals from Harr. This matter was initiated in the Court of Common Pleas of Washington County at docket no. 2020-2270. That court entered judgment in the amount of $1,113,765.33 in favor of WAHS on February 9, 2021. Harr appealed this judgment to the Superior Court of Pennsylvania, which affirmed the judgment on March 9, 2022. *Washington Area Humane Soc'y v. Harr*, 2022 WL 704241 (Pa.Super. 2022) (non-precedential decision) appeal denied, 283 A.3d 791 (Pa. 2022).

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

    *Twombly* and its progeny require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp*., 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id*. (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quoting *Iqbal*, 556 U.S. at 679). The Court should "construe truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id*. at 791.

    In deciding a motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick,* 502 F.3d 263, 268 (3d Cir. 2007). Courts in the Third Circuit may take judicial notice of dockets or other court opinions at the motion to dismiss stage. *See Hadesty v. Rush Twp. Police Dep't*, 2016 WL 1039063, at \*5 (M.D. Pa. Mar. 15, 2016) (citing *In re Congoleum Corp*., 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court proceedings insofar as they are relevant.")).

## IV.    LEGAL ARGUMENTS

### A. Harr's claims related to the securing and execution of the Westmoreland County search warrant and the execution of the Washington County search warrant are barred by collateral estoppel.

"The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. . . Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).  Collateral estoppel, "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Id.*

Under Pennsylvania law, the doctrine of collateral estoppel applies when the following four elements are met:

> (1) An issue decided in a prior action is identical to one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Jones v. United Parcel Serv*., 214 F.3d 402, 405 (3d Cir. 2000) (quoting *Rue v. K-Mart Corp.,* 713 A.2d 82, 84 (Pa. 1998)).   In *Allen,* the Supreme Court of the United States broadly held that collateral estoppel applies in § 1983 claims.  *Allen,* 449 U.S. at 105; *See also Ingram v. Lupas,* 353 F. App'x 674, 676 (3d Cir. 2009) ("It is well established that principles of collateral estoppel are fully applicable to civil rights actions brought under § 1983").   Thus, defendants in a § 1983 suit can raise the issue of collateral estoppel where plaintiffs attempt "to relitigate in federal court issues decided against them in state criminal proceedings." *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986) (citing *Allen*, 449 U.S. at 101).

Indeed, courts in this Circuit have held that collateral estoppel bars § 1983 Fourth Amendment claims based on the propriety of a search challenged in underlying criminal proceedings. For instance, in *Briggs v. Godby*, No. CIV.A. 08-5239, 2009 WL 4756390 (E.D. Pa. 2009), the court dismissed the plaintiff's Fourth Amendment claim, which was based on the propriety of a warrantless search of his premises, because in the underlying criminal case, the plaintiff unsuccessfully challenged the search through an omnibus pre-trial motion to suppress the evidence obtained as a result of the search. *See also Aursby v. Auxter,* No. CV 19-4849, 2021 WL 3885122 (E.D. Pa. 2021) (collateral estoppel barred § 1983 action of plaintiff who previously challenged the constitutionality of a search in the criminal matter via suppression motion)*; Ingram v. Lupas*, 353 F. App'x 674, 677 (3d Cir. 2009) ("the plaintiff in the instant action was the defendant in the criminal case; and the denial of a suppression motion followed by a conviction is a final judgment for collateral estoppel purposes . . . Therefore, the District Court correctly concluded that [plaintiff] was barred from re-litigating this issue.").

In Part I of her Complaint, Harr claims the HSUS Defendants assisted in obtaining the Westmoreland County search warrant. She claims this warrant was invalid since it was obtained by Defendant Thompson, who was not an authorized Humane Police Officer in Westmoreland County. Harr further alleges the HSUS Defendants participated in the search of Harr's property pursuant to this invalid warrant. She also claims the HSUS, after the issuance of the Westmoreland County search warrant and the resulting search, urged the Westmoreland County District Attorney to issue a letter of permission "to handle the Westmoreland County matters in Washington County."

However, the validity of the Westmoreland County search warrant was already decided by the Washington County Court of Common Pleas when it ruled on Harr's Omnibus Pre-Trial

Motion in the criminal case. The Court held that Defendant Thompson did not exceed his power to obtain the Westmoreland County search warrant because he was assisted by the Pennsylvania State Police, with Corporal Teagarden of the State Police serving as a co-affiant on the warrant. For this reason, the Court also held that the Westmoreland County search warrant satisfied the Fourth Amendment, was reasonable and proper and did not need approval from that county's District Attorney. The Court further held that the Westmoreland County search warrant was sufficiently particular in its description of the items to be seized and that the scope of the warrant was not exceeded during its execution. In other words, collateral estoppel applies to bar all claims under Part I of Harr's Complaint because (1) the issues decided in the criminal action are identical to the issues identified in this part of Harr's Complaint; (2) Harr's criminal action resulted in a final judgment on the merits;[3] (3) Harr was the Defendant in the criminal action; and (4) Harr had a full and fair opportunity to litigate the validity of the Westmoreland County search warrant in the criminal action. Because collateral estoppel applies, Harr's claims against the HSUS

---

[3] In *Aursby v. Auxter*, No. CV 19-4849, 2021 WL 3885122, at *8 (E.D. Pa. Aug. 30, 2021), the court held:

With respect to the finality of the judgment, "[i]t is generally accepted that 'denial of a suppression motion followed by a conviction is a final judgment for collateral estoppel purposes.' " *Briggs*, 2009 WL 4756390, at *6, n.5 (citation omitted). Moreover, "[t]he Third Circuit has conclusively held that collateral estoppel 'does not require the entry of a judgment, final in the sense of being appealable[,]' ... [r]ather, 'final judgment[ ] includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.' " *Id*. (citing *In re Brow*n, 951 F.2d 564, 569 (3d Cir. 1991)).

Additionally, this Honorable Court previously observed, "A nolo contendere plea 'has the same legal consequences as a plea of guilty and results in a conviction.' *United States v. Adedoyin*, 369 F.3d 337, 344 (3d Cir. 2004) (citing *Brewer v. City of Napa*, 210 F.3d 1093, 1096 (9th Cir. 2000); *Myers v. Sec'y of HHS*, 893 F.2d 840, 844 (6th Cir. 1990); *United States v. Williams*, 642 F.2d 136, 138 (5th Cir. 1981))." *Massey v. Pfeifer,* 2019 WL 3046131, *10 (W.D. Pa. May 21, 2019).

For these reasons, the criminal court's ruling on Harr's Motion challenging the validity of the Westmoreland County search warrant is sufficiently final for purposes of collateral estoppel.

Defendants under Part I of her Complaint (Fourth, Fifth, and Fourteenth Amendment claims and claims for conversion and intrusion upon seclusion) should be dismissed, with prejudice.

The claims against the HSUS Defendants under Part II of Harr's Complaint are also barred by collateral estoppel. There, Harr alleges the HSUS Defendants participated in a search of her property pursuant to the Washington County search warrant. However, as previously noted, the criminal court held that the scope of the warrant was not exceeded during execution. "This Court finds that the description of the items to be seized in the affidavit of probable cause, when construed with the search warrant, provided a sufficiently particular description. Therefore, the warrants are not illegal general warrants and the scope was not exceeded during the execution of the warrant." (**Ex. D**, at p. 6). In light of the criminal court's prior ruling that the scope of the Washington County search warrant was not exceeded during execution, Harr's claims that the HSUS Defendants' participation in the search, which was expressly authorized by the signed and sealed warrant, is barred by collateral estoppel. Similarly, Part IV (that the HSUS Defendants failed to provide a copy of the Washington County search warrant when they executed it) is likewise barred by collateral estoppel since the warrants and execution thereof were proper.

For these reasons, all claims against the HSUS Defendants related to the securing and execution of the Westmoreland County search warrant and the execution of the Washington County search warrant are barred by collateral estoppel. Therefore, all claims under Parts I, II, and IV of Harr's Complaint (violations of the Fourth, Fifth, and Fourteenth Amendments, conversion, and invasion of privacy/intrusion upon seclusion) should be dismissed, with prejudice.

### B. Harr's § 1983 claims are barred by *Heck v. Humphrey*.

In *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court of the United States held that in order to recover damages for harm caused by "actions whose unlawfulness would render a

conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87; *see also Schreane v. Marr,* 722 F. App'x 160, 165 (3d Cir. 2018). In other words, under *Heck,* a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings. *Gilles v. Davis*, 427 F.3d 197, 208–09 (3d Cir. 2005). The Third Circuit has described the requirement that a § 1983 plaintiff demonstrate her conviction or sentence invalid as *Heck's* "favorable termination rule." *Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016) (citing *Bronowicz v. Allegheny Cty*., 804 F.3d 338, 344–45 (3d Cir. 2015)). In *Curry*, the Third Circuit also recognized that, under Pennsylvania law, a nolo contendere plea "must be treated the same as a conviction under *Heck*." *Id.* (quoting *Havens v. Johnson*, 783 F.3d 776, 784 (10th Cir. 2015) ("[T]he Heck doctrine derives from the existence of a valid conviction, not the mechanism by which the conviction was obtained (such as admissions by the defendant), so it is irrelevant that Havens entered an Alford plea [maintaining his innocence].")).

District Courts in this Circuit and other Circuits have dismissed similar § 1983 claims pursuant to *Heck*. *See, e.g., Blank v. Pennsylvania Soc. for the Prevention of Cruelty to Animals,* No. CIV.A. 10-3222, 2010 WL 3927590, at *3 (E.D. Pa. Oct. 5, 2010) ("However, here the Commonwealth's entire case hinged on the evidence of animal cruelty obtained through the July 17, 2008 raid. Without that search and seizure, Blank could not have been convicted. Were it determined that the raid and seizure of his person were unconstitutional, we would be finding that no valid evidence of his guilt existed, and we would necessarily deem his convictions to be invalid.

11

As such, Counts 1, 2, 3, and 5 mount an impermissible collateral attack on his conviction and must be dismissed under *Heck*.") aff'd sub nom., 434 F. App'x 147 (3d Cir. 2011); *Van Dusen v. City of Oakland,* No. 13-CV-05023-HSG, 2015 WL 1800587, at *3 (N.D. Cal. Apr. 20, 2015) ("The Court finds that all of the Section 1983 claims alleged in the SAC constitute impermissible collateral attacks on Plaintiff's conviction for animal cruelty. It is telling that much of the substance of Plaintiff's Opposition is devoted to arguing that the October 2011 seizure of her animals, and the investigation leading up to it, were illegal—exactly what *Heck* dictates may not be relitigated in federal court") aff'd, 678 F. App'x 582 (9th Cir. 2017); *Bohn v. Humane Soc*., No. S-06-1051, 2006 WL 3518248, at *1 (E.D. Cal. Dec. 6, 2006) (dismissing the Plaintiff's claims pursuant to *Heck,* reasoning, "Plaintiff is currently being prosecuted for illegal cockfighting; these charges stem from execution of a search warrant and subsequent arrest of plaintiff in May 2005. Plaintiff's present claims arise out of the same operative facts and success in the present litigation would call into doubt the criminal prosecution.").

Here, Harr's nolo contendere pleas to neglect of animal charges are treated the same as a conviction for purposes of *Heck.* In this lawsuit, pursuant to § 1983, she is claiming damages for actions of the HSUS Defendants when assisting in obtaining and executing a search warrant which she claims was unconstitutional. While the Supreme Court in *Heck* recognized that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial" because of doctrines such as independent source, inevitable discovery, and harmless error, here, Harr's previous challenges to the search warrants and the evidence seized thereby in the criminal case failed. As such, her § 1983 claims against the HSUS Defendants are impermissible collateral attacks on her neglect of animal convictions. These convictions have not been reversed or invalidated. Accordingly, *Heck*

*v. Humphrey* bars all of Harr's § 1983 claims against the HSUS Defendants, which are identified in Parts I, II, III, IV, and possibly V of her Complaint.

## C. Harr's § 1983 claims against the HSUS Defendants should be dismissed because she has failed to allege they are state actors.

To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and that the deprivation was committed by a "person acting under color of state law." *Harvey v. Plains Tp. Police Dept.,* 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)). "Under color" of state law is treated the same as the state action requirement. *U.S. v. Price,* 383 U.S. 787, 794 (1966

While there is no "simple line" between state and private actors, the Third Circuit has explained that "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach v. Hose,* 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir.2005)). However, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *American Mfs. Ins. Co. v. Sullivan,* 526 U.S. 40, 52 (1999). The Third Circuit has developed three tests derived from Supreme Court Jurisprudence to determine whether a state actor exists:

(1) The Public Function Test: whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state;

(2) The Close Nexus Test: whether the private party has acted with the help of or in concert with state officials;

(3) The Symbiotic Relationship Test; whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach, 589 F.3d at 646.* Another test, commonly referred to as the "joint action test," asks whether a private entity was a willful participant in joint action with the state. *Madero v. Luffey,* 439 F.Supp.3d 493, 514 (W.D. Pa. 2020). [4]

Here, it appears that Harr is claiming that the HSUS Defendants' alleged assistance in obtaining and executing the search warrants amounted to state action, but the Complaint fails to state a viable theory of state action under the four tests. The Complaint allegations do not satisfy the Public Function Test because the obtaining and execution of a search warrant is not a power that is exclusively the prerogative of the state. Indeed, 18 Pa.C.S.A. § 5553 states that a search warrant may be issued "to a police officer or an agent of a society or association for the prevention of cruelty to animals duly incorporated under the laws of this Commonwealth a search warrant authorizing the search." *See also* Pa.R.Crim.P. No. 103 (defining an "affiant" who may apply for a search warrant as "any responsible person capable of taking an oath who signs, swears to, affirms, or, when permitted by these rules, verifies a complaint and appreciates the nature and quality of that person's act.").

Harr has also failed to allege the HSUS Defendants' actions satisfy the Close Nexus Test. Whether a "close nexus" exists depends on whether the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 52, (1999). Action taken by private entities "with the mere approval or acquiescence of the State" is not state action. *Id.* The key issue under this framework is "whether the State participated in the challenged conduct itself by 'putting its weight' behind the challenged activity." *Fitzgerald v. Mountain*

---

[4] An appeal of this Court's ruling in *Madero v. Luffey* is pending before the United States Court of Appeals for the Third Circuit at docket no. 22-1705.

14

*Laurel Racing, Inc.*, 607 F.2d 589, 597 (3d Cir. 1979) (quoting *Jackson v. Metropolitan Edison Co*., 419 U.S. 345 (1974)). The *Madero* court held that a non-profit animal shelter was not a state actor under the Close Nexus Test because there were no averments to support the conclusion that the shelter's treatment of the animals was dictated or controlled by the city. *Madero,* 439 F.Supp.3d at 515. When reviewing the allegations of Harr's Complaint, coupled with the language of the search warrants, it is clear that the state was not "putting its weight" behind the HSUS Defendants in relation to the search warrants. The affidavits of probable cause attached to the search warrants expressly requested assistance from the HSUS in the WAHS's execution of the warrant given the "scope and scale" of the operation. While the warrants note that civilian participation in the seizure is to be done under the "supervision and direction of law enforcement," this is not sufficient to convert the conduct of the HSUS Defendants to state action under the Close Nexus Test.

The HSUS Defendants are likewise not state actors under the Symbiotic Relationship Test, which requires a close association of mutual benefit between the state and the private actor. *Benn v. Universal Health Sys., Inc.,* 371 F.3d 165, 173 (3d Cir. 2004); *Burton v. Wilmington Parking Authority,* 365 U.S. 717 (1961) (private lessee who leased space for a restaurant from a state parking authority in a publicly owned building was a state actor because the state "had so insinuated itself into a position of interdependence with the restaurant that it was a joint participate in the enterprise."). Here, the state had not so insinuated itself in a position of interdependence with the HSUS Defendants. Merely because these Defendants allegedly worked with the state in securing and executing search warrants does not create the required symbiotic relationship.

Lastly, the HSUS Defendants are not state actors under the Joint Action Test, which involves an inquiry into whether (1) the private entity has a "prearranged plan" with the police officers, and (2) whether under the plan, the police officers will "substitute their [own] judgment"

with that of the private entity's. *Madero,* 439 F. Supp. 3d at 515 (quoting *Cruz v. Donnelly*, 727 F.2d 79, 81-82 (3d Cir. 1984). Harr has not alleged that the HSUS Defendants directed the state as to how to secure and execute the search warrants, so there is no state action under this test.

Harr has failed to allege that the HSUS Defendants were state actors, so her § 1983 claims against them fail. Notably, other district courts have held that state action was not present under similar circumstances. *See Hughes v. Meadows, No. 1*:17-CV-28-KS-TFM, 2017 WL 3083257, at \*3 (M.D. Ala. July 19, 2017) (noting that the HSUS was not a state actor, citing the lack of sufficient factual averments in the complaint and recognizing, "Assisting police officers does not automatically transform a person or entity into a state actor. . . [T]he Humane Society's actions assisting the Officer Defendants in the execution of a search warrant are not sufficient to make the Humane Society a state actor through the public function test."); *Shinaberry v. Town of Murfreesboro, N.C.*, No. 2:17-CV-7-D, 2018 WL 1801417, at \*5 (E.D.N.C. Apr. 16, 2018) (holding that the HSUS, which assisted in the execution of a search warrant to seize 50 dogs, "is not a state actor and cannot be liable under section 1983."). Because Harr has failed to allege that the conduct of the HSUS Defendants amounted to state action, her § 1983 claims against these Defendants fail and should be dismissed, with prejudice.

### D. Harr has otherwise failed to state constitutional claims against the HSUS Defendants.

In Parts I, II, III, IV, V, and VIII of her Complaint, Harr claims that the conduct of the HSUS Defendants as described in each respective Part violated her rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution. As more fully explained below, she has failed to state any constitutional claims against the HSUS Defendants.

## 1. Harr has failed to state a Fourth Amendment claim against the HSUS Defendants.

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

While Harr has not specifically identified the Fourth Amendment right(s) she claims the HSUS Defendants violated, it appears that she is claiming violation of her right to not be subject to unreasonable searches and seizures.

As the text indicates, the Fourth Amendment only prohibits "unreasonable" searches. *U.S. v. Katzin*, 769 F.3d, 163, 169 (3d Cir. 2014); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995) ("[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.'"). Similarly, a "seizure" must be unreasonable to impose § 1983 liability. *tBrower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989).

A "search" within the meaning of the Fourth Amendment occurs when the government obtains information by physically intruding on "persons, houses, papers, and effects," or when government officers violate a person's reasonable expectation of privacy. *U.S. v. Jones*, 565 U.S. 400, 406, n. 3, 411, n. 8. (2012). A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty., Ill*., 506 U.S. 56, 61 (1992) (quoting *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984)).

Here, the Complaint fails to allege anything unreasonable about the alleged searches and seizures completed by at the direction and under the supervision of state and local law enforcement and with the assistance of the HSUS Defendants and others. Instead, as more fully explained

above, all searches and seizures were authorized by two signed and sealed search warrants issued to/by the proper authorities, and the validity of the search warrants was already confirmed by the criminal court when it ruled upon Harr's Omnibus Pre-Trial Motion. Indeed, the very property Harr claims was seized in violation of her Fifth Amendment rights is subject to the terms of her criminal sentencing, which prohibits her from having any contact with the animals seized for two years. For these reasons, her Fourth Amendment claims against the HSUS Defendants should be dismissed, with prejudice.

Further, in Part IV of her Complaint, Harr claims the HSUS Defendants violated her rights when they failed to provide a copy of the Washington County search warrant when it was executed. However, the Supreme Court has observed that the Fourth Amendment does not require "the executing officer [to] present the property owner with a copy of the warrant before conducting his search." *U.S. v. Wright*, 777 F.3d 635, 641 (3d Cir. 2015) (quoting *U.S. v. Grubbs*, 547 U.S. 90, 98–99 (2006)). And, pursuant to *Wright,* this Honorable Court granted summary judgment in favor of the defendants on a Fourth Amendment claim which was based on the failure to serve a search warrant on the plaintiff prior to execution of the search warrant. *See Karash v. Machacek,* No. CV 15-28 ERIE, 2017 WL 4269511, at *14 (W.D. Pa. Sept. 26, 2017).

Moreover, even if this Court were to find that Harr should have been given a copy of the warrant, Harr has failed to proffer any facts which establish that the warrant was issued to the HSUS Defendants. Indeed, it was not. Therefore, even if such a duty existed, certainly it could not exist on the part of the HSUS Defendants as the warrant was not issued to them.

Thus, to the extent Harr's Fourth Amendment claims relate to not receiving a copy of the Washington County search warrant, these claims fail.

## 2. Harr has failed to state a Fifth Amendment claim against the HSUS Defendants.

The Fifth Amendment to the United States Constitution states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Again, Harr has not identified which Fifth Amendment right she claims was violated, but it appears that she is claiming her private property was taken for public use without just compensation.[5] The Fifth Amendment Takings Clause prohibits the government from "taking private property for public use without providing just compensation." *Newark Cab Ass'n v. City of Newark,* 901 F.3d 146, 151 (3d Cir. 2018) (quoting *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012)). To succeed on a takings claim, "the plaintiff[s] must first show that a legally cognizable property interest is affected by the Government's action in question." *Id.* (quoting *Prometheus Radio Project v. FCC*, 373 F.3d 372, 428 (3d Cir. 2004)).

Harr's Fifth Amendment claims fail because any alleged takings were authorized by valid search warrants. And, the property taken is bound by the terms of Harr's nolo contendere plea agreement. She has no legally cognizable property interest in the animals taken since she has agreed that she cannot make contact with these animals for two years. For these reasons, her Fifth Amendment claims against the HSUS Defendants should be dismissed, with prejudice.

---

[5] If Harr is claiming that the HSUS Defendants violated her Fifth Amendment due process rights, these claims fail because the Fifth Amendment Due Process Clause applies only to actions of the federal government. *B & G Const. Co. v. Dir., Off. of Workers' Comp. Programs*, 662 F.3d 233, n. 14 (3d Cir. 2011).

### 3. Harr has failed to state a Fourteenth Amendment claim against the HSUS Defendants.

The Fourteenth Amendment to the United States Constitution contains five sections. The first section states:

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

It is believed that Harr is claiming her Fourteenth Amendment procedural due process rights were violated, though this is not specifically alleged her Complaint. To state a procedural due process claim, a plaintiff must allege that (1) she was deprived of an individual interest encompassed within the Fourteenth Amendment's protection of life, liberty, and property, and (2) that the procedures available to her did not provide due process of law. *Hill v. Borough of Kutztown,* 455 F.3d 225, 233-34 (3d Cir. 2006). "It is axiomatic that a cognizable . . . property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Att'y Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006); *See also Dunmore Sch. Dist. v. Pennsylvania Interscholastic Athletic Ass'n*, 505 F. Supp. 3d 447, 460 (M.D. Pa. 2020) (noting that, in a procedural due process claim, the threshold question is whether the plaintiff has a protected property interest).

Harr's procedural due process claim fails because she does not have a protected property interest, as she has agreed to no contact with the animals for two years. Additionally, to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. *Willard v. Pa. SPCA,* 525 F. App'x 217 (3d Cir. 2013) (internal quotations omitted). In *Willard,* the Court held that because the plaintiff did not avail herself to the Pennsylvania Rules of Criminal

Procedure or bring a tort claim for return of the dogs for conversion—both constitutionally

adequate procedures to rectify an alleged legal error—plaintiff was unable to state a procedural

due process claim. *Willard,* 525 F. App'x at 221. Harr has not alleged that she availed herself of

the remedy provided by Rule 588 of the Pennsylvania Rules of Criminal Procedure to obtain the

property she claims was unlawfully seized.[6]   For these reasons, her Fourteenth Amendment claims

against the HSUS Defendants should be dismissed, with prejudice.

### 4. Harr has filed to state claims for Excessive Force against the HSUS Defendants.

Part V of the Complaint, which is titled "EXCESSIVE FORCE," alleges that members of

the HSUS went through Harr's phone and deleted photographs "as described in Part III," after she

was thrown to the ground and placed in handcuffs by other Defendants.  To the extent Harr is

claiming the HSUS Defendants used excessive force, no physical contact with Ms. Harr's person

has been alleged as to the HSUS Defendants, so any constitutional claims against the HSUS

Defendants under Part V should be dismissed, with prejudice.

### E. Harr has otherwise failed to state Pennsylvania tort claims against the HSUS Defendants.

It appears that Harr is attempting to assert several state tort claims against the HSUS

Defendants, outlined as follows: In Parts I, II, and III, of her Complaint, Harr claims conversion,

in Parts I and IV, she claims invasion of privacy – intrusion upon seclusion, in Part V, she claims

assault, in Part V, she claims negligence, and in Part VIII, she claims intentional infliction of

emotional distress.

---

[6] Pennsylvania Rule of Criminal Procedure 588 states: "[a] person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof." Such a motion is to be filed in the court of common pleas for the judicial district where the property was seized.

**1. Harr has failed to state a claim for conversion against the HSUS Defendants.**

Conversion is a tort by which the defendant deprives the plaintiff of her right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification. *Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 581 (Pa.Super. 2003). This Honorable Court has held that a humane rescue organization which assisted police with the collection of cats pursuant to a warrant did not act without lawful justification and therefore could not be liable for conversion. *See Madero*, 439 F. Supp. 3d at 517.

Here, Harr's conversion claims against the HSUS Defendants fail because any deprivation of property was done with lawful justification (the search warrants). Indeed, Harr has also consented to the deprivation of the seized animals pursuant to her nolo contendere plea agreement. Thus, her conversion claims against the HSUS Defendants should be dismissed, with prejudice.

**2. Harr has failed to state a claim for invasion of privacy – intrusion upon seclusion against the HSUS Defendants.**

Under Pennsylvania law, an action for invasion of privacy is comprised of four analytically distinct torts, including intrusion upon seclusion. *Marks v. Bell Tel. Co. of Pennsylvania*, 331 A.2d 424, 430 (Pa. 1975). To maintain a claim for intrusion upon seclusion, a plaintiff must show that the intrusion was (1) intentional; (2) upon the solitude or seclusion of the plaintiff, or her private affairs or concerns; (3) substantial; and (4) highly offensive. *Klein v. Com. Energy, Inc*., 256 F. Supp. 3d 563, 593 (W.D. Pa. 2017) (citations and quotations omitted). Harr's intrusion upon seclusion claims against the HSUS Defendants fail because of the valid execution of the search warrants. Therefore, these claims should be dismissed, with prejudice.

### 3. Harr has failed to state claims for assault and negligence against the HSUS Defendants.

In Part V of her Complaint, Harr claims that at least four John Doe police officer Defendants (John Does 31 through 34 and possibly another John Doe police officer) made physical contact with her in the form of elbowing her, placing her in a headlock, throwing her to the ground, hoisting her to her feet, and walking her to a police car. One paragraph in this Part states that during this "assault," Harr's phone flew from her hand and was given to "Glen Thompson, the Washington Area Humane Society, the Humane Society of the United States, and Kelly Proudfit who went through it and deleted photographs as described in Part III above." Part V ends with the conclusory allegation that "[s]aid actions . . . constitute assault and negligence." To the extent Harr is claiming that HSUS is liable for assault and/or negligence for the actions described in Part V, these claims should be dismissed with prejudice since there are no allegations against the HSUS Defendants to support these claims.

### 4. Harr has failed to state a claim for intentional infliction of emotional distress against the HSUS Defendants.

The elements of intentional infliction of emotional distress are:

(1) a person who by extreme and outrageous conduct
(2) intentionally or recklessly causes
(3) severe emotional distress to another.

*Carson v. City of Philadelphia,* 133 Pa.Cmwlth. 74, 574 A.2d 1184 (1990); *Manley v. Fitzgerald,* 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). Additionally, "a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Reedy v. Evanson,* 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa.Super. 2005)).

Here, in Part VIII of her Complaint, Harr claims the HSUS and certain John Doe Defendants who are identified as agents and employees of HSUS left live animals in Harr's property and assured Harr that she could not rescue the animals. While Harr blanketly asserts that this conduct was deliberate, outrageous, and caused emotional distress, she fails to allege that she suffered some time physical harm as a result of the conduct alleged. As such, her intentional infliction of emotional distress claims against the HSUS Defendants should be dismissed, with prejudice.

**F. If this Court dismisses the § 1983 claims against the HSUS Defendants, it should refuse to exercise supplemental jurisdiction over the state tort claims against the HSUS Defendants.**

Because Harr's § 1983 claims against the HSUS should be dismissed for the reasons set forth above, even if the Court determines that she has properly stated state tort claims against the HSUS Defendants, this Court should refuse to exercise supplemental jurisdiction over these claims. A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "[I]f it appears that the federal claim is subject to dismissal . . . then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc*., 540 F.2d 187, 196 (3d Cir. 1976); *See also Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 519 (E.D. Pa. 2019). Here, because there is no complete diversity, and because this Court should dismiss all claims against the HSUS Defendants which would give rise to federal question jurisdiction, this Court should decline to exercise supplemental jurisdiction over Harr's claims for conversion, invasion of privacy/intrusion upon seclusion, intentional infliction of emotional distress, and (possibly) assault and negligence. Thus, pursuant to this Court's discretion to refuse

to exercise supplemental jurisdiction over state tort claims, this Court should dismiss all state tort claims against the HSUS Defendants, with prejudice

**G. If any of Harr's claims against the HSUS Defendants are not dismissed for the aforementioned reasons, any remaining claims should be dismissed because her Complaint is an impermissible "shotgun pleading."**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading that states a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Complaints that violate this rule are referred to as "shotgun pleadings." *Bartol v. Barrowclough,* 251 F.Supp.3d 855, 859 (E.D. Pa. 2017) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)). This tactic has been consistently criticized by the Third Circuit. *Id.* (discussing "the all too common shotgun pleading approach.") (quoting *Hynson v. City of Chester Legal Dep't,* 864 F.2d 1026, 1031 n. 13 (3d Cir. 1988)).

The United States Court of Appeals for the Eleventh Circuit has developed "the bulk" of case law in this area, which Courts in the Third Circuit have found instructive. *Id.* at 859 & n. 3. There are four different types of shotgun pleadings:

> 1) A complaint containing multiple counts where each count adopts the allegations of all preceding counts";
>
> 2) A complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action";
>
> 3) A complaint that does "not separate into a different count each cause of action or claim for relief"; and
>
> 4) A complaint that "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Bartol,* 251 F. Supp. 3d at 859. (citations omitted). The "unifying characteristic" of these four types of shotgun pleadings "is that they fail to one degree or another, and in one way or another,

to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (quoting *Weiland,* 792 F.3d at 1323). In fact, the United States District Court for the District of Columbia granted a Motion to Dismiss filed by the HSUS in a similar case on the grounds that the plaintiff's complaint was a "scattershot pleading." *Fay v. Humane Soc'y of United States*, No. 20-CV-1893, 2021 WL 184396, at \*7 (D.D.C. Jan. 19, 2021) ("The Court finds that none of the three counts in plaintiff's Amended Complaint states a claim against the Humane Society or Ms. Stormont. First, Count I neither provides a 'short and plain statement' of the claims it brings, Fed. R. Civ. P. 8(a)(2), nor identifies which factual allegations in plaintiff's sixteen-page narrative of events amount to the various legal theories it invokes.").

Here, Harr's Complaint does not give the HSUS Defendants adequate notice of the claims against them. Instead of identifying separate counts, the Complaint is separated into eight "Parts," and each Part contains a concluding paragraph stating that the allegations described violated Harr's rights protected by the United States Constitution and constituted a state tort/torts. These concluding paragraphs do not specify which Defendants are responsible for the acts or omissions, or which of the Defendants each claim is brought against. Moreover, the grounds in support of each claim are not clear based on the Complaint. For these reasons, to the extent Harr has stated claims against the HSUS Defendants that survive the reasons for dismissal set forth above, any remaining claims should be dismissed, and Harr should be required to replead these claims with the requisite specificity.

## V. CONCLUSION

Based on the above, Defendants, The Humane Society of the United States, Shalimar Oliver, Leanna Stormont, and Laura Koivula, respectfully request this Court dismiss all claims against them from the Complaint, with prejudice.

Respectfully Submitted,

ROBB LEONARD MULVIHILL LLP

Dated:  January 17, 2023                    */s/ Bruce E. Rende*_____
Dennis St. J. Mulvihill, Esquire
PA ID #16411
Bruce E. Rende, Esquire
PA ID #52714
William C. Robinson, III, Esquire
PA ID #327457
BNY Mellon Center
500 Grant Street, Suite 2300
Pittsburgh, PA 15219
P: (412) 281-5431
F: (412) 281-3711
Email: dmulvihill@rlmlawfirm.com
Email: brende@rlmlawfirm.com
Email: wrobinson@rlmlawfirm.com