# IN THE COURT OF COMMON PLEAS
# WASHINGTON COUNTY, PENNSYLVANIA
# CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA, )
)
vs. ) No. 01186 of 2020,
) and 00205 of 2020
CHRISTIE DEE HARR, )
)
Defendant. )

TYPE OF PLEADING:

**DEFENDANT'S OMNIBUS PRETRIAL MOTION WITH MOTION FOR LEAVE TO FILE; AND, BRIEF IN SUPPORT**

FILED ON BEHALF OF:

Defendant, Christie Dee Harr.

COUNSEL OF RECORD:

J. Allen Roth, Esq
805 S. Alexandria Street
Latrobe, PA 15650
(724) 537-0939
lawmatters@yahoo.com

FILED
2021 AUG -5 PM 2:19
CLERK OF COURTS
WASHINGTON CO PA

1

Exhibit C

IN THE COURT OF COMMON PLEAS
WASHINGTON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | ) |
| | ) |
| vs. | ) No. 01186 of 2020, |
| | ) and 0000205 of 2020 |
| CHRISTIE DEE HARR, | ) |
| | ) |
| Defendant. | ) |

2021 AUG -5 PH 2:19
CLERK OF COURTS
WASHINGTON CO PA
FILED

## DEFENDANT'S OMNIBUS PRETRIAL MOTION WITH MOTION FOR LEAVE TO FILE; AND, BRIEF IN SUPPORT

Defendant Christie Dee Harr ("Harr"), by and through her undersigned counsel, hereby files this, her Omnibus Pretrial Motion with Motion for Leave to File; and Brief in Support:

I. **Motion**

1. Pursuant to Pennsylvania Rule of Criminal Procedure 579, Harr requests leave to file this Omnibus Pretrial Motion out of time on the basis that the information contained in this motion was not available at the time of arraignment. In fact, Harr had to resort to *Right to Know* laws to seek the data and still cannot conclusively determine the facts. As to the discovery issues, such as the video, only recently did the Commonwealth admit to the existence of video taken by the participants in the search, but will not provide the full, original footage.

2. Because it does not appear that the Washington Area Humane Society Humane

2

Police Officer was authorized pursuant to 22 P.S. 3703 and 3708(a) to operate in Westmoreland County, and due to the incorrect representation to the Westmoreland County District Judge that the Humane Police Offcer maintained statewide jurisdiction, the Information must be quashed or all evidence gathered as a result of the Westmoreland County investigation and search warrants must be excluded, along with fruits thereof.

3. Because the Westmoreland County search warrants were not approved by the Westmoreland County District Attorney as required by 22 P.S. 3710, the evidence gathered from the Westmoreland County warrants must be excluded and all charges stemming from that County quashed or dismissed.

4. Because the search warrants did not state what items were to be seized and became general warrants, and considering the Washington Area Humane Society grossly exceeded the scope of any animal rights investigation, all evidence must be suppressed. U.S.C.A. 4th and 14th Amendments.

5. Because this Court lacks venue over the Westmoreland County charges, all counts stemming from that jurisdiction must be transferred to the Court of Common Pleas of Westmoreland County, Pennsylvania.

6. Because the Commonwealth will only provide evidence in their possession, and will not require the Humane Police Officer's sponsoring organization, the Washington Area Humane Society and the Humane Society of the United States, to provide *Brady* and discovery material, an appropriate discovery Order must be entered that compels both the Commonwealth and the private police organizations to provide the discovery materials including video evidence, inspection of electronic devices, lists of participants in the search, among other things.

7. The Commonwealth must return all property not authorized by the warrants or which will not be used as evidence.

## II. Brief

Presently before this Court is a case of overreach by a private organization, the Washington Area Humane Society (WAHS), which acted as a police agency and the national Humane Society of the United States that maintains no lawful authority in Pennsylvania to act as police.

This case also presents a strange procedure posture where most of the alleged conduct occurred in Westmoreland County, not Washington County, and involves search warrants obtained without authority of the District Attorney in that county.

### a. Leave must be granted to file this motion out of time.

Most of the information contained in this motion was learned after the time to file this Omnibus Motion expired. In fact, Harr has had to rely on *Right to Know* requests to gain the information since she only received circles from her inquiries as to the authority of the Washington Area Humane Society and their Private Humane Police Officer, Glen Thomson.

Moreover, Mr. Thomson passed away and there was no way to easily obtain the information because of this. Specifically, the Pennsylvania Department of Agriculture removed references to him and referred to Westmoreland County officials.

The search warrants from Westmoreland County have only recently been provided to counsel. The evidence and discovery issues contained herein have continually been negotiated.

4

If leave is denied, Harr will have been denied effective representation in contravention of her right to due process pursuant to both the federal and Pennsylvania constitution.

    b. **Because Glen Thomson and the Washington Area Humane Society Appears to Have Committed Criminal Conduct by Conducting Police Activity in Westmoreland County without legal authority, the information must be quashed or dismissed; in the alternative, the evidence gathered from Westmoreland County Excluded and Suppressed.**

Pennsylvania allows private Humane Society Police Officers subject to strict limitations. 22 P.S. 3701, *et seq*. Violations and deviating from the procedures is not merely procedural, but constitutes a crime-- a third degree misdemeanor. 22 P.S. 3709.

"It shall be unlawful for any individual to hold himself as a humane society police officer unless the individual has obtained an appointment pursuant to this chapter." 22 P.S. 3703. Authority is limited to the county of appointment. 22 P.S. 3708(a). The individual "has no power or authority to exercise the powers... in any other county whose court of common pleas has not issued an appointment." *Id*.

In this case, Washington Area Humane Society Police Officer Glen Thomson went to a magisterial district judge in Apollo, Pennsylvania and represented himself as a humane Police Officer appointed by the Commonwealth. *See* Exhibit A (search warrant). However, the Commonwealth does not appoint humane Police officers. Rather, the county court of common pleas does. Officer Thomson's appointment was from Washington County only, not Westmoreland. Therefore, he committed a crime by holding himself out to be an officer allowed to conduct investigations in Westmoreland County. There exists no evidence that Officer Thomson could operate in Westmoreland County and pursuant to 22 P.S. 3708(a) he maintained no authority.

Yet most of the evidence and the charges in these two cases originate from

5

Westmoreland County. The charges are inextricably intertwined and linked. Information from the Westmoreland County matters are contained in the Washington County search warrants as well. Therefore, the Information must be quashed in its entirety. Alternatively, the search warrants must be quashed and the evidence suppressed.

Alternatively, this Court must dismiss all counts of the Information relating to Westmoreland County or where evidence was gathered from Westmoreland County.

### c. The Westmoreland County Search Warrant Failed to Have the Required Approval. 22 P.S. 3710.

22 P.S. 3710 requires that any search warrant "filed in connection with alleged violations of cruelty to animals laws must have the approval of the district attorney in the county of the alleged offense prior to filing." In this case, Washington Area Humane Society Police Officer Glen Thomson had no authority in Westmoreland County. Regardless, he did not seek approval of the Westmoreland County District Attorney as required by 22 P.S. 3710. The search warrant bears no claim that the district attorney approved it. *See* Exhibit A. Indeed, his failing to obtain approval of the Westmoreland County District Attorney constitutes a crime. 22 P.S. 3709.

For this reason, the search warrant from Apollo, Westmoreland County, Pennsylvania, must be quashed and all evidence gathered pursuant to that warrant quashed.

### d. The Washington Area Humane Society Obtained General Warrants

In this case, the Private Humane Police Officer received search warrants from magisterial district justices in both Westmoreland County and Washington County. Where the warrants were to list the precise evidence to be seized, the Humane Police Officer described the premises to be searched. When the search occurred, the law enforcement

6

officers seized lawfully possessed weapons, gear, personal medication belonging to Harr, and items not authorized by the warrant. General warrants are prohibited by the Fourth Amendment. In order to prevent the police from conducting a general, exploratory rummaging, a warrant must give a particular description of the things to be seized. *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976).

Because the judge signing the warrants never listed the items to be seized, only the locations, the warrants were improper general warrants. Because the law enforcement officials and private humane police officers seized medicine, medical supplies, lawfully possessed weapons, armor, tools, and other items not related to animal cruelty, all of the warrants must be quashed and the evidence suppressed.

### e. This Court lacks venue over the Westmoreland County charges

Clearly, all of the alleged animal cruelty charges that are based in Westmoreland County did not occur in Washington County. Therefore, this Court lacks venue and those charges must be bifurcated and transferred to the Westmoreland County Court of Common Pleas. This is especially so where an unlawful warrant was obtained in Westmoreland County, a place where Glen Thomson maintained no jurisdiction to conduct an investigation or represent himself to be a humane police officer.

In *Commonwealth v. Gross*, 627 Pa. 383, 101 A3d 28 (2014), the Supreme Court of Pennsylvania explained that the proper remedy where a criminal charge was filed in the wrong county was to transfer the charges to the correct county. In this case, Harr does not consent to being brought to trial in Washington County for matters that occurred in Westmoreland County where Humane Police Officer Glen Thomson maintained no jurisdiction or authority.

7

f. Because the Commonwealth will only provide evidence in their possession, and will not require the Humane Police Officer's sponsoring organization, the Washington Area Humane Society and the Humane Society of the United States, to provide *Brady* and discovery material, an appropriate discovery Order must be entered that compels both the Commonwealth and the private police organizations to provide the discovery materials.

During the searches in Westmoreland and in Washington County, instead of simply using a trained officer certified in Pennsylvania, they arrived with a battery of civilians and unlicensed agents from the Humane Society of the United States, a Maryland corporation. The WAHS and HSUS used untrained civilians who are not certified police to rummage through property under Harr's control and to alter, use, modify, and damage electronic items with evidentiary value. The Commonwealth never supervised the WAHS, never demand a chain of custody of the evidence, allowed the WAHS to give the seized animals away to third parties outside the jurisdiction of this Commonwealth, and never reviewed the records, communications, and files of the WAHS and HSUS to look for exculpatory evidence and statements. Instead, they have allowed the WAHS to spearhead the prosecution and required no accountability from the agencies.

### 1. The Commonwealth and WAHS are Concealing All Raw Video of the Searches and Condition of the Animals

The Commonwealth repeatedly represented to Harr and counsel that no video evidence existed. When Harr's counsel advised the Commonwealth that the United States Humane Society published a heavily edited and redacted video of the search on Youtube.com, the Commonwealth responded by providing counsel with the same exact link to the Youtube Video that counsel provided to the Commonwealth.

Counsel provided the Commonwealth with the link to show that videos were taken. The published video was heavily edited, contained the addition of logos, voiceovers, and commentary. Certainly, since this video exists, raw footage exists as well. The Commonwealth is obligated to provide it. The video evidence in its totality, without modifications or edits, shows the conditions of the animals and is exculpatory.

The Commonwealth (WAHS) appears to be attempting to evade its discovery obligations by either refusing to produce clearly discoverable information, or by declining to create records for the purpose of avoiding its obligation to produce the same, or some combination of the two. The Commonwealth, thus far, has failed to produce numerous categories of discoverable information in spite of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and Pennsylvania Rule of Criminal Procedure 573, denying Harr her right to due process under the United States and Pennsylvania constitutions. P.R.Cr.P. 573 does not alleviate the Commonwealth's duties under *Brady* or *Giglio*. *Commonwealth v. Maldonodo*, 173 A3d 769, 774 (Pa. Super. 2017).

After making several informal requests for such documents and information, counsel conferred with the Commonwealth as required by Pennsylvania Rule of Criminal Procedure 573(A) in an effort to obtain the discovery requested herein without Court intervention. Counsel sent multiple emails as well. Those efforts, however, have proven unsuccessful. Accordingly, Ms. Harr respectfully requests that this Court order the Commonwealth to produce the discovery discussed herein pursuant to Pennsylvania Rule of Criminal Procedure 573(E).

As explained in *Commonwealth v. Johnson*, 174 A.3d 1050, 1056 (Pa. 2017), "[t]he Commonwealth violates Brady by failing to disclose exculpatory evidence as well as evidence that may be used to impeach a prosecution witness" and finding that the accused was entitled

to a new trial because the Commonwealth had suppressed police reports impeaching the credibility of the witnesses. Here, the police are the WAHS and HSUS, private organizations that still maintain a duty to disclose the exculpatory information, emails, etc., as they acted under color of law. Where witness credibility is of paramount importance, the prosecution reasonably should know that the issue of apparent truthfulness could determine the outcome.... Because this is so, when reliability of a witness may be determinative of the outcome, evidence affecting the credibility of that witness must be disclosed." *Commonwealth v. Hanford*, 937 A.2d 1094, 1100 (Pa. Super. 2007). In this case, the Commonwealth failed to even begin to examine the records and communications of the WAHS and HSUS.

### 2. The Commonwealth has a Duty to Disclose WAHS and USHS Evidence, or this Court must Order the WAHS and USHS to provide it

In this case, the Commonwealth is allowing the WAHS and unauthorized USHS to dictate what evidence to provide. The Commonwealth failed to examine the internal records of this so-called police enforcement agency. It is well-established that the "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 438-39 (1995); *Commonwealth v. Burke*, 781 A.2d 1136, 1142-43 (Pa. 2001); *Commonwealth v. Adams*, 177 A.3d 359, 372 (Pa. Super. 2017) ("Prosecutors must perform their duties under *Brady* in conjunction with the police, and a *Brady* violation may occur where evidence in the possession of the police is not disclosed to the defendant, even if the prosecutor did not know about it."). Indeed, as the Pennsylvania Supreme Court has stated, "under *Kyles*, the prosecution's *Brady* obligation clearly extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution. To the extent that Rule 305(B) [

10

now Rule 573] and the cases construing it could be read to suggest otherwise, such readings must bow to *Kyles* elaboration of the prosecutor's Brady duty respecting exculpatory evidence." *Burke*, 781 A.2d at 1142 (emphasis supplied).

### 3. The Identities and Notes of All Non-Law Enforcement Persons Present are Being Concealed

While the WAHS maintains a paid law enforcement officer certified in Pennsylvania, they brought many civilian persons along with them to rummage through the properties. These civilians have not been identified and their notes and evidence, that form impeachment materials, and provide the identities of witnesses, have not been turned over. These civilians were deputized by the WAHS and are under the control of the Commonwealth.

### 4. The Spoilage and Removal of the Evidence

The Commonwealth, without permission from this Court, removed most of the animals from the jurisdiction of the Court. The WAHS placed the evidence in the hands of third parties without receiving permission to do so. Some of the animals have been destroyed or placed in harmful and abusive conditions. Ms. Harr is entitled to full disclosure of all records of the health of the animals, the location, the treatment, and any photographs and video evidence of the animals under the control of the WAHS and the third-parties that the Commonwealth allowed to possess the evidence without a Court Order. The Commonwealth must immediately identify the present location of each animal seized.

### 5. All Correspondence Between Ms. Harr and the WAHS

The WAHS had many communications with Ms. Harr in an effort to entrap her by promising assistance with the animals then not rendering it. After Ms. Harr relied on the

11

promises of the WAHS, they instead obtained a search warrant despite being complicit in the alleged conditions the animals were held. The correspondence is not in Ms. Harr's possession as a result of damage done to her electronic devices by the WAHS after seizure. However, the WAHS, the law enforcement agency involved in this case, possesses all correspondence, letters, emails, and notes pertaining to the communications. This is exculpatory material that must be turned over.

### 6. All Writings Inconsistent With the Commonwealth's Planned Witnesses and other *Brady/Giglio* Materials

*Brady* and *Giglio* require the Commonwealth to provide copies of the various inconsistent statements that are contained in the emails, notes, etc., held by the WAHS, along with other exculpatory evidence. The Commonwealth continues to misunderstand that the WAHS, although a private organization, acted as a police force in this case and the District Attorney's Office has an obligation to examine all of the records relating to this matter to seek out *Brady* and *Giglio* materials. To date, the Commonwealth has not even asked the WAHS to provide this material to it and has allowed the WAHS to pick and choose what it discloses.

### 7. Police Reports and Building Inspector Reports Not Provided

Various civil agencies (Washington Area Humane Society and the United States Humane Society) and law enforcement agencies, including the state police, Monessen police, Donora police, and code enforcement officials supported the searches. The agencies assisted detain Ms. Harr and directed her not to return to the properties she possessed. None of the police reports and building inspector reports have been provided outlining the

involvement of local police, their communications with WAHS, and their disallowing Ms. Harr to enter the buildings despite her clear right to do so. Harr maintains a right to receive the notes and reports of these agencies and officers.

### 8. Disclosure of Condition and List of Destroyed Animals

Harr is entitled to know which animals were put down and destroyed by the United States Humane Society and to know the condition of the animals including all photographs, videos, and notes in the possession of the WAHS and USHS.

### 9. Box of Miscellaneous Items

The WAHS and police seized a box of "miscellaneous items" and has provided no information as to what the content of these items are. Ms. Harr is entitled to a full and clear inventory as to what the "miscellaneous items" are. She is entitled to the return of all "miscellaneous items" that do not relate to the case or exceed the scope of the warrant. For "miscellaneous items" properly retained by the Commonwealth through their confederacy with the WAHS, Ms. Harr is entitled to a full description and, if necessary, examination of said items.

### 10. Evidence and Files of the Humane Society of the United States

Even though the Commonwealth, through the WAHS, applied for a search warrant allowing the agency to seize certain items, the WAHS brought agents from the Maryland-based Humane Society of the United States into the Commonwealth to take part in the raids. The HSUS maintains no authority in this Commonwealth, is not incorporated

here, and lacks any credentials or authority under 22 P.S. 3701, et seq. Yet the Commonwealth allowed for their participation and for them to act as law enforcement agents. As a result, all exculpatory and inculpatory materials in the possession of the HSUS, including the communications in emails, notes, and files must be provided to Ms. Harr for examination. These items are subject to disclosure pursuant to Pa. R. Crim. P. 573(B)(2)(a)(ii). *See also Commonwealth v. Alston*, 864 A.2d 539, 546 (Pa. Super. 2004)("The Pennsylvania Rules of Criminal Procedure provide for disclosure, at the request of the defense ... all written statements and 'substantially verbatim oral statements' of eyewitnesses that the Commonwealth intends to call at trial.... [W]here either the Commonwealth or the defense have pretrial statements of its witnesses that were reduced to writing that concern the witness's trial testimony, those statements are subject to discovery.") (citing *Commonwealth v. Brinkley*, 480 A.2d 980, 984 (Pa. 1984)).

## 11. Seized Telephones, Computers, and Electronics for Forensic Evaluation

The Commonwealth, through the WAHS and unauthorized civilians, seized Ms. Harrs telephones, computers, and electronic equipment. The telephone, computers, and some electronic equipment contained certain video and text information and files that the WAHS improperly tampered with and deleted. In addition, the devices contain files needed for Ms. Harr's defense. Ms. Harr wishes to have the telephones and computers examined by a forensic expert to determine whether the exculpatory files thereon can be recovered and to demonstrate the tampering, modification, and alternative of the exculpatory evidence so that she may seek remedial relief.

Harr is entitled to have this electronic evidence sent to a third party lab for inspection and review. She has obtained a lab with proper credentials that will perform a

forensic examination of the items.

### g. The Items Exceeding the Scope of Search Warrant or Not Needed as Evidence Must be Returned

The Commonwealth, through the WAHS and its civilian unauthorized persons, seized and took items beyond the scope of the search warrants or that are not being used in the prosecution including Ms. Harr's vest, her medication, firearms, display knives, so-called "miscellaneous items," surveillance cameras that were inoperable, along with other items that play no proper role in the prosecution. These items must be returned forthwith along with any other items not being used by the Commonwealth at trial.

WHEREFORE, Defendant Christie Harr respectfully requests that this Court grant this Omnibus Motion.

Respectfully submitted,

J. Allen Roth, Esq. (PA ID 30347)
805 S. Alexandria St
Latrobe PA 15650
(724) 537-0939
lawmatters@yahoo.com

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I, J. Allen Roth, certify that I served a copy of this document by emailing and handing a copy to Assistant District Attorney John Lewis on this 6th day of August, 2021.

_____
J. Allen Roth