**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTIE HARR, | ) Civil Action No: 2:21-cv-1560 |
| | ) |
| Plaintiff, | ) |
| vs. | ) Honorable W. Scott Hardy |
| | ) |
| WASHINGTON AREA HUMANE SOCIETY, | ) |
| HUMANE SOCIETY OF THE UNITED | ) |
| STATES, HUMANE ANIMAL RESCUE, | ) |
| ESTATE OF GLEN L. THOMSON, LAURA | ) |
| KOIVULA, SHALIMAR OLIVER, SAMUEL | ) |
| JENESKY, LEANA STORMONT, KELLY | ) |
| PROUDFIT, KEN JERICHO, STEVEN | ) |
| TOPRANI, MARVIN DAVIS, JOHN W. | ) |
| PECK, JAMES R. HOPSON, JOHN DOES 1 | ) |
| THROUGH 50, | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CORRECTED AMENDED COMPLAINT

### I.   INTRODUCTION

Plaintiff, Christie Harr ("Harr"), brings this lawsuit against The Humane Society of the United States, Shalimar Oliver, Leana Stormont, and Laura Koivula (hereinafter the "HSUS Defendants"), and numerous other Defendants, claiming her constitutional rights were violated when warrants authorizing the search of properties were obtained and executed.  The evidence gathered pursuant to the warrants resulted in neglect of animal convictions in state court.  During the criminal matter, Harr raised the same challenges to the search warrants which she now identifies in her Corrected Amended Complaint, and lost.  As such, she is collaterally estopped from re-litigating the validity of the search warrants.  Moreover, because of her criminal convictions, Harr's constitutional claims against the HSUS Defendants are barred by the Supreme Court's decision in *Heck v. Humphrey.* Additionally, Harr has otherwise failed to state a claim to

impose liability against the HSUS Defendants.  As such, all claims against the HSUS Defendants should be dismissed from the Corrected Amended Complaint with prejudice.

## II.    FACTUAL BACKGROUND

Harr's Corrected Amended Complaint, like her original Complaint, sets forth claims related to two search warrants which authorized the search of Harr's properties and the seizure of her animals.  (Corrected Am. Compl., *generally*).  One search warrant was issued by Magisterial District Judge Mark Wilson in Washington County (the "Washington County search warrant"). The other search warrant was issued by Magisterial District Judge Jason Buczak in Westmoreland County (the "Westmoreland County search warrant").  Both search warrants were signed and sealed by the respective Magisterial District Judges on October 29, 2019.  (The Washington County search warrant is attached hereto as **Exhibit A**, and the Westmoreland County search warrant is attached hereto as **Exhibit B**).[1]

The warrants authorized HSUS representatives and many others to search the properties located at 320 2nd Street, Donora, Pennsylvania and 676 Reed Avenue, Monessen, Pennsylvania. (Ex. A, at pp. 10-1; Ex. B, at p. 10-1).  The assistance of the HSUS was expressly requested in the warrants given the scope and scale of the operation.  The warrants specifically authorized the HSUS to document the operation with photographs and video.  (Ex. A at pp. 10-1; Ex. B at p. 11). And, the warrants approved of the seizure of "[a]ll related animal records, written or electronically kept . . . including . . . photographs and videos" and "all documents, communications, and correspondence, however stored, related to the operation of Animal Orphans Animal Rescue and

---

[1] Generally, a court may not consider documents outside the pleadings when deciding a motion to dismiss. However, "a court may consider a document that is 'integral to or explicitly relied upon' in the complaint." *In re Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 492 (3d Cir. 2017) (citing *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  Here, Harr has challenged the validity and execution of the search warrants, so the warrants are integral to her Corrected Amended Complaint.

its Founder and CEO, Christie Harr." (Ex. A at p. 11; Ex. B at p. 11). Following the searches, criminal charges related to animal neglect/cruelty were brought against Harr in the Court of Common Pleas for Washington County at docket numbers CR-0205-2020 and CR-1186-2020.

Harr's claims against the HSUS Defendants in this action relate to the two search warrants The following nine Counts have been brought against the HSUS Defendants:

- Count I, which is titled "Constitutional Violations . . . as to the Westmoreland County Property," claims the HSUS Defendants, among other Defendants, violated Harr's Fourth and Fourteenth Amendment rights by obtaining a search warrant regarding the Westmoreland County property then executing the search. (Corrected Am. Compl., at ¶¶ 110-19, ECF 92).

- Count II, which is titled "Intrusion Upon Seclusion . . . as to the Westmoreland County Property," claims the HSUS Defendants, among other Defendants, intruded upon Harr's Westmoreland County property. (*Id.* at ¶¶ 121-24).

- Count III, which is titled "Trespass . . . as to the Westmoreland County Property," claims the HSUS Defendants, among other Defendants, entered Harr's Westmoreland County property and took photographs and videos. (*Id.* at ¶¶ 125-132).

- Count V, which is titled "Conversion . . . as to the Westmoreland County Property," claims the HSUS Defendants, among other Defendants, took Harr's memory chip from her video recorder. (*Id.* at ¶¶ 141-46).

- Count VI, which is titled "Constitutional Violations . . . as to the Washington County Property," claims the HSUS Defendants, among other Defendants, violated Harr's Fourth Amendment rights by searching her Washington County property. (*Id.* at ¶¶ 148-157).

- Count VII, which is titled "Constitutional Violations for Deprivation of Property . . ." claims the HSUS Defendants, among other Defendants, violated Harr's Fourth and Fourteenth Amendment rights by seizing and retaining certain items from her Washington County property, including guns, gun attachments, ammunition, knives, clothing, medical supplies, personal medication, identification, knives, a fish tank, a social security card, and a "box of miscellaneous items." (*Id.* at ¶¶ 159-173).

- Count VIII, which is titled "Declaratory and Injunctive Relief Against HSUS," asks this Court to declare that HSUS engages in unconstitutional law enforcement functions by acting as Humane Policy Officers. Harr further requests an injunction regarding "such similar conduct." (*Id.* at Count VIII *ad damnum* clause).

- Count XII, which is titled "42 USC 1983 Conspiracy" claims the HSUS Defendants and other Defendants took collective action to violate Harr's Fourth, Fifth, and Fourteenth Amendment rights.  (*Id.* at ¶¶ 225-231).

- Count XV, which is titled "International (sic) Infliction of Emotional Distress . . ." claims the HSUS Defendants, among other Defendants, left a chicken on Harr's property which could have perished.  (*Id.* at ¶¶ 286-294).

Harr raised some of these issues in her defense of the corresponding criminal charges. Specifically, she filed an Omnibus Pre-Trial Motion seeking the suppression of evidence uncovered by the searches, arguing that: Officer Thompson did not have jurisdiction to obtain the Westmoreland County search warrant, the Westmoreland County search warrant was illegally issued without approval from the Westmoreland County District Attorney, and the scope of both the Westmoreland and Washington County search warrants was exceeded.  (A copy of Harr's Omnibus Pre-Trial Motion is attached hereto as **Exhibit C**).

The Court of Common Pleas of Washington County rejected Harr's arguments.  (A copy of that Court's April 4, 2022 Order and Opinion denying Harr's Omnibus Pre-Trial Motion is attached hereto as **Exhibit D**).   It ruled that Officer Thompson did not exceed his power to obtain the Westmoreland County search warrant since the Pennsylvania State Police assisted in obtaining the warrant, and Pennsylvania State Police Corporal Teagarden served as a co-affiant on same. (**Ex. D** at pp. 3-4).  The Court also held that the issuance of the Westmoreland County search warrant was proper and did not need approval from the District Attorney's office because Corporal Teagarden was a co-affiant.  Lastly, the Court held that both search warrants provided a sufficiently particular description of the items to be seized and that the scope of the warrants was not exceeded during execution.

Ultimately, on September 9, 2022, Harr pled nolo contendere to two counts of Neglect of Animal, 18 Pa.C.S.A. § 5532(a)(1).  (The Pleas of Nolo Contendere at docket nos. CR-205-2020

and CR-1186-2020 are collectively attached hereto as **Exhibit E**).  As part of her plea agreement, Harr was sentenced to two years of probation. As special conditions of her probation, she was not to possess any types of animals, and she was not to have any contact with the animals seized.  (A copy of the September 9, 2022 Order of Sentence is attached hereto as **Exhibit F**).[2]

On or about November 18, 2022, Harr, through her criminal counsel, filed a Motion for Return of Property in the criminal case, which was granted by the Court.  (A copy of the Motion and Order are attached hereto as **Exhibit G.**).  In her Motion, Harr only requested the return of various guns, ammunition, and knives, which were to be released to her father.  She did not, however, request return of other various items she claims were unconstitutionally taken in the subject lawsuit.

### III.   LEGAL STANDARD

A complaint may be properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) where, as here, it does not allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft*, 556 U.S. at 678 (citing

---

[2] Related to the underlying criminal case, the Washington Area Humane Society ("WAHS") initiated an action against Harr pursuant to the Costs of Care of Seized Animals Act to recover costs associated with the seizure of 206 animals from Harr.  This matter was initiated in the Court of Common Pleas of Washington County at docket no. 2020-2270. That court entered judgment in the amount of $1,113,765.33 in favor of WAHS on February 9, 2021.  Harr appealed this judgment to the Superior Court of Pennsylvania, which affirmed the judgment on March 9, 2022.  *Washington Area Humane Soc'y v. Harr*, 2022 WL 704241 (Pa.Super. 2022) (non-precedential decision) appeal denied, 283 A.3d 791 (Pa. 2022).

*Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

*Twombly* and its progeny require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp*., 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id*. (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quoting *Iqbal*, 556 U.S. at 679). The Court should "construe truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id*. at 791.

In deciding a motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick,* 502 F.3d 263, 268 (3d Cir. 2007). Courts in the Third Circuit may take judicial notice of dockets or other court opinions at the motion to dismiss stage. *See Hadesty v. Rush Twp. Police Dep't*, 2016 WL 1039063, at *5 (M.D. Pa. Mar. 15, 2016) (citing *In re Congoleum Corp*., 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court proceedings insofar as they are relevant.")).

## IV.   LEGAL ARGUMENTS

### A.   Harr's claims related to the securing and execution of the Westmoreland County search warrant and the execution of the Washington County search warrant are barred by collateral estoppel.

"The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. . . Under collateral estoppel, once a court has decided an issue of fact or law

necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).   Collateral estoppel, "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication."  *Id.*

Under Pennsylvania law, the doctrine of collateral estoppel applies when the following four elements are met:

> (1) An issue decided in a prior action is identical to one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Jones v. United Parcel Serv.*, 214 F.3d 402, 405 (3d Cir. 2000) (quoting *Rue v. K-Mart Corp.,* 713 A.2d 82, 84 (Pa. 1998)).   In *Allen,* the Supreme Court of the United States broadly held that collateral estoppel applies in § 1983 claims.  *Allen,* 449 U.S. at 105; *See also Ingram v. Lupas,* 353 F. App'x 674, 676 (3d Cir. 2009) ("It is well established that principles of collateral estoppel are fully applicable to civil rights actions brought under § 1983").   Thus, defendants in a § 1983 suit can raise the issue of collateral estoppel where plaintiffs attempt "to relitigate in federal court issues decided against them in state criminal proceedings."  *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986) (citing *Allen*, 449 U.S. at 101).

Indeed, courts in this Circuit have held that collateral estoppel bars § 1983 Fourth Amendment claims based on the propriety of a search challenged in underlying criminal proceedings.  For instance, in *Briggs v. Godby*, No. CIV.A. 08-5239, 2009 WL 4756390 (E.D. Pa. 2009), the court dismissed the plaintiff's Fourth Amendment claim, which was based on the propriety of a warrantless search of his premises, because in the underlying criminal case, the

plaintiff unsuccessfully challenged the search through an omnibus pre-trial motion to suppress the evidence obtained as a result of the search.  *See also Aursby v. Auxter,* No. CV 19-4849, 2021 WL 3885122 (E.D. Pa. 2021) (collateral estoppel barred § 1983 action of plaintiff who previously challenged the constitutionality of a search in the criminal matter via suppression motion)*; Ingram v. Lupas*, 353 F. App'x 674, 677 (3d Cir. 2009) ("the plaintiff in the instant action was the defendant in the criminal case; and the denial of a suppression motion followed by a conviction is a final judgment for collateral estoppel purposes . . . Therefore, the District Court correctly concluded that [plaintiff] was barred from re-litigating this issue.").

At Counts I, II, III, and V of her Corrected Amended Complaint, Harr takes issue with the obtaining and execution of the Westmoreland County search warrant.  As for obtaining the warrant, she claims the HSUS Defendants represented that Defendant Thompson was a statewide police officer to the magistrate judge who issued the warrant.   As for execution of the Westmoreland County search warrant, she claims the HSUS Defendants conducted an illegal search, (Count I), intruded upon her seclusion (Count II), trespassed on her land (Count III), and took her memory chip (Count V).

At Counts VI and VII, Harr challenges the execution of the Washington County search warrant.  She claims the HSUS Defendants conducted an unlawful search of her Washington County property and deprived her of certain items on the property, including guns, ammunition, knives, clothing, medical supplies, personal medication, a social security card, a box of miscellaneous items, a magazine, and a fish tank.

At Count XII, Harr claims the HSUS Defendants participated in a § 1983 conspiracy to deprive her of her Fourth, Fifth, and Fourteenth Amendment rights by avoiding or concealing the unauthorized nature of the "USUS and WAHS investigation."  Though it is not specifically

alleged, presumably this purported conspiracy relates to the searches conducted on Harr's properties pursuant to the search warrants.

However, the validity of both search warrants was already confirmed by the Washington County Court of Common Pleas when it ruled on Harr's Omnibus Pre-Trial Motion in the criminal case.  Regarding the Westmoreland County search warrant, the Court held that Officer Thompson did not exceed his power to obtain the Westmoreland County search warrant because he was assisted by the Pennsylvania State Police, with Corporal Teagarden of the State Police serving as a co-affiant on the warrant.  For this reason, the Court also held that the Westmoreland County search warrant satisfied the Fourth Amendment, was reasonable and proper, and did not need approval from that county's District Attorney.  The Court further held that the Westmoreland County and Washington County search warrants were sufficiently particular in their description of the items to be seized and that the scope of the warrants was not exceeded during execution.

Based on the ruling on Harr's Omnibus Pre-Trial Motion by the Court of Common Pleas for Washington County, collateral estoppel applies to bar all claims under Counts I, II, III, and V of Harr's Corrected Amended Complaint because (1) the issues decided in the criminal action are identical to the issues identified in this Count; (2) Harr's criminal action resulted in a final judgment on the merits;[3] (3) Harr was the Defendant in the criminal action; and (4) Harr had a full

---

[3] In *Aursby v. Auxter*, No. CV 19-4849, 2021 WL 3885122, at *8 (E.D. Pa. Aug. 30, 2021), the court held:

> With respect to the finality of the judgment, "[i]t is generally accepted that 'denial of a suppression motion followed by a conviction is a final judgment for collateral estoppel purposes.' " *Briggs*, 2009 WL 4756390, at *6, n.5 (citation omitted). Moreover, "[t]he Third Circuit has conclusively held that collateral estoppel 'does not require the entry of a judgment, final in the sense of being appealable[,]' ... [r]ather, 'final judgment[ ] includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.' " *Id*. (citing *In re Brow*n, 951 F.2d 564, 569 (3d Cir. 1991)).

> Additionally, this Honorable Court previously observed, "A nolo contendere plea 'has the same legal consequences as a plea of guilty and results in a conviction.' *United States v. Adedoyin*, 369 F.3d 337, 344 (3d Cir. 2004) (citing *Brewer v. City of Napa*, 210 F.3d 1093, 1096 (9th Cir. 2000); *Myers v. Sec'y of HHS*, 893 F.2d 840, 844

and fair opportunity to litigate the validity of the issuance of the Westmoreland County search warrant and the propriety of the execution of the Westmoreland County and Washington County search warrants in the criminal action. Because collateral estoppel applies, Harr's claims against the HSUS Defendants related to these warrants, namely, Count I (Fourth and Fourteenth Amendment), Count II (intrusion upon seclusion), Count III (trespass to land), Count V (conversion), Count VI (Fourth Amendment), Count VII (Fourth and Fourteenth Amendments and conversion), and Count XII (conspiracy to deprive her of her Fourth, Fifth, and Fourteenth Amendment rights) should be dismissed, with prejudice.

**B. Harr's § 1983 claims are barred by *Heck v. Humphrey*.**

In *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court of the United States held that in order to recover damages for harm caused by "actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87; *see also Schreane v. Marr,* 722 F. App'x 160, 165 (3d Cir. 2018). In other words, under *Heck,* a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings. *Gilles v. Davis*, 427 F.3d 197, 208–09 (3d Cir. 2005). The Third Circuit has described the requirement that a § 1983 plaintiff demonstrate her conviction or sentence invalid as *Heck's* "favorable termination rule." *Curry v. Yachera*, 835 F.3d

---

(6th Cir. 1990); *United States v. Williams*, 642 F.2d 136, 138 (5th Cir. 1981))." *Massey v. Pfeifer,* 2019 WL 3046131, *10 (W.D. Pa. May 21, 2019).

    For these reasons, the criminal court's ruling on Harr's Motion challenging the search warrants is sufficiently final for purposes of collateral estoppel.

373, 378 (3d Cir. 2016) (citing *Bronowicz v. Allegheny Cty.*, 804 F.3d 338, 344–45 (3d Cir. 2015)). In *Curry*, the Third Circuit also recognized that, under Pennsylvania law, a nolo contendere plea "must be treated the same as a conviction under *Heck*." *Id.* (quoting *Havens v. Johnson*, 783 F.3d 776, 784 (10th Cir. 2015) ("[T]he Heck doctrine derives from the existence of a valid conviction, not the mechanism by which the conviction was obtained (such as admissions by the defendant), so it is irrelevant that Havens entered an Alford plea [maintaining his innocence].")).

District Courts in this Circuit and other Circuits have dismissed similar § 1983 claims pursuant to *Heck*. *See, e.g., Blank v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, No. CIV.A. 10-3222, 2010 WL 3927590, at *3 (E.D. Pa. Oct. 5, 2010) ("However, here the Commonwealth's entire case hinged on the evidence of animal cruelty obtained through the July 17, 2008 raid. Without that search and seizure, Blank could not have been convicted. Were it determined that the raid and seizure of his person were unconstitutional, we would be finding that no valid evidence of his guilt existed, and we would necessarily deem his convictions to be invalid. As such, Counts 1, 2, 3, and 5 mount an impermissible collateral attack on his conviction and must be dismissed under *Heck*.") aff'd sub nom., 434 F. App'x 147 (3d Cir. 2011); *Van Dusen v. City of Oakland,* No. 13-CV-05023-HSG, 2015 WL 1800587, at *3 (N.D. Cal. Apr. 20, 2015) ("The Court finds that all of the Section 1983 claims alleged in the SAC constitute impermissible collateral attacks on Plaintiff's conviction for animal cruelty. It is telling that much of the substance of Plaintiff's Opposition is devoted to arguing that the October 2011 seizure of her animals, and the investigation leading up to it, were illegal—exactly what *Heck* dictates may not be relitigated in federal court") aff'd, 678 F. App'x 582 (9th Cir. 2017); *Bohn v. Humane Soc.*, No. S-06-1051, 2006 WL 3518248, at *1 (E.D. Cal. Dec. 6, 2006) (dismissing the Plaintiff's claims pursuant to *Heck,* reasoning, "Plaintiff is currently being prosecuted for illegal cockfighting; these charges stem from

execution of a search warrant and subsequent arrest of plaintiff in May 2005. Plaintiff's present claims arise out of the same operative facts and success in the present litigation would call into doubt the criminal prosecution.").

Here, Harr's nolo contendere pleas to neglect of animal charges are treated the same as convictions for purposes of *Heck*. In this lawsuit, pursuant to § 1983, she is claiming damages for constitutional violations due to actions of the HSUS Defendants when assisting in obtaining and executing search warrants. While the Supreme Court in *Heck* recognized that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial" because of doctrines such as independent source, inevitable discovery, and harmless error, here, Harr's previous challenges to the search warrants and the evidence seized thereby in the criminal case failed. As such, her § 1983 claims against the HSUS Defendants are impermissible collateral attacks on her neglect of animal convictions. These convictions have not been reversed or invalidated. Accordingly, *Heck v. Humphrey* bars all of Harr's § 1983 claims against the HSUS Defendants, which are raised in Counts I, VI, VII, and XII of her Corrected Amendment Complaint.

## C. Harr's § 1983 claims against the HSUS Defendants should be dismissed because she has failed to allege they are state actors.

To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and that the deprivation was committed by a "person acting under color of state law." *Harvey v. Plains Tp. Police Dept.,* 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)). "Under color" of state law is treated the same as the state action requirement. *U.S. v. Price,* 383 U.S. 787, 794 (1966).

While there is no "simple line" between state and private actors, the Third Circuit has explained that "[t]he principal question at stake is whether there is such a close nexus between the

State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach v. Hose,* 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Leshko v. Servis,* 423 F.3d 337, 339 (3d Cir.2005)).  However, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *American Mfs. Ins. Co. v. Sullivan,* 526 U.S. 40, 52 (1999).  The Third Circuit has developed three tests derived from Supreme Court Jurisprudence to determine whether a state actor exists:

(1) The Public Function Test: whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state;

(2) The Close Nexus Test: whether the private party has acted with the help of or in concert with state officials;

(3) The Symbiotic Relationship Test; whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach, 589 F.3d at 646.*  Another test, commonly referred to as the "joint action test," asks whether a private entity was a willful participant in joint action with the state.  *Madero v. Luffey,* 439 F.Supp.3d 493, 514 (W.D. Pa. 2020).

Here, it appears that Harr is claiming that the HSUS Defendants' alleged assistance in obtaining and executing the search warrants amounted to state action, but the Corrected Amended Complaint fails to state a viable theory of state action under the four tests.  The allegations do not satisfy the Public Function Test because the obtaining and execution of a search warrant is not a power that is exclusively the prerogative of the state.  Indeed, 18 Pa.C.S.A. § 5553 states that a search warrant may be issued "to a police officer or an agent of a society or association for the prevention of cruelty to animals duly incorporated under the laws of this Commonwealth a search warrant authorizing the search."  *See also* Pa.R.Crim.P. No. 103 (defining an "affiant" who may apply for a search warrant as "any responsible person capable of taking an oath who signs, swears

to, affirms, or, when permitted by these rules, verifies a complaint and appreciates the nature and quality of that person's act.").

Harr has also failed to allege the HSUS Defendants' actions satisfy the Close Nexus Test. Whether a "close nexus" exists depends on whether the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 52, (1999). Action taken by private entities "with the mere approval or acquiescence of the State" is not state action. *Id.* The key issue under this framework is "whether the State participated in the challenged conduct itself by 'putting its weight' behind the challenged activity." *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589, 597 (3d Cir. 1979) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974)). The *Madero* court held that a non-profit animal shelter was not a state actor under the Close Nexus Test because there were no averments to support the conclusion that the shelter's treatment of the animals was dictated or controlled by the city. *Madero,* 439 F.Supp.3d at 515. When reviewing the allegations of Harr's Corrected Amended Complaint, coupled with the language of the search warrants, it is clear that the state was not "putting its weight" behind the HSUS Defendants in relation to the search warrants. The affidavits of probable cause attached to the search warrants expressly requested assistance from the HSUS in the WAHS's execution of the warrant given the "scope and scale" of the operation. While the warrants note that civilian participation in the seizure is to be done under the "supervision and direction of law enforcement," this is not sufficient to convert the conduct of the HSUS Defendants to state action under the Close Nexus Test.

The HSUS Defendants are likewise not state actors under the Symbiotic Relationship Test, which requires a close association of mutual benefit between the state and the private actor. *Benn*

*v. Universal Health Sys., Inc.,* 371 F.3d 165, 173 (3d Cir. 2004); *Burton v. Wilmington Parking Authority,* 365 U.S. 717 (1961) (private lessee who leased space for a restaurant from a state parking authority in a publicly owned building was a state actor because the state "had so insinuated itself into a position of interdependence with the restaurant that it was a joint participate in the enterprise.").  Here, the state had not so insinuated itself in a position of interdependence with the HSUS Defendants.  Merely because these Defendants allegedly worked with the state in securing and executing search warrants does not create the required symbiotic relationship.

Lastly, the HSUS Defendants are not state actors under the Joint Action Test, which involves an inquiry into whether (1) the private entity has a "prearranged plan" with the police officers, and (2) whether under the plan, the police officers will "substitute their [own] judgment" with that of the private entity's. *Madero,* 439 F. Supp. 3d at 515 (quoting *Cruz v. Donnelly*, 727 F.2d 79, 81-82 (3d Cir. 1984).  Harr has not alleged the required joint action to establish that the HSUS Defendants were state actors under this test.

Harr has failed to allege that the HSUS Defendants were state actors, so her § 1983 claims against them fail.  Notably, other district courts have held that state action was not present under similar circumstances.  *See Hughes v. Meadows, No. 1*:17-CV-28-KS-TFM, 2017 WL 3083257, at *3 (M.D. Ala. July 19, 2017) (noting that the HSUS was not a state actor, citing the lack of sufficient factual averments in the complaint and recognizing, "Assisting police officers does not automatically transform a person or entity into a state actor. . .  [T]he Humane Society's actions assisting the Officer Defendants in the execution of a search warrant are not sufficient to make the Humane Society a state actor through the public function test."); *Shinaberry v. Town of Murfreesboro, N.C.*, No. 2:17-CV-7-D, 2018 WL 1801417, at *5 (E.D.N.C. Apr. 16, 2018) (holding that the HSUS, which assisted in the execution of a search warrant to seize 50 dogs, "is

not a state actor and cannot be liable under section 1983.").  Because Harr has failed to allege that the conduct of the HSUS Defendants amounted to state action, her § 1983 claims against these Defendants (Counts I, VI, VII, and XII) fail and should be dismissed, with prejudice.

### D. Harr has otherwise failed to state constitutional claims against the HSUS Defendants.

In Counts I, VI, VII and XII of her Corrected Amended Complaint, Harr claims that the conduct of the HSUS Defendants violated her rights under the Fourth, Fifth, and/or Fourteenth Amendments to the Constitution.  As more fully explained below, she has failed to state any constitutional claims against the HSUS Defendants.

### 1. Harr has failed to state a Fourth Amendment claim against the HSUS Defendants.

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

As the text indicates, the Fourth Amendment only prohibits "unreasonable" searches.  *U.S. v. Katzin*, 769 F.3d, 163, 169 (3d Cir. 2014); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995) ("[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.'").  Similarly, a "seizure" must be unreasonable to impose § 1983 liability.  *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989).

A "search" within the meaning of the Fourth Amendment occurs when the government obtains information by physically intruding on "persons, houses, papers, and effects," or when government officers violate a person's reasonable expectation of privacy.  *U.S. v. Jones*, 565 U.S. 400, 406, n. 3, 411, n. 8. (2012).  A "seizure" of property occurs when "there is some meaningful

interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992) (quoting *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984)).

Here, the Corrected Amended Complaint fails to allege anything unreasonable about the alleged searches and seizures completed by at the direction and under the supervision of state and local law enforcement and with the assistance of the HSUS Defendants and others. Instead, as more fully explained above, all searches and seizures were authorized by two signed and sealed search warrants issued by the proper authorities, and the validity of the search warrants was already confirmed by the criminal court when it ruled upon Harr's Omnibus Pre-Trial Motion. Harr identifies various items which she claims were unconstitutionally seized, including a memory chip, but these items were expressly authorized to be seized pursuant to the search warrants. For these reasons, her Fourth Amendment claims against the HSUS Defendants (Counts I, VI, VII, and XII) should be dismissed, with prejudice.

### 2. Harr has failed to state a Fifth Amendment claim against the HSUS Defendants.

The Fifth Amendment to the United States Constitution states:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Harr references the Fifth Amendment once in her 325-paragraph Corrected Amended Complaint. Under her § 1983 Conspiracy Count (Count XII), she claims the HSUS Defendants took collective action to violate her Fifth Amendment rights. She has not identified which Fifth

Amendment right she claims was violated, but it appears that she is claiming her private property was taken for public use without just compensation.[4]

The Fifth Amendment Takings Clause prohibits the government from "taking private property for public use without providing just compensation." *Newark Cab Ass'n v. City of Newark,* 901 F.3d 146, 151 (3d Cir. 2018) (quoting *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012)).   To succeed on a takings claim, "the plaintiff[s] must first show that a legally cognizable property interest is affected by the Government's action in question." *Id.* (quoting *Prometheus Radio Project v. FCC*, 373 F.3d 372, 428 (3d Cir. 2004)).

Harr's Fifth Amendment claim fails because any alleged takings were authorized by valid search warrants which uncovered evidence that led to nolo contendere pleas to Neglect of Animal charges.   And, "there can be no cognizable Fifth Amendment 'takings' claim when property is seized pursuant to a lawful search warrant." *McKenna v. Portman*, 538 F. App'x 221, 224 (3d Cir. 2013) (internal footnote omitted).   Because Harr had no legally cognizable property interest at issue, and because the seizure of items was done pursuant to valid search warrants, Harr's Fifth Amendment claim against the HSUS Defendants should be dismissed, with prejudice.

### 3.   Harr has failed to state a Fourteenth Amendment claim against the HSUS Defendants.

The Fourteenth Amendment to the United States Constitution contains five sections.   The first section states:

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any

---

[4] If Harr is claiming that the HSUS Defendants violated her Fifth Amendment due process rights, these claims fail because the Fifth Amendment Due Process Clause applies only to actions of the federal government.   *B & G Const. Co. v. Dir., Off. of Workers' Comp. Programs*, 662 F.3d 233, n. 14 (3d Cir. 2011).

person of life, liberty, or property, without due process of law; nor deny to any
person within its jurisdiction the equal protection of the laws.

The Fourteenth Amendment is cited in Counts I, VII, and XII of Harr's Corrected Amended
Complaint. At Count I, she claims her "due process rights" were violated. At Count VII, she
claims her "substantive and procedural due process rights" were interfered with, and she claims
that certain property was taken "without due process." She does not identify a specific Fourteenth
Amendment right which she claims was violated at Count XII.

To state a procedural due process claim, a plaintiff must allege that (1) she was deprived
of an individual interest encompassed within the Fourteenth Amendment's protection of life,
liberty, and property, and (2) that the procedures available to her did not provide due process of
law. *Hill v. Borough of Kutztown,* 455 F.3d 225, 233-34 (3d Cir. 2006). "It is axiomatic that a
cognizable . . . property interest must exist in the first instance for a procedural due process claim
to lie." *Mudric v. Att'y Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006); *See also Dunmore Sch. Dist.
v. Pennsylvania Interscholastic Athletic Ass'n*, 505 F. Supp. 3d 447, 460 (M.D. Pa. 2020) (noting
that, in a procedural due process claim, the threshold question is whether the plaintiff has a
protected property interest).

Harr's procedural due process claim fails because she has not identified a protected
property interest at issue. Additionally, to state a claim for failure to provide due process, a
plaintiff must have taken advantage of the processes that are available to him or her, unless those
processes are unavailable or patently inadequate. *Willard v. Pa. SPCA,* 525 F. App'x 217 (3d Cir.
2013) (internal quotations omitted). In *Willard,* the Court held that because the plaintiff did not
avail herself to the Pennsylvania Rules of Criminal Procedure or bring a tort claim for return of
the dogs for conversion—both constitutionally adequate procedures to rectify an alleged legal
error—plaintiff was unable to state a procedural due process claim. *Willard,* 525 F. App'x at 221.

Harr has not alleged that she availed herself of the remedy provided by Rule 588 of the Pennsylvania Rules of Criminal Procedure to obtain the property she claims was unlawfully seized.[5]   For these reasons, her procedural due process Fourteenth Amendment claims against the HSUS Defendants should be dismissed, with prejudice.

To establish a substantive due process claim, a plaintiff must show that she has been deprived of a fundamental property interest under the Constitution and that the government's deprivation of that interest shocks the conscience. *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (citations omitted). Harr has not identified a fundamental interest that was violated, so her claim fails to the extent she is claiming her Fourteenth Amendment substantive due process rights were violated. Additionally, "[c]laims of unreasonable search and seizure are . . . governed by the explicit constitutional text in the Fourth Amendment and may not therefore, [be] brought as claims for violation of the right to substantive due process." *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 689 (M.D. Pa. 2010) (quoting *McDonald v. Darby Borough*, Civ. A. No. 07–4588, 2008 WL 4461912, at *6 (E.D.Pa. Oct. 3, 2008)). *See also Graham v. Connor,* 490 U.S. 386, 395, 109 (1989); *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Harr's substantive due process claim should be dismissed and is instead properly analyzed under the Fourth Amendment.

For these reasons, Harr's Fourteenth Amendment claims against the HSUS Defendants should be dismissed, with prejudice.

### 4.  Harr has failed to state a conspiracy under Section 1983.

"The elements of a claim of conspiracy to violate federal civil rights are that '(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the

---

[5] Pennsylvania Rule of Criminal Procedure 588 states: "[a] person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof." Such a motion is to be filed in the court of common pleas for the judicial district where the property was seized.

conspirators performs ... any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States,' with the added gloss under § 1983 that 'the conspirators act under the color of state law.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)). "[A] § 1983 conspiracy claim only arises when there has been an actual deprivation of a federal right." *Arneault v. O'Toole*, 864 F. Supp. 2d 361, 407 (W.D. Pa. 2012). Once a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, the plaintiff must provide some factual basis to show the existence of an agreement and concerted action. *Jutrowski*, 904 F.3d at 295 (3d Cir. 2018).

At Count XII, Harr claims the HSUS Defendants took some sort of collective action with other Defendants to deprive her of her Fourth, Fifth, and Fourteenth Amendment rights. She has failed to identify the type of agreement and conspiracy necessary to support this claim. Additionally, she has failed to establish that she was deprived of these constitutional rights at the outset, for the reasons cited *supra*. As such, Harr has failed to state a conspiracy claim under Section 1983, and this claim against the HSUS Defendants should be dismissed with prejudice.

### E. Harr has otherwise failed to state Pennsylvania tort claims against the HSUS Defendants.

Harr's claims for intrusion upon seclusion (Count II), trespass (Count III), conversion (Counts V and VII), and intentional infliction of emotional distress (Count XV) all fail for the reasons identified below.

#### 1. Harr has failed to state a claim for conversion against the HSUS Defendants.

Conversion is a tort by which the defendant deprives the plaintiff of her right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification. *Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 581 (Pa.Super. 2003). This Honorable Court has held that a humane rescue organization which assisted police with the collection of cats pursuant to a warrant did not act without lawful justification and therefore could not be liable for conversion. *See Madero,* 439 F. Supp. 3d at 517.

Here, Harr's conversion claims against the HSUS Defendants fail because any deprivation of property was done with lawful justification (the search warrants). Thus, her conversion claims against the HSUS Defendants should be dismissed, with prejudice.

### 2. Harr has failed to state a claim for trespass against the HSUS Defendants

A trespass is "an unprivileged, intentional intrusion upon land in possession of another." *Hyman v. Cap. One Auto Fin.*, 306 F. Supp. 3d 756, 767 (W.D. Pa. 2018). Entry onto Harr's properties was authorized and privileged by the search warrants. As such, her trespass claim against the HSUS Defendants (Count III) should be dismissed, with prejudice.

### 3. Harr has failed to state a claim for invasion of privacy – intrusion upon seclusion against the HSUS Defendants.

Under Pennsylvania law, an action for invasion of privacy is comprised of four analytically distinct torts, including intrusion upon seclusion. *Marks v. Bell Tel. Co. of Pennsylvania*, 331 A.2d 424, 430 (Pa. 1975). To maintain a claim for intrusion upon seclusion, a plaintiff must show that the intrusion was (1) intentional; (2) upon the solitude or seclusion of the plaintiff, or her private affairs or concerns; (3) substantial; and (4) highly offensive. *Klein v. Com. Energy, Inc*., 256 F. Supp. 3d 563, 593 (W.D. Pa. 2017) (citations and quotations omitted). Harr's intrusion upon seclusion claims against the HSUS Defendants, like her trespass claims, fail because of the valid

execution of the search warrants.  Therefore, her intrusion upon seclusion claims as to the HSUS

Defendants (Count II) should be dismissed, with prejudice.

> **4. Harr has failed to state a claim for intentional infliction of emotional distress against the HSUS Defendants.**

The elements of intentional infliction of emotional distress are:

(1) a person who by extreme and outrageous conduct
(2) intentionally or recklessly causes
(3) severe emotional distress to another.

*Carson v. City of Philadelphia,* 133 Pa.Cmwlth. 74, 574 A.2d 1184 (1990); *Manley v.

Fitzgerald,* 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010).  Additionally, "a plaintiff must suffer

some type of resulting physical harm due to the defendant's outrageous conduct."  *Reedy v.

Evanson,* 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230

(Pa.Super. 2005)).

At Count XV of her Corrected Amended Complaint, Harr claims the HSUS and certain

John Doe Defendants who are identified as agents and employees of HSUS left a live chicken on

her property which "could have perished from being neglected for twelve days."  While Harr

blanketly asserts that this conduct was deliberate, outrageous, and caused emotional distress, she

fails to allege that she suffered some time physical harm as a result of the conduct alleged.  As

such, her intentional infliction of emotional distress claims against the HSUS Defendants should

be dismissed, with prejudice.

> **F. If this Court dismisses the § 1983 claims against the HSUS Defendants, it should refuse to exercise supplemental jurisdiction over the state tort claims against the HSUS Defendants.**

Because Harr's § 1983 claims against the HSUS should be dismissed for the reasons set

forth above, even if the Court determines that she has properly stated state tort claims against the

HSUS Defendants, this Court should refuse to exercise supplemental jurisdiction over these

claims.  A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).  "[I]f it appears that the federal claim is subject to dismissal . . . then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc*., 540 F.2d 187, 196 (3d Cir. 1976); *See also Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 519 (E.D. Pa. 2019).  Here, because there is no complete diversity, and because this Court should dismiss all claims against the HSUS Defendants which would give rise to federal question jurisdiction, this Court should decline to exercise supplemental jurisdiction over Harr's claims for conversion, invasion of privacy/intrusion upon seclusion, trespass, and intentional infliction of emotional distress.  Thus, pursuant to this Court's discretion to refuse to exercise supplemental jurisdiction over state tort claims, this Court should dismiss all state tort claims against the HSUS Defendants, with prejudice.

### G. This Court lacks subject matter jurisdiction to address Harr's claim for declaratory and injunctive relief.

At Count VIII, Harr asks this Court to declare that the HSUS engaged in unconstitutional law enforcement functions by acting as Humane Police Officers when it drafts and executes search warrants, invites news media to enter private property, and records private property of persons without authorization to post on social media.  She also asks this Court to "enjoin all such similar conduct."

"Standing is a jurisdictional matter." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Davis* 824 F.3d at 346.  "To satisfy the standing and 'case or controversy' requirements of Article III, a party seeking a declaratory judgment 'must allege facts from which it appears there is a substantial likelihood that he will

suffer injury in the future.'" *Blakeney v. Marsico*, 340 F. App'x 778, 780 (3d Cir. 2009) (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir.2003)). Additionally, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *See also Brown v. Fauver,* 819 F.2d 395 (3d Cir. 1987) (holding that inmate lacked standing to seek (1) a declaration that a prison regulation is unconstitutional and (2) an injunction barring future application of the regulation).

Harr has no standing to seek her declaration, and she has not alleged any facts to suggest that she would suffer injury in the future. Since she lacks standing and there is no Article II "case or controversy," so this Court lacks subject matter jurisdiction to address Harr's requests for declaratory and injunctive relief. As such, Count VIII of her Corrected Amended Complaint should be dismissed, with prejudice.

Respectfully Submitted,

ROBB LEONARD MULVIHILL LLP

Dated: April 27, 2023                /s/ Bruce E. Rende
Dennis St. J. Mulvihill, Esquire
PA ID #16411
Bruce E. Rende, Esquire
PA ID #52714
William C. Robinson, III, Esquire
PA ID #327457
BNY Mellon Center
500 Grant Street, Suite 2300
Pittsburgh, PA 15219
P: (412) 281-5431
F: (412) 281-3711
Email: dmulvihill@rlmlawfirm.com
Email: brende@rlmlawfirm.com
Email: wrobinson@rlmlawfirm.com