IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTIE HARR, | ) | |
| Plaintiff, | ) | Civil Action No.  2:21-cv-1560 |
| v. | ) | |
| WASHINGTON AREA HUMANE SOCIETY, | ) | |
| MARANDA COOMBS (JOHN DOE 1), BARB | ) | *Electronically Filed* |
| LYLE (JOHN DOE 2), CHELSEI FLEEGA | ) | |
| (JOHN DOE 3), ESTATE OF GLEN L. | ) | |
| THOMSON, KELLY PROUDFIT, JOHN DOES | ) | |
| 4-10 agents and employees of the | ) | |
| Washington Area Humane Society, | ) | |
| HUMANE SOCIETY OF THE UNITED | ) | |
| STATES, SHALIMAR OLIVER, LEANA | ) | |
| STORMONT, LAURA KOIVULA, JOHN DOES | ) | |
| 11-20 agents and employees of the Humane | ) | |
| Society of the United States, HUMANE | ) | |
| ANIMAL RESCUE, JOHN DOES 21-30 agents | ) | |
| and employees of the Humane Animal | ) | |
| Rescue, KEN JERICHO, STEVEN TOPRANI, | ) | |
| MARVIN DAVIS, SAMUEL JENESKY, STATE | ) | |
| TROOPER TIEGARDEN, JOHN DOES 32-50 | ) | |
| unknown law enforcement Officers, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS WASHINGTON AREA HUMANE SOCIETY, THE ESTATE OF GLEN L. THOMSON, AND KELLY PROUDFIT'S BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendants, Washington Area Humane Society ("WAHS"), the Estate Glen L. Thomson[1] ("Thomson"), and Kelly Proudfit ("Proudfit") (hereinafter collectively "Defendants"), by and through their undersigned counsel, Robert J. Marino, Esquire, Amy J. Brinkos, Esquire and Dickie, McCamey & Chilcote, P.C., file this Brief in Support of their Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.  QUESTIONS PRESENTED

---

[1] Plaintiff failed to properly name the personal representative of the Estate of Glen L. Thomson, and this in itself a basis for dismissal of Plaintiff's Complaint.

A.   SHOULD PLAINTIFF'S AMENDED COMPLAINT AND CORRECTED AMENDED COMPLAINT BE DISMISSED DUE TO HER FAILURE TO COMPLY WITH THE COURT'S SCHEDULING ORDER?

SUGGESTED ANSWER:    YES

B.   SHOULD DEFENDANT WAHS BE DISMISSED FROM THIS LAWSUIT BECAUSE IT CANNOT BE HELD LIABLE UNDER *MONELL*?

*SUGGESTED ANSWER: YES.*

C.   SHOULD COUNTS I, III, IV and VI OF PLAINTIFF'S AMENDED COMPLAINT AND SECOND AMENDED COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM OF ALLEGED UNLAWFUL SEARCH AND SEIZURE AS A MATTER OF LAW?

*SUGGESTED ANSWER: YES.*

D.   ARE PLAINTIFF'S CLAIMS BARRED BY ISSUE PRECLUSION BY THE CRIMINAL AND CIVIL CASES WHICH JUDICIALLY DETERMINED IDENTICAL ISSUES RELATING TO JURISDICTION AND PROBABLE CAUSE?

SUGGESTED ANSWER: YES

E.   SHOULD STATE LAW CLAIMS OF PLAINTIFF'S AMENDED COMPLAINT AND CORRECTED AMENDED COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM, AS A MATTER OF LAW?

*SUGGESTED ANSWER: YES.*

F.   SHOULD DEFENDANTS THOMSON AND PROUDFIT BE GRANTED QUALIFIED IMMUNITY AGAINST PLAINTIFF'S CLAIMS, AND ON THAT BASIS AS WELL, BE DISMISSED FROM THIS CASES AS A MATTER OF LAW?

*SUGGESTED ANSWER: YES.*

G.   SHOULD PLAINTIFFS' REQUEST FOR RELIEF IN THE FORM OF PUNITIVE DAMAGES BE STRICKEN FOR LACK OF A BASIS IN LAW OR FACT?

*SUGGESTED ANSWER: YES.*

H.   SHOULD PLAINTIFF BE PRECLUDED FROM ASSERTING NEW CAUSES OF ACTION AND ALLEGING NEW FACTUAL PATTERNS AS A BASIS FOR HER CLAIMS WHICH ARE TIME BARRED?

*SUGGESTED ANSWER: YES*

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, at the time of the events alleged in the lawsuit, lived at 320 Second Street, Donora, Washington County, Pennsylvania, with 24 animals in various states of neglect. Plaintiff was also warehousing cats, chickens, and other animals in a church property located behind her house and at another property located on Reed Avenue in Monessen, Westmoreland County, Pennsylvania. See search warrants attached hereto Exhibits "A" and "B". A twenty-seven (27) page Affidavit of Probable Cause supported the warrants and identified all areas/properties to be searched and types of evidence to be collected. Id. The affidavits were co-signed by Defendant Thomson and Pennsylvania State Police Corporal Sarah Teagarden. Ex. A and B.

In both search warrants, and contrary to Plaintiff's allegations in the Amended Complaint, Glen Thomson identified himself in the paperwork as a Washington County Humane Officer. Further, both of the warrants specifically included search and seizure of computer files, memory storage devices, cell phones and medications. See Exh. B, page 7. The affidavit supporting the warrant specifically indicated that the number of animals to be seized were so numerous that WAHS required assistance by the Humane Society of the United States and that the searches would be recorded on video. See Exh. B, page 21.

Defendant Washington Area Humane Society ("WAHS") is a Pennsylvania non-profit corporation and the employer of humane society officer, Glen Thomson ("Thomson," now deceased and sued improperly as "The Estate of Glen L. Thomson" – an independent basis, as a matter of law, for the dismissal of that "party"), and Executive Director, Defendant Kelly Proudfit ("Proudfit"). Defendant Thomson was authorized to conduct investigations of claims of animal neglect and animal cruelty pursuant to 22 Pa. C.S. § 3701, et seq.

When Ms. Harr would not voluntarily relinquish the sick and neglected animals in her care to WAHS, as requested, WAHS, Humane Society of the United States ("HSUS"), and Humane Animal Rescue took lawful and appropriate steps to rescue the animals. On October 30, 2019, Pennsylvania State Police and SWAT team members, were engaged to execute the warrants at both locations. Personnel from WAHS, HSUS and Humane Animal Rescue, vet techs, and vets, were present at both locations to assist in the search and rescue. See Exh. C., Corrected Amended Complaint, County XIII.

Plaintiff initially refused to open the door of her Donora, Pennsylvania home to officers executing the search warrant. Id. When Plaintiff cracked open the door to see the warrant, an officer observed that Harr had a firearm just inside the door and yelled "she's got a gun." Id. Ms. Harr resisted arrest and had to be physically removed from the home by police officers. She claims that in the process police officers "popped stitches in [her chest] from a surgery that occurred a few weeks before." Id. During her removal from the house, Plaintiff alleges that her phone was dropped on the ground by police. She claims Glen Thomson and Kelly Proudfit went through her cellphone to "destroy evidence, videos, and photos of the searches." Count V.

The foundation for Plaintiff's entire cause of action is this: Plaintiff alleges that the search and seizure of the animals located in the Monessen house amounts to a constitutional violation because Glen Thomson was not registered as a humane officer in Westmoreland County. However, this precise issue has been fully adjudicated in not one, but two other actions.

First, Plaintiff was arrested for multiple felony counts of cruelty to animals. Ex. D – Criminal Complaint. In response to the criminal complaints, filed in the Court of Common Pleas of Washington County, Plaintiff raised several issues relating the issuance of the Search Warrant and the jurisdiction of Washington and Westmoreland Counties regarding Defendant

Thomson's authority to execute a search warrant. See Ex. E, Harr Omnibus Pretrial Motion for Leave to File Brief in Support dated August 5, 2021. The state court denied Plaintiff's Motion to Suppress, finding that the search warrants were based upon probable cause and therefore valid. Further, the court held that because the warrants were co-signed by State Police Corporal Teagarden, that jurisdiction was proper. See Ex. F, Order dated April 4, 2022, p. 3-4. Plaintiff subsequently entered a plea of *Nolo Contedere* on September 13, 2022, to two separate counts of Neglect of Animals, a Misdemeanor of the 3rd Degree, and was sentenced to one year probation as to each count, to run consecutively. Ex. G, Plea and Sentencing Order, including Colloquy. Plaintiff acknowledged in her colloquy that by pleading *nolo contendere*, she was limited to four grounds of appeal. Specifically, that the Court of Common Pleas of Washington County did not have jurisdiction over this matter. See, Ex. G, Paragraph 29; Ex. H, Transcript of Plea and Sentencing Hearing dated September 9. 2022. Plaintiff has not filed an appeal, on the basis of jurisdiction of Washington County, in the criminal case. See Ex. I, Criminal Docket Sheet dated January 16, 2023. Plaintiff is therefore bound and collaterally estopped from claims that Washington County lacked jurisdiction for criminal conduct that occurred in Westmoreland.

Secondly, Washington Area Humane Society filed an appropriate, separate civil lawsuit against Harr to recover the costs of care for the seized animals. Plaintiff asserted multiple defenses, including the issue of whether Defendant Thomson held the proper authority to issue a search warrant and whether there was sufficient probable cause to issue the search warrant. The Common Pleas Court of Washington County found that the seizure of the animals (all 204 animals seized from Washington and Westmoreland Counties) was proper. The Court awarded Washington Area Humane Society $1,113,765.33 for costs of care for the seized animals pursuant to 18 Pa. C.S.A. §30.5(c) on February 9, 2021. Plaintiff appealed the judgment on that

decision to the Pennsylvania Superior Court which ultimately denied Plaintiff's appeal. Ex. J Opinion and Order dated March 9, 2021. Further, Plaintiff's Petition for Allowance of Appeal to the Pennsylvania Supreme Court was denied. Ex. K, Order dated August 10, 2022.

Finally, Plaintiff's Corrected Amended Complaint introduces new facts and legal theories which were not included in Plaintiff's Initial Compliant[2]. Specifically, Plaintiff has included allegations that various Defendants "invited the media" into her property. (See Exh. C, Count III.) Furthermore, Plaintiff realizing her error failing to note that the Westmoreland County Search warrant was also signed by a State Police Officer, now alleges that State Trooper Teagarden had no knowledge of the facts set forth in the affidavit and signed off on false representations therein. (See Exh. C, Paragraphs 64- 70.) These allegations introduce an entirely new set of facts, which could have made at the time of the initial Complaint but are now barred by the statute of limitations.

### III. ALLEGATIONS OF PLAINTIFFS' AMENDED COMPLAINT

Plaintiff's Complaint alleges unlawful search and seizure, conversion, intrusion upon seclusion, and intentional infliction of emotional distress. Plaintiff alleges that the conduct of the defendants "was outrageous" in an attempt to justify the award of punitive damages.

### IV.  STANDARD OF REVIEW

When considering a Motion to Dismiss under the Federal Rules of Civil Procedure, the Court must accept as true, well-pled allegations of fact in Plaintiff's Complaint, and construe them in a light most favorable to the Plaintiff.  The Court may dismiss the claim if it appears

---

[2] The Plaintiff's Amended Complaint and Corrected Amended Complaint also name Maranda Coombs, Barb Lyle and Chelsei Fleega, each in their individual capacity and are described as WAHS Defendants, however, none of these individuals have been served with original process. Moreover, the applicable statute of limitations as to each of these claims against these individuals has expired.

beyond a reasonable doubt, that Plaintiff cannot prove those set of facts in support of a claim which would entitle him to relief. *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014; *Labove v. Lalley*, 809 F.2d 220 (3d Cir. 1987). The Court may consider exhibits attached to the Complaint, and matters of public record. *Benefit Guarantee Corporation v. White Consol. Industries*, 998 F.2d 1192, 1196 (3d Cir. 1993).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (quoting *Bell Atlantic Corp. v. Twombly*. 550 U.S. 544, 570, 127 S. Ct. 1995, 167 L. Ed. 929 (2007)). Accordingly, "a plaintiff must allege facts sufficient to show that there is 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. at 1949. "[A] complaint's 'factual allegations must be enough to raise a right to relief above the speculative level,'". *Ideen v. Straub*, 385 Fed. Appx. 123, 124 (3d Cir. 2010) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir. 1997).

Ultimately, a defendant may succeed on a Rule 12(b)(6) motion to dismiss "by showing that the factual allegations in a plaintiff's complaint do not state a plausible claim for relief." In deciding a Motion to Dismiss, district courts may rely on documents "integral to or explicitly relied upon in the Complaint" without converting the Motion to Dismiss into one for summary judgment. *In re: Rockefeller Ctr. Props., Inc., Sec. Litig.*, 184 F. 3d 280, 292-3 (3d Circ. 1999). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated **where plaintiff**

**has actual notice and has relied upon these documents** in framing the complaint." *In re: Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Circ. 1997)(emphasis added).

Pertinent to qualified immunity, a defendant may raise an affirmative defense 'on a rule 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint.'" *Kauffman v. Pennsylvania Society for the Prevention of Cruelty to Animals*, 766 F. Supp.2d 555, 561 (E.D. Pa. 2011) (internal citations omitted).

## V.  LEGAL ARGUMENT

**A.      Plaintiff's Amended Complaint and Corrected Amended Complaint were not timely filed and should be dismissed.**

*Pro se* Plaintiff, Christie Harr, initiated this action on October 29, 2021, asserting violations of her civil rights under 42. U.S.C. § 1983 by numerous defendants, stemming from an animal neglect investigation at two properties in which she was living and/or housing animals pursuant to Search Warrants in October of 2019. Plaintiff's Original Complaint was drafted utilizing the Court's Civil Pro Se Forms for Non-prisoners and was filed on October 29, 2021.  (ECF 1). Plaintiff named "John Does 1 through 10" and identified them as "Agents and employees of the Washing Area Humane Society."  This action was stayed during the pendency of criminal charges against Plaintiff. Following resolution of the criminal matter, the stay was lifted on December 14, 2022 via Order of Court (ECF No. 61).

The WAHS Defendants filed a Motion to Dismiss and supporting Memorandum of Law pursuant to Fed. R. Civ. Pro. No. 12(b)(6) on January 17, 2023. Plaintiff requested and was granted two extensions of time to Amend the Complaint (See Orders dated February 7, 2023 and March 17, 2023, ECF Nos. 88 and 90 respectively). Pursuant to ECF 90, Plaintiff's Amended Complaint was due on or before March 28, 2023. Next, Plaintiff filed two documents: Amended Complaint (ECF 91) on March 29, 2023 and a document entitled "Corrected Amended

Complaint" (ECF 92) on April 6, 2023.      The WAHS Defendants contend that both ECF 91 and ECF 92 were not timely filed by the Court's due date and therefore should be dismissed. First, Rule 6(b)(1)(B) provides that for any act that must be done by a party to a federal court proceeding within a specified time frame, the court may "for good cause, extend the time…after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Second, Rule 60(b)(1) provides for a party or their legal representative to obtain relief from an adverse judgment of a federal court for "mistake, inadvertence, surprise or excusable neglect." Fed. R. Civ. P. 60(b)(1). Both types of excusable neglect can only be obtained by motion to the court. Plaintiff failed to seek leave for the late filing. Given the two extensions sought by Plaintiff and granted by the Court with dates certain for response, Plaintiff should have either complied with the deadline or sought additional time. Plaintiff has not provided any reason for the late filing. Plaintiff is required to demonstrate good faith and a reasonable basis for noncompliance with the Court's deadline. *See, generally, Violette v. P.A. Days, Inc.* 427 F.3d 1015, 1017-18 (6th Cir. 2005); *In re Paine Webber LPs Litig.,* 147 F.3d 132, 135 (2d Cir. 1998). This matter is based upon events which occurred almost four years ago.  Plaintiff's flouting of this court's orders requires dismissal

**B.      WAHS cannot be liable under § 1983.**

Plaintiff has sued WAHS directly and under a theory of *respondeat superior*, alleging that the "Estate of Humane Officer Thomson" and Proudfit acted in their respective capacities on behalf of and as agents and employees of WAHS. (Ex. C, Counts I and IV.).

All Counts must be dismissed as to WAHS, as "our Court of Appeals has consistently rejected *respondeat superior* liability and established *Monell* as the only basis for organizational liability under § 1983."  *Kauffman*, 766 F. Supp. 2d at 562.  Under *Monell v. Dep't of Soc. Srvs.*,

436 U.S. 658, 694 (1978), a local governmental entity may not be sued under § 1983 for its employees' or agents' infliction of injury. It is only when that injury is a result of a relevant organizational policy or custom, "the implementation of which" results in a putative plaintiff's alleged injury. While Plaintiff may argue that *Monell* applies only to municipal entities, and not, as here, a private non-profit Washington Area Human Society, our Court of Appeals rejected this argument. See, *Kauffman*, 766 F. Supp. 2d at 562 (E.D. Pa. 2011) (citing cases) (*determining that humane society police officers are entitled to qualified immunity when a government actor directs a private individual's behavior*).

This Court must look to the Amended Complaint for allegations that WAHS' actions constituted a policy or custom "evincing willful disregard or deliberate indifference to plaintiffs' rights." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1155 (3d Cir. 1995). In the instant case, Plaintiff fails to plead any facts to establish that WAHS engaged in a "pattern of constitutional violations" which is "ordinarily necessary" to substantiate such a civil rights claim. Rather, Plaintiff sets forth bald assertions without any factual support that there was a policy, custom or practice which: 1) existed, and 2) caused a constitutional violation. (See Exh. C. Count I, Paragraph 116.) Plaintiff also alleged in Count IV, that WAHS "failed to train its Humane Police Officers … the lack of training and WAHS's policies resulted in constitutional injuries." (See Exh. C, Count IV, Paragraphs 136-140.) Plaintiff's threadbare allegations are insufficient under *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) and *Bell Atlantic Corp. v. Twombly*. 550 U.S. 544, 570, 127 S. Ct. 1995, 167 L. Ed. 929 (2007)). Accordingly, Plaintiff's claims against WAHS on a theory of *respondeat superior* and failure to train must fail.

**C.** **Plaintiff fails to state a claim for unlawful search and seizure.**

Plaintiff fails to state a viable § 1983 claim for unlawful search and seizure. To state a proper § 1983 claim based upon an allegedly invalid search warrant, the plaintiff must allege that 1) the state actor "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or missions that create a falsehood in applying for the warrant," and 2) that "such statements or omissions are material or necessary to the finding of probable cause." *Allen v. SPCA,* 488 F. Supp. 2d 450, 464 (M.D. Pa. 2007). Furthermore, the facts and legal issues in the underlying criminal and civil matters and Plaintiff's subsequent plea of *nolo contendere* are *res judicata* and/or collateral estoppel, and as such, based on that doctrine alone, preclude Plaintiff's claims on identical issues in this matter.

> **1.)** **Plaintiff has failed to plead sufficient facts to support a claim that the search warrant issued in this case was improper and therefore should be dismissed.**

Plaintiff alleges that Defendant Thomson obtained an invalid search warrant for the search in Westmoreland County because he was not a registered humane officer there. However, the search warrant was co-signed by Pennsylvania State Trooper Sara Teagarden to satisfy multi-jurisdictional requirements. Plaintiff does not challenge the legally sufficiency of the affidavit of probable cause supporting the search warrant. Plaintiff claims only that Glen Thomson was not a registered Westmoreland County Humane Officer. The affidavit of probable cause and search warrants are attached to Defendants' 12(b)(6) Motion to Dismiss as Ex. "A" and "B".

Assuming for purposes of the Motion to Dismiss that these Plaintiff's allegations are true, which Defendants adamantly deny, Plaintiffs' claims are still deficient. In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that a Section 1983 plaintiff establishes a Fourth

Amendment violation when procuring a search warrant when the following two factors are met: 1) the officer made false statements or omissions in the affidavit either deliberately or with reckless disregard for the truth, and: 2) those misstatements or omissions were material to the judicial officer's finding of probable cause. *Id.*, at 231.

Moreover, a search warrant in Pennsylvania criminal law is obtained only when it is approved by the District Attorney and issued by a Magisterial District Judge. In the instant case, the search warrant was issued by Magisterial District Judge Wilson. This Court has found it unreasonable to question a magistrate's determination of probable cause:

> [W]hen a warrant is alleged to violate the Fourth Amendment, the fact that a neutral magistrate has issued it "is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt*, 132 S. Ct. at 1245 (citing *United States v. Leon*, 468 U.S. 897, 922-23, 104 S. Ct. 3405, 82 L. ed. 2d 677 (1984)). "[I]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause … ." *Id.* (citing *Leon*, 468 U.S. at 921). Reviewing courts are to "accord significant deference to a magistrate's findings of probable cause to arrest." *Lindenbaum v. Erenius*, 433 F. App'x 119. 120 (3d Cir. 2011) (citing *Gates*, 462 U.S. at 236) … "in the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination." *Messerschmidt*, 132 S. Ct. at 1245 (citing Malley, 475 U.S. at 341; Leon, 468 U.S. at 923). Therefore, [p]laintiff must meet the high threshold of demonstrating that no reasonably competent officer would have concluded that [officer's] warrant should not have been issued because [the] affidavit was so "lacking in indicia of probable cause as to render official belief in its exercise entirely unreasonable." Id. "The occasions on which this standard will be met may be rare, but so too are the circumstances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions." *Id.* At 1250.

Plaintiff's conclusory, bald allegations surrounding the unlawful search and seizure claim fail the pleading requirements set forth in *Twombly* and *Iqbal*. Thus, Plaintiff fails to plead

viable Fourth, Fifth and Fourteenth Amendment violation against Defendants WAHS, Thomson and Proudfit.

> **2.)    Plaintiff's claims are barred by claim and/or issue preclusion because the jurisdiction of Thomson and whether the warrants were supported by probable cause have already been judicially determined.**

This court may consider the allegations contained in the complaint as well as exhibits attached to the complaint and matters of public record. See 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990).   In support of this Motion to Dismiss, these Defendants have attached the subject warrants and pleadings from both the criminal cases and the civil case against Plaintiff, all of which are now closed. Further, Plaintiff's *nolo contendere* plea is controlling in this matter, as the underlying facts and issues raised are the same.

In Pennsylvania, "a conviction from a guilty plea is equivalent to a conviction from a trial-by-jury."  *Domitrovich v. Monaca*, No. 2:08cv1094, 2010 WL 3489137, at *9 (W.D. Pa. Sept. 1, 2010). A criminal conviction collaterally estops a defendant from denying his acts in a subsequent civil action/trial and prevents questions of law or issues of fact determined in the criminal proceedings from being relitigated in a subsequent civil suit. *Ramsey v. Harley*, No. Civ. A. 00-3909, 2002 WL 32349129 at *1 (E.D. Pa. March 8, 2002); *Columbia Medical Group, Inc. v. Herring & Roll, P.C.*, 829 A.2d 1184, 1191 (Pa. Super. Ct. 2003). In Pennsylvania, for a trial judge to accept a guilty plea, the Commonwealth must present a factual basis supporting the guilty plea and the defendant must agree to it. *Commonwealth v. Hines*, 496 Pa. 555, 560, 437 A.2d 1180 (1981). A party is collaterally estopped from denying facts which formed the factual basis for the entry of a guilty plea.  *Domitrovich*, 2010 WL 3489137, at *5. Moreover, a conviction, upon examination by a judicial officer, conclusively establishes the existence of probable cause.

*Imbergamo v. Castaldi*, 392 F. Supp. 2d 686, 696–97 (M.D. Pa. 2005), *citing, Hamidian v. Occulto*, 854 F.Supp. 350 (M.D.Pa.1994)(*quoting*, *Bussard v. Neil*, 616 F.Supp. 854, 857 (M.D.Pa.1985)). *See also, Andresen v. Pennsylvania*, 2021 WL 9273954 (M.D. Pa. 2021)(plea of nolo contendere precluded § 1983 action for malicious prosecution); *Steele v. City of Erie*, 113 Fed. Appx. 456 (3d Cir. 2004) (arrestee's plea of *nolo contendere* to summary offenses barred § 1983 action for malicious prosecution based upon lack of probable cause to support search warrant.)

The record is clear that the Honorable Brandon P. Neuman considered Plaintiff's arguments regarding whether Defendant Thomson had the requisite authority to issue the search warrants and whether the search warrants were supported by probable cause. Judge Neuman ruled against the Plaintiff on both arguments. Plaintiff's subsequently entered a plea of *nolo contedere* and did not file a subsequent appeal and therefore, is estopped from arguing here that the search warrants lacked probable cause.[3] These issues have been judicially determined and Plaintiff cannot assert this claim now. COUNTS I, III, IV and VI of Plaintiff's Complaint must be dismissed for failure to state a claim for unlawful search and seizure.

**D.    Failure to plead state law claims (conversion, intrusion upon seclusion, and intentional infliction of emotional distress) properly, and/or to set forth a factual basis, requires dismissal of all of these claims as a matter of law.**

### i.    Conversion / Trespass to Chattels

The tort of trespass to chattel requires: 1) a claimant; 2) a claim; 3) wrongful conduct; 4) effect of wrongful conduct; and, 5) intention. The claim or remedy is not necessarily for the full value of the chattel, as in conversion; instead, it is for the actual loss or harm caused, which

---

[3] Plaintiff cites her statements made at the colloquy in support of the argument that the nolo contendere plea only applied to the Washington County charges. Defendants counter that this may be Plaintiff's subjective understanding of the proceedings, however, the judgment entered does not make this distinction and to the extent Plaintiff desired additional clarity on the judgment, she could have appealed the issue to the Superior Court of Pennsylvania, which she failed to do. Additionally, Plaintiff's appeals relating to the final judgment against Plaintiff for the costs of animal care are final and determinative of the matter.

may or may not be the full value. See Restatement § 222A, comment c. If there is a dispossession, some courts award nominal damages. See Prosser, supra, § 14, p. 77; Restatement § 222, comment a. As stated in Prosser, supra, § 14, p. 76:

> "Its [trespass to chattels] chief importance now is that there may be recovery where trespass would lie at common law, for interferences with the possession of chattels which are not sufficiently important to be classed as conversion, and so to compel the defendant to pay the full value of the thing with which he has interfered. Trespass to chattels survives today, in other words, largely as a little brother of conversion."

*Spickler v. Lombardo*, 1977 Pa. Dist. & Cnty. Dec. LEXIS 309, *20-22, 3 Pa. D. & C.3d 591, 606-608.

Plaintiff fails to plead a viable claim for conversion/trespass to chattel. "The Pennsylvania Supreme Court defines conversion as 'an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." *Norriton East Realty Corp. v. Central-Penn Nat'l Bank*, 254 A.2d 637, 638 (Pa. 1969). Plaintiffs claim that Defendants, including Thomson, executed a search warrant to seize animals on Plaintiff's properties. While Plaintiff alleges that the search warrant was invalid due to failure of Thomson to register as a humane officer in Westmoreland County, again, Plaintiff has failed to state a claim for wrongful search and seizure. Any taking of Plaintiff's property would have been subject to the search warrant, and thus such taking occurred with lawful justification. Defendants were authorized by Pennsylvania law to seize evidence associated with violations of animal cruelty laws including the animals, which were the subject of said violations. 18 Pa. Cons. Stat. § 5553. The Plaintiff's claim for conversion/trespass to chattels must be dismissed with prejudice.

### ii.    Intrusion upon Seclusion/Invasion of Privacy

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. H*arris v. Easton Pub. Co*., 335 Pa. Super. 141, 153, 483 A.2d 1377, 1383, 1984 Pa. Super. LEXIS 6605, *9, 11 Media L. Rep. 1209. As a matter of law, exercising a search warrant pursuant to an animal neglect investigation, a proper and legal Affidavit of Probable Cause approved by an independent judicial officer, cannot constitute "intrusion upon seclusion." The argument is absurd on its face.  The search warrant was properly supported by a twenty-seven (27) page Affidavit of Probable Cause. On this basis alone, these claims must be dismissed. Nevertheless, Plaintiff's claims for intrusion upon seclusion must also be dismissed because plaintiff failed to bring these claims within the one year statute of limitations pursuant to 42 Pa. C.S § 5523(1).

### iii.    Intentional Infliction of Emotional Distress

Plaintiff fails to state a claim for intentional infliction of emotional distress. "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *See Kazansky v. King David Mem'l Park*, 527 A.2d 988, 989 (Pa. 1987) (rejecting the adoption of § 46 of the Restatement, while noting that the facts in this case fail to satisfy the tort as enunciated in the Restatement).

The Superior Court has held that the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First National Bank of Mifflintown,* 531 A. 2d 1122, 1125 (Pa. Super. 1987).   Plaintiff has failed to plead outrageous

conduct that is "utterly intolerable in a civilized society." To the contrary, society looks to protect animals from cruelty and abuse, so the execution of a search warrant to seize animals from a neglectful, abusive and intolerable situation, as here, is hardly shocking to civilized society. What <u>is</u> shocking to civilized society is the Plaintiff's own, outrageous abuse of these animals. Defendants are devoted to rescuing animals. The intentional infliction of emotional distress claim should be dismissed with prejudice.

**E.    Defendants Thomson and Proudfit are entitled to qualified immunity.**

The Pennsylvania legislature has made it clear that humane society police officers such as Defendant Thomson are generally protected from civil liability.

> **(a) General Rule.** --A humane society police officer acting in good faith and within the scope of the authority provided under this subchapter **<u>shall not be liable for civil damages</u>** as a result of an act or omission in the course of an investigation or enforcement action.
>
> **(b) Nonapplicability.** -- Subsection (a) shall not apply to an act or omission intentionally designed to harm or to an act or omission that constitutes gross negligence or willful, wanton or reckless conduct.

18 Pa. C.S.A. § 5557 (West) (as amended and effective August 28, 2017) (emphasis added).

Plaintiffs' Complaint fails to trigger Section (b), as argued *supra*. Plaintiff has not stated a claim for unlawful search and seizure, conversion/trespass to chattel, invasion of privacy, and intentional infliction of emotional distress against Defendants Thomson and Proudfit. While, Proudfit is executive director of WAHS, rather than a humane society officer, Plaintiff has pleaded that agents and employees of WAHS, i.e., Proudfit, acted under color of law.  At all times, Thomson and Proudfit acted in good faith and within the scope of authority provided by statute. Therefore, Plaintiffs' Complaint must be stricken in its entirety.

Plaintiff cannot argue that her claims are couched in federal law and constitutional rights, preempting Pennsylvania law. Plaintiff's Complaint must still be dismissed. Qualified

immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The test for qualified immunity is whether "the contours of" Plaintiff's' asserted rights were "sufficiently clear that a reasonable official would understand that what he is doing violates that right" i.e. whether "in the light of pre-existing law, the unlawfulness" of "an official action is ... apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also*, *Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information [he] possessed.")

The Court must award qualified immunity if the official: 1) did not commit a constitutional violation; or, 2) the right at issue was not clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009).

Qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Gilles v. Davis*, 427 F. 3d 197, 203 (3d Cir. 2005). This occurs regardless of whether the official's error is a mistake of law, a mistake of fact, or a mistake on mixed questions of law and fact. *Pearson*, supra.

As discussed above, Plaintiff has not stated any claim of a constitutional violation against Defendants. Officer Thomson and Proudfit were exercising the powers granted to them under Pennsylvania animal cruelty laws. Thus, these Defendants are entitled to qualified immunity, under either Pennsylvania or federal law.

**F.      P**unitive Damages Should be Stricken.

"Punitive damages are available against a state actor, under Section 1983, upon a showing of reckless or callous disregard or indifference to the plaintiff's rights and safety, as

well as intentional violations of law." *Moody v. Philadelphia Hous. Auth.*, 673 A.2d 14, 20 (Pa. Commw. Ct. 1996), *citing Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Keenan v. City of Philadelphia*, 983 F.2d 459 (3d Cir. 1992). To the extent that Plaintiff's Complaint can be interpreted as seeking punitive damages, Plaintiff has failed to plead any facts whatsoever establishing that Defendants showed a reckless or callous disregard or indifference to Plaintiff's rights and safety or intentional violations of the law.

As argued above, Plaintiffs have failed to state a § 1983 claim for unlawful search and seizure, conversion/trespass to chattel, intrusion upon seclusion/invasion of privacy, and intentional infliction of emotional distress against Defendants; thus, any request for punitive damages against Defendants must be dismissed.

**G.      Plaintiff's Corrected Amended Complaint Introduces New Causes of Action and Allege New Factual Patterns as a Basis For Her Claims Which Are Time Barred**

Plaintiff's has introduced new facts and legal theories which were not included in Plaintiff's Initial Complaint and are now time-barred. (See, Plaintiff's initial Complaint (ECF 1). In Plaintiff's Corrected Amended Complaint Plaintiff now alleges that Defendants "invited the media" into her property. (See Exh. C, Count III.) Plaintiff also now alleges that State Trooper Teagarden had no knowledge of the facts set forth in the affidavit and signed off on false representations therein. (See Exh. C. Paragraphs 64- 70.) An amendment introducing a new cause of action will not be permitted after the Statute of Limitations has run in favor of a defendant: *Spry v. Farmers' Union Mut. Fire Ins. Co. of Pennsylvania*, 101 Pa.Super. 49 (1931); *Wessling v. Latkanich*, 144 Pa.Super. 317, 19 A.2d 553 (1941); *Coll v. Westinghouse Electric & Mfg. Co.*, 230 Pa. 86, 79 A. 163 (1911); *Arner v. Sokol*, 373 Pa. 587, 96 A.2d 854 (1953). This would constitute 'resulting prejudice' to the adverse party." *Wilson v. Howard Johnson Rest.*, 421 Pa. 455, 461, 219 A.2d 676, 679 (1966). Each of the claims introducing new parties and new

factual bases for the alleged constitutional violations and tort claims are time-barred and should be dismissed.

## VI.    CONCLUSION

For all of the reasons enumerated and examined above, Plaintiff's Complaint must be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,
DICKIE, McCAMEY & CHILCOTE, P.C.

Date:  April 27, 2023          By:____/s/____Robert J. Marino_____
                               Robert J. Marino, Esquire
                               PA I.D. #30284

                               Amy J. Brinkos, Esquire
                               PA I.D. #77023

                               Two PPG Place, Suite 400
                               Pittsburgh, PA  15222-5402
                               412-281-7272
                               rmarino@dmclaw.com

                               *Attorneys for Defendants, WASHINGTON
                               AREA HUMANE SOCIETY, THE ESTATE OF
                               GLEN THOMSON AND KELLY PROUDFIT*

<u>**CERTIFICATE OF SERVICE**</u>

I, Robert J. Marino, hereby certify that a true and correct copy of the foregoing **Brief in Support of Motion to Dismiss** has been served upon Plaintiff, via regular mail, and all counsel of record, via CM/ECF filing, this 27th day of April, 2023.

<div style="margin-left: 50%;">

DICKIE, McCAMEY & CHILCOTE, P.C.

By:   */s/*   *Robert J. Marino*
        Robert J. Marino, Esquire
        PA I.D. #30284
        rmarino@dmclaw.com

        Amy J. Brinkos, Esquire
        PA I.D. #77023
        abrinkos@dmclaw.com

        Two PPG Place, Suite 400
        Pittsburgh, PA  15222-5402
        412-281-7272

        *Attorneys for Defendants, WASHINGTON*
        *AREA HUMANE SOCIETY, THE ESTATE OF*
        *GLEN THOMSON AND KELLY PROUDFIT*

</div>

16155810.1