**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTINE HARR, | Case No. 2:21-cv-1560 |
| Plaintiff, | *Honorable W. Scott Hardy* |
| vs. | |
| WASHINGTON AREA HUMANE SOCIETY, HUMANE SOCIETY OF THE UNITED STATES, HUMANE ANIMAL RESCUE, ESTATE OF GLEN L. THOMSON, LAURA KOIVULA, SHALIMAR OLIVER, SAMUEL JENESKY, LEANA STORMONT, KELLY PROUDFIT, KEN JERICHO, STEVEN TOPRANI, MARVIN DAVIS, JOHN W. PECK, JAMES R. HOPSON, JOHN DOES 1 THROUGH 50, | |
| Defendants. | **JURY TRIAL DEMANDED** |

**DONORA BOROUGH DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

AND NOW COME Defendants KEN JERICHO and STEVEN TOPRANI (herein "Donora Defendants"), by and through their attorneys, CHARLES H. SAUL, ESQUIRE, KYLE T. MCGEE, ESQUIRE and MARGOLIS EDELSTEIN, and hereby submit their Brief in Support of their Motion to Dismiss Plaintiff's Amended Complaint, as follows:

**I.    INTRODUCTION**

The original Complaint was filed on November 2, 2021, by Christie Harr, *pro se* (ECF Doc. 5). After a stay of this case pending a concurrent, related state court case and after Motions to Dismiss were filed by all the Defendants subsequent to the lifting of the stay, Plaintiff filed a corrected Amended Complaint on April 6, 2023 (ECF Doc. 92).

The Amended Complaint alleges violations of the 4th and 14th Amendments of the United States Constitution and certain state tort violations by the Washington Area Humane Society ("WAHS") and certain representatives thereof; the Humane Society of the United States and

certain representatives thereof; and the Donora Defendants in connection with searches of her residences and seizures of her property in Westmoreland and Washington County on October 30, 2019. Considering the *pro se* Plaintiff's pleading most generously, it appears that Plaintiff's primary allegations against the Donora Defendants are unlawful seizure of her property under the 4th Amendment and procedural and substantive due process violations of the 14th Amendments by the taking of property without prior notice.

## II. THE FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT AGAINST THE DONORA DEFENDANTS

Plaintiff alleges that before and after searches of her residence and buildings in Donora property by the WAHS and HSUS Defendants, the WAHS and HSUS Defendants contacted Ken Jericho, ordinance officer for Donora, Pennsylvania, and/or Steven Toprani, Solicitor for Donora, Pennsylvania, and asked them to help make sure that Plaintiff cannot access her residence and buildings in Donora, Pennsylvania (Amended Complaint, ¶ 248).

According to Plaintiff, she operated a non-profit animal shelter in Donora, Washington County, Pennsylvania (Amended Complaint, ¶ ¶ 48, 39, 76). A tornado caused damage to the shelter, and Plaintiff was in the process of moving the shelter to Westmoreland County when agents of the WAHS engaged in a surreptitious investigation in which they entered her property in Westmoreland County and seized her animals and other property (Amended Complaint, ¶¶ 48, 51).

In October 2019, the WAHS Defendants and the HSUS Defendants drafted a search warrant (Amended Complaint, ¶ 60). Based upon false representations by the WAHS Defendants and the HSUS Defendants, a Magisterial District Judge approved the search warrant for Plaintiff's location in Westmoreland County (Amended Complaint, ¶ 70). On or about October 30, 2019, the WAHS Defendants and the HSUS Defendants searched Plaintiff's location in Westmoreland County. The WAHS Defendants then arrested Plaintiff based upon a cat on the Westmoreland property (Amended Complaint, ¶ 75). In addition, the HSUS Defendants entered the Westmoreland County property and seized the property of

Plaintiff (Amended Complaint, ¶ 80).

The WAHS Defendants and HSUS Defendants also arranged for various law enforcement officers to execute search warrants at the Washington County property (Amended Complaint, ¶ 159). The WAHS Defendants and HSUS Defendants entered the property and seized various items, including guns, weapons, clothing, medical supplies, personal modification, and other items (complaint, ¶ 160).

On September 9, 2022, Plaintiff pled no contest to charges of Neglect of Animals, 18 Pa. C.S. 5532(a)(1), a third-degree misdemeanor in regard to animals that Plaintiff had stored at her Donora, Washington County, PA residence (Amended Complaint, ¶¶ 31 – 40).

In entering her plea, Plaintiff testified that due to the damage to the Washington County property from a tornado in August 2016, and her inability to raise necessary funds for the repairs, the condition of the property was *"less than favorable"* and that she was in the middle of moving animals to *"a new, safe location"* and had 75% of them already removed when the search and seizure occurred at the Washington County property (Amended Complaint, ¶ ¶ 31, 39).

Plaintiff lawfully possessed and occupied the residence and church located in Donora, PA (Amended Complaint, ¶ 249). On or about October 30, 2019, Jericho placed red notices on her Washington County (Donora) property claiming it was "condemned" and that no person could enter (Amended Complaint, ¶ 250). The notices cited the International Property Maintenance Code (Amended Complaint, ¶ 250).

Subsequently, Plaintiff spoke with Jericho, who stated that Plaintiff could not obtain her personal belongings from the premises and could not enter (Amended Complaint, ¶ ¶ 255, 257).

On November 7, 2019, Plaintiff met with Jericho, who stated he would allow Plaintiff limited access to obtain her personal effects if she returned at 8:30 a.m. the next day (Amended Complaint, ¶¶ 259-260).

On November 8, 2019, Plaintiff again met with Jericho. During this meeting he stated that he would allow only 20 minutes in the house to obtain Plaintiff's personal effects, but it would not

occur that day (Amended Complaint, ¶¶ 261-262).

Plaintiff stated she wanted to clean the house and remove all of her property. Jericho stated she could not enter the house and made demands for a lease recorded with the Recorder of Deeds, and other non-existent documents (Amended Complaint, ¶¶ 263-264).

Jericho threatened to have the utilities shut off to the house. (Amended Complaint, ¶ 265).

Toprani also told Plaintiff that the property was condemned and that she could not retrieve her belongings (Amended Complaint, ¶ 267).

On November 11, 2019, agents of the Police Department advised Plaintiff that she had authority to enter the home to remove property and clean it, but at the direction of Jericho she could not live or sleep there (Amended Complaint, ¶ 272).

On November 19, 2019, while loading a U-Haul with property from the Donora property, Jericho arrived and started threatening and yelling at Plaintiff's father (Amended Complaint, ¶ 274).

Jericho called the police and said, "I'm at the Harr residence and you need to come up and arrest that bitch because she's in the house." (Amended Complaint, ¶275). However, the police advised Jericho that Plaintiff was allowed in the house (Amended Complaint, ¶276).

## III.  STANDARD OF REVIEW

The United States Court of Appeals for the Third Circuit has recently restated the standard for evaluating Complaints at the Motion to Dismiss stage, as follows:

> The plausibility of claims challenged at the motion-to-dismiss stage is analyzed through a three-step process. See *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The first step is the articulation of the elements of the claim. See Id. (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 675, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The second step involves reviewing the complaint to disregard any " 'formulaic recitation[s] of the elements of a ... claim' or other legal conclusion," Id. at 789 (alteration in original) (quoting Iqbal, 556 U.S. at 681), as well as allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual," Id. at 790 (citation omitted). The third step evaluates the plausibility of the remaining allegations - after assuming their

veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor. See Id. at 787, 790; see also *Iqbal,* 556 U.S. at 679; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). If, after completing this process, the complaint alleges "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of a claim, then it plausibly pleads a claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). But if "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted).

*Lasche v. New Jersey,* No. 20-2325, 2022 U.S. App. LEXIS 5364, 2022 WL 604025, at *3-4 (3d Cir. Mar. 1, 2022; non-precedential); see also, *Tatel v. Mt. Lebanon Sch. Dist.*, 2022 U.S. Dist. LEXIS 19608 at * 19-20 (W.D. Pa. 2022, J. Conti); *Smith v. DeJoy*, 2022 U.S. Dist. LEXIS 207142 *3-6 (W.D. Pa. 2022, J. Hardy).

In deciding whether a plaintiff has pled a claim upon which relief may be granted, the Court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Extrinsic evidence is usually not permitted to be considered in ruling on a motion to dismiss. However, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

In addition, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). A court may also consider indisputably authentic documents. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Golden v. Cook,* 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publicly available records and transcripts from judicial proceedings 'in related or underlying cases

which have a direct relation to the matters at issue.'") (citations omitted). Thus, the Court may take judicial notice of state court records without converting a 12(b)(6) motion to dismiss into a motion for summary judgment. See, e.g., *Pristas v. Esper*, 2018 U.S. Dist. LEXIS 47080 (W.D. Pa. Mar. 22, 2018).

## IV.   ARGUMENT

### A.   Plaintiff's procedural due process claim under the Fourteenth Amendment against the Donora Defendants regarding the condemnation of her residence without prior notice fails due to a meaningful post-deprivation process.

The gist of Plaintiff's primary allegations against Toprani and Jericho, as best understood by the Donora Defendants, is an allegedly unjustified condemnation issued without prior notice.

The United States Court of Appeals for the Third Circuit uses a two-step analysis in evaluating a Section 1983 failure to provide procedural due process claims. The 1st step questions whether the asserted individual interests are within with the Fourteenth Amendment's protection of "life, liberty, or property." The second step questions whether the procedures available to the plaintiff provide the plaintiff with "due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Assuming, *arguendo,* that Plaintiff had a property interest, it is the 2nd prong that is at issue herein.

As to the afforded procedures, "[a] fundamental requirement of due process is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187 (1965).

Although a pre-deprivation hearing is generally required before a state actor deprives someone of a property interest, there are circumstances in which a pre-deprivation process is not required, as long as there is some meaningful post-deprivation process. *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008). Thus, a pre-deprivation process is not required if there is a need for "quick action by the State." Id.  Accordingly, a pre-deprivation

hearing is not required in emergency situations. Id. To establish whether there is an emergency, the Third Circuit uses a deferential standard. Id. at 418. The government must have "competent evidence supporting the reasonable belief" that an emergency exists. *Id.*

In the instant case, Plaintiff objects to the condemnation of the Donora property by the Donora Defendants. The condemnation notice, therefore, is integral and explicitly relied upon by Plaintiff in her Complaint allegations against the Donora Defendants. The condemnation notice in question was issued on October 30, 2019, by Jericho, Code Enforcement Officer, and was sent to and posted at Plaintiff's Donora, PA residence (A true and correct copy of this condemnation notice is contained at Exhibit B).

The condemnation notice stated that the property was condemned pursuant to "Ordinance 1390; Section 108.1.3 – Unsafe Structures and Equipment." Ordinance 1390 (attached hereto as Exhibit A) is a Donora Ordinance adopting the 2012 Edition of the International Property Maintenance Code ("IPMC") (Exhibit C contains relevant sections of the IPMC").

Section 108 of the IPMC is entitled, "UNSAFE STRUCTURES AND EQUIPMENT."

"Section 108.1 General," provides:

**When a structure or equipment is found by the *code official* to be unsafe, or when a structure is found unfit for human *occupancy*, or is found unlawful, such structure shall be *condemned* pursuant to the provisions of this code (emphasis in original).** *Id.*

The Donora Borough's condemnation notice issued by Jericho specifically quoted Section 108.1.3 of the IPMC:

**Structure unfit for human occupancy:** A structure is unfit for human occupancy whenever the code official finds that such structure is unsafe, unlawful, or, because the degree to which the structure is in disrepair or lacked maintenance, is unsanitary, vermin or rat infested, contains filth and contamination, or lacks ventilation, illumination, sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes a hazard to the occupants of the structure or to the public." *Id.*

A further basis cited in the notice was:

"Section 309 – Pest Elimination – All structures shall be kept free from insect and rodent infestation." *Id.*

Finally, with respect to an abandoned church on the property, the notice cited to and quoted the following IPMC provision:

**Section 304 – Exterior Structure, 304.1.1.8 – Unsafe conditions:** Roofing or roofing components that have defects that admit rain, roof surfaces with inadequate drainage, or any portion of the roof framing that is not in good repair with signs of deterioration, fatigue or without proper anchorage and incapable of supporting all nominal loads and resisting all load effects.

**304.1.9** Flooring and flooring components with defects that affect serviceability or flooring components that show signs of deterioration or fatigue, are not properly anchored or incapable of supporting all normal loads and resisting all load effects. *Id.*

Section 109.1 of the IPMC empowers the code official as follows:

**EMERGENCY MEASURES 109.1 Imminent Danger.** When, in the opinion of the code official, there is imminent danger of failure or collapse of a building or structure which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure, or when there is actual or potential danger to the building occupants … the code official is hereby authorized and empowered to order and require the occupants to vacate the premises forthwith. The code official shall cause to be posted at each entrance to such structure a notice reading as follows: "This Structure Is Unsafe and Its Occupancy Has Been Prohibited by the Code Official." It shall be unlawful for any person to enter such structure except for the purpose of securing the structure, making the required repairs, removing the hazardous condition or of demolishing the same. *Id.*

Thus, under the IPMC, Jericho, as the code official, has the authority to condemn and placard property pursuant to the above Ordinance's criteria.

Significantly, Section 111 of the IPMC sets forth a detailed post-deprivation appeal procedure from a condemnation, as follows, in pertinent part:

**SECTION 111. MEANS OF APPEAL:**

**111.1 Application for appeal.** Any person directly affected by a decision of the code official or a notice or order issued under this code shall have the right to appeal to the board of appeals, provided that a written application for appeal is filed within

> 20 days after the day the decision, notice or order was served. An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply, or the requirements of this code are adequately satisfied by other means.
>
> **111.2 Membership of board.** The board of appeals shall consist of a minimum of three members who are qualified by experience and training to pass on matters pertaining to property maintenance and who are not employees of the jurisdiction. The code official shall be an ex-officio member but shall have no vote on any matter before the board. The board shall be appointed by the chief appointing authority, and shall serve staggered and overlapping terms.
>
> **111.3 Notice of meeting.** The board shall Inset upon notice from the chairman, within 20 days of the filing of an appeal, or at stated periodic meetings.
>
> **111.6 Board decision.** The board shall modify or reverse the decision of the code official only by a concurring vote of a majority of the total number of appointed board members.
>
> **111.6.1 Records and copies.** The decision of the board shall be recorded. Copies shall be furnished to the appellant and to the code official.
>
> **111.6.2 Administration.** The code official shall take immediate action in accordance with the decision of the board.
>
> **111.7 Court review.** Any person, whether or not a previous party of the appeal, shall have the right to apply to the appropriate court for a writ of certiorari to correct errors of law. Application for review shall be made in the manner and time required by law following the filing of the decision in the office of the chief administrative officer. *Id.*

These post-deprivation procedures provided Plaintiff with a meaningful post-deprivation process. If Plaintiff believed the condemnation was not supported by competent evidence, then her remedy was to file an appeal to the Board of Appeals.

Moreover, there was ample evidence from which Jericho could conclude that an emergency condition existed such that the property needed to be condemned and placarded. In this regard, there were two criminal complaints filed against Plaintiff for aggravated cruelty to animals in the Court of Common Pleas of Washington County at docket numbers CR-0205-2020 and CR-1186-2020. The criminal charges resulted from searches of Plaintiff's properties located in Monessen

and Donora, Pennsylvania. The search warrants were signed by Magistrate Judges on October 29, 2019, and are attached hereto as Exhibits D and E. The warrants, which authorized the search of her properties and seizure of animals, written and electronic documents, communications, and other properties, were executed on the following day. See September 9, 2022 Order of the state criminal court, attached hereto as Exhibit F.

Plaintiff filed an Omnibus Motion with the Court of Common Pleas of Washington County seeking suppression of the evidence gathered with the October30, 2019 searches and seeking the return of the property seized in the searches. A copy of Plaintiff's Omnibus Motion is attached hereto as Exhibit G. A hearing on the Motion was held on January 25, 2022 (Exhibit F, p.2). The state court found that on June 22, 2018, 104 cats were found at the Donora property, and on August 25, 2019, it was observed that the Donora property had deteriorated. *Id.*

The search warrants were supported by Affidavits of Probable Cause signed by co-Defendant Glen Thompson (deceased), Humane Animal officer, and a Pennsylvania state police officer. In addition to describing the mistreatment of over 100 cats in cages and the unsanitary condition, the Affidavit described the substantially deteriorated property, the overwhelming smell of feces and ammonia from inside the residence, the piles of garbage both inside and outside the buildings, piles of regurgitated food on the floor, the damaged roof of the church property, and the water leakage from the church roof (Exhibit D).

On September 9, 2022, Plaintiff pled nolo contendere to two counts of Neglect of Animals, 18 Pa. C.S.A. § 5532(a)(1). The Pleas of Nolo Contendere are attached hereto as Exhibit H). The Order of Sentence of September 9, 2022, is attached hereto as Exhibit I).

Pursuant to the Order of Sentence, Plaintiff is not permitted to possess any type of animal and is not permitted to have any contact with the animals seized from her residences on October 30, 2019.

At the September 9, 2022, Plea and Sentencing hearing, Plaintiff testified that she had not intended to harm any of the animals. She then admitted, however, that due to the damage to the property from a tornado and her inability to raise funds for the repairs, "the condition of the property was less than favorable" (Certified transcript of Plea and Sentencing Hearing, at pp 9-10, attached hereto as Exhibit J). Indeed, she further admitted that due to the deplorable conditions, she had been in the midst of moving the animals "to a new, safe location." Id. at p. 10. Thus, by her own admission, the damaged, "less than favorable" Donora property, which was in disrepair, was *not even safe for animals* (See also, Plaintiff's admissions at ¶¶ 31, 39).

It is submitted that Plaintiff's admissions as to the property condition and the state court Judge's findings in denying Plaintiff's Omnibus Motion to suppress the evidence, including his reliance on the Affidavit of Probable Cause's evidence as to the condition of the property, establish that there was "competent evidence" supporting Jericho's reasonable belief that the property needed to be condemned and placarded. Accordingly, a pre-deprivation hearing was not required in such circumstances, where there was a need for quick action by Jericho and a meaningful post-deprivation process available to Plaintiff. Therefore, the condemnation and placarding of the Donora property did not violate Plaintiff's procedural due process rights under the 14th Amendment. *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008); *Parratt v. Taylor*, 451 U.S. 527, 539, 101 S. Ct. 1908 (1981)).

The reliance on the factual findings and legal conclusions of the state court judge are justified upon the doctrine of collateral estoppel. The 3rd Circuit has held, "Collateral estoppel operates to bar 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination.'" *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,* 571 F.3d 299, 310 (3d Cir. 2009) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49, 121 S. Ct. 1808 (2001)). Further, "Although res judicata and collateral estoppel are affirmative defenses, they may

be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Walzer v. Muriel, Siebert & Co.,* 221 F. App'x 153, 155 (3d Cir. 2007).

Collateral estoppel precludes a party from raising an already-litigated issue if: 1) the issue is identical to the one decided in a prior case; 2) there was a final judgment on the merits in the prior action; 3) the party raising the issue was a party to the prior action or is in privity with such a party; and 4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Nationwide*, 571 F.3d at 310. See also, *Rue v. K-Mart Corp.*. 713 A.2d 82, 84 (Pa. 1998). Furthermore, in a §1983 case defendants can rely upon collateral estoppel where a plaintiff attempts to relitigate in federal court issues that were decided in the state criminal proceedings. *Anela v. City of Wildwood*, 790 F. 2d 1068 (3d Cir. 1986).

In the instant case the issue of the validity of the search warrants is the same as that presented to the state criminal court, and Plaintiff had a full and fair opportunity to litigate the issue in the criminal proceeding. Further, her criminal court proceedings are final, as she has failed to appeal the Judge's Order or rescind her nolo plea. Therefore, the findings of fact and legal conclusions of the state court judge can be relied upon in establishing the existence of competent evidence for Jericho to believe there was a need for immediate action pursuant to the IPMC. Further, Plaintiff's own admissions at her plea hearing in and of themselves establish that there was competent evidence from which Jericho could justify his issuance of the condemnation notice and placarding of the property pursuant to Donora local Ordinance 1390 and the IPMC. Therefore, Plaintiff's procedural due process rights were not violated by the condemnation and placarding of the property by Jericho.

As to Solicitor Toprani, the condemnation notice was signed solely by Jericho, the code officer. The fact that Jericho allegedly consulted with him does not make Toprani liable for the acts of Jericho.

**B.    Plaintiff has failed to state a claim for a Fourteenth Amendment substantive due process violation.**

The legal standards governing substantive due process claims are exacting. Thus, "The Supreme Court has emphasized that the 'touchstone of due process' is protection against arbitrary government action. Government action is 'arbitrary in the constitutional sense' when it is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *L.R. v. Sch. Dist. of Philadelphia,* 836 F.3d 235, 246 (3d Cir. 2016). Accordingly, to establish a substantive due process claim, a plaintiff must prove that the government's deprivation of a protected interest "shocks the conscience." Thus, "Deprivation violates due process only when it shocks the conscience, which encompasses only the most egregious official conduct ... While the meaning of the [shocks the conscience] standard varies depending upon factual context, merely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision." *Chainey v. Street,* 523 F.3d 200, 219-20 (3d Cir. 2008) (internal citations and quotations omitted). *L.H. v. Pittston Area Sch. Dist*., 130 F.Supp.3d 918, 928-29 (M.D. Pa. 2015), aff'd, 666 F. App'x. 213 (3d Cir. 2016).

In the instant case, Jericho followed a local Ordinance and the IMPC in condemning the property due to the emergency conditions described and relied upon by the state criminal court in finding that: 1) the search warrants were lawful; 2) the seizure of the animals and other property of Plaintiff was lawful; and 3) the evidence gathered via the searches would not be suppressed. The Affidavit of Probable Cause in support of the search warrants and Plaintiff's own testimony at the Plea and Sentencing Hearing show that there was competent evidence from which Jericho could find the need for prompt action to condemn and placard the property. Plaintiff simply has not pled any evidence of hostility, animus, or other conscience-shocking conduct to satisfactorily plead a 14th Amendment substantive due process claim.

Therefore, Plaintiff's 14th Amendment substantive due process claim should be dismissed, with prejudice.

### C. Plaintiff has failed to state a claim for a Fourth Amendment seizure of property claim.

As more fully described above, Plaintiff appears to be claiming that there was a seizure of her property within the residence by Defendants Toprani and Jericho by their failure to permit Plaintiff to enter the Donora property to retrieve her possessions. However, the property had been condemned and determined by the code official, Jericho, pursuant to Section 108.1.3, and as set forth in the condemnation notice, that it was unfit for human occupancy, unsafe, unlawful, and a hazard to the occupants and the public (Exhibits B, C). Indeed, Plaintiff, herself admitted that it was too unsafe for *animals* and that she, therefore, had been removing the animals at the time the property was condemned (Amended Complaint, ¶¶ 31, 39). Therefore, Plaintiff had no right to enter the condemned property. And as previously noted, under the IPMC Plaintiff had the right to appeal any of these decisions of Jericho and Toprani, including the ban on re-entry (Exhibit C, Section 111).

It is also noted that under Section 109.1 of the IPMC, the property could not be entered by anyone except for the purpose of securing the structure, making the required repairs, removing the hazardous condition, or demolishing the structure (Exhibit C, Section 109.1).

Plaintiff also admitted that Jericho told her that she could have 20 minutes to enter the property and retrieve her property (Amended Complaint, ¶ 262). Plaintiff does not allege that this was insufficient time to retrieve her property. Furthermore, Plaintiff admits that she was ultimately allowed into the property to retrieve her belongings (Amended Complaint, ¶ 276).

For the foregoing reasons, Plaintiff has failed to establish that the temporary prohibition of Plaintiff to re-enter the unsafe, condemned property did not constitute a seizure under the 4th

Amendment.

## V. INCORPORATION

In accordance with Federal Rule of Civil Procedure 12(g), the Donora Defendants incorporate co-Defendant Davis' Motion to Dismiss (ECF Doc. 105) and Brief in Support (ECF Doc. 106); and Co-Defendant Human Animal Rescue's Motion to Dismiss (ECF Doc. 107) and Brief in Support (ECF Doc. 109).

It is also expected that other Co-Defendants will raise additional defenses applicable to the Donora Defendants, all of which are incorporated herein, in the interests of efficiency.

## VI. CONCLUSION

Based upon the above, it is respectfully requested that the Amended Complaint be dismissed, with prejudice, as to the Donora Defendants.

Respectfully submitted,

MARGOLIS EDELSTEIN

*/s/ Charles H. Saul*
CHARLES H. SAUL, ESQUIRE
PA I.D. No. 19938
csaul@margolisedelstein.com

*/s/ Kyle T. Mcgee*
KYLE T. McGEE, ESQUIRE
PA I.D. No. 205661
kmcgee@margolisedelstein.com
Henry W. Oliver Building, Suite 1100
535 Smithfield Street
Pittsburgh, PA 15222
P: 412-281-4256
F: 412-642-2380
*(Counsel for Defendants Ken Jericho and Steven Toprani)*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that he served a true and correct copy of the foregoing *Donora Defendants' Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint* upon the Plaintiff as depicted below on April 27, 2023, and upon all counsel of record per the Court's ECF system.

**Via U.S. Regular Mail**
Christine Harr
676 Reed Avenue
Monessen, PA 15062
*(Pro Se Plaintiff)*

                                        Respectfully submitted,

                                        MARGOLIS EDELSTEIN

                                        */s/ Charles H. Saul*
                                        CHARLES H. SAUL, ESQUIRE
                                        PA I.D. No. 19938
                                        csaul@margolisedelstein.com

                                        */s/ Kyle T. Mcgee*
                                        KYLE T. McGEE, ESQUIRE
                                        PA I.D. No. 205661
                                        kmcgee@margolisedelstein.com
                                        *(Counsel for Defendants Ken Jericho and Steven Toprani)*