IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTIE HARR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 21-1560 |
| ) | |
| WASHINGTON AREA HUMANE SOCIETY, ) | |
| MARANDA COOMBS (JOHN DOE 1), BARB ) | |
| LYLE (JOHN DOE (2), CHELSEI FLEEGA ) | |
| (JOHN DOE 3), ESTATE OF GLEN L. ) | |
| THOMSON, KELLY PROUDFIT, JOHN DOES ) | |
| 4-10 agents and employees of the Washington ) | |
| Area Humane Society, HUMANE SOCIETY OF ) | |
| THE UNITED STATES, SHALIMAR OLIVER, ) | |
| LEANA STORMONT, LAURA KOIVULA, ) | |
| JOHN DOES 11-10 agents and employees of the ) | |
| Humane Society of the United States, HUMANE ) | |
| ANIMAL RESCUE, JOHN DOES 21-30 agents ) | |
| and employees of the Humane Animal Rescue, ) | |
| KEN JERICHO, STEVEN TOPRANI, MARVIN ) | |
| DAVIS, SAMUEL JENESKY, STATE ) | |
| TROOPER TIEGARDEN, JOHN DOES 32-50 ) | |
| unknown law enforcement Officers, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff Christie Harr ("Harr"), proceeding *pro se*, brings this action against numerous defendants, including Marvin Davis ("Davis") in his individual capacity as the Code Enforcement Officer for the City of Monessen in Westmoreland County, Pennsylvania. (Docket No. 92). The majority of Harr's claims arise from an allegedly unconstitutional search and seizure that took place on or around October 30, 2019, involving properties in her possession in Monessen (the "Westmoreland Count property") and in the Borough of Donora in Washington

1

County, Pennsylvania (the "Washington County property"), which she was using to house animals in the course of operating an animal shelter. (*Id.*). In her Corrected Amended Complaint (the "Amended Complaint"), Harr alleges that Davis violated her rights under the Constitution of the United States, pursuant to 42 U.S.C. § 1983, by declining to issue an occupancy permit for her house in Westmoreland County without rendering an appealable decision or a notification of reasons. (*Id.* at 37-41).

Presently before the Court is Davis's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) and brief in support (Docket Nos. 105, 106), Harr's brief in opposition (Docket No. 129), and Davis's reply (Docket No. 132). After careful consideration of the parties' arguments and for the following reasons, Davis's motion will be granted, and the claims against him in the Amended Complaint will be dismissed, without prejudice.[1]

## II. BACKGROUND

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts, as alleged in the Amended Complaint[2] and in the light most favorable to Harr, that are relevant to the motion presently before the Court. Harr avers in her Amended Complaint that, at the time of the events from which her claims arise, she was operating a non-profit animal shelter on the Washington County property, which she lawfully possessed and occupied. (Docket No. 92, ¶¶ 39, 48, 249, 250).

---

[1] There are presently six motions to dismiss Harr's Amended Complaint before the Court. The Court notes that Harr's 46-page, 325-paragraph Amended Complaint alleges 16 separate Counts (some of which allege multiple, unclear claims) against a multitude of defendants, in various combinations. Many of these defendants, either in groups or individually, have filed motions to dismiss, such that the Court is issuing, herewith, other separate but related Memorandum Opinions and Orders on such motions. Harr also filed another case, which involves the same underlying facts as in this case, in this District Court against a different defendant (at Civil Action No. 21-1555), and the Court is issuing herewith a Memorandum Opinion and Order on a motion to dismiss that was filed in that case as well.

[2] Harr contends that this Court has subject matter over her Section 1983 claims pursuant to 28 U.S.C. § 1331 because they involve a federal question. (Docket No. 92, ¶ 21).

After a tornado caused damage to the shelter, Harr alleges that she was in the process of moving the shelter from her Washington County property to her Westmoreland County property, when agents of the Washington Area Humane Society (the "WAHS") engaged in a surreptitious investigation in which they entered the Washington and Westmoreland County properties and seized her animals and other property. (*Id.* ¶¶ 39, 48, 51, 76-78, 148, 159, 160).

Harr avers that between one and two months before the search and seizure at her Westmoreland County property, she appeared at Monessen's City Hall, applied for an occupancy permit, and paid $65.00 for an inspection. (Docket No. 92, ¶ 297). According to Harr, "Monessen provided a list of everything required," and "[o]nce all requirements were met, [she] called to make an appointment for inspection." (*Id.* ¶¶ 298, 299). Upon arrival for the inspection, however, Davis said that Kelly Proudfit of the WAHS[3] had called and instructed him not to provide Harr with an occupancy permit. (*Id.* ¶ 300). Davis also noted various changes that Harr needed to make to the property. (*Id.* ¶¶ 301-03). Harr rescheduled the inspection, and upon arrival, Davis again stated that Harr was not allowed to have personal property in the building. (*Id.* ¶ 304). Davis also stated that he could not issue a permit because his boss had told him not to do so. (*Id.* ¶ 306). Davis "then called an unknown person and said he was at Plaintiff's house to do the inspection," listened but did not say anything for a few minutes, said "okay" and hung up, and then "reiterated he would not provide a permit." (*Id.* ¶¶ 307, 308).

Harr advised Davis "that animals at the other location needed to be moved to the [Westmoreland County] location for their safety." (Docket No. 92, ¶ 310). Davis stated that the animals could be moved to the Westmoreland County property and personal property could be there, but Harr could not sleep at that location. (*Id.* ¶ 311). Davis reiterated that he "would not

---

[3] Ms. Proudfit and the WAHS are also named defendants in this case, and they have filed a separate motion to dismiss the claims against them.

issue an occupancy permit," but he also "would not provide any written determination, list of items that needed corrected, or a denial of the occupancy permit." (*Id.* ¶¶ 312, 313). Thereafter, Harr alleges that, with Davis's assistance, the WAHS and the Humane Society of the United States (the "HSUS")[4] used the fact that animals were housed in an "abandoned building" as a pretext to obtain the search warrant for the Westmoreland County property. (*Id.* ¶ 314). On or about October 30, 2019, the "raid" on Harr's two properties occurred. (*Id.* ¶ 315).

In Count XVI of her Amended Complaint, the sole Count alleged against Davis, Harr avers that Davis violated her constitutional rights to substantive and procedural due process by failing to issue an occupancy permit for her house in Westmoreland County, without rendering an appealable decision or providing specific corrections that needed to be made in order for her to obtain a permit. (Docket No. 92 at 43-46). In moving to dismiss Harr's Amended Complaint, Davis contends that dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is warranted here because Harr did not take advantage of the available procedures to seek judicial review of Davis's alleged inaction, so she has not alleged a violation of procedural due process. Davis further asserts that Harr has not pled a substantive due process claim because she has not demonstrated that Davis interfered with ownership of her real property or deprived her of possession or enjoyment of her real property, that she had a clear entitlement to such permit, or that Davis's conduct is "conscience shocking" in the constitutional sense. Davis contends, additionally, that he is entitled to qualified immunity in this matter. Harr filed her response opposing Davis's motion, Davis filed his reply, and the matter is now ripe for decision.

---

[4] The HSUS is also a named defendant in this case and has filed a separate motion to dismiss Harr's claims against it.

### III. STANDARD OF REVIEW

#### A. Federal Rule of Civil Procedure 12(b)(6)

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."

*Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  First, the Court notes the elements of a claim. *See id.* (citing *Iqbal*, 556 U.S. at 675).  Second, the Court eliminates conclusory allegations.  *See id.* (citing *Iqbal*, 556 U.S. at 679).  And finally, the Court assumes the remaining well-pleaded facts are true and assesses "'whether they plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### B. Qualified Immunity

The qualified immunity doctrine "shield[s] government officials performing discretionary functions ... 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not a "mere defense to liability" but rather it is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  It is thus important to "'resolv[e] immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).  In considering a claim of qualified immunity, a court must determine both whether the plaintiff has shown a violation of a constitutional right, and whether the right was "clearly established" at the time of the alleged constitutional violation.  *See id.* (discussing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

### C. *Pro Se* **Pleadings**

Although courts must generally construe *pro se* pleadings liberally pursuant to Rule 8(a)(2), courts are not required to accept legal conclusions disguised as statements of fact, unsupported conclusions, or unwarranted references. *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "[A] pro se complaint must still contain factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wallace v. Fegan*, 455 F. App'x 137, 139 (3d Cir. 2011) (internal quotation marks and citation omitted). Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim," and "they cannot flout procedural rules – they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (internal citations omitted).

### IV. DISCUSSION

Harr brings her claims against Davis pursuant to 42 U.S.C. § 1983, which does not create any substantive rights, but rather provides a remedy for deprivations of rights created by the Constitution of the United States or federal law. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Thus, "[t]o state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). In this case, Harr asserts that Davis violated her rights to procedural and substantive due process under the Fourteenth Amendment to the Constitution. (Docket No. 92 at Count XVI). Harr seeks monetary relief in an amount to be proven at trial, punitive damages, costs, attorney fees if any, and any other relief that may be appropriate and just. (*Id.* at 46).

### A. **Harr's Procedural Due Process Claim**

According to the Amended Complaint, as a result of Davis's failure to issue an occupancy permit for the Westmoreland County property, or to issue an appealable decision denying the permit and provide a list of specific corrections to be made so that Harr could obtain the permit, Harr was denied the use of her property in excess of sixty days. (Docket No. 92, ¶ 320). Harr alleges that Davis's actions were taken in order to assist the WAHS and the HSUS, not to properly enforce regulations. (*Id.* ¶ 321). Harr asserts that Davis's denial of the occupancy permit without notice or an opportunity to be heard violated "the relevant standards for a municipality taking such an action including a right to cure or appeal, a right to a hearing, or other steps to adjudicate the fitness of the dwelling." (*Id.* ¶ 322). Harr argues that Davis's actions thus denied her the right to procedural due process. (*Id.* ¶ 324).

Generally, to state a Fourteenth Amendment procedural due process claim, a plaintiff must allege that: 1) she was deprived of an interest that is protected by the Fourteenth Amendment's protections of "life, liberty, or property," and 2) the available procedures did not provide her with "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). "[T]he focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." *Giuliani v. Springfield Twp.*, 726 F. App'x 118, 122 (3d Cir. 2018) (quoting *K.S.S. v. Montgomery Cnty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 397-98 (E.D. Pa. 2012)). "[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." *Id.* (internal quotation marks and citation omitted).

Furthermore, a plaintiff must have taken advantage of available procedures unless those procedures are unavailable or are patently inadequate. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Thus, when a state "affords a full judicial mechanism with which to challenge the administrative decision," it provides adequate procedural due process, irrespective of whether the plaintiff avails herself of that process. *DeBlasio v. Zoning Bd. Of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995), *overruled on other grounds by United Artists Theatre Circuit, Inc. v. Township v. Warrington*, 316 F.3d 392 (3d Cir. 2003). In considering whether the administrative and legal remedies available under Pennsylvania law to persons aggrieved by local government decisions in land use regulation satisfy procedural due process requirements, federal courts have found that "Pennsylvania's scheme for judicial review of administrative land use decisions has . . . passed constitutional muster." *Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339, 358 (E.D. Pa. 2011), *aff'd* 477 F. App'x 903 (3d Cir. 2012); *see also Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988), *overruled on other grounds by United Artists Theatre Circuit, Inc. v. Township v. Warrington*, 316 F.3d 392 (3d Cir. 2003).

Here, Davis argues that Harr has failed to allege a plausible procedural due process claim because, although she contends that she was unable to appeal the denial of her occupancy permit since no written denial was issued, Harr failed to take advantage of the procedure that was available to her. Davis asserts that the procedural mechanism that was available to Harr under Pennsylvania law for seeking judicial review of Davis's alleged inaction regarding Harr's permit application is the writ of mandamus, which exists to compel official performance of ministerial acts or mandatory duties. *See Delaware River Port Auth. v. Thornburgh*, 493 A.2d 1351, 1355 (Pa. 1985). A Pennsylvania court may issue a writ of mandamus where the petitioner has a clear legal right, the responding public official has a corresponding duty, and no other adequate and

9

appropriate remedy at law exists. *See Board of Revision of Taxes, Phila. v. City of Philadelphia*, 4 A.3d 610, 627 (Pa. Super. Ct. 2010); *see also Volunteer Firemen's Relief Ass'n of Reading v. Minehart*, 203 A.2d 476, 479 (Pa. 1964).  It is proper to seek a writ of mandamus to compel the performance of official duties, "even where the existence and scope of such duties must be found and defined in the course of the mandamus action itself."  *Thornburgh*, 493 A.2d at 1355. Courts have therefore held that "mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law." *Minehart*, 203 A.2d at 479-80.

Similar to the present case, a recent decision of the United States District Court for the Middle District of Pennsylvania examined a claim that local officials' failure to either grant or deny an application for an occupancy permit violated the plaintiffs' procedural due process rights. *See Halchak v. Dorrance Twp. Bd. of Supers.*, 646 F. Supp. 3d 571 (M.D. Pa. 2022).  In that case, the Court dismissed the plaintiffs' constitutional claim and remarked:

> Defendants contend that Plaintiffs "cannot establish a procedural due process violation where judicial relief was available."  This argument has merit. Courts have held that a petition for a writ of mandamus is "a vehicle to challenge inaction on the part of municipal authorities," including inaction in the form of "delay from evaluation to the issuance of a permit," and in cases where such relief is available, procedural due process claims fail.  *LXR RS V, LLC v. Municipality of Norristown*, No. 2:19-CV-01397-JDW, 2019 WL 4930157, at *5 (E.D. Pa. Oct. 7, 2019); *accord Mader v. Union Twp.*, No. 2:20-CV-01138-CCW, 2022 WL 395052, at *7 (W.D. Pa. Feb. 9, 2022).  As such, the availability (and actual pursuit) of mandamus relief in state court defeats Plaintiffs' procedural due process claim.

*Id.* at 597-98 (internal citation omitted).  Moreover, other district courts within the Third Circuit have held likewise.  *See, e.g., LXR RS V, LLC v. Mun. of Norristown*, 2019 WL 4930157, at *5 (noting that delay alone does not create a procedural process violation, and that if the plaintiff thought the delay had become unreasonable, it had a mechanism to challenge municipalities'

inaction, which is a petition for a writ of mandamus); *Mader v. Union Twp.*, 2022 WL 395052, at *7 (noting that the plaintiffs could have sought redress for their lack of an occupancy permit through a writ of mandamus). Upon consideration, the Court concludes that the facts alleged by Plaintiff in this case present the type of situation that is appropriate for a mandamus action under Pennsylvania law.

Therefore, because Pennsylvania law complies with Fourteenth Amendment due process requirements by providing a means of relief to an applicant who has not received a permit or an appealable denial of a permit application, and because Harr alleges that she had the right to a permit and Davis had a duty to issue it, Harr had the ability to seek relief by filing a mandamus action in Pennsylvania court to compel the issuance of the permit in question here. Harr does not allege that she pursued such relief, however, nor does she allege that such process provided by the Commonwealth of Pennsylvania was unavailable to her. Because Harr did not avail herself of the mechanism provided by the Commonwealth to remedy the alleged violation of her rights, her procedural due process claim fails.

Accordingly, Harr's claim that Davis violated her Fourteenth Amendment right to procedural due process will be dismissed, without prejudice, for failure to state a claim upon which relief can be granted.

### B. Harr's Substantive Due Process Claim

Harr also alleges that Davis's refusal to follow established procedures and provide an appealable decision as to the issuance of an occupancy permit for her Westmoreland County property, or to notify her of any necessary repairs so that she could make such repairs and receive a permit, denied her substantive due process because such conduct "shocks the conscience." (Docket No. 92, ¶¶ 323, 324). "To prevail on a substantive due process claim, a

plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1292 (3d Cir. 1993). The Third Circuit has held that "real property ownership" is an interest that is protected by substantive due process. *See Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 141 (3d Cir. 2000).

Davis argues, however, that Harr has not alleged that he interfered with her ownership of the Westmoreland County property. Davis contends that Harr has also not alleged that he interfered with her possession or enjoyment of the property, or that she was evicted or prohibited from using the property as she intended. Instead, according to Davis, Harr has averred that Davis deprived her of a permit to inhabit the property, not that the absence of such permit caused any change to her intentions with respect to use of the property. Further, Davis notes that Harr has not alleged that she was, in fact, entitled to such permit, as she only generally avers that "all requirements were met" before she set up an inspection appointment, not that her property was compliant with the local code provisions and requirements.[5]

Upon consideration of the allegations in the Amended Complaint, the Court agrees with Davis. As the Honorable Nora Barry Fischer, a fellow member of this Court, previously noted in a case involving a sought-after construction permit, where there was no vested right to the permit "the permit itself cannot serve as the 'property interest' of which [the plaintiff] was deprived" for purposes of Fourteenth Amendment due process analysis. *Flanders v. Dzugan*, 156 F. Supp. 3d 648, 665 n.10 (W.D. Pa. 2016); *see also WVCH Commc'ns, Inc. v. Kalil,* No. CIV. A. 93-CV-

---

[5] Davis states in briefing that the International Property Maintenance Code (the "IPMC") is the applicable code, adopted by Monessen ordinance, and that the code is publicly available online. (Docket Nos. 106 at 7, 132 at 2). Harr asserts in response that the IPMC is a private book that is not on the Monessen website and is not reproduced in the Monessen ordinance, and that Davis did not provide her with notice as to what sections of the code were violated. (Docket No. 129 at 1, 7). Nevertheless, Harr maintains that the IPMC reinforces her complaint and that she can refer to it in amending her Amended Complaint. (*Id.* at 7). The Court notes that, while it need not take judicial notice of the code for purposes of deciding the present motion, the IPMC is in fact publicly available on the internet at https://codes.iccsafe.org/content/IPMC2012 (last visited Sept. 5, 2024).

2225, 1993 WL 268903, at *2 (E.D. Pa. July 15, 1993) (concluding that plaintiffs "must show a protected property interest before being able to state a substantive due process claim"), *aff'd sub nom. WVCH Commc'ns, Inc. v. Upper Providence Twp.*, 27 F.3d 561 (3d Cir. 1994).  Similarly, based on the facts alleged here, the Court finds that Harr has failed to state a plausible claim that Davis violated her Fourteenth Amendment right to substantive due process since she has failed to allege that Davis deprived her of a protected property interest.

Davis further argues that, even if the Court were to find an alleged deprivation of a property right in the Amended Complaint, Harr has still failed to allege a substantive due process violation because she has not averred that Davis's conduct was sufficiently egregious in the context presented here.  The Third Circuit has held that the substantive component of the due process clause can only be violated by government employees when their conduct amounts to an abuse of official power that "shocks the conscience."  *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998).  The meaning of this standard depends on the context, however.  *See, e.g., Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002) ("The assessment of what constitutes conscience-shocking behavior differs according to the factual setting."); *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 401 (3d Cir. 2000) ("It is true that *Lewis* teaches that what 'shocks the conscience' varies from circumstance to circumstance." (citing *Lewis*, 523 U.S. at 850); *Nicini v. Morra*, 212 F.3d 798, 809 (3d Cir. 2000) ("The exact degree of wrongfulness necessary to reach the conscience-shocking level depends on the circumstances of a particular case." (internal quotation marks omitted, citing *Lewis*, 523 U.S. at 850, and *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999)).  The Third Circuit has explained that application of the "shocks the conscience" standard in the land use context prevents the courts from being cast in the role of a

"zoning board of appeals." *United Artists Theatre Circuit, Inc. v. Township of Warrington, Pa.*, 316 F.3d 392, 402 (3d Cir. 2003).  The Third Circuit continued:

> The First Circuit in *Estabrook* observed that every appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but "[i]t is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983." [*Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982)].  Land-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with "improper" motives.

*Id.*; *see also Old York LLC v. Township of Abington*, Civ. Action No. 16-1731, 2017 WL 634048, at *4 (E.D. Pa. Feb. 16, 2017) ("[I]n the land use context, the shocks the conscience standard is sufficiently high 'to avoid converting federal courts into super zoning tribunals.'" (quoting *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004))).

Therefore, in considering whether a government official's conduct "shocks the conscience" in the land use context, courts "look for evidence of corruption, self-dealing, intentional interference with constitutionally protected activity, virtual 'takings,' or bias against an ethnic group on the part of local officials." *Button v. Snelson*, 679 F. App'x 150, 154 (3d Cir. 2017) (citing *Eichenlaub*, 385 F.3d at 286).  According to the Amended Complaint, Davis did not find that Harr's property qualified for an occupancy permit, he did not issue a permit, and he also did not issue an appealable decision declining her permit application, yet Harr admits that, even after the search warrant was executed, she was subsequently contacted by Davis to notify her that she needed to schedule a follow-up inspection.  (Docket No. 92, ¶ 318).  Here, Davis's alleged conduct simply does not rise to such a "conscience-shocking" level.  *See Mader v. Union Twp.*, No. 2:20-CV-01138-CCW, 2022 WL 395052, at *6 (W.D. Pa. Feb. 9, 2022) (citing *Eichenlaub*, 385 F.3d at 285, and noting that even government actions that are taken merely for

an "improper purpose" or in "bad faith" do not meet the "shocks the conscience" standard, which requires "the most egregious official conduct"). Thus, even if the Court were to conclude that Harr alleges the deprivation of a protected property interest, the Court finds that she still does not aver "conscience-shocking" conduct by Davis, such as corruption, self-dealing, bias against an ethnic group, or any other conduct that would be deemed egregious in the land use context.

Accordingly, Harr's claim against Davis alleging a violation of her right to substantive due process will be dismissed, without prejudice, for failure to state a claim upon which relief can be granted.

### C. Qualified Immunity

Although the Court is dismissing Count XVI for failure to state a claim upon which relief can be granted, the Court will still consider Davis's argument that he is entitled to qualified immunity in this matter. *See Roth v. City of Hermitage*, 709 F. App'x 733, 736 (3d Cir. 2017) ("Failing to consider the qualified immunity defense before dismissing without prejudice on the merits was error because the District Court failed to resolve a motion asserting qualified immunity . . . at the earliest possible stage in the litigation." (citation omitted)). In addition to arguing that Harr fails to state a cognizable claim under Rule 12(b)(6), Davis contends that he is entitled to qualified immunity for his actions at this stage of the litigation because Harr's claims do not establish the violation of any clearly established rights. (Docket No. 106 at 10). However, because Davis raises this argument in a somewhat cursory way and does not fully develop it with citation to appropriate case law, nor does he further discuss it in his reply brief, and since Harr is being given leave to amend her claims if she wishes to do so, the Court will address qualified immunity only briefly at this time.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A federal right is clearly established for qualified immunity purposes if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Additionally, qualified immunity must be assessed in the context of each individual defendant's specific conduct, including "'an analysis of the facts adduced concerning the conduct of the official'" claiming immunity. *Griffin-El v. Beard*, 411 F. App'x 517, 519 (3d Cir. 2011) (quoting *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990)).

A Court may find that a municipal official is entitled to qualified immunity at the motion to dismiss stage if (1) the facts alleged show the official's conduct did not violate a constitutional right, or (2) the right violated was not clearly established in light of the specific context of the case." *Taylor v. Rosa*, 856 F. App'x 376, 378 (3d Cir. 2021) (citing *Reedy v. Evanson*, 615 F.3d 197, 223–24 (3d Cir. 2010)). Thus, "qualified immunity should only be granted on a motion to dismiss when it is 'established on the face of the complaint.'" *Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 126 (D.N.J. 2017) (quoting *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)).

Here, the facts alleged in the Amended Complaint do not make clear that Davis's conduct did *not* violate a constitutional right, or that such right was not clearly established. Because the Amended Complaint does not show that Davis's actions did not violate a clearly established constitutional right, dismissal on qualified immunity grounds is premature. *See Thomas*, 463 F.3d at 291 (a dismissal based on qualified immunity will be upheld "only when the immunity is

established on the face of the complaint" (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001))). Additionally, in accordance with Harr's request, and mindful of her *pro se* status, the Court is permitting Harr to amend her Amended Complaint if she chooses to do so. Therefore, if Harr chooses to amend her complaint, she should provide a more definite statement of her claims, and the specific right at issue here, so that the qualified immunity issue may be resolved expeditiously and without "subjecting the [i]ndividual [d]efendant[] who may be immune from suit to needless discovery and the other burdens of litigation." *Id.* at 299-301.

Accordingly, at this juncture, the Court will decline to grant Davis's motion to dismiss to the extent it is based on qualified immunity grounds. *See Debrew v. Auman*, 354 F. App'x 639, 642 (3d Cir. 2009) (vacating order granting motion to dismiss certain claims on qualified immunity grounds because the sparse complaint "failed to disclose whether the defendants' actions did not violate a clearly established constitutional right" and therefore "dismissal on qualified immunity grounds was premature" (citing *Thomas*, 463 F.3d at 291)); *see also Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (cautioning against deciding qualified immunity without a developed factual record). However, given that the Court is granting Davis's motion to dismiss Harr's claims pursuant to Rule 12(b)(6), Davis is free to raise his qualified immunity argument, if appropriate, in response to a second amended complaint if Harr chooses to re-allege claims against him.

## V. CONCLUSION

For the reasons stated, Davis's Motion to Dismiss Plaintiff's Amended Complaint is granted, and Harr's claims at Count XVI against Davis are dismissed, without prejudice, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

An appropriate Order follows.

Dated:  September 5, 2024                    <u>*s/ W. Scott Hardy*</u>
                                             W. Scott Hardy
                                             United States District Judge

cc/ecf:  Christie Harr (via U.S. Mail)
         All counsel of record