**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTIE HARR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-1560 |
| | ) | |
| WASHINGTON AREA HUMANE SOCIETY, MARANDA COOMBS (JOHN DOE 1), BARB LYLE (JOHN DOE (2), CHELSEI FLEEGA (JOHN DOE 3), ESTATE OF GLEN L. THOMSON, KELLY PROUDFIT, JOHN DOES 4-10 agents and employees of the Washington Area Humane Society, HUMANE SOCIETY OF THE UNITED STATES, SHALIMAR OLIVER, LEANA STORMONT, LAURA KOIVULA, JOHN DOES 11-10 agents and employees of the Humane Society of the United States, HUMANE ANIMAL RESCUE, JOHN DOES 21-30 agents and employees of the Humane Animal Rescue, KEN JERICHO, STEVEN TOPRANI, MARVIN DAVIS, SAMUEL JENESKY, STATE TROOPER TIEGARDEN, JOHN DOES 32-50 unknown law enforcement Officers, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff Christie Harr ("Harr"), proceeding *pro se*, brings this action against numerous defendants, including Ken Jericho ("Jericho"), Ordinance Officer for the Borough of Donora in Washington County, Pennsylvania, and Steven Toprani ("Toprani"), Solicitor for Donora (collectively, the "Donora Defendants"). (Docket No. 92). The majority of Harr's claims arise from an allegedly unconstitutional search and seizure that took place on or around October 30, 2019, involving properties in her possession in Donora (the "Washington County property" or

1

the "property") and in the City of Monessen in Westmoreland County, Pennsylvania (the "Westmoreland County property"), which she was using to house animals in the course of operating an animal shelter. (*Id.*). In her Corrected Amended Complaint (the "Amended Complaint"), Harr alleges that the Donora Defendants violated her rights under the Constitution of the United States, pursuant to 42 U.S.C. § 1983, in connection with the condemnation of the Washington County property. (*Id.* at 37-41).

Presently before the Court is the Donora Defendants' Motion to Dismiss Plaintiff's Amended Complaint and brief in support (Docket Nos. 117, 118), and Harr's brief in opposition (Docket No. 128). After careful consideration of the parties' arguments and for the following reasons, the Donora Defendants' motion will be granted, and the claims against them in Harr's Amended Complaint will be dismissed, without prejudice.

## II. BACKGROUND

### A. Factual Background

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts, as alleged in the Amended Complaint[1] and in the light most favorable to Harr, that are relevant to the motion presently before the Court. In her Amended Complaint, Harr avers that, at the time of the events from which her claims arise, she was operating a non-profit animal shelter on the Washington County property, which she lawfully possessed and occupied. (Docket No. 92, ¶¶ 39, 48, 249, 250). After a tornado caused damage on the property, Harr alleges that she was in the process of moving the shelter to her Westmoreland County property when agents of the Washington Area

---

[1] Harr contends that this Court has subject matter over her Section 1983 claims, pursuant to 28 U.S.C. § 1331, because they involve a federal question. (Docket No. 92, ¶ 21).

Humane Society (the "WAHS")[2] and others engaged in a surreptitious investigation in which they entered the Washington County and Westmoreland County properties and seized her animals and other property located therein. (*Id.* ¶¶ 39, 48, 51, 76-78, 148, 159, 160).

Harr further avers that, on or about October 30, 2019, Jericho placed notices on the Washington County property claiming that it was "condemned," and that no person could enter therein. (Docket No. 92, ¶ 252). The notices cited the International Property Maintenance Code (the "IPMC"). (*Id.*). Subsequent to the posting, Harr spoke with Jericho, who stated that she could not enter the premises or obtain her personal belongings from the premises. (*Id.* ¶¶ 255, 257). On November 7, 2019, Harr met with Jericho who indicated that he would allow her limited access to the property, in order to obtain her personal effects, if she returned at 8:30 a.m. the following day. (*Id.* ¶¶ 259, 260). The next day, however, when Harr again met with Jericho, he remarked that he would allow her twenty minutes in the house to obtain her personal effects, but that it would not occur that day. (*Id.* ¶¶ 261, 262). Harr indicated that she wanted to clean and remove her property from the house, but she alleges that Jericho stated that she could not enter the house, demanded a lease recorded with the Recorder of Deeds and other non-existent documents, and threatened to have the house's utilities shut off. (*Id.* ¶¶ 263-65). Additionally, Harr alleges that Solicitor Toprani told her that the property was condemned and that she could not retrieve her belongings. (*Id.* ¶ 267).

On November 11, 2019, agents of Donora's Police Department advised Harr that she had authority to enter the home to remove property and clean it, but that, at the direction of Jericho, she could not live or sleep there. (Docket No. 92, ¶ 272). On November 19, 2019, Jericho arrived at the property and threatened and yelled at Harr's father who was loading a U-Haul with

---

[2] The WAHS is also a named defendant in this case and has filed a separate motion to dismiss the claims lodged against it.

3

items from the property. (*Id.* ¶ 274). Jericho called the police and said, "I'm at the Harr residence and you need to come up and arrest that bitch because she's in the house," but the police advised Jericho that Harr was allowed to be in the house. (*Id.* ¶¶ 275, 276).

### B. Procedural Background

Harr's lengthy Amended Complaint alleges sixteen Counts against numerous defendants, including animal rescue groups, law enforcement officers, and individuals, but Count XIV is the only Count alleged against the Donora Defendants.[3] (Docket No. 92, ¶¶ 248-84). According to that Count, Harr appears to allege that Jericho and Toprani violated her constitutional rights, pursuant to 42 U.S.C. § 1983, by taking her property without prior notice in violation of her procedural and substantive due process rights under the Fourteenth Amendment, and by unlawfully seizing her property in violation of her Fourth Amendment rights. (*Id.*).

On April 27, 2023, the Donora Defendants filed their Motion to Dismiss Plaintiff's Amended Complaint and brief in support. (Docket Nos. 117, 118). The Donora Defendants argue that the Court should dismiss Harr's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (*Id.*). Harr filed her response opposing the Donora Defendants' motion (Docket No. 128), and the matter is now ripe for decision.

---

[3] There are presently six motions to dismiss Harr's Amended Complaint before the Court. The Court notes that Harr's 46-page, 325-paragraph Amended Complaint alleges 16 separate counts (some of which allege multiple, unclear claims) against a multitude of defendants, in various combinations. Many of these defendants, either in groups or individually, have filed motions to dismiss, such that the Court is issuing, herewith, other separate but related Memorandum Opinions and Orders on such motions. Harr also filed another case, which involves the same underlying facts as in this case, in this District Court against a different defendant (at Civil Action No. 21-1555), and the Court is issuing herewith a Memorandum Opinion and Order on a motion to dismiss that was filed in that case as well.

4

### III. STANDARD OF REVIEW

#### A. Federal Rule of Civil Procedure 12(b)(6)

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."

*Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *See id.* (citing *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *See id.* (citing *Iqbal*, 556 U.S. at 679). And finally, the Court assumes the remaining well-pleaded facts are true and assesses "'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### B. *Pro Se* Pleadings

Although courts must generally construe *pro se* pleadings liberally pursuant to Rule 8(a)(2), courts are not required to accept legal conclusions disguised as statements of fact, unsupported conclusions, or unwarranted references. *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "[A] pro se complaint must still contain factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wallace v. Fegan*, 455 F. App'x 137, 139 (3d Cir. 2011) (internal quotation marks and citation omitted). Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim," and "they cannot flout procedural rules – they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (internal citations omitted).

## IV. DISCUSSION

Harr brings her claims against the Donora Defendants pursuant to 42 U.S.C. § 1983, which does not create any substantive rights, but rather provides a remedy for deprivations of rights created by the Constitution of the United States or federal law. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Thus, "[t]o state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). The Amended Complaint in this case, while not entirely clear, appears to assert that the Donora Defendants violated Harr's rights to procedural and substantive due process under the Fourteenth Amendment, and her right to be free from unreasonable seizures under the Fourth Amendment. (Docket No. 92 at 37-41).

Specifically, Harr avers that, "[b]ased on information," the notices placed on her property "did not constitute a formal condemnation and was simply a sign that Jericho made and posted." (Docket No. 92, ¶ 252). Harr alleges that the notices cited the IPMC (which she characterizes as a book rather than a law), and that the notice provided no right to seek review or to appeal. (*Id.*). Harr avers that the Donora Defendants thus performed "a verbal condemnation of the house" and evicted her in violation of her procedural due process and Fourth Amendment rights. (*Id.* ¶¶ 277, 283). Harr also avers that the Donora Defendants' actions in connection with such condemnation shock the conscience and constituted a violation of her substantive due process rights. (*Id.* ¶¶ 280, 283).

7

### A. Procedural Due Process under the Fourteenth Amendment

In moving to dismiss Harr's claims against them, the Donora Defendants first argue that Harr fails to state a plausible claim that they violated her Fourteenth Amendment right to procedural due process. The Donora Defendants assert that the condemnation notice upon which Harr's claim is based was properly issued to her in written form and did not deny her a necessary pre-deprivation process under the circumstances presented. The Donora Defendants argue, further, that Harr did not avail herself of the meaningful post-deprivation process that was available to her.

Generally, to state a Fourteenth Amendment procedural due process claim, a plaintiff must allege that: 1) she was deprived of an interest that is protected by the Fourteenth Amendment's protections of "life, liberty, or property," and 2) the available procedures did not provide her with "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). The Donora Defendants concede, *arguendo*, that Harr had a property interest at stake in this case, so only the second prong of her procedural due process claim is disputed here. With regard to the available procedures under this second prong, a "fundamental requirement of due process is the opportunity to be heard. . . . at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (internal quotation marks and citation omitted).

Although the condemnation notice at issue in this case is undoubtedly integral to and explicitly relied upon by Harr in alleging her claims against the Donora Defendants, Harr did not attach such notice to her Amended Complaint. The Donora Defendants, however, did attach the condemnation notice to their brief in support of their motion to dismiss, for the Court's consideration. (Docket No. 118-2 (hereinafter, the "condemnation notice" or "notice")). Harr cites to and discusses the condemnation notice throughout her opposition brief and does not

8

dispute its authenticity. (Docket No. 128). Accordingly, the Court will consider the condemnation notice in ruling on the Donora Defendants' motion. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

In arguing that her constitutional rights were violated by the condemnation of her Washington County property, Harr avers that the condemnation notice was not a "formal" condemnation notice, and that her condemnation was essentially a "verbal condemnation." (Docket No. 92, ¶¶ 252, 277). Harr alleges that the notice cited to the IPMC, which is a book rather than a law, and that the notice failed to provide her with information on how to obtain a hearing, file an appeal, or remedy the situation. (*Id.* ¶¶ 252, 253). Upon review of the condemnation notice, the Court notes, first, that the document expressly states that structures on Harr's property were condemned pursuant to particular ordinances and explains what those ordinances require or prohibit. (Docket No. 118-2). Specifically, it explains that:

> The main house was condemned under Ordinance 1390. Section 108 – Unsafe Structures and Equipment. 108.1.3 – Structure unfit for human occupancy. A structure is unfit for human occupancy whenever the code official finds that such structure is unsafe, unlawful or, because of the degree to which the structure is in disrepair or lacks maintenance, is [u]nsanitary, vermin or rat infested, contains filth and contamination, or lacks ventilation, illumination, sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes a hazard to the occupants of the structure or to the public.
> Section 309 – Pest Elimination – All structures shall be kept free from insect and rodent infestation.
>
> Church: Section 304 – Exterior Structure. 304.1.1 – Unsafe Conditions: Roofing or roofing components that have defects that admit rain, roof surfaces with inadequate drainage, or any portion of the roof framing that is not in good repair with signs of deterioration fatigue or without proper anchorage and incapable of supporting all nominal loads and resisting all load effects.

> Flooring and flooring components with defects that effect serviceability or flooring components that show signs of deterioration or fatigue, are not properly anchored or are incapable of supporting all normal loads and resisting all load effects.

(*Id.*). Accordingly, the Court notes that the condemnation notice cites to specific ordinance sections with explanations, and it does not merely cite to the IPMC – but not any other law or authority – as Harr implies in her Amended Complaint.

Additionally, Harr states in her Amended Complaint, without explanation or support, "Under ordinances, condemnation requires a notice and an opportunity to appeal." (Docket No. 92, ¶ 258). To the extent Harr contends that the condemnation notice was not a "formal" condemnation notice because it did not provide her with information on how to appeal the condemnation of her property, Harr herself explains that notice of remedies and procedures to protect one's property interests is not required unless administrative procedures at issue are "arcane" and are "not set forth in documents accessible to the public." (Docket No. 128 at 3 (discussing *City of West Covina v. Perkins*, 525 U.S. 234, 241-42 (1999) ("In prior cases in which we have held that postdeprivation state-law remedies were sufficient to satisfy the demands of due process and the laws were public and available, we have not concluded that the State must provide further information about those procedures.")). Harr concedes that the relevant appeal procedures are contained in the IPMC, but she asserts that the IPMC is not readily available as it is "not set forth in documents accessible to the public" since it is a private book.[4] (Docket No. 128 at 3). However, the Court notes that, contrary to Harr's contention, the

---

[4] The Donora Defendants attached to their brief what they represent is a copy of Ordinance 1390, which is referenced in the condemnation notice and which states that it is an Ordinance of the Borough of Donora adopting the 2012 Edition of the IPMC. (Docket No. 118-1). While Harr does not address this Ordinance specifically in her brief – and the Court need not take judicial notice of it in considering the Donora Defendants' motion to dismiss – the Court notes that Harr concedes in her brief that the IPMC sets forth "Defendants' procedures." (Docket No. 128 at 3).

IPMC (specifically, the 2012 version that is relevant here) is in fact publicly available on the internet.[5]

Accordingly, the Court finds that the condemnation notice, which was issued in written form, advised Harr that her property was condemned and cited violations of several specific local ordinances with explanations provided, and was not an informal "verbal condemnation," as Harr alleges, that denied her due process. Additionally, the Court finds that, since Harr avers that the condemnation notice cited the IPMC, since she concedes that the IPMC identifies the appellate procedures at issue here, and since the IPMC is publicly available on the internet, Harr was not denied a post-deprivation process based on the condemnation notice not advising her of an available appellate procedure.

To the extent Harr argues that she was wrongfully denied a pre-deprivation process before her property was condemned, while a pre-deprivation hearing is usually required before a state actor deprives an individual of their property interest, a pre-deprivation process may not be required if a meaningful post-deprivation process is available. *See Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008). For example, if quick action by the state is required and providing any meaningful predeprivation process would be impractical, a hearing is not necessary in such an emergency situation. *See id.* Furthermore, in reviewing a district court's decision on whether quick action by the state was required, the Third Circuit uses a deferential standard, in which case the government must have "competent evidence" supporting the reasonable belief that an emergency existed. *Id.* at 418.

Here, the Donora Defendants argue that "competent evidence" to support a reasonable belief that an emergency condition existed on the Washington County property is available in the public filings of criminal cases, related to the property, that were filed against Harr in the Court

---

[5]     *See* https://codes.iccsafe.org/content/IPMC2012 (last visited Sept. 5, 2024).

of Common Pleas of Washington County. (Docket No. 118 at 9 (citing that court's Docket Nos. CR-0205-2020 & CR-1186-2020)). In fact, the Donora Defendants attached to their brief a number of criminal filings from those cases. (Docket Nos. 118-4 through 118-10). Because the Court finds, upon review of the attached documents, that those filings are from cases that have a direct relation to the matters at issue here, the Court will take judicial notice of those documents as well in ruling on the Donora Defendants' motion to dismiss. *See Golden v. Cook*, 293 F. Supp. 2d 546, 551 (W.D. Pa. 2003) ("In this regard it is well-established that courts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publicly available records and transcripts from judicial proceedings in related or underlying cases which have a direct relation to the matters at issue." (internal quotation marks and citations omitted)).[6]

The Court notes that the referenced criminal cases alleged aggravated cruelty to animals and resulted from searches of Harr's Washington County property as well her Westmoreland County property. (Docket Nos. 118-4 through 118-10). Search warrants for both properties were signed by magisterial district judges in the appropriate counties on October 29, 2019, and the warrants authorized the search of Harr's properties and seizure of animals, written and electronic documents, communications, and other properties. (Docket Nos. 118-4, 118-5). The search warrants were executed the following day, October 30, 2019 – the same day that the condemnation notice was posted on Harr's Washington County property. (Docket No. 92, ¶¶ 252, 315). The search warrants were supported by Affidavits of Probable Cause which, in addition to describing the mistreatment of over 100 cats in cages and unsanitary conditions,

---

[6] In so doing, the Court need not convert the Donora Defendants' motion to dismiss into a motion for summary judgment, as Harr requests. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (indicating that a court may consider "items subject to judicial notice" without converting a motion to dismiss into one for summary judgment).

described a substantially deteriorated Washington County property, the overwhelming smell of feces and ammonia from inside a building, piles of garbage both inside and outside buildings, regurgitated food on the floor, a damaged roof, and water leakage from the roof. (Docket Nos. 118-4, 118-5).

The Court further notes that Harr later filed an Omnibus Pre-Trial Motion in state court, in the Court of Common Pleas of Washington County, Pennsylvania, seeking suppression of the evidence and return of the property seized during the searches of her properties, which that court denied. (Docket Nos. 118-6, 118-7). The state court records show that on September 9, 2022, Harr pled nolo contendere (no contest) to two counts of Neglect of Animals and, pursuant to the Order of Sentence, Harr was sentenced to two years of probation, during which time she was not permitted to possess any type of animal and was not permitted to have contact with any of the animals seized from her properties. (Docket Nos. 118-8, 118-9). The attached hearing transcript indicates that, at her Plea and Sentencing Hearing, Harr testified that she had not intended to harm any of the animals, but that due to the damage to the property, "the condition of the property was *less than favorable*." (Docket No. 118-10 at 10-11 (emphasis added)). Harr further admitted at her hearing that because of the conditions of the property, she had been in the midst of moving the animals "to a new, *safe location.*" (*Id.* at 11 (emphasis added)).

Upon consideration of Harr's admissions as to the Washington County property's condition and the state court judge's denial of Harr's motion to suppress evidence (which noted that, as stated in the Affidavit of Probable Cause, it had been observed on August 26, 2019, that the property had substantially deteriorated), the Court finds that there was "competent evidence" to support Jericho's reasonable belief that Harr's property had to be condemned. The Court concludes that a pre-deprivation hearing was not required under the circumstances shown here,

where quick action was necessary and a meaningful post-deprivation process was available to Harr (*see* discussion, *supra*). Thus, the Court finds that the condemnation of the Washington County property without a pre-deprivation hearing did not violate Harr's Fourteenth Amendment right to procedural due process.[7]

Accordingly, Harr's claim against the Donora Defendants alleging a violation of her Fourteenth Amendment right to procedural due process will be dismissed, without prejudice, for failure to state a claim upon which relief can be granted.

### B. Substantive Due Process under the Fourteenth Amendment

The Donora Defendants also argue that Harr has failed to state a claim alleging that their actions violated her Fourteenth Amendment right to substantive due process because she has failed to allege conduct that "shocks the conscience." Harr has provided no response in opposition to this argument.

The Supreme Court has emphasized that "the touchstone of due process is protection against arbitrary government action," and that "[g]overnment action is arbitrary in the constitutional sense when it is so egregious, so outrageous, that is may fairly be said to *shock the*

---

[7] The Court also agrees with the Donora Defendants' argument that reliance upon the factual findings and legal conclusions of the state court judge are justified here based on the doctrine of collateral estoppel, which "operates to bar 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination.'" *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)). The doctrine of collateral estoppel precludes a party from raising a previously litigated issue if: 1) the issue decided in the prior case is identical to the one presented in the later case; 2) there was a final judgment on the merits in the prior case; 3) the party against whom collateral estoppel is asserted was a party to the prior action or is in privity with such party; and 4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior case. *See id.* Defendants in a Section 1983 case may rely upon collateral estoppel where a plaintiff attempts to relitigate in federal court an issue that was decided in state court criminal proceedings. *See Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986). Here, the Court finds that these factors have all been met such that the findings of fact and legal conclusions of the state court judge in Harr's state criminal proceedings can be relied upon in establishing the existence of competent evidence based upon which Jericho could reasonably believe that immediate action was necessary with regard to Harr's Washington County property. Moreover, even if the Court does not rely on such evidence, Harr's own admissions at her plea hearing – as to the "less than favorable" condition of the property and the moving of animals in her care "to a new, safe location" – establish the existence of competent evidence based upon which Jericho could reasonably believe that the immediate issuance of the condemnation notice was necessary here.

*contemporary conscience."* *L.R. v. School Dist. of Phila.*, 836 F.3d 235, 246 (3d Cir. 2016) (emphasis added, and internal quotation marks and citations omitted). While the meaning of the "shocks the conscience" standard varies depending upon factual context, "merely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision." *Chainey v. Street*, 523 F.3d 200, 220 (3d Cir. 2008).

Harr contends in her Amended Complaint that the Donora Defendants' "actions in creating an informal condemnation and simply denying access to the property through threats and intimidation and cutting utilities without formal process or following established procedures, shocks the conscience." (Docket No. 92, ¶ 280). However, upon consideration of the Amended Complaint's specific averments in conjunction with the documents of which the Court has taken judicial notice (*see* discussion, *supra*, regarding the related state criminal case filings), the Court finds that Harr has failed to allege a plausible substantive due process claim against the Donora Defendants based on their actions "creating an informal condemnation" and "simply denying access to the property" without formal process. Rather, as previously discussed, a written condemnation notice was issued, and such notice cited violations of particular sections of a local ordinance along with explanations of each section. According to Harr, the notice also referred to the IPMC, and that code, which is publicly available on the internet, set forth an appeals procedure that she did not pursue. Furthermore, competent evidence existed to support a reasonable belief that quick, emergency action was required to condemn the property. Harr baldly alleges that the Donora Defendants acted as they did for the purpose of appeasing the WAHS and the Humane Society of the United States (the "HSUS")[8] and not for proper regulatory purposes. (Docket No. 92, ¶ 282). However, as explained above, alleging an

---

[8] The HSUS is also a named defendant in this case, and it has filed a separate motion to dismiss the claims against it in the Amended Complaint.

improper motive is insufficient to allege conscience-shocking conduct, and Harr has not otherwise pled arbitrary government action in connection with conduct that "shocks the conscience" sufficient to plead a plausible substantive due process claim.

Accordingly, the Court will dismiss Harr's Fourteenth Amendment substantive due process claim, without prejudice, for failure to state a claim upon which relief can be granted.

## C. Fourth Amendment Seizure of Property

The Donora Defendants also argue that Harr has failed to state a plausible claim that they unlawfully seized her property in violation of her rights under the Fourth Amendment. Harr, here again, has provided no response in opposition to this argument.

Seizure of property "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). In the Amended Complaint, Harr appears to base her unlawful seizure of property claim on the Donora Defendants' failure to permit her to enter the Washington County property, immediately after the condemnation, to retrieve her possessions. However, as the condemnation notice advises, the property had been condemned and was determined to be unfit for human occupancy because it was unsafe, unlawful, or because it was in disrepair or was a hazard to the occupants or to the public. (Docket No. 118-2). As Harr herself indicated in hearing testimony during her criminal proceedings, the condition of the property was "less than favorable," and she needed to move her animals "to a new, safe location." (Docket No. 118-10 at 11). Harr also had the right to appeal this determination. Additionally, Harr admits in her Amended Complaint that Jericho told her that she could enter the property for twenty minutes to retrieve her possessions. (Docket No. 92, ¶ 262). Harr does not allege that this period of time was insufficient, and she admits that she was

16

ultimately permitted to enter the property to retrieve her belongings. (*Id.* ¶ 272-76). The Court therefore finds that Harr's allegations as to the Donora Defendants' conduct – in temporarily preventing her from entering the unsafe, condemned property – fail to state a plausible claim for seizure of property under the Fourth Amendment.

Accordingly, the Court will dismiss Harr's Fourth Amendment seizure of property claim, without prejudice, for failure to state a claim upon which relief can be granted.

## V. CONCLUSION

For the reasons stated, the Donora Defendants' Motion to Dismiss Plaintiff's Amended Complaint is granted, and Harr's claims against Jericho and Toprani are dismissed, without prejudice, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

An appropriate Order follows.


Dated: September 5, 2024                    *s/ W. Scott Hardy*
                                             W. Scott Hardy
                                             United States District Judge


cc/ecf:  Christie Harr (via U.S. Mail)
         All counsel of record