IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTIE HARR,                                    )
                                                  )
                    Plaintiff,                    )
                                                  )
            v.                                    )       Civil Action No. 21-1560
                                                  )
WASHINGTON AREA HUMANE  SOCIETY,                  )
MARANDA COOMBS (JOHN DOE 1), BARB                 )
LYLE (JOHN DOE (2),  CHELSEI FLEEGA               )
(JOHN DOE 3), ESTATE OF GLEN L.                   )
THOMSON, KELLY PROUDFIT, JOHN DOES                )
4-10 agents and employees of the Washington       )
Area Humane Society, HUMANE SOCIETY OF            )
THE UNITED STATES, SHALIMAR OLIVER,               )
LEANA STORMONT, LAURA KOIVULA,                    )
JOHN DOES 11-10 agents and employees of the       )
Humane Society of the United States, HUMANE       )
ANIMAL RESCUE, JOHN DOES 21-30 agents             )
and employees of the Humane Animal Rescue,        )
KEN JERICHO, STEVEN TOPRANI, MARVIN               )
DAVIS, SAMUEL JENESKY, STATE                      )
TROOPER TIEGARDEN, JOHN DOES 32-50                )
unknown law enforcement Officers,                 )
                                                  )
                    Defendants.                   )

**MEMORANDUM OPINION**

## I. **INTRODUCTION**

Plaintiff Christie Harr ("Harr"), who is proceeding *pro se*, brings this action pursuant to

42 U.S.C. § 1983, alleging a variety of claims for violations of her rights under the Constitution

of the United States, as well as tort claims under Pennsylvania law.  Harr alleges claims against

numerous defendants, including the following three groups (collectively referred to herein as the

"Humane Defendants"):  (1) the Washington Area Humane Society (the "WAHS") and its

alleged agents and employees including the Estate of Glen L. Thomson[1] ("Officer Thomson"), Kelly Proudfit ("Proudfit"), Barb Lyle ("Lyle"), Chelsea Fleegal ("Fleegal"), and Maranda Coombs (collectively, the "WAHS Defendants"); (2) the Humane Society of the United States (the "HSUS") and its alleged agents and employees including Shalimar Oliver, Leana Stormont, and Laura Koivula (collectively, the "HSUS Defendants"); and (3) Humane Animal Rescue and its agents and employees (collectively, the "Humane Animal Rescue Defendants").[2]   (Docket No. 92).  Harr's claims against the Humane Defendants arise from an allegedly unconstitutional search and seizure operation that took place on or around October 30, 2019, involving properties in her possession in the City of Monessen in Washington County, Pennsylvania (the "Washington County property"), and in the Borough of Donora in Westmoreland County, Pennsylvania (the "Westmoreland County property"), which she was using to house animals in the course of operating an animal shelter  (*Id.*).  In her Corrected Amended Complaint (the "Amended Complaint"), which is the operative complaint here, Harr alleges that in conducting the search and seizure at these properties, the Humane Defendants violated her constitutional rights and committed various violations of state tort law.  (*Id.*).

Presently before the Court are a number of motions to dismiss Harr's Amended Complaint.  The Court notes that Harr's 46-page, 325-paragraph Amended Complaint alleges 16 separate counts (some of which appear to allege multiple, somewhat unclear claims) against a

---

[1]        The WAHS Defendants note that Harr fails to properly name, as a defendant in the Amended Complaint, the personal representative of the Estate of Glen L. Thomson, and instead names the estate itself, which is a basis for dismissal of the Amended Complaint.  *See Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C.*, 32 F. Supp. 2d 219, 226 (E.D. Pa. 1998) (noting that Pennsylvania law requires all actions that survive a decedent to be brought by or against the personal representative); *see also* 20 Pa. Cons. Stat. Ann. § 3373 ("An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive.").  As the Court is dismissing the claims against the Humane Defendants on other grounds and giving Harr leave to amend her claims, the Court, mindful of her *pro se* status, notes that Harr should properly name such defendant if she chooses to file a second amended complaint.

[2]        Harr also names a number of John Doe Defendants, who are alleged to be agents and employees of the WAHS (John Does 4-10), the HSUS (John Does 11-20), and Humane Animal Rescue (John Does 21-30), and who she says have not yet been identified but could be identified through discovery.  (Docket No. 92, ¶¶ 6, 10, 13).

multitude of defendants, in various combinations.  Many of these defendants, either in groups or individually, have filed motions to dismiss, such that the Court is issuing, herewith, other separate but related Memorandum Opinions and Orders on such motions.  Harr also filed another case, involving the same underlying facts as in this case, in this District Court against a different defendant (at Civil Action No. 21-1555), and the Court is issuing herewith a Memorandum Opinion and Order on a motion to dismiss that was filed in that case as well.

Here, the Court is considering the motions to dismiss the Amended Complaint and briefs in support filed by the WAHS Defendants (Docket Nos. 115, 116), the HSUS Defendants (Docket Nos. 113, 114), and Humane Animal Rescue (Docket Nos. 107, 109), Harr's single brief filed in opposition to all three of the Humane Defendants' motions (Docket No. 127), and the replies filed by the WAHS Defendants (Docket No. 134) and the HSUS Defendants (Docket No. 135).  The Court is also considering here the motion to dismiss Harr's Amended Complaint and supporting brief that was filed more recently by Defendants Lyle and Fleegal (Docket Nos. 140, 141), and Harr's response in opposition thereto (Docket No. 145).  Although Lyle and Fleegal filed a separate motion to dismiss, they are represented by the same counsel as the WAHS Defendants and join in the motion filed by those defendants, but they make additional arguments on their own behalf.

After careful consideration of the parties' arguments and for the following reasons, the Humane Defendants' motions will be granted, and Harr's claims against the Humane Defendants will be dismissed, without prejudice.

## II. **BACKGROUND**

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts, as alleged in the Amended

Complaint[3] and in the light most favorable to Harr, that are relevant to the motions presently before the Court.  In her Amended Complaint, Harr avers that, at the time of the events from which her claims arise, she was operating a non-profit animal shelter on the Washington County property, which she lawfully possessed and occupied.  (Docket No. 92, ¶¶ 39, 48, 249, 250). After a tornado caused damage on that property, Harr alleges that she was in the process of moving the shelter to her Westmoreland County property, when agents of the Humane Defendants engaged in a surreptitious investigation in which they entered both properties and seized her animals and other items located therein.  (Id. ¶¶ 39, 48, 51, 76-78, 148, 159, 160).

The Humane Defendants' conduct that is at issue here occurred during the execution of two warrants that authorized the search of Harr's Washington and Westmoreland County properties.[4]  The warrants were signed and sealed by magisterial district judges in each county on October 29, 2019.   (Docket Nos. 118-5 (the "Washington County warrant"), 118-4 (the "Westmoreland County warrant")).  The warrants specifically authorized the search of each property and the seizure of animals and other items thereon.  (Docket Nos. 118-4, 118-5).  A lengthy Affidavit of Probable Cause supported the warrants and identified the areas and properties to be searched and the types of evidence to be collected.  (Id.).  The warrants were executed the following day, on October 30, 2019, when over 200 neglected animals were seized, including cats, dogs, chickens, and rodents.  (Docket No. 118-6 at 3 (Court of Common Pleas of

---

[3]      Harr contends that this Court has subject matter over her constitutional claims, brought pursuant to 42 U.S.C. § 1983, because they involve a federal question under 28 U.S.C. § 1331, and that the Court has supplemental jurisdiction over her state claims pursuant to 28 U.S.C. § 1367.  (Docket No. 92, ¶ 21).

[4]      In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.  *See Pension Ben. Guar. Corp. v. White Consol Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Simpson v. Sessions*, No. 16-1334, 2017 WL 1910141, at *2 (E.D. Pa. May 10, 2017) (noting that "'judicial opinions and docket sheets are public records, of which this court may take judicial notice in deciding a motion to dismiss'" (quoting *Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017))).  As Harr's claims against the Humane Defendants are based on documents from her criminal case, the Court will take judicial notice of and consider relevant documents from that case in deciding the Humane Defendants' motions to dismiss in this matter.

Washington County Order, dated Apr. 4, 2022)).  Personnel from the WAHS, the HSUS, and Humane Animal Rescue were present at the properties to assist in the search and seizure. (Docket No. 92).

As a result of the execution of the warrants, animal cruelty/neglect charges were filed against Harr in the Court of Common Pleas for Washington County on October 30, 2019, at Docket No. CR-205-2020, and on June 11, 2020, at Docket No. CR-1186-2020 (hereinafter, the "criminal case").  (Docket No. 118-6 at 3).  On October 29, 2021, Harr commenced the instant federal action in this Court by filing a motion for leave to proceed *in forma pauperis*, which the Court granted, and Harr's Complaint was filed on November 2, 2021.  (Docket Nos. 1, 2, 5).

Via an Omnibus Pre-Trial Motion filed in the criminal case, Harr raised challenges to the warrants for her Washington and Westmoreland County properties, and she specifically sought to suppress the evidence that was uncovered in both searches.  (Docket No. 118-7).  On April 4, 2022, after a hearing was conducted, Harr's Omnibus Pre-Trial Motion was denied by Washington Court of Common Pleas Judge Brandon P. Neuman.  (Docket No. 118-6).  In analyzing why denial of Harr's motion was appropriate, Judge Neuman specified in his Order that:

> The Criminal Complaint in case 205-2020 was filed on October 30, 2019 and the Defendant was charged with aggravated cruelty to animals – torture and aggravated cruelty to animals – causing serious bodily injury or death with both charges stemming from a failure to obtain veterinary care for Linus the cat.  A second criminal complaint was filed on June 11, 2020 for case 1186-2020 which charged the Defendant with two counts of aggravated cruelty to animals and six counts of neglect of animals.  **These charges encompassed activities taking place at both the Donora property and Monessen property after the Westmoreland County District Attorney's Office consented to Washington County handling both matters on March 4, 2020**.

*Id.* at 3 (emphasis added).

5

A Joint Motion by Defendants to Stay All Civil Proceedings was filed in the present case, which motion was granted by the Court on April 21, 2022.  (Docket Nos. 43, 51).  Therein, the Court ordered that this case be stayed and administratively closed until the conclusion of the state court criminal proceedings against Harr.  (Docket No. 51).

On September 9, 2022, in the criminal case, Harr pled nolo contendere (no contest) to two counts of Neglect of Animal, 18 Pa. Cons. Stat. Ann. § 5532(a)(1).  (Docket No. 118-9 (Pleas of Nolo Contendere at Docket Nos. CR-205-2020 and CR-1186-2020)).  As part of her plea agreement, Harr was sentenced to two years of probation, and as special conditions of her probation, she was prohibited during that time from possessing any type of animal or having contact with any of the animals seized.  (Docket No. 118-8 (Order of Sentence, dated Sept. 9, 2022)).

On December 14, 2022, the stay in this case was lifted and the case was reopened, and the Defendants were ordered to respond to Harr's Complaint.  (Docket No. 61).  After a number of Defendants filed motions to dismiss the Complaint, Harr filed an Amended Complaint.[5]  (Docket No. 92).   In her Amended Complaint, Harr alleges a variety of claims (both constitutional claims under Section 1983 as well as state tort claims) against the Humane Defendants in the case, among other Defendants, including:

> Count I: "Constitutional Violations . . . as to the Westmoreland County Property," against all the Humane Defendants, alleges a violation of Plaintiff's Fourth and Fourteenth Amendment rights by obtaining and executing the search warrant for the Westmoreland County property (a Section 1983 claim).
>
> Count II:  "Intrusion Upon Seclusion . . . as to the Westmoreland County Property," against all the Humane Defendants, alleges the intrusion upon the Westmoreland County property (a state law claim).

---

[5]      After the Court granted two motions for extensions of time, Harr filed an Amended Complaint (one day late) on March 29, 2023.  (Docket No. 91).  On April 6, 2023, without seeking leave of Court, Harr filed a Corrected Amended Complaint, which the Court, mindful of Harr's *pro se* status, is treating as the operative complaint here. (Docket No. 92).

Count III:  "Trespass . . . as to the Westmoreland County Property," against all the Humane Defendants, alleges entrance onto Plaintiff's Westmoreland County property and that photos were taken (a state law claim).

Count IV:  "42 USC 1983 Supervisory Liability against WAHS as to the Westmoreland County Property," alleges supervisory liability for failure to train and for having a policy that its officers may represent themselves to be statewide Humane Police Officers (a Section 1983 claim).

Count V:  "Conversion . . . as to the Westmoreland County Property," against the WAHS Defendants and the HSUS Defendants, alleges that the memory chip from Plaintiff's video recorder was taken (a state law claim).

Count VI:  "Constitutional Violations . . . as to the Washington County Property," against all the Humane Defendants, alleges the violation of Plaintiff's Fourth Amendment rights by searching her Washington County property (a Section 1983 claim).

Count VII:  "Constitutional Violations for Deprivation of Property . . . and Conversion" against the HSUS and WAHS Defendants, alleges the violation of Plaintiff's Fourth and Fourteenth Amendment rights by seizing and retaining certain items from her Washington County property (a Section 1983 and state law claim).

Count VIII:  "Declaratory and Injunctive Relief Against HSUS," asks for the Court to declare that the HSUS engages in unconstitutional law enforcement functions by acting as Humane Police Officers, and requests an injunction regarding "such similar conduct" (a Section 1983 claim).

Count XI:  "Conversion or Trespass to Chattels" against Proudfit and the Estate of Glen Thomson, alleges that Proudfit and Officer Thomson deleted photographs and video from Plaintiff's telephone (a state law claim).

Count XII:  "42 USC 1983 Conspiracy" claims that all the Humane Defendants and other Defendants took collective action to violate Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights (a Section 1983 claim).

Count XV:  "[Intentional] Infliction of Emotional Distress" claims that all the Humane Defendants, among other defendants, left a chicken on Plaintiff's property which could have perished (a state law claim).

(Docket No. 92).  Harr seeks damages (including punitive damages), costs, attorney fees, injunctive relief, and any other relief that may be appropriate and just.  (*Id.*).

7

As set forth, *supra*, the Humane Defendants, along with certain other Defendants, have filed motions to dismiss Harr's Amended Complaint along with supporting briefs.  The Humane Defendants argue that dismissal of Harr's claims against them is warranted here because, among other reasons,[6] the claims alleging constitutional violations pursuant to Section 1983, at Counts I, IV, VI, VII, and XII, are barred by application of the doctrine of collateral estoppel.  The Humane Defendants also argue that, if the Court dismisses the Section 1983 claims against them, the Court should decline to exercise supplemental jurisdiction over the remaining claims against them alleging violations of state law at Counts II, III, V, VII, XI, and XV.  Officer Thomson and Proudfit also argue that they are entitled to qualified immunity in this matter.  Lyle and Fleegal argue separately that the claims against them should be dismissed for lack of service.  Additionally, the HSUS Defendants argue that the Court lacks subject matter jurisdiction to address Harr's request for declaratory and injunctive relief at Count VIII.  Harr filed her responses opposing the Humane Defendants' motions, and the WAHS Defendants and the HSUS Defendants both filed replies.  The matter is fully briefed and is now ripe for decision.

## III.  STANDARD OF REVIEW

### A.  Rule 12(b)(6)

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil

---

[6]     The Court does not address herein all of the many arguments offered by the Humane Defendants in support of their motions to dismiss, as it is not necessary to do so in order to grant their motions.

Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).  Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  First, the Court notes the elements of a claim. *See id.* (citing *Iqbal*, 556 U.S. at 675).  Second, the Court eliminates conclusory allegations.  *See id.* (citing *Iqbal*, 556 U.S. at 679).  And finally, the Court assumes

the remaining well-pleaded facts are true and assesses "whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### B.  Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a defendant may move to dismiss a complaint on account of the Court's "lack of subject-matter jurisdiction."  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007).  Rule 12(b)(1) motions challenging jurisdiction are either facial or factual.  *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006).  "A facial attack . . . is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court . . . ." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  A facial attack asserts that a claim "is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Id.* at 358.  A facial attack "can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint." *Id.*  Conversely, a factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Constitution Party of Pa.*, 757 F.3d at 358).

Here, to the extent the HSUS Defendants seek dismissal of Harr's request for declaratory and injunctive relief at Count VIII pursuant to Rule 12(b)(1), they make a facial challenge, arguing that the facts alleged do not show that Harr has standing to seek such relief.  When analyzing a facial attack on subject-matter jurisdiction, "the court must only consider the

allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Constitution Party of Pa.*, 757 F.3d at 358 (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)).

### C.  Qualified Immunity

The qualified immunity doctrine "shield[s] government officials performing discretionary functions . . . 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not a "mere defense to liability" but rather it is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It is thus important to "resolv[e] immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). In considering a claim of qualified immunity, a court must determine both whether the plaintiff has shown a violation of a constitutional right, and whether the right was "clearly established" at the time of the alleged constitutional violation. *See id.* (discussing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

### D.  *Pro Se* Pleadings

Although courts must generally construe *pro se* pleadings liberally pursuant to Rule 8(a)(2), courts are not required to accept legal conclusions disguised as statements of fact,

unsupported conclusions, or unwarranted references.  *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  "[A] pro se complaint must still contain factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wallace v. Fegan*, 455 F. App'x 137, 139 (3d Cir. 2011) (internal quotation marks and citation omitted).  Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "they cannot flout procedural rules – they must abide by the same rules that apply to all other litigants."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (internal citations omitted).

## IV.    DISCUSSION

Harr brings her constitutional claims pursuant to 42 U.S.C. § 1983, which does not create any substantive rights, but rather provides a remedy for deprivations of rights created by the Constitution of the United States or federal law.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  Thus, "[t]o state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  In this case, although her claims are not entirely clear, Harr appears to assert that the Humane Defendants violated her rights under the Fourth, Fifth, and/or Fourteenth Amendments to the Constitution, at Counts I, IV, VI, VII, VIII, and XII.  (Docket No. 92).  Harr also alleges various claims against the Humane Defendants under the laws of the Commonwealth of Pennsylvania at Counts II, III, V, VII, XI, and XV.  As previously noted, Harr seeks both monetary and equitable relief.

A.      **Whether Harr's Claims Related to the Search Warrants Are Barred by**
         **Collateral Estoppel**

Harr's Section 1983 constitutional claims allege violations of her Fourth, Fifth, and
Fourteenth Amendment rights related to what she describes as an unlawful search and seizure of
her property and a denial of due process, all stemming from the Humane Defendants obtaining
and executing the search warrants at issue for her Washington and Westmoreland County
properties.  Although her claims are somewhat unclear, and some of the Counts appear to allege
multiple claims, Counts I, VI, and VII seemingly comprise Harr's primary constitutional claims,
while Counts IV (supervisory liability of the WAHS for the conduct at issue in the Amended
Complaint), and XII (conspiracy by the Humane Defendants and other Defendants to act to
deprive Harr of her constitutional rights) appear to rely on and/or refer to the allegations of her
primary constitutional claims.

### 1.   Harr's Present Claims and the Proceedings in her Criminal Case

In Count I, which relates to the Westmoreland County warrant and which appears to
contain her core claims, Harr alleges that the Humane Defendants (specifically the HSUS
Defendants and the WAHS Defendants) violated the Fourth Amendment by acting as humane
police officers under color of law without authorization, thereby engaging in actions "including
conducting an unlawful criminal investigation, obtaining an illegal search warrant, seizing
property, conducting an illegal search, pursuing unlawful criminal charges, and/or maliciously
prosecuting the Plaintiff."  (Docket No. 92, ¶ 110).  Harr also avers that such conduct violated
her Fourteenth Amendment due process rights, stating, "Specifically, a search warrant was
issued by a judge after the HSUS and WAHS defendants collectively represented that Thomson
was a statewide Humane Police Officer when he was not," and that the search and seizure at her
Westmoreland County property and resulting prosecution occurred in violation of such rights.

(*Id.* ¶ 111).  As for Humane Animal Rescue, which had a more limited role in the events at issue, Harr claims that "the John Doe agents of Humane Animal Rescue were at the scene" and "assisted with the search" of the Westmoreland County property.  (*Id.* ¶ 87).

In Count VI, which relates to the Washington County property, Harr alleges – largely similar to Count I, but in more general terms – that the Humane Defendants (here, specifically the HSUS Defendants and the Humane Animal Rescue Defendants) violated the Fourth Amendment by acting as humane police officers under color of law without authorization, thereby engaging in actions "including conducting an unlawful criminal investigation, entering the Washington County property, conducting a search, and seizing property."  (Docket No. 92, ¶ 148).  Harr also includes the WAHS in a few supporting allegations in this Count.

In Count VII, brought against the HSUS Defendants and the WAHS Defendants (but not the Humane Animal Rescue Defendants), Plaintiff appears to allege a taking of her property during the execution of the search warrants without due process under the Fourteenth Amendment, that the seizure of her property grossly exceeded the scope of the search warrants in contravention of her rights under the Fourth Amendment, and that such conduct also constituted conversion under Pennsylvania law.  (Docket No. 92, ¶¶ 169, 170, 172).

At the core of Harr's Amended Complaint appears to be her contention that because the Humane Defendants were not authorized to act under state law as they did, Harr was subjected to an unreasonable search of her premises and an unreasonable seizure of her property under the Fourth Amendment, and that she also had her Fourteenth Amendment due process rights violated.  Harr's claims, although not entirely clear, appear to be based generally on her contention that in obtaining the search warrant for the Westmoreland County property, Officer Thomson represented that he was a statewide humane police officer when he was actually a

humane police officer registered in Washington County alone, and he was therefore not authorized to act as he did, and the resulting searches and seizures were improper. (Docket No. 92, ¶¶ 61, 111). Harr bases this underlying argument on Pennsylvania statutory law, 22 Pa. Cons. Stat. § 3708(a), which states in part, "An individual appointed as a humane society police officer in accordance with this chapter shall have power and authority to exercise the powers conferred under 18 Pa. Cons. Stat. Ch. 55 Subch. B (relating to cruelty to animals) in enforcement of animal cruelty laws only within the particular county whose court of common pleas issued the appointment." (Docket No. 92, ¶ 22). Relatedly, Harr contends that the Westmoreland County District Attorney did not sign the Westmoreland County warrant here, so the issuance of that warrant violated Pennsylvania statutory law providing that search warrant applications filed in connection with alleged cruelty to animals laws must have the approval of the district attorney in the county where the alleged offense occurred. (*See id.* ¶¶ 24, 69 (citing 22 Pa. Cons. Stat. § 3710)).

However, as previously discussed, during her underlying criminal proceedings, Harr, who was fully represented by competent counsel, filed her Omnibus Pre-Trial Motion that sought, in part, suppression of all evidence obtained as a result of the searches of her Washington and Westmoreland County properties, based on arguments similar to those set forth in the Amended Complaint. Specifically, Harr challenged the validity of the search warrants themselves as well as the authority of the Humane Defendants to secure and execute those warrants.

In the criminal case, upon consideration of Harr's argument that the Humane Defendants did not have authority to secure the Westmoreland County search warrant because Officer Thomson was not a registered humane police officer in that county, Judge Neuman disagreed based on the fact that Officer Thomson was not the only affiant on that warrant. (Docket No.

15

118-6 at 4-5). Rather, a Pennsylvania State Police Officer, Corporal Teagarden, was a co-affiant on the warrant along with Officer Thomson. (*See id.*). As Judge Neuman explained:

> Corporal Teagarden served as a co-affiant on the search warrant obtained for Westmoreland County and therefore this Court finds there was no overreach of jurisdiction by coaffiant Officer Thomson and coaffiant Corporal Teagarden and the evidence will not be suppressed on this basis.

(*Id.*).

As to Harr's argument in the criminal case that the Westmoreland County warrant was illegal because it was not signed by Westmoreland County's District Attorney, Judge Neuman also ruled against Harr. (Docket No. 118-6 at 5). Specifically, Judge Neuman found:

> Therefore, because the Westmoreland County search warrant included Corporal Teagarden as a co-affiant, there was no requirement that approval from the Westmoreland County District Attorney's office be sought. For this reason, this Court finds that the warrant was not illegally issued and the evidence will not be suppressed on this basis.

(*Id.*).

Furthermore, in the criminal case, with regard to Harr's contention that the scope of the search warrants was exceeded during their execution, Judge Neuman also disagreed, holding:

> This Court finds that the description of the items to be seized in the affidavit of probable cause, when construed with the search warrant, provided a sufficiently particular description. Therefore, the warrants are not illegal general warrants and the scope was not exceeded during the execution of the warrant. Therefore, the evidence will not be suppressed on this basis.

(Docket No. 118-6 at 7).

Judge Neuman summarized his rulings on the search warrants as follows:

> This Court finds no merit to the Defendant's arguments that a) the Westmoreland County investigation was invalidated by the [WAHS] Police Officer overreaching his jurisdiction, b) the Westmoreland County search warrants were illegally issued, and c) the scope of the search warrants was exceeded and therefore they were illegal general warrants for the reasons listed above and therefore DENIES Defendant's Motion to Suppress.

(Docket No. 118-6 at 7).

After the Omnibus Pre-Trial Motion was denied, Harr pled nolo contendere to the charges against her, she was sentenced to probation, and she did not file an appeal.

Now, in the present Section 1983 action, Harr appears to seek relitigation of the constitutionality of these same search warrants and the accompanying search and seizure, alleging violation of her rights under the Fourth and Fourteenth Amendments. Therefore, in moving to dismiss the Amended Complaint, the Humane Defendants argue that Harr has already argued, albeit unsuccessfully, the merits of her constitutional claims during her criminal proceedings, and that, since Harr has already had the opportunity to litigate those issues in her state court proceeding, she is now barred from making those same arguments again – this time, in federal court under the guise of a Section 1983 action. Specifically, the Humane Defendants contend that Harr's constitutional claims here, which relate to obtaining and executing the search warrant for her Westmoreland County property, and executing the search warrant for her Washington County property, are barred by the doctrine of collateral estoppel.

## 2.  Whether Collateral Estoppel Applies to Harr's Claims

Federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel:

> Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Cromwell v. County of Sac*, 94 U.S. 351, 352 [(1876)]. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Montana v. United States*, 440 U.S. 147, 153 [(1979)]).

*Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Collateral estoppel, like res judicata, thus "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Id.*  As the United States Supreme Court held in *Allen v. McCurry,* collateral estoppel applies in Section 1983 claims.  *See id.* at 105.  Accordingly, defendants in a Section 1983 suit are permitted to raise the issue of collateral estoppel where plaintiffs attempt "to relitigate in federal court issues decided against them in state criminal proceedings." *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986) (citing *Allen*, 449 U.S. at 101)).

Additionally, the Third Circuit held in *James v. Heritage Valley Fed. Credit Union* that "[c]ollateral estoppel, or issue preclusion, prevents a party who litigated an issue previously from rearguing that particular issue even if the other litigants were not party to the earlier proceeding." 197 F. App'x 102, 105 (3d Cir. 2006).  Thus, "[a] finding in a prior criminal proceeding may estop an individual from litigating the same issue in a subsequent civil proceeding." *Id.*  The Third Circuit explained that the plaintiff in *James* had "raised and argued in the trial court that the evidence should be suppressed because the searches and seizures at issue presently [in the civil case] were constitutionally invalid," but that the "trial court ruled on the challenges and found no Fourth Amendment violations." *Id.* at 106.  The Third Circuit noted in *James* that the plaintiff there was a party to the criminal proceeding, was represented by counsel, and had a full and fair opportunity to litigate the issue after he appealed on the same issue.  *See id.*  The Third Circuit therefore held that the plaintiff was precluded from reasserting his alleged violations of the Fourth Amendment that had been previously rejected in his criminal case.  *See id.*

Other district courts in the Third Circuit have also held that collateral estoppel bars Section 1983 Fourth Amendment claims based on the propriety of a search that was challenged

in underlying criminal proceedings.  *See Aursby v. Auxter*, Civ. Action No. 19-4849, 2021 WL
3885122 (E.D. Pa. 2021) (finding that collateral estopped barred the plaintiff's Section 1983
action, where the plaintiff had previously challenged the constitutionality of the search through a
suppression motion in the underlying criminal matter); *Briggs v. Godby*, Civ. Action No. 08-
5239, 2009 WL 4756390 (E.D. Pa. 2009) (dismissing the plaintiff's Fourth Amendment claim
based on the propriety of a warrantless search, because the plaintiff had unsuccessfully
challenged the search through an omnibus pre-trial motion to suppress in the underlying criminal
case); *see also Ingram v. Lupas*, 353 F. App'x 674, 677 (3d Cir. 2009) (holding that the district
court correctly concluded that the plaintiff was barred from re-litigating the issue in question,
since the denial of a suppression motion followed by a conviction is a final judgment for
purposes of collateral estoppel).

      In assessing whether a plaintiff is estopped from relitigating issues in a Section 1983
action, the Court "must give the state court's judgment the same preclusive effect as would be
given the judgment by a court of that state."  *James*, 197 F. App'x at 105.  Here, under
Pennsylvania law, the doctrine of collateral estoppel applies when the following four elements
are met:

> (1) An issue decided in a prior action is identical to one presented in a later
> action; (2) The prior action resulted in a final judgment on the merits; (3) The
> party against whom collateral estoppel is asserted was a party to the prior
> action, or is in privity with a party to the prior action, or is in privity with a
> party to the prior action; and (4) The party against whom collateral estoppel is
> asserted had a full and fair opportunity to litigate the issue in the prior action.

*Jones v. United Parcel Serv.*, 214 F.3d 402, 405 (3d Cir. 2000) (quoting *Rue v. K-Mart Corp.*,
713 A.2d 82, 84 (Pa. 1988)).

      The Humane Defendants argue that all the requirements for application of the doctrine of
collateral estoppel are met here, and Harr is precluded from relitigating her constitutional claims

in this Section 1983 action since: (1) the issues litigated in connection with the suppression motion are identical to the issues Harr raises here; (2) the denial of a suppression motion followed by a nolo contendere plea is a final judgment for collateral purposes; (3) Harr was the defendant in the criminal case; and (4) Harr had a full and fair opportunity to litigate the issues in the criminal case.

In response to the Humane Defendants' argument, Harr asserts that she is not barred from bringing the present action because the second and fourth elements required for the application of collateral estoppel are not met here: (2) she asserts that there was no final judgment in her criminal case; and (4) she contends that she did not have a full and fair opportunity to litigate the issues in her criminal case. (Docket No. 127 at 4-5). While Harr seemingly concedes the first and third elements – (1) that she previously made challenges in her criminal case (including, as in this case, by objecting to the search warrants and the authority of the WAHS particularly, and Officer Thomson's involvement), and (3) that she was the defendant in the criminal case – she disputes the remaining two elements.

Thus, Harr argues, as to the second element required for the application of collateral estoppel, that the criminal court decision on her suppression motion (the Omnibus Pre-Trial Motion) never became final because all the Westmoreland County charges were withdrawn (or nolle prossed) and Harr only entered a plea to the Washington County charges. (Docket No. 127 at 4-5). Therefore, according to Harr, the prior action did not result in a "final judgment on the merits." (*Id.* at 5). Instead, she argues that the final judgment regarding the Westmoreland County charges was dismissal (nolle prosse), not "conviction." (*Id.*). Harr also argues, as to the fourth element required for the application of collateral estoppel, that the state court decision cannot be relied upon because the withdrawal of the Westmoreland County charges, and the

decision to enter a plea of nolo contendere to the Washington County charges, meant that she could not appeal that decision and thus did not have a "full and fair opportunity to litigate the issue." (*Id.*).

With regard to whether there was a "final judgment on the merits" in Harr's criminal case, a criminal court's ruling on a suppression motion is considered to be sufficiently final for purposes of collateral estoppel, as that doctrine "'does not require the entry of a judgment, final in the sense of being appealable.'" *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 210 (3d Cir. 2001) (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)). In fact, for collateral estoppel purposes, a final judgment "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Id.* Here, the criminal court denied Harr's suppression motion, and Harr subsequently entered a plea of nolo contendere, which the Third Circuit has held "'has the same legal consequences as a plea of guilty and results in a conviction.'" *Massey v. Pfeifer*, Civ. Action No. 1:17-cv-173, 2019 WL 3046131, at *10 (W.D. Pa. May 21, 2019) (quoting *United States v. Adedoyin*, 369 F.3d 337, 344 (3d Cir. 2004) (additional internal quotation marks and citation omitted)). Harr was sentenced to probation and did not file an appeal. In this situation, the Court finds the criminal court's ruling on the suppression motion to be sufficiently firm to be accorded conclusive effect, and the "final judgment on the merits" element of collateral estoppel is met here. *See Berry v. Chaves*, No. CIV.A. 02-893, 2003 WL 21497557, at *2 (E.D. Pa. June 30, 2003) (stating that "denial of a suppression motion followed by a conviction is a final judgment for collateral estoppel purposes"); *see also Aursby v. Auxter*, Civ. Action No. 19-4849, 2021 WL 3885122, at *8 (E.D. Pa. Aug. 30, 2021) (holding that where the plaintiff's suppression motion was denied and he was

subsequently convicted, he was collaterally estopped from relitigating the same constitutional challenges via a Section 1983 action).

As to Harr's contention that she did not have a full and fair opportunity to litigate the issues raised in the suppression motion because the Westmoreland County charges were withdrawn (or nolle prossed), and that she only pled nolo contendere to the Washington County charges and therefore only the Washington County conduct, the criminal court record simply does not support her understanding.  Rather, in ruling on the Omnibus Pre-Trial Motion, Judge Neuman not only denied the motion to suppress evidence seized in the searches at her properties in Washington and Westmoreland Counties, but he also clearly specified that the charges that Harr faced in Washington County consisted of her conduct in both Washington and Westmoreland Counties.  (Docket No. 118-6).  As Judge Neuman indicated in his Order, "These charges encompassed activities taking place at both the Donora property [Washington County property] and Monessen property [Westmoreland County property] after the Westmoreland County District Attorney's Office consented to Washington County handling both matters on March 4, 2020."  (*Id.* at 3).  Judge Neuman also specified in his ruling that "the charges arising in Westmoreland County are part of the same criminal episode as the charges in Washington County and therefore may be brought properly in either," and that "the Westmoreland County District Attorney's office consented to the Washington County District Attorney's office taking full prosecution of any charges incurred in Westmoreland County."  (*Id.* at 8).  Although Harr may subjectively believe that her nolo contendere plea applied only to the Washington County charges and therefore concerned only her conduct in Washington County, the documents entered on the docket in her criminal case do not make this distinction.  To the extent Harr may have desired additional clarity on this issue, she could have appealed to the Superior Court of

Pennsylvania but did not do so.  Therefore, the Court finds that Harr had a full and fair opportunity to litigate the issues raised in her suppression motion in the criminal case, and this element of collateral estoppel is also met here.

Accordingly, the record is clear that Judge Neuman considered Harr's arguments as to the constitutionality of the search warrants for the Washington and Westmoreland County properties in the criminal case, and he ruled against her.  Harr subsequently entered a plea of nolo contendere and did not file any appeal.  Harr is therefore estopped from relitigating her arguments that the search warrants and their execution were unconstitutional, as those issues have been judicially determined in the criminal case in state court and she cannot now assert claims based on those same arguments via a Section 1983 action in federal court.[7]  Accordingly, Counts I, IV, VI, VII, and XII, which appear to be based on these same arguments as to the alleged unconstitutionality of the warrants and the warrants' execution, will be dismissed, without prejudice, for failure to state a claim upon which relief can be granted.

---

[7]     Count XII, which alleges a Section 1983 conspiracy to deprive Harr of her constitutional rights in connection with the search warrant(s), is also barred by collateral estoppel, although it is not clear from the Amended Complaint if this Count relates to the issuance of the Westmoreland County warrant, the execution of that warrant, or the execution of the Washington County warrant.  (Docket No. 92 at 34-35).

Additionally, the Court notes that Harr only references the Fifth Amendment once in the Amended Complaint, which is in her conspiracy claim at Count XII.  (Docket No. 92, ¶ 225).  Harr summarizes that Count as alleging violations of her Fourth and Fourteenth Amendment rights, so it is not clear whether the reference to the Fifth Amendment is perhaps a typographical error.  (*Id.* ¶ 230).  Harr also has not identified which Fifth Amendment right was allegedly violated, but it appears that she may be claiming that her private property was taken without just compensation.  While the "Fifth Amendment's Takings Clause prohibits the government from taking private property for public use without providing just compensation," in order to succeed on such a claim, "the plaintiff[s] must first show that a legally cognizable property interest is affected by the Government's action in question." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018) (internal quotation marks and citation omitted)).  As "there can be no cognizable Fifth Amendment 'takings' claim when property is seized pursuant to a lawful search warrant," and, as discussed *supra*, since the seizure here occurred pursuant to valid warrants, Harr has not alleged a legally cognizable property interest at issue, so to the extent she wishes to assert a Fifth Amendment claim, such claim could also be dismissed for this reason.  *McKenna v. Portman*, 538 F. App'x 221, 224 (3d Cir. 2013) (internal footnote omitted).

**B.** <u>**Whether the Court Lacks Jurisdiction to Grant Declaratory and/or Injunctive Relief**</u>

At Count VIII of the Amended Complaint, Harr asks the Court to declare that the HSUS engages in unconstitutional law enforcement functions by acting as humane police officers without complying with state statutory requirements, when it participates in the drafting of search warrants, has its agents enter private property when executing or assisting other organizations in executing a warrant, invites news media to enter private property, records private property of persons without authorization to post on social media, and places such recordings on social media.  (Docket No. 92 at 29, "Wherefore" clause).  Harr also asks the Court to "enjoin all such similar conduct."  (*Id.*).

The HSUS Defendants argue that Harr has no standing to seek the declaration and injunction requested in Count VIII since she has not alleged facts to suggest that she would suffer injury in the future, so that claim should be dismissed.  "Standing is a jurisdictional matter," and without Article III standing, a federal court lacks "subject matter jurisdiction to address a plaintiff's claims and they must be dismissed."  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (internal quotation marks and citation omitted).  In order to satisfy the standing and "case or controversy" requirements of Article III, "a party seeking a declaratory judgment must allege facts from which it appears there is substantial likelihood that he will suffer injury in the future."  *Blakeney v. Marsico*, 340 F. App'x 778, 780 (3d Cir. 2009) (internal quotation marks and citation omitted).  Additionally, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

24

Upon review of the Amended Complaint, the Court notes that Harr does not allege facts to suggest that she will suffer injury in the future absent the requested declaratory and injunctive relief, nor does she allege that the conduct of which she complains is presently ongoing. Although Harr alleges that she plans to create a new animal shelter in Westmoreland County, beginning in January 2025, such allegation alone does not aver facts to suggest that the HSUS obtaining and executing a search warrant for the referenced shelter is imminent in the future. (Docket No. 92, ¶ 175).  Therefore, the Court finds that Harr lacks standing to seek the requested declaratory and injunctive relief and there is no Article III case or controversy.   As the Court lacks subject matter jurisdiction to address Harr's request for declaratory and injunctive relief, Count VIII will be dismissed, without prejudice, for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

**C.     Whether Officer Thomson and Proudfit are entitled to Qualified Immunity**

In their motion to dismiss, the WAHS Defendants argue, additionally, that Officer Thomson and Proudfit are entitled to qualified immunity in this matter.  Although the Court is dismissing the Section 1983 claims against Officer Thomson and Proudfit for failure to state a claim upon which relief can be granted, the Court will still consider the argument that they are entitled to qualified immunity here.  *See Roth v. City of Hermitage*, 709 F. App'x 733, 736 (3d Cir. 2017) ("Failing to consider the qualified immunity defense before dismissing without prejudice on the merits was error because the District Court failed to resolve a motion asserting qualified immunity . . . at the earliest possible stage in the litigation." (internal quotation marks and citation omitted)).  In addition to arguing that Harr fails to state a cognizable claim under Rule 12(b)(6), the WAHS Defendants contend that Officer Thomson and Proudfit are entitled to qualified immunity for their actions at this stage of the litigation because Pennsylvania statutory

law generally protects humane police officers from civil liability and Harr's claims do not establish the violation of any clearly established rights under federal law.  (Docket No. 116 at 17-18).  However, because the WAHS Defendants raise this argument only briefly and do not fully develop it, nor do they further discuss it in their reply brief in response to Harr's opposition, and since Harr is being given leave to amend her claims, the Court will address qualified immunity only briefly at this time.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A federal right is clearly established for qualified immunity purposes if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Additionally, qualified immunity must be assessed in the context of each individual defendant's specific conduct, including "'an analysis of the facts adduced concerning the conduct of the official'" claiming immunity.  *Griffin-El v. Beard*, 411 F. App'x 517, 519 (3d Cir. 2011) (quoting *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990)).

A Court may find that a municipal official is entitled to qualified immunity at the motion to dismiss stage if "(1) the facts alleged show the [official's] conduct did not violate a constitutional right, or (2) the right violated was not clearly established in light of the specific context of the case."  *Taylor v. Rosa*, 856 F. App'x 376, 378 (3d Cir. 2021) (citing *Reedy v. Evanson*, 615 F.3d 197, 223–24 (3d Cir. 2010)).  Thus, "qualified immunity should only be granted on a motion to dismiss when it is 'established on the face of the complaint.'"  *Janowski*

*v. City of North Wildwood*, 259 F. Supp. 3d 113, 126 (D.N.J. 2017) (quoting *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)).

Here, the facts alleged in the Amended Complaint do not make clear that the conduct of Officer Thomson and Proudfit did not violate a constitutional right (or that such right was not clearly established).  Because the Amended Complaint does not show that these Defendants' actions did not violate a clearly established constitutional right, dismissal on qualified immunity grounds is premature.  *See Thomas*, 463 F.3d at 291 (a dismissal under Rule 12(b)(6) based on qualified immunity will be upheld "'only when the immunity is established on the face of the complaint'" (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir.2001))).  Additionally, in accordance with Harr's request, and mindful of her *pro se* status, the Court is permitting Harr to amend her claims if she chooses to do so.  If Harr chooses to file a second amended complaint, she should provide a more definite statement of her claims, and the specific right at issue here, so that the qualified immunity issue may be resolved expeditiously and without "subjecting the [i]ndividual [d]efendants who may be immune from suit to needless discovery and the other burdens of litigation." *Id.* at 299-301.

Accordingly, at this juncture, the Court will decline to grant the WAHS Defendants' motion to dismiss the claims against Officer Thomson and Proudfit based on grounds of qualified immunity.  *See Debrew v. Auman*, 354 F. App'x 639, 642 (3d Cir. 2009) (vacating an order granting a motion to dismiss on qualified immunity grounds because the sparse complaint "failed to disclose whether the defendants' actions did not violate a clearly established constitutional right" and therefore "dismissal on qualified immunity grounds was premature;" and noting that, on remand, the district court could order the plaintiff to provide a more definite statement of his claims so that the qualified immunity issue could be resolved expeditiously

(citing *Thomas*, 463 F.3d at 291)); *see also Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (cautioning against deciding qualified immunity without a developed factual record). However, given that the Court is granting the Humane Defendants' motions to dismiss Harr's claims on other grounds, Officer Thomson and Proudfit are free to raise this qualified immunity argument, if appropriate, in response to a second amended complaint if Harr chooses to re-allege claims against them.

      **D.**     **Whether the Claims Against Lyle and Fleegal Should Be Dismissed for Lack of Service**

In addition to joining in the WAHS Defendants' other arguments regarding grounds for dismissal of the Amended Complaint, Defendants Lyle and Fleegal separately argue in their motion to dismiss that Harr's claims against them should be dismissed, with prejudice, for insufficient process under Federal Rule of Civil Procedure 12(b)(4) and insufficient service of process under Rule 12(b)(5), and for failure to comply with the Court's Order regarding service of the Amended Complaint upon new defendants in accordance with Rule 4. (Docket Nos. 140, 141). Since Waivers of Service for both Lyle and Fleegal were returned executed and appear on the Docket (Docket Nos. 142, 143), since the Court is mindful of Plaintiff's *pro se* status and understanding of her expressed confusion as to service of process under the circumstances presented here (Docket No. 145), and since the claims against Lyle and Fleegal are being dismissed on other grounds and Harr is being given leave to amend her claims, the Court finds that dismissal of the claims against Lyle and Fleegal, with prejudice, is inappropriate at this juncture.

      **E.**     **Ancillary State Law Claims**

In her Amended Complaint, Harr also alleges ancillary state law claims against the Humane Defendants for intrusion upon seclusion, trespass, conversion and/or trespass to chattels,

and intentional infliction of emotional distress. (Docket No. 92). Even if the Amended Complaint contained sufficient allegations to state claims for such torts under Pennsylvania law – which the Court does not find – the Court could only consider these claims under its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. However, 28 U.S.C. § 1367(c)(3) provides that district courts "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Additionally, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

Upon consideration, there is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction over Harr's state law claims. Accordingly, in this instance, the Court will decline to exercise supplemental jurisdiction over Harr's state law claims and will dismiss Counts II, III, V, VII (to the extent it alleges conversion), XI, and XV, without prejudice to her ability to allege such claims should she choose to file a second amended complaint, and without prejudice to her ability to bring such claims in state court.

## V.    <u>CONCLUSION</u>

For the reasons stated, the Humane Defendants' motions to dismiss Harr's Amended Complaint are granted. Harr's Section 1983 claims alleging constitutional violations against the Humane Defendants at Counts I, IV, VI, VII, and XII will be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Harr's request for

declaratory and injunctive relief against the HSUS at Count VIII is dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.  Furthermore, the Court will decline to exercise supplemental jurisdiction over Harr's state law claims at Counts II, III, V, VII, XI, and XV.  All of Harr's claims are dismissed without prejudice to her ability to allege such claims should she choose to file a second amended complaint, and her state law claims are also dismissed without prejudice to her ability to bring such claims in state court.

An appropriate Order follows.

Dated:  September 5, 2024                    _s/ W. Scott Hardy_____
                                            W. Scott Hardy
                                            United States District Judge

cc/ecf: Christie Harr (via U.S. Mail)
        All counsel of record