**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTIE HARR, | ) | Civil Action No: 2:21-cv-1560 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Honorable W. Scott Hardy |
| | ) | |
| WASHINGTON AREA HUMANE SOCIETY, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS SECOND**
**AMENDED COMPLAINT**

**I.    INTRODUCTION**

This Court dismissed Plaintiff, Christie Harr's ("Harr"), claims against the HSUS Defendants (The Humane Society of the United States, Shalimar Oliver, Leana Stormont, and Laura Koivula) without prejudice. (Mem. Op., ECF 153). Harr's Second Amended Complaint fails to cure the legal grounds for dismissal identified by this Court. Accordingly, this Court should once again dismiss Harr's claims against the HSUS Defendants, this time with prejudice, for the same reasons set forth in its Memorandum Opinion and for the same reasons set forth in the HSUS Defendants' Motion to Dismiss Corrected Amended Complaint and supporting Memorandum of Law, which are hereby incorporated by reference. (ECF Nos. 113, 114).

**II.    FACTUAL BACKGROUND**

This Court held that Harr's claims which related to the execution of search warrants at her Washington and Westmoreland County properties were barred by collateral estoppel. Specifically, this Court held that the state court's ruling on Harr's suppression motion in the criminal case barred her claims in the instant civil lawsuit. "In this situation, the Court finds the criminal court's ruling on the suppression motion to be sufficiently firm to be accorded conclusive effect, and the 'final

judgment on the merits' element of collateral estoppel is met here. . . . Therefore, the Court finds that Harr had a full and fair opportunity to litigate the issues raised in her suppression motion in the criminal case, and this element of collateral estoppel is also met here." (Mem. Op., ECF 153, at pp. 21, 23) (citations omitted). On the collateral estoppel issue, this Court concluded:

> Accordingly, the record is clear that Judge Neuman considered Harr's arguments as to the constitutionality of the search warrants for the Washington and Westmoreland County properties in the criminal case, and he ruled against her. Harr subsequently entered a plea of nolo contendere and did not file any appeal. Harr is therefore estopped from relitigating her arguments that the search warrants and their execution were unconstitutional, as those issues have been judicially determined in the criminal case in state court and she cannot now assert claims based on those same arguments via a Section 1983 action in federal court. Accordingly, Counts I, IV, VI, VII, and XII, which appear to be based on these same arguments as to the alleged unconstitutionality of the warrants and the warrants' execution, will be dismissed, without prejudice, for failure to state a claim upon which relief can be granted.

(*Id.* at p. 23) (internal footnote omitted). As such, the Court dismissed Harr's Section 1983 claims alleging constitutional violations pursuant to the doctrine of collateral estoppel. Additionally, the Court declined to exercise supplemental jurisdiction over Harr's ancillary state law claims and dismissed same (Counts II, III, V, VII, XI, and XV). (*Id.* at p. 29). Finally, the Court dismissed Harr's claim for declaratory relief against the Humane Society of the United States ("HSUS") (Count VIII) for lack of standing. (*Id.* at p. 25).

Harr's Second Amended Complaint, which was filed on November 21, 2024, does not cure the legal issues identified by the Court. For the most part, the Second Amended Complaint contains the same allegations as the Corrected Amended Complaint (ECF 92). However, the new paragraphs contained in the Second Amended Complaint do not affect the Court's prior analysis. Specifically, the Second Amended Complaint contains the following new paragraphs attempting to challenge the finality of the state court criminal matter:

29. None of the charges originating in the Magisterial District Court resulted in any form of adjudication, final appealable judgment, or conviction.

30. The Washington County District Attorney took over the case and in the Court of Common Pleas of Washington County filed an information under two separate docket numbers.

31. At case CP-63-CR-0001186-2020, the District Attorney's Information filed on August 19, 2020, alleged various felony and misdemeanor Class 2 charges.

32. At Case CP-63-CR-0000205-2020, the District Attorney's Information filed on February 19, 2020, alleged various felony and misdemeanor Class 2 charges.

* * *

34. None of the charges contained in the Information resulted in an adjudication, guilty verdict, or final appealable judgment.

35. Thereafter, the Commonwealth of Pennsylvania and Plaintiff entered into negotiations where Plaintiff asserted her innocence to all of the charges in question.

36. However, Plaintiff advised of a situation that occurred in Washington County that could be interpreted to be a violation of 18 Pa.C.S. § 5532 §§ A1 Neglect of Animals - Sustenance/Water and offered to enter a plea to that separate non-charged situation.

37. This separate situation did not occur or take place in Westmoreland County and the District Attorney understood that.

38. The District Attorney agreed that all of the charges existing against Plaintiff would be dropped via judgment of non-pros.

39. The District Attorney agreed that Plaintiff could enter a no contest plea to two wholly separate charges that occurred in Washington County, Pennsylvania, not Westmoreland County, Pennsylvania.

40. The District Attorney recognized that the factual basis for the new charges had nothing to do with the prior charges and involved a short period of time when water was scarce.

41. A written plea offer was created where Plaintiff waived certain rights as to the wholly new charges that would be read out.

42. In addition, Plaintiff and the District Attorney agreed in writing that it would be Washington County-based occurrences.

\* \* \*

52. Based on that statement, the Court accepted the plea to the new charges that contained no factual basis, allowed the non-pros of the prior charges, and the hearing concluded.

\* \* \*

56. There existed no ability to appeal to seek any clarification of the charges where the Commonwealth did not dispute at any time during the hearing that it withdrew all of the prior charges.

\* \* \*

82. Based on information and belief, Teagarden merely initialed the warrant not because she had independent knowledge of the facts, but because WAHS asked her to for the sole purpose of creating jurisdiction when it did not exist.

(Second Am. Compl., ECF 159).

Further, the Second Amended Complaint contains the following four paragraphs which

relate to Harr's claim for declaratory relief against the HSUS:

194. Defendant HSUS has been working with the WAHS to interfere with the corporate registration of Harr's non-profit organization by having their legal counsel routinely and repeatedly represent themselves to be Pennsylvania-wide animal police.

195. Defendant HSUS has and continues to hold, purportedly under the guise of being animal protection police, various property belong to Harr and organizations she controls.

196. There exist various controversies and ancillary matters between the parties that require an adjudication, once and for all, as to whether the HSUS may act as a law enforcement agency in Pennsylvania without any form of registration, whether it may go into the private property of persons, whether it may seize and take items, or possess items taken, under the guise of assisting animal rights organizations when it is not a registered animal protection agency.

197. The HSUS has engaged in continued surveillance of Harr and her forthcoming business operations.

(*Id.*).[1]

Like the Corrected Amended Complaint, Harr's claims against the HSUS Defendants as set forth in the Second Amended Complaint relate to the two search warrants which were central to the Court's prior ruling. The following nine Counts have been brought against the HSUS Defendants:

(a) Count I, which is titled "Constitutional Violations . . . as to the Westmoreland County Property," claims the HSUS Defendants, among other Defendants, violated Harr's Fourth and Fourteenth Amendment rights by obtaining a search warrant regarding the Westmoreland County property then executing the search. (Second Am. Compl., at ¶¶ 124-133, ECF 159).

(b) Count II, which is titled "Intrusion Upon Seclusion . . . as to the Westmoreland County Property," claims the HSUS Defendants, among other Defendants, intruded upon Harr's Westmoreland County property. (*Id.* at ¶¶ 135-138).

(c) Count III, which is titled "Trespass . . . as to the Westmoreland County Property," claims the HSUS Defendants, among other Defendants, entered Harr's Westmoreland County property and took photographs and videos. (*Id.* at ¶¶ 140-146).

(d) Count V, which is titled "Conversion . . . as to the Westmoreland County Property," claims the HSUS Defendants, among other Defendants, took Harr's memory chip from her video recorder. (*Id.* at ¶¶ 156-160).

(e) Count VI, which is titled "Constitutional Violations . . . as to the Washington County Property," claims the HSUS Defendants, among other Defendants, violated Harr's Fourth Amendment rights by searching her Washington County property. (*Id.* at ¶¶ 162-171).

(f) Count VII, which is titled "Constitutional Violations for Deprivation of Property . . ." claims the HSUS Defendants, among other Defendants, violated Harr's Fourth and Fourteenth Amendment rights by seizing and retaining certain items from her Washington County property, including guns, gun attachments, ammunition, knives, clothing, medical supplies, personal medication, identification, knives, a fish tank, a social security card, and a "box of miscellaneous items." (*Id.* at ¶¶ 173-187).

---

[1] The Second Amended Complaint introduces allegations against other Defendants which do not relate to the claims against the HSUS Defendants.

(g) Count VIII, which is titled "Declaratory and Injunctive Relief Against HSUS," asks this Court to declare that HSUS engages in unconstitutional law enforcement functions by acting as Humane Policy Officers. Harr further requests an injunction regarding "such similar conduct." (*Id.* at Count VIII *ad damnum* clause).

(h) Count XII, which is titled "42 USC 1983 Conspiracy" claims the HSUS Defendants and other Defendants took collective action to violate Harr's Fourth, Fifth, and Fourteenth Amendment rights. (*Id.* at ¶¶ 244-250).

(i) Count XV, which is titled "International (sic) Infliction of Emotional Distress . . ." claims the HSUS Defendants, among other Defendants, left a chicken on Harr's property which could have perished. (*Id.* at ¶¶ 325-333).

Notably, these are the same exact Counts brought against the HSUS Defendants in the Corrected Amended Complaint. Again, the only differences in the Second Amended Complaint with respect to the claims against the HSUS Defendants are those paragraphs quoted above.

### III.    LEGAL STANDARD

A complaint may be properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) where, as here, it does not allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

*Twombly* and its progeny require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). The Court should "construe truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 791.

In deciding a motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick,* 502 F.3d 263, 268 (3d Cir. 2007). Courts in the Third Circuit may take judicial notice of dockets or other court opinions at the motion to dismiss stage. *See Hadesty v. Rush Twp. Police Dep't*, 2016 WL 1039063, at *5 (M.D. Pa. Mar. 15, 2016) (citing *In re Congoleum Corp.*, 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court proceedings insofar as they are relevant.")).

## IV.    LEGAL ARGUMENTS

### A.    Harr's claims related to the securing and execution of the Westmoreland County search warrant and the execution of the Washington County search warrant are barred by collateral estoppel.

For the same reasons set forth in the HSUS Defendants' Motion to Dismiss Corrected Amended Complaint and this Court's Memorandum Opinion (ECF 153), Harr's claims are barred by the doctrine of collateral estoppel.  Harr's newly introduced allegations are an attempt to work around the finality element of collateral estoppel.  For instance, she raises allegations concerning

the plea she entered in the criminal case and the discussions relating to same. But, the Court previously recognized that in a criminal case, a court's ruling on a suppression motion is sufficiently final for purposes of collateral estoppel. (ECF 153, Mem. Op. at p. 21). Indeed, this Court already rejected Harr's attempt to separate the Westmoreland County charges from the Washington County charges:

> As to Harr's contention that she did not have a full and fair opportunity to litigate the issues raised in the suppression motion because the Westmoreland County charges were withdrawn (or nolle prossed), and that she only pled nolo contendere to the Washington County charges and therefore only the Washington County conduct, the criminal court record simply does not support her understanding. Rather, in ruling on the Omnibus Pre-Trial Motion, Judge Neuman not only denied the motion to suppress evidence seized in the searches at her properties in Washington and Westmoreland Counties, but he also clearly specified that the charges that Harr faced in Washington County consisted of her conduct in both Washington and Westmoreland Counties. (Docket No. 118-6). As Judge Neuman indicated in his Order, "These charges encompassed activities taking place at both the Donora property [Washington County property] and Monessen property [Westmoreland County property] after the Westmoreland County District Attorney's Office consented to Washington County handling both matters on March 4, 2020." (*Id*. at 3). Judge Neuman also specified in his ruling that "the charges arising in Westmoreland County are part of the same criminal episode as the charges in Washington County and therefore may be brought properly in either," and that "the Westmoreland County District Attorney's office consented to the Washington County District Attorney's office taking full prosecution of any charges incurred in Westmoreland County." (*Id*. at 8). Although Harr may subjectively believe that her nolo contendere plea applied only to the Washington County charges and therefore concerned only her conduct in Washington County, the documents entered on the docket in her criminal case do not make this distinction. To the extent Harr may have desired additional clarity on this issue, she could have appealed to the Superior Court of Pennsylvania but did not do so. Therefore, the Court finds that Harr had a full and fair opportunity to litigate the issues raised in her suppression motion in the criminal case, and this element of collateral estoppel is also met here.

(*Id*. at pp. 22-3).

Accordingly, based on the ruling on Harr's Omnibus Pre-Trial Motion by the state court, collateral estoppel applies to bar all claims under Counts I, II, III, V, VI, VII, and XII of Harr's Second Amended Complaint because (1) the issues decided in the criminal action are identical to

the issues identified in this Count; (2) Harr's criminal action resulted in a final judgment on the merits; (3) Harr was the Defendant in the criminal action; and (4) Harr had a full and fair opportunity to litigate the validity of the issuance of the Westmoreland County search warrant and the propriety of the execution of the Westmoreland County and Washington County search warrants in the criminal action. The Court reached this conclusion in its Memorandum Opinion. (Mem. Op., ECF 153). The new allegations contained in the Second Amended Complaint do not affect the Court's prior analysis. Therefore, Harr's claims against the HSUS Defendants related to these warrants, namely, Count I (Fourth and Fourteenth Amendment), Count II (intrusion upon seclusion), Count III (trespass to land), Count V (conversion), Count VI (Fourth Amendment), Count VII (Fourth and Fourteenth Amendments and conversion), and Count XII (conspiracy to deprive her of her Fourth, Fifth, and Fourteenth Amendment rights) should be dismissed, with prejudice.

**B. Alternatively, Harr's Section 1983 claims are barred for the other reasons set forth in the HSUS Defendants' previous Motion to Dismiss.**

Additionally, though not addressed by the Court in its Memorandum Opinion, to the extent the Court determines that the new Second Amended Complaint allegations have stated a Section 1983 claim against any of the HSUS Defendant, any such claim is barred by: (1) *Heck v. Humphrey,* 512 U.S. 477 (1994); (2) Harr's failure to allege the HSUS Defendants were state actors; and (3) Harr's failure to otherwise state constitutional claims against the HSUS Defendants. In this respect, the HSUS Defendants incorporate by reference the arguments raised in Sections IV(B), IV(C), and IV(D)(1)-(4) of their Memorandum of Law in Support of Motion to Dismiss Corrected Amended Complaint. (ECF No. 114).    As such, Harr's Section 1983 claims against the HSUS Defendants (Counts I, VI, VII, and XII) fail and should be dismissed, with prejudice.

**C. This Court should refuse to exercise supplemental jurisdiction over the state tort claims against the HSUS Defendants.**

For the reasons set forth in this Court's Memorandum Opinion (ECF 153 at pp. 28-9) and in Section IV(F) of the HSUS Defendants' Memorandum of Law in Support of Motion to Dismiss Corrected Amended Complaint (ECF No. 114), the Court should once again refuse to exercise supplemental jurisdiction over Harr's state law claims. Accordingly, Counts II, III, V, VII (to the extent it alleges conversion), XI, and XV should be dismissed, with prejudice.

**D. Alternatively, Harr has failed to state Pennsylvania tort claims against the HSUS Defendants.**

In its Opinion, the Court recognized that Harr's Corrected Amended Complaint failed to allege state tort claims for intrusion upon seclusion, trespass, conversion and/or trespass to chattels, and intentional infliction of emotional distress. (Mem. Op., ECF 153, at p. 29) ("Even if the Amended Complaint contained sufficient allegations to state claims for such torts under Pennsylvania law – which the Court does not find . . ."). Harr has done nothing to alter or amend the state tort claims so this Court's prior ruling controls. Additionally, the HSUS Defendants incorporate by reference the arguments raised in Sections IV(E)(1)-(4) of their Memorandum of Law in Support of Motion to Dismiss Corrected Amended Complaint. (ECF No. 114). As such, Counts II, III, V, VII (to the extent it alleges conversion), XI, and XV should be dismissed, with prejudice.

**E. This Court lacks subject matter jurisdiction to address Harr's claim for declaratory and injunctive relief.**

"Standing is a jurisdictional matter." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Davis* 824 F.3d at 346. "To satisfy the standing and 'case or controversy' requirements of Article III, a party seeking a declaratory

judgment 'must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Blakeney v. Marsico*, 340 F. App'x 778, 780 (3d Cir. 2009) (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir.2003)). Additionally, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *See also Brown v. Fauver,* 819 F.2d 395 (3d Cir. 1987) (holding that inmate lacked standing to seek (1) a declaration that a prison regulation is unconstitutional and (2) an injunction barring future application of the regulation).

At Count VIII, Harr asks this Court to declare that the HSUS engaged in unconstitutional law enforcement functions by acting as Humane Police Officers when it: "(1) Participates in the drafting of search warrants; (2) Has its agents enter private property when executing or assisting other animal rights organizations execute a search warrant; (3) Invites news media to enter the private property of persons; and (4) Video records the private property of persons without their authorization and places it on social media in an effort to obtain donations or for other publicity purposes." (Second Am. Compl., ECF 159, at Count VIII). This Court previously ruled that Harr lacked standing to seek the declaration and injunction requested, "since she has not alleged facts to suggest that she would suffer injury in the future, so that claim should be dismissed." (Mem. Op., ECF 153, at p. 24). Specifically, the Court concluded:

> Upon review of the Amended Complaint, the Court notes that Harr does not allege facts to suggest that she will suffer injury in the future absent the requested declaratory and injunctive relief, nor does she allege that the conduct of which she complains is presently ongoing. Although Harr alleges that she plans to create a new animal shelter in Westmoreland County, beginning in January 2025, such allegation alone does not aver facts to suggest that the HSUS obtaining and executing a search warrant for the referenced shelter is imminent in the future. (Docket No. 92, ¶ 175). Therefore, the Court finds that Harr lacks standing to seek the requested declaratory and injunctive relief and there is no Article III case or controversy.

(*Id.* at p. 25).  The four new paragraphs contained in Harr's Second Amended Complaint which relate to her request for injunctive and declaratory relief are as follows:

> 194. Defendant HSUS has been working with the WAHS to interfere with the corporate registration of Harr's non-profit organization by having their legal counsel routinely and repeatedly represent themselves to be Pennsylvania-wide animal police.

> 195. Defendant HSUS has and continues to hold, purportedly under the guise of being animal protection police, various property belong to Harr and organizations she controls.

> 196. There exist various controversies and ancillary matters between the parties that require an adjudication, once and for all, as to whether the HSUS may act as a law enforcement agency in Pennsylvania without any form of registration, whether it may go into the private property of persons, whether it may seize and take items, or possess items taken, under the guise of assisting animal rights organizations when it is not a registered animal protection agency.

> 197. The HSUS has engaged in continued surveillance of Harr and her forthcoming business operations.

(Second Am. Compl., ECF 159, at ¶¶ 194-97).

Once again, Harr has failed to allege any facts to suggest that she would suffer injury in the future.  She has not alleged facts to substantiate her boilerplate conclusory statement that the HSUS has been working with the WAHS to interfere with Harr's corporate registration process.  (*Id.* at ¶ 194).  Further, Harr has not identified the property which she claims the HSUS possesses.  (*Id.* at 195).  Nor has Harr alleged any facts to substantiate her conclusory allegation that the HSUS has "engaged in continued surveillance of Harr."  (*Id.* at ¶ 197).  Finally, she has not identified any of the "various controversies and ancillary matters" which she claims exist "between the parties."  (*Id.* at 196).  As such, even with the four new Second Amended Complaint allegations, Harr lacks standing to seek her declaration/injunction, and she has not alleged any facts to suggest that she would suffer injury in the future.  Since she lacks standing and there is no Article II "case or

controversy," this Court lacks subject matter jurisdiction to address Harr's requests for declaratory and injunctive relief.  As such, Count VIII of her Corrected Amended Complaint should be dismissed, with prejudice.

## V.    CONCLUSION

For the reasons set forth in this Memorandum, the HSUS Defendants' prior Memorandum of Law in Support of Motion to Dismiss Corrected Amended Complaint (ECF 114) and in the Court's September 5, 2024 Memorandum Opinion (ECF 153), all claims against the HSUS Defendants should be dismissed, with prejudice.

Respectfully Submitted,

ROBB LEONARD MULVIHILL LLP

Dated:  December 6, 2024          _/s/ Bruce E. Rende_
                                                      Dennis St. J. Mulvihill, Esquire
                                                      PA ID #16411
                                                      Bruce E. Rende, Esquire
                                                      PA ID #52714
                                                      William C. Robinson, III, Esquire
                                                      PA ID #327457
                                                      BNY Mellon Center
                                                      500 Grant Street, Suite 2300
                                                      Pittsburgh, PA 15219
                                                      P: (412) 281-5431
                                                      F: (412) 281-3711
                                                      Email: dmulvihill@rlmlawfirm.com
                                                      Email: brende@rlmlawfirm.com
                                                      Email: wrobinson@rlmlawfirm.com