## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE HARR,<br>                 Plaintiff,<br>v. | CIVIL ACTION<br><br>No. 2:21-CV-01560-WSH |
| WASHINGTON AREA HUMANE SOCIETY, HUMANE SOCIETY OF THE UNITED STATES, HUMANE ANIMAL RESCUE, ESTATE OF GLEN L. THOMSON, LAURA KOIVULA, SHALIMAR OLIVER, SAMUEL JENESKY, LEANA STORMONT, KELLY PROUDFIT, KEN JERICHO, STEVEN TOPRANI, MARVIN DAVIS, JOHN W. PECK, JAMES R. HOPSON, JOHN DOES 1 THROUGH 50,<br>                 Defendants. | THE HONORABLE W. SCOTT HARDY<br><br>*Electronically Filed*<br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

AND NOW comes Defendant, MARVIN DAVIS ("Defendant Davis"), by and through his attorneys, MARSHALL DENNEHEY, CARLY P. EDMAN, ESQUIRE and DANIELLE M. VUGRINOVICH, ESQUIRE and submits the following Brief in Support of Motion to Dismiss Pursuant to Rule 12(b)(6), stating as follows:

### I.    INTRODUCTION

Plaintiff filed her Second Amended Complaint on November 21, 2024, which is comprised of virtually identical allegations against Defendant Davis. Specifically, the Second Amended Complaint contains no new facts but attempts to fit new legal theories to the same allegations. Plaintiff has still failed to set forth any cause of action that can survive Defendant Davis's Motion to Dismiss, and the claims against him should be dismissed, with prejudice.

## II.    **STATEMENT OF FACTS**

Christie Harr ("Plaintiff") brings the instant 42 U.S.C. § 1983 action based upon the assertion that her Fourteenth Amendment rights were violated by Monessen Code Enforcement Officer Marvin Davis. The vast preponderance of Plaintiff's claims in this action arise from an allegedly unconstitutional search and seizure that took place in or around October of 2019, when humane officers raided a property in Monessen which she was using to house a very large multitude of dogs, cats and other domestic animals. *See generally,* Second Amended Complaint (ECF 159). Plaintiff's allegations against Defendant Davis, in his individual capacity as the Code Enforcement Officer for the City of Monessen,  are set forth exclusively at Count XVI of the Second Amended Complaint, wherein  Plaintiff contends that the actions of Mr. Davis in failing to issue an occupancy permit for Plaintiff's house, without rendering an appealable decision, denied Plaintiff both substantive and procedural due process. *See* Second Amended Complaint, Count XVI. Further, Plaintiff now adds the argument that, by failing to either grant or deny her permit allegation, Defendant Davis committed a Fifth Amendment regulatory taking of her Monessen property. For good measure, she attempts to support a new First Amendment retaliation theory by tossing in the conclusory contention that Mr. Davis's failure to act was motivated by a desire to advance the interests of the co-defendant animal rights groups over those of her own animal rescue operation. *See* Second Amended Complaint, ¶¶ 364-367. Defendant Marvin Davis moves to dismiss these claims pursuant to Rule 12(b)(6), because the facts alleged fail to establish any plausible claim that the First, Fifth, and Fourteenth Amendments due process have been offended.

### III.    <u>STANDARD OF REVIEW</u>

When considering a Motion to Dismiss under the Federal Rules, the Court must accept as true all well pled allegations in the Complaint, and construe them in a light most favorable to the Plaintiff.  The Court may dismiss the claim if it appears beyond a reasonable doubt, the Plaintiff cannot prove facts in support of a claim which would entitle him to relief.  *Labove v. Lalley*, 809 F.2d. 220 (3d Cir. 1987).  The Court may consider exhibits attached to the Complaint, and matters of public record.  *Benefit Guarantee Corp. v. White Consol Industries*, 998 F. 2d. 1192, 1196 (3d Cir. 1993).

The Supreme Court has clarified its position on the standard under a Motion to Dismiss, in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).  The "no set of facts standard" found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), has been abrogated in favor of requiring a Plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974.  As a result of the *Twombly* holding, Plaintiffs must have "nudged their claim across the line from conceivable to plausible, or the Complaint must be dismissed." *Id*.

> While a complaint attacked by a Rule 12(b)(6) Motion to Dismiss does not need detailed factual allegations, plaintiff's obligation [under Rule 8(a)(2)] to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and the formulated recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

*Id.* at 1964-65 (citations omitted).

The Court does not have to accept every allegation of the Complaint as true.  The Court need not credit "bold assertions" or "legal conclusions" in a Complaint, when deciding a Motion to Dismiss.  *Burlington Coat Factory SEC Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  Further, unsupported conclusions, argumentative modifiers, and unwarranted inferences need not be accepted as true.  *Trzaska v. L'Oreal USA, Inc.,* 865 F.3d 155, 159 (3d Cir. 2017). "When

conducting our review, 'we must accept the allegations in the complaint as true . . . [but] are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Id. (quoting Morrow v. Balaski,* 719 F.3d 160, 165 (3d Cir. 2013) (alterations in original)). *Ikb Int'l S.A. v. Wilmington Trust Co., 2019 U.S. App. LEXIS 15069, \*7* (3d Cir. May 21, 2019).

IV.    **ARGUMENT**

   A. **Plaintiff's 42 U.S.C. § 1983 claims against Defendant Davis should be dismissed as a matter of law.**

Plaintiff asserts that Defendant Davis has violated both her substantive and procedural due process rights under the Fourteenth Amendment by informally refusing to issue an occupancy permit to her without rendering an appealable decision. *See* Second Amended Complaint at ¶ 363. Plaintiff fails to state a claim upon which relief can be granted and should be dismissed for the reasons discussed below.

   i.    **Procedural Due Process**

To state a claim for a violation of procedural due process under the Fourteenth Amendment, Plaintiff must allege that (1) she was deprived of an interest that is protected by the Fourteenth Amendment and (2) the procedures available did not provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). A Plaintiff must have taken advantage of the available procedures, unless those procedures are unavailable or patently inadequate. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

Plaintiff contends that Defendant Davis' actions in informally refusing to issue an occupancy permit without issuing a written decision violated her procedural due process rights, because she could not take an appeal without first receiving a written denial. However, when a state "affords a full judicial mechanism with which to challenge the administrative decision" at

issue, it provides adequate procedural due process, irrespective of whether the plaintiffs avail themselves of that process. *DeBlasio v. Zoning Bd. of Adjustment,* 53 F.3d 592, 597 (3d Cir. 1995). Federal courts have frequently considered whether the administrative and legal remedies available under Pennsylvania law to persons aggrieved by local government decisions in regulation of land use satisfy the requirements of procedural due process. Without exception, these courts have found that "Pennsylvania's scheme for judicial review of administrative land use decisions has ... passed constitutional muster." *Sixth Angel Shepherd Rescue Inc. v. West,* 790 F. Supp. 2d 339, 358 (E.D. Pa. 2011), aff'd, 477 F. App'x 903 (3d Cir. 2012) (citing *Perano v. Twp. of Tilden,* 423 F. App'x 234, 237 (3d Cir. 2011)); *see also, Bello v. Walker,* 840 F.2d 1124, 1128 (3d Cir. 1988).

Indeed, Pennsylvania law provided a procedural mechanism to Plaintiff for seeking judicial review of Defendant Davis' alleged inaction concerning her application for an occupancy permit. The writ of mandamus exists to compel official performance of a ministerial act or mandatory duty. See *Delaware River Port Authority v. Thornburgh*, 493 A.2d 1351, 1355 (Pa. 1985). Mandamus cannot issue "to compel performance of a discretionary act or to govern the manner of performing [the] required act." *Volunteer Firemen's Relief Ass[ociation] of the City of Reading v. Minehart,* 203 A.2d 476, 479 (Pa. 1964). A Pennsylvania court may issue a writ of mandamus where the petitioner has a clear legal right, the responding public official has a corresponding duty, and no other adequate and appropriate remedy at law exists. *Id*.; see *Board of Revision of Taxes v. City of Philadelphia,* 4 A.3d 610, 627 (Pa. 2010).  Moreover mandamus is proper to compel the performance of official duties whose scope is defined as a result of the mandamus action litigation. *Thornburgh*, at 1355. Thus "we have held that mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law." *Minehart*, at 479–80. *See also*, *Fagan v. Smith*, 41 A.3d 816, 818 (Pa. 2012) (*per curiam*).

The situation described by Plaintiff in Count XVI of her Second Amended Complaint is exactly the sort of situation for which the mandamus action exists under Pennsylvania law. The most recent of several District Court decisions finding that the availability of the mandamus action under Pennsylvania law satisfies the requirements of Fourteenth Amendment due process was issued by Judge Mariani of the U.S. District Court for the Middle District of Pennsylvania, who considered a very similar claim by plaintiffs who contended that the failure of local officials to either grant or deny their application for an occupancy permit violated their procedural due process rights. *See Halchak v. Dorrance Twp. Bd. of Supervisors*, No. 3:18-CV-1285, 2022 WL 17742270, (M.D. Pa. Dec. 16, 2022), wherein that court, dismissing the procedural due process claim, observed:

> Defendants contend that Plaintiffs "cannot establish a procedural due process violation where judicial relief was available." *** This argument has merit. Courts have held that a petition for a writ of mandamus is "a vehicle to challenge inaction on the part of municipal authorities," including inaction in the form of "delay from evaluation to the issuance of a permit," and in cases where such relief is available, procedural due process claims fail. *** As such, the availability … of mandamus relief in state court defeats Plaintiffs' procedural due process claim.

Id. at *21 (Citations omitted.)

This holding of the Middle District court in *Halchak* was preceded by similar rulings by the Eastern District in *LXR RS V, LLC v. Municipality of Norristown*, No. 2:19-CV-01397-JDW, 2019 WL 4930157, at *5 (E.D. Pa. Oct. 7, 2019); and the Western District in *Mader v. Union Twp.*, No. 2:20-CV-01138-CCW, 2022 WL 395052, at *7 (W.D. Pa. Feb. 9, 2022)(Wiegand, J.). Thus, all three of the U.S. district courts in Pennsylvania have held that Pennsylvania law complies with Fourteenth Amendment due process by providing an avenue of relief for the permit applicant who has received neither the permit nor an appealable denial of her application. Because Plaintiff in the instant case contends that she had a right to an occupancy permit and that Defendant Davis had a

duty to issue it, she had the ability to seek relief through filing an action in mandamus in state court to compel the issuance of the permit. Thus, she cannot establish that the procedures available to her for seeking further review did not comply with due process of law. For this reason, Plaintiff's procedural due process claim should be dismissed.

ii.    **Substantive Due Process**

To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act committed under color of state law deprived her of a protected property interest. *County Concrete Corporation v. Town Of Roxbury*, 442 F.3d 159, 165 (3d Cir. 2006). The Third Circuit has held that "real property ownership" is an interest protected by substantive due process." *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 141 (3d Cir. 2000). However, Plaintiff has not alleged that Defendant Davis interfered with ownership of her real property, nor that he deprived her of possession or enjoyment of her real property, nor that she was evicted, cited, fined or even prohibited by Davis from carrying on with her intended use of the property. She has alleged that he has (thus far) deprived her of a permit to inhabit the property, but not that the absence of a permit has caused any alteration of her own intentions with respect to use of the land. Essentially, Plaintiff is alleging only that she has been deprived of a piece of paper constituting an occupancy permit.

What Plaintiff has not done, other than in an entirely conclusory fashion, is demonstrate that she had a clear entitlement to such a permit on the basis that her property was in compliance with all the provisions of the International Property Maintenance Code, which has been adopted by the City of Monessen pursuant to ordinance. *See* City of Monessen Ordinance No. 2 of 2012, attached hereto as Exhibit A. Absent compliance with the IPMC, Plaintiff's property would not qualify for a use and occupancy permit. *See* Exhibit B, the "City of Monessen Municipal Code and

Ordinance Compliance Act". Plaintiff vaguely contends that "all requirements were met," Second Amended Complaint, ¶ 338, but obviously admits that no permit was ever issued.

It is doubtful that Pennsylvania law would recognize a property right in a permit which has not yet been issued. *See, e.g., Flanders v. Ford City Borough Council*, 986 A.2d 964, 973-74 (Pa. Cmwlth. 2009)(construing claim of right to a building permit under the UCC). And where the Plaintiff has not been issued the permit he seeks, "the permit itself cannot serve as the 'property interest' of which [the plaintiff] was deprived" for purposes of a Fourteenth Amendment due process analysis. *Flanders v. Dzugan,* 156 F.Supp. 3d 648, 665 (W.D. Pa. 2016)(Fischer, J.). And in *WVCH Commc'ns, Inc. v. Kalil*, No. CIV. A. 93-CV-2225, 1993 WL 268903, at *2 (E.D. Pa. July 15, 1993), *aff'd sub nom. WVCH Commc'ns, Inc. v. Upper Providence Twp.*, 27 F.3d 561 (3d Cir. 1994), the court held, "[P]laintiffs must show a protected property interest before being able to state a substantive due process claim. Plaintiffs have made no such showing, and indeed, cannot do so unless and until it is proven that they are entitled to the zoning variance which they sought."

It is respectfully submitted that the United States District Court is not the place where the question of whether Plaintiff was entitled to an occupancy permit under all the provisions and requirements of the International Property Maintenance Code ought to be litigated. The federal courts ought not to be reduced to the equivalent of local zoning boards of adjustment merely because one of the parties invokes the Bill of Rights in the context of an ongoing controversy about the interpretation and enforcement of local real property regulations. "[E]very appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but it is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983." *United Artists Theatre Circuit, Inc. v. Township Of Warrington,* 316 F.3d

392, 402 (3d Cir. 2003) (quoting *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982)).

Even if the Court were to recognize deprivation of property right in the allegations of the Second Amended Complaint, that would still leave Plaintiff far from establishing a substantive due process violation. In order to prevent the federal courts from being cast as the arbiters of every local building and zoning code dispute, the Third Circuit has recognized that a plaintiff must clear the very high bar of demonstrating that the conduct of government officials was not just erroneous, negligent, reckless, or even intentional; the conduct must have been an *egregious* miscarriage of the public trust. The alleged conduct resulting in a deprivation of the plaintiff's property interest must "shock the conscience" of the court. *United Artists*, 316 F.3d 392, 399. "[T]he core of the concept [of due process is] protection against arbitrary action" and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998).

To preserve a Fourteenth Amendment substantive due process claim from dismissal, a plaintiff must allege sufficient facts in her complaint to support a plausible claim that the defendant's conduct is "conscience shocking in a constitutional sense." *Lewis*, 523 U.S. at 846-48. In the Third Circuit, the "shocks the conscience" standard is applicable to all substantive due process claims. *Miller v. City of Philadelphia*, 174 F.3d 368, 374-75 (3d Cir. 1999). Whether conduct is conscience shocking is a question for the Court to decide. *Stein v. City of Philadelphia*, 994 F.Supp.2d 660, 662 (E.D. Pa. 2014)(citing *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004)).

Whether conduct rises to such a level is dependent on the facts of the case, and merely asserting an improper motive is insufficient, even where the motive is unrelated to the merits of

the underlying decision. *United Artists* 316 F.3d at 399 (3d Cir.2003). In any case, what "shocks the conscience" is only "the most egregious official conduct." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir.2004) (internal quotations omitted).  In the land use regulation context, this standard avoids turning federal courts into "super zoning tribunals." *Id.* The Third Circuit has explained that, "In the land-use context, we look for evidence of corruption, self-dealing, intentional interference with constitutionally protected activity, virtual 'takings,' or bias against an ethnic group on the part of local officials." *Button v. Snelson*, 679 F. App'x 150, 154 (3d Cir. 2017) (*quoting Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004)).

In the present case, no action alleged to have been committed by Defendant Davis rises to the "conscience shocking" level.  Plaintiff has pled nothing more than a disagreement concerning whether her building qualified for an occupancy permit. Plaintiff even admits that she was subsequently contacted by Defendant Davis to notify her that she needed to schedule a follow-up inspection. Second Amended Complaint, ¶ 343. Plaintiff's conclusory assertions are devoid of any allegations of "corruption, self-dealing, intentional interference with constitutionally protected activity, virtual 'takings,' or bias against an ethnic group." Accordingly, as in *Button v. Snelson*, Defendant Davis' conduct reflects, at worst, "merely negligent ... performance of official duties" and "does not shock the conscience." The sparse and conclusory allegations of the Second Amended Complaint fail to overcome the high standards for substantiating a Fourteenth Amendment violation claim. Thus, Count XVI ought to be dismissed.

### iii.    Plaintiff has not alleged facts sufficient to establish a Fifth Amendment regulatory taking.

Under the Fifth Amendment, a "categorical" regulatory taking occurs when the Government's regulation of land use denies a property owner of all economically beneficial or productive use of the land. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992.  In the

context of government regulation of land use, in determining whether a partial regulatory taking under the Fifth Amendment has occurred, courts should consider a "complex of factors" that include (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of governmental action. *United States v. Donovan*, 466 F. Supp. 2d 590 (D. Del. 2006).

In this case, Plaintiff has failed to plead any of these factors in support of her Fifth Amendment regulatory taking claim. While Plaintiff appears to admit that Defendant Davis did notify her that she needed to reschedule an inspection, Second Amended Complaint, ¶ 357, there is no allegation which could be construed as suggesting that Plaintiff was denied possession of her property or that the property was taken *per se* by Mr. Davis. In fact, since the named defendant is not a local agency capable of taking ownership or legislating the manner in which it could be used, Mr. Davis, as an individual, is not a proper party to a regulatory taking claim. Mr. Davis is merely a law enforcement officer of the City Monessen and is not personally possessed of the power of eminent domain.

"[A] taking through an exercise of the police power occurs only when the regulation has nearly the same effect as the complete destruction of the property rights of the owner." *Tulio v. Lansdale Borough*, 660 F.Supp.3d 368, 381 (E.D.Pa. 2023), quoting Pace Res. Inc. v. Shrewsbury Twp., 808 F.2d 1023 (#d Cir. 1987). A taking does not occur merely because a regulation denies the owner of most profitable use of property; it must effectively destroy his property rights. *Id.* In the present case, the economic value of Plaintiff's home has not been affected by any action or inaction on behalf of Defendant Davis which allegedly resulted in a temporary *de jure* inability to inhabit the premises legally. Plaintiff's conclusory allegations cannot support a claim for Fifth Amendment retaliatory taking. Thus, Count XVI must be dismissed.

### iv.    Plaintiff has not alleged a plausible First Amendment retaliation cause of action.

The Supreme Court has held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights. *Anderson v. Davila*, 125 F.3d 148, 160 (3d Cir.1997) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). In order to make out a First Amendment retaliation case, the plaintiff must present evidence to show (1) that he engaged in a protected activity; (2) that the government took action against the plaintiff at the time of or after the protected action; and, (3) that the protected activity caused the government to take the action that harmed the plaintiff. *Anderson v. Davila*, 125 F.3d at 161; *Young v. Township of Coolbaugh*, 2007 WL 1031543 (M.D.Pa. Mar.30, 2007) (No. 05–802), aff'd, 276 Fed. Appx. 206 (3d Cir.2008). A retaliatory action must be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006).

Here, Plaintiff does not meet the *Iqbal* standards for pleading any of the elements of a First Amendment retaliation claim. To begin with, she has not articulated any First Amendment exercise on her part as a trigger to a chain of causation. She vaguely suggests that her non-profit organization engages in economic activity and "activism" as well as "counseling to citizens." However, she alleges no facts from which it could be fairly inferred that Mr. Davis knowledge of her "activism" or "counseling" efforts or that he had any reason to care about them one way or another. No specific speech or expression on Plaintiff's part is identified as having taken place beyond the normal daily business of the Plaintiff's organization. "[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.,* 564 U. S. 552, 567(2011).

As to the second element, Plaintiff has not alleged that Mr. Davis took any action at all which could be characterized as "punishment" directed at her. The essence of her complaint is that he took <u>no</u> action – he neither granted the occupancy permit nor denied it. "Allegations of inaction are insufficient to maintain a claim for retaliation under the First Amendment.' *Monn v. Gettysburg Area Sch. Dist.*, 553 F. App'x 120, 121 (3d Cir. 2014) (citing *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 433 n. 11 (3d Cir. 2006)). Plaintiff does not allege – nor can she – that Mr. Davis took any enforcement action at all by virtue of her lack of an occupancy permit. As is quite evident from the allegations of the Second Amended Complaint, he did not evict her from the premises nor prevent her from utilizing it as a shelter for her animals right up to the date the search warrant was executed and the animals were seized by other defendants. Although she lacked the piece of paper which is evidence of a permit, she continued to operate on the property as though she was permitted to do so. There was no interference by Mr. Davis with her enjoyment of the property, and hence no "retaliation" through government sponsored "punishment".

Finally, the Second Amended Complaint fails to provide a plausible path to the conclusion that Mr. Davis was to punish Plaintiff any expressive conduct which she may have committed. Her attempt to allege motivation consists of the conclusory contention (unsupported by any allegation of objective fact) that Mr. Davis failed to issue an occupancy permit "at the request of animal rights organizations who were in direct competition with Plaintiff's non-profit organization and he did so to prevent Plaintiff from engaging in constitutionally protected economic activity and activism." This conclusory allegation is implausible on its face and fails to establish the third element of a First Amendment retaliation claim. Plaintiff is somehow alleging that Defendant Davis' motivation for withholding an occupancy permit was to punish her for being an animal rights activist – in order to benefit other animal rights activists. Second Amended Complaint ¶¶ 366 –

367. This does not establish any motive at all, and is certainly self-refuting of the implication that Davis harbored some desire to impede expressive activity in favor of animal rights activism. Further, as argued above, allegations of mere inaction are insufficient to maintain a claim for retaliation under the First Amendment. If Davis were motivated to punish the Plaintiff in some fashion, he would have taken enforcement action based on her lack of an occupancy permit. He has never done so, and the Second Amended Complaint utterly fails to explain how anything Mr. Davis did – or (more correctly) failed to do – harmed the Plaintiff or assisted the law enforcement efforts of the co-defendants in any manner.

Because they demand the Court to leap to inferences which are illogical in light of the facts admitted throughout the Second Amended Complaint, the conclusory allegations of Count XVI should be disregarded, and the First Amendment retaliation claim should be dismissed.

### v.    <u>Defendant Davis is entitled to Qualified Immunity.</u>

Defendant Davis is entitled to immediate dismissal based on qualified immunity. State officials performing discretionary duties are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A federal right is "clearly established" for purposes of qualified immunity if its contours are "sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity must be assessed in the context of each individual defendant's specific conduct, including "an analysis of the facts adduced concerning the conduct of the official" claiming immunity. *Griffin-El v. Beard*, 411 Fed. Appx. 517, 519 (3d Cir. 2011) (citing *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990)).

As argued above, Plaintiff's claims do not establish a violation of any clearly established rights. At the time of the alleged interactions between Plaintiff and Defendant, there was no clearly established law holding that an applicant for an occupancy permit possesses a property right in that permit sufficient to trigger Fourteenth Amendment duties on the part of the municipal code officer. There was no case decision clearly establishing that inaction or delay in issuing such a permit could frustrate procedural due process. And there was no warning or indication to Defendant Davis that his posture with respect to the permit application, even as alleged by Plaintiff, could be found "conscience shocking" so as to render him potentially liable under a substantive due process analysis. Therefore, Defendant Davis is entitled to the defense of qualified immunity from this suit, affording him a right not to be put unnecessarily through the rigors and expense of litigation, but to be dismissed at the earliest possible stage at which the contours of qualified immunity can be determined. *Pearson v. Callahan*, 129 S.Ct. 808 (2009). And thus, these claims against a Code Enforcement Officer performing his discretionary duties should be dismissed under the Doctrine of Qualified Immunity.

## V.    CONCLUSION

For these reasons, Plaintiff has failed to set forth any cause of action that can survive Defendant Davis' Motion to Dismiss. Therefore, Defendant Davis respectfully requests that Plaintiff's claims against him be dismissed as a matter of law, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY**

BY:  _C. Edman_

CARLY P. EDMAN, ESQUIRE
PA I.D. #330913
DANIELLE M. VUGRINOVICH, ESQUIRE
PA ID #88326
*Attorney for Defendant, Marvin Davis, only*

LEGAL/165677724.1

15