# EXHIBIT "C"

# POLICE CRIMINAL COMPLAINT

| COMMONWEALTH OF PENNSYLVANIA | COMMONWEALTH OF PENNSYLVANIA VS. |
|---|---|

**COUNTY OF:** Washington

Magisterial District Number: 27-1-02
MDJ: Hon. Mark Wilson
Address: 604B Park Ave.
Monongahela, PA. 15063
Telephone: (724) 258-5106

**DEFENDANT:** *(NAME and ADDRESS):*

| Christie | Dee | Harr | F |
|---|---|---|---|
| First Name | Middle Name | Last Name | Gen. |

320 2ND St. Donora, PA. 15033

## NCIC Extradition Code Type

- ☐ 1-Felony Full
- ☐ 2-Felony Ltd.
- ☐ 3-Felony Surrounding States
- ☐ 4-Felony No Ext.
- ☐ 5-Felony Pend.
- ☐ 6-Felony Pend. Extradition Determ.
- ☐ A-Misdemeanor Full
- ☐ B-Misdemeanor Limited
- ☐ C-Misdemeanor Surrounding States
- ☐ D-Misdemeanor No Extradition
- ☐ E-Misdemeanor Pending
- ☐ F-Misdemeanor Pending Extradition Determ.
- ☐ Distance: _____

## DEFENDANT IDENTIFICATION INFORMATION

| Docket Number | Date Filed | OTN/LiveScan Number | Complaint/Incident Number | Request Lab Services? |
|---|---|---|---|---|
| CR 58-2020 | 3-10-2020 | 4859079-4 | 300-2019 | ☐ YES  ☐ NO |

| GENDER | DOB 10/12/1978 | POB | | Add'l DOB  /  / | Co-Defendant(s) ☐ |
|---|---|---|---|---|---|

| | First Name | Middle Name | Last Name | Gen. |
|---|---|---|---|---|
| ☐ Male  ☒ Female | AKA | | | |

| RACE | ☐ White | ☐ Asian | ☐ Black | ☐ Native American | ☒ Unknown |
|---|---|---|---|---|---|
| ETHNICITY | ☐ Hispanic | | ☐ Non-Hispanic | ☒ Unknown | |

**HAIR COLOR**
- ☐ GRY (Gray)
- ☐ RED (Red/Aubn.)
- ☐ SDY (Sandy)
- ☐ BLU (Blue)
- ☐ PLE (Purple)
- ☐ BRO (Brown)
- ☐ BLK (Black)
- ☐ ONG (Orange)
- ☐ WHI (White)
- ☒ XXX (Unk./Bald)
- ☐ GRN (Green)
- ☐ PNK (Pink)
- ☐ BLN (Blonde / Strawberry)

**EYE COLOR**
- ☐ BLK (Black)
- ☐ BLU (Blue)
- ☐ BRO (Brown)
- ☐ GRN (Green)
- ☐ GRY (Gray)
- ☐ HAZ (Hazel)
- ☐ MAR (Maroon)
- ☐ PNK (Pink)
- ☐ MUL (Multicolored)
- ☒ XXX (Unknown)

| DNA | ☐ YES  ☐ NO | DNA Location | | WEIGHT (lbs.) |
|---|---|---|---|---|
| FBI Number | | | MNU Number | |
| Defendant Fingerprinted | ☐ YES  ☐ NO | | | Ft.  HEIGHT  In. |
| Fingerprint Classification: | | | | |

## DEFENDANT VEHICLE INFORMATION

| Plate # | State | Hazmat ☐ | Registration Sticker (MM/YY)  / | Comm'l Veh. Ind. ☐ | School Veh. ☐ | Oth. NCIC Veh. Code | Reg. same as Def. |
|---|---|---|---|---|---|---|---|
| VIN | | Year | Make | Model | Style | Color | ☐ |

Office of the attorney for the Commonwealth ☐ Approved  ☐ Disapproved because: _____

(The attorney for the Commonwealth may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth prior to filing. See Pa.R.Crim.P. 507).

John Paul Lewis
(Name of the attorney for the Commonwealth)

(Signature of the attorney for the Commonwealth)

3/3/2020
(Date)

I, Glen Thomson
(Name of the Affiant)

Badge # 577
(PSP/MPOETC -Assigned Affiant ID Number & Badge #)

of Washington Area Humane Society
(Identify Department or Agency Represented and Political Subdivision)

AC630021
(Police Agency ORI Number)

do hereby state: (check appropriate box)

1. ☒ I accuse the above named defendant who lives at the address set forth above
   ☐ I accuse the defendant whose name is unknown to me but who is described as _____

   ☐ I accuse the defendant whose name and popular designation or nickname are unknown to me and whom I have therefore designated as John Doe or Jane Doe
   with violating the penal laws of the Commonwealth of Pennsylvania at [ 413 ]    Donora Borough
   (Subdivision Code)    (Place-Political Subdivision)

   in Washington County    [ 63 ]    on or about  6/22/2018 through 10/30/2019
   (County Code)    (Offense Date)

# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: 3/5/2020 | OTN/LiveScan Number | | Complaint/Incident Number. 300-2019 |
|---|---|---|---|---|
| Defendant Name | First: Christie | Middle: Dee | Last: Harr | |

2. I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made.

3. I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa.C.S. § 4904) relating to unsworn falsification to authorities.

4. This complaint consists of the preceding page(s) numbered ___ through ___.

5. I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

The acts committed by the accused, as listed and hereafter, were against the peace and dignity of the Commonwealth of Pennsylvania and were contrary to the Act(s) of the Assembly, or in violation of the statutes cited.
**(Before a warrant of arrest can be issued, an affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.)**

3/5/2020
(Date)

2020
(Year)

(Signature of Affiant)

AND NOW, on this date   3-10-2020   I certify that the complaint has been properly completed and verified.

An affidavit of probable cause must be completed before a warrant can be issued.

27-1-02
(Magisterial District Court Number)

(Issuing Authority)

AOPC 412A – Rev. 07/18

Page ___ of ___

# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: 3/5/2020 | OTN/LiveScan Number | Complaint/Incident Number 300-2019 |
|---|---|---|---|
| Defendant Name | First: Christie | Middle: Dee | Last: Harr |

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.

(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated.)

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Older _____ |
|---|---|---|---|---|

| ☒ | 1 | 5534 | (a)(1) | of the | 18 | 70 | F3 | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data (if applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):

Aggravated cruelty to animal, 18 Pa.C.S.A. § 5534

Acts of the accused associated with this Offense:

Christie Harr intentionally or knowingly tortured an animal

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Older _____ |
|---|---|---|---|---|

| ☐ | 2 | 5534 | (a)(2) | of the | 18 | 70 | F3 | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data (if applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):

Aggravated cruelty to animal, 18 Pa.C.S.A. § 5534

Acts of the accused associated with this Offense:

Christie Harr intentionally or knowingly violated section 5532 (relating to neglect of animal) causing serious bodily injury to the animal or the death of the animal.

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Older _____ |
|---|---|---|---|---|

| ☐ | 3 | 5532 | (a)(1) | of the | 18 | 206 | M3 | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data (if applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):

Neglect of Animal, 18 Pa.C.S. § 5532

Acts of the accused associated with this Offense:

Christie Harr failed to provide for the basic needs of an animal to which she had a duty of care, whether belonging to herself or otherwise, including necessary sustenance and potable water

# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: 3/5/2020 | OTN/LiveScan Number | Complaint/Incident Number 300-2019 |
|---|---|---|---|
| Defendant Name | First: Christie | Middle: Dee | Last: Harr |

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.

(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated.)

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Older _____ |
|---|---|---|---|---|

| ☐ | 4 | 5532 | (a)(2) | of the | 18 | 206 | M3 | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data (if applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):

Neglect of Animal, 18 Pa.C.S. § 5532

Acts of the accused associated with this Offense:

Christie Harr failed to provide for the basic needs of an animal to which she had a duty of care, whether belonging to herself or otherwise, including access to clean and sanitary shelter and protection from the weather, causing bodily injury to the animal or placing the animal at imminent risk of serious bodily injury.

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Older _____ |
|---|---|---|---|---|

| ☐ | 5 | 5532 | (a)(3) | of the | 18 | 206 | M3 | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data (if applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):

Neglect of Animal, 18 Pa.C.S. § 5532

Acts of the accused associated with this Offense:

Christie Harr failed to provide for the basic needs of an animal to which she had a duty of care, whether belonging to herself or otherwise, including necessary veterinary care, causing bodily injury to the animal or placing the animal at imminent risk of serious bodily injury.

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 | Number of Victims Age 60 or Older _____ |
|---|---|---|---|---|

| ☐ | 6 | 5532 | (a)(1) | of the | 18 | 206 | S | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data (if applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):

Neglect of Animal, 18 Pa.C.S. § 5532

Acts of the accused associated with this Offense:

Christie Harr failed to provide for the basic needs of an animal to which she had a duty of care, whether belonging to herself or otherwise, including necessary sustenance and potable water.

AOPC 412A – Rev. 07/18                                                                Page ___ of ___

# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed:<br>3/5/2020 | OTN/LiveScan Number | Complaint/Incident Number<br>300-2019 |
|---|---|---|---|
| Defendant Name | First:<br>Christie | Middle:<br>Dee | Last:<br>Harr |

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.

(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated.)

| Inchoate<br>Offense | ☐ Attempt<br>18 901 A | | ☐ Solicitation<br>18 902 A | | ☐ Conspiracy<br>18 903 | | Number of Victims Age 60 or Older _____ | | |
|---|---|---|---|---|---|---|---|---|---|

| ☐ | 7 | 5532 | (a)(2) | of the | 18 | 206 | S | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data<br>(if applicable) | Accident<br>Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):

Neglect of Animal, 18 Pa.C.S. § 5532

Acts of the accused associated with this Offense:

Christie Harr failed to provide for the basic needs of an animal to which she had a duty of care, whether belonging to herself or otherwise, including access to clean and sanitary shelter and protection from the weather.

| Inchoate<br>Offense | ☐ Attempt<br>18 901 A | | ☐ Solicitation<br>18 902 A | | ☐ Conspiracy<br>18 903 | | Number of Victims Age 60 or Older _____ | | |
|---|---|---|---|---|---|---|---|---|---|

| ☐ | 8 | 5532 | (a)(3) | of the | 18 | 206 | S | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data<br>(if applicable) | Accident<br>Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):
Neglect of Animal, 18 Pa.C.S. § 5532

Acts of the accused associated with this Offense:
Christie Harr failed to provide for the basic needs of an animal to which she had a duty of care, whether belonging to herself or otherwise, including necessary veterinary care.

| Inchoate<br>Offense | ☐ Attempt<br>18 901 A | | ☐ Solicitation<br>18 902 A | | ☐ Conspiracy<br>18 903 | | Number of Victims Age 60 or Older _____ | | |
|---|---|---|---|---|---|---|---|---|---|

| ☐ | | | | of the | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data<br>(if applicable) | Accident<br>Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):

Acts of the accused associated with this Offense:

# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed:<br>3/5/2020 | OTN/LiveScan Number | | Complaint/Incident Number<br>300-2019 |
|---|---|---|---|---|
| Defendant Name: | First:<br>Christie | Middle:<br>Dee | Last:<br>Harr | |

## AFFIDAVIT of PROBABLE CAUSE

Your affiant, Officer Glen Thomson, is a humane society police officer, Badge No. 577, ORI No. AC630021, holding a current appointment with the Commonwealth to act as a humane society police officer for the prevention of cruelty to animals pursuant the statutory authority conferred under 22 Pa.C.S. §§ 3701-3718. I have been employed as a humane society police officer by the Washington Area Humane Society (WAHS) for three years. Every year I investigate more than 500 complaints of animal cruelty ranging from neglect, cruelty, aggravated cruelty, and cases that involve animal hoarding. This oath and affirmation is based on personal knowledge and experience, except where made on information and belief.

On Jan. 26, 2016 at approximately 2:00 P.M. I received a call from an unknown individual who claimed cats were being mistreated at the address of 320 2nd St. in Donora, PA. The caller claimed there were at least 100 cats in the church on the property. At approximately 3:00 P.M. that same day, I arrived at the above address and made contact with the owner, Christie "Chris" Harr. Harr explained that she runs a non-profit cat rescue, called "Animal Orphans Animal Rescue (AOAR)," and she housed the cats in the church.

When I first arrived at the property, I noticed the roof of the church was collapsing. Chris told me she was talking with contractors to get it repaired.

Chris allowed me to enter the church to check on the cats. Upon entering the church I witnessed approximately 100 cats inside the main room of the church. Some were in cages and some were running loose.

I, Glen Thomson, BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

I CERTIFY THAT THIS FILING COMPLIES WITH THE PROVISIONS OF THE *CASE RECORDS PUBLIC ACCESS POLICY OF THE UNIFIED JUDICIAL SYSTEM OF PENNSYLVANIA* THAT REQUIRE FILING CONFIDENTIAL INFORMATION AND DOCUMENTS DIFFERENTLY THAN NON-CONFIDENTIAL INFORMATION AND DOCUMENTS.

_____
(Signature of Affiant)

Sworn to me and subscribed before me this 10th day of March 2020

3-10-2020 Date    Mark Wilson

_____, Magisterial District Judge

My commission expires first Monday of January, 2024

AOPC 411C – Rev. 07/18                                      Page 1 of ___

**POLICE CRIMINAL COMPLAINT**
**AFFIDAVIT CONTINUATION PAGE**

| Docket Number: | Date Filed: 3/5/2020 | OTN/LiveScan Number | Complaint/Incident Number 300-2019 |
|---|---|---|---|
| Defendant Name: | First: Christie | Middle: Dee | Last: Harr |

## AFFIDAVIT of PROBABLE CAUSE CONTINUATION

While there I observed a lot of fur stuck to the interior and exterior of the cages. This indicated a lack of sanitary conditions for the cats confined in cages and an overall failure to adhere to routine sanitation practices for animals confined in cages. Significant accumulations of fur on cages takes time and raises concerns that animals are left in cages for extended periods of time where they cannot perform natural movements or engage in exercise or appropriate behaviors.

Some of the cats showed physically observable signs of upper respiratory infections including cats who had discharge from their eyes and noses and other symptoms such as coughing. Upper respiratory infections in cats are highly infectious and contagious and spread easily when cats are housed in groups. Upper respiratory infections are more common in animals housed in unsanitary conditions and are more often seen in those living in unsanitary conditions, crowded conditions, and cats suffering from immunosuppression caused by feline leukemia or feline immunodeficiency virus. Some of the cats also had other serious health problems. The cats had severe diarrhea. In almost every single cage we saw massive amounts of diarrhea. Chris Harr claimed that was from grain free diet. Most of the cats had mucus discharge coming out of nose and eyes. On close inspection the cats had ear mites. Many cats had matted fur and mucus like material on fur. Food was all over the floor appearing that is was regurgitated. All of these point to potential illnesses including giardia, ear mites, and other parasites in intestine and stomach.

I told Chris to clean up, to sanitize the cages and remove the accumulations of hair on the cages, and to take the sick and injured cats to a veterinarian.

Chris responded, by explaining the substandard conditions were because she was the only person caring for the cats.

On Feb 27, 2016 Animal Orphans Animal Rescue made a post on Facebook noting that the roof of the church was collapsing.

On Jan. 23, 2017 I received a call from Chris Harr who claimed another rescue (Homeless Cat Management Team) stole some of her cats. I investigated the matter and learned that Chris owed money to the Homeless Cat Management Team for veterinary care which the Homeless Cat Management Team had provided for some of the cats. Chris refused to repay the debts she incurred for the treatment of the cats who were sick and injured and the Homeless Cat Management Team refused to return the animals until Chris resolved the debt. I informed Chris that she would have to go to police since the matter appeared to involve claims of criminal conduct and allegations of stolen property. This incident caused me to begin investigating the conditions of the animals confined in the dilapidated property where Chris ran her so-called rescue.

_____
(Signature of Affiant)

**POLICE CRIMINAL COMPLAINT**
AFFIDAVIT CONTINUATION PAGE

| Docket Number: | Date Filed: 3/5/2020 | OTN/LiveScan Number | Complaint/Incident Number 500-2019 |
|---|---|---|---|
| Defendant Name: | First: Christie | Middle: Dee | Last: Harr |

## AFFIDAVIT of PROBABLE CAUSE CONTINUATION

On April 22, 2017 Chris Harr contacted the Washington Area Humane Society to surrender ownership of approximately 100-200 cats her organization had acquired. Chris said she needed to surrender the cats because she had too many and could not properly care for them all by herself.

In response to Chris' request to relinquish 100-200 cats, I proceeded to access a network of "no-kill" rescues and shelters and began making plans with these entities to take the cats and care for them. However, when the time came for Chris to surrender the cats she could not care for, Chris stated she had changed her mind and did not want to accept the help we had gone to great lengths to secure.

On June 19, 2018, I received a fax from Michele Harris from the Borough of Donora code enforcement. The fax consisted of multiple failures at 320 Second Street in Donora, PA, Harr's Church building, to comply with code enforcement regarding garbage pile up and the state of the building's decay.

On June 22, 2018 at approximately 1:40 P.M. I called Chris Harr and we spoke over the phone. Chris told me there were approximately 80 cats in the church and explained that the exposed roof had not been repaired. Chris claimed she had contacted 120 roofers to repair the damage that left the building exposed to the elements but said she had not been able to find anyone willing to make the repairs.

Later that day I obtained a warrant to enter the property with a veterinarian to assess the conditions and health of the cats In the church and to obtain an accurate count of the number of animals confined inside. I went to the property with a veterinarian Dr. Friend, and veterinary technician Chelesei Fleegal.

Dr. Friend documented 104 cats in the church.

Conditions had substantially deteriorated since my 2016 visit. There were no signs of visible progress and the conditions in the building were far worse.

Most of the cats had signs of ear mite infestations and physically observable symptoms of untreated upper respiratory infections.

We seized a cat named Linus who was so ill we feared he would perish without immediate veterinary care.

I spoke to Chris, reiterated my prior instructions at my last visit where Chris agreed to obtain veterinary care for the cats and to maintain a healthy population but that it appeared, she failed to take the necessary actions and it seemed nothing had changed. Chris agreed to bring six cats in need of surgery and vaccinations to the Humane Society within five days, in an effort to show she was cooperating with our efforts to address cats in immediate distress.

_(Signature of Affiant)_

**POLICE CRIMINAL COMPLAINT**
AFFIDAVIT CONTINUATION PAGE

| Docket Number: | Date Filed: 3/5/2020 | OTN/LiveScan Number | Complaint/Incident Number 300-2019 |
|---|---|---|---|
| Defendant Name: | First: Christie | Middle: Dee | Last: Harr |

# AFFIDAVIT of PROBABLE CAUSE CONTINUATION

Chris brought the cats in for treatment. All presented with ear mites, and appeared dirty and showed signs of poor health. The cats Chris brought in were named Mateo, Linus, No Name, Dotersy, Cuddles, and Catniss. All were spayed or neutered with the exception of Linus.

Linus was a very sick cat. Additionally, he tested positive for Feline Leukemia – though months later that was determined to be a false positive. Feline Leukemia virus causes a highly contagious and potentially fatal retroviral infection that weakens a cat's immune system, making him susceptible to illness and secondary infections.

Linus was so ill and weakened that he wasn't a safe candidate for surgery to neuter him. When this was relayed to Chris she became agitated and angry. We asked Chris to surrender the seven sick and injured cats to the Washington Area Humane Society so that we could provide the cats with the rehabilitative and supportive care they needed. Chris refused to allow the cats to receive the care we offered to provide and as she became increasingly agitated Chris said we would kill the cats. Kelly, whose office is near the front desk, attempted to deescalate the situation by assuring Chris her fears were unwarranted and to let us provide the life-saving care the cats needed as we had initially agreed to do. Chris refused, demanded that all current care be withheld and ceased and left with all the cats, including Linus.

On May 3, 2019 I received an email from a concerned citizen (Rivky Blumberger) regarding the cats at the address of 320 2nd St. Donora PA. Ms. Blumberger claimed to have spoken to Chris Harr about some of her cats that had stomatitis, a severe dental issue that causes extremely painful symptoms that can hinder eating, sometimes leading to dehydration and malnutrition.

Ms. Blumberger offered to help by paying for some surgeries and other needed procedures for a few of the cats, which Chris Harr accepted. Ms. Blumberger booked a dental for one of the cats for July 17, 2019. On July 2, 2019 Chris Harr backed out of the appointment, claiming that it was a trap.

On August 22, 2019 Kelly Proudfit had a phone conversation with Chris Harr. Chris told Kelly Proudfit she has 140+ cats. Around 120 in the church, 19 in her house and 3 dogs. She said she has no treatment plans for cats and she can't get veterinarians to help and said no one will help her. Chris said the church is caving in, she is in debt, and is using credit cards to avoid paying for services rendered. Chris said she owes back taxes and only has two people to help her relocate the cats to the facility in Monesson.

Chris said she purchased the new property using money from a settlement she obtained resulting from a worker's compensation claim. Chris admitted that none of the cats have current rabies vaccines and that she stockpiles veterinary medications which she uses to treat the cats without veterinary supervision. Chris said she had a surgery scheduled for August 30 and would have all the cats moved to a new jurisdiction by then. Chris admitted the conditions were poor but stated the cats were fine.

(Signature of Affiant)

**POLICE CRIMINAL COMPLAINT**
AFFIDAVIT CONTINUATION PAGE

| Docket Number: | Date Filed: 3/5/2020 | OTN/LiveScan Number | Complaint/Incident Number 300-2019 | |
|---|---|---|---|---|
| Defendant Name: | First: Christie | Middle: Doe | Last: Harr | |

## AFFIDAVIT of PROBABLE CAUSE CONTINUATION

On August 26, 2019, my executive director of Washington Area Humane Society, Kelly Proudfit, and I visited the Donora Church property. We were escorted by a Donora police officer. We knocked on the front door of Chris Harr's house. When she opened the door the smell of feces and ammonia was overwhelming. Chris came outside with her mother to talk to us and quickly shut the door behind her so we could not see into the house. We heard barking from inside the house. Chris agreed to show us the cats in the church. She asked us to wait until she was ready. We waited in the parking lot and her father showed up and he talked with us.

After about 20 minutes Chris finally came outside. She led us through her back yard past piles of garbage bags full of cat food cans. She took us to the front entrance of the church and unlocked large doors held shut with chains and padlocks. Inside the entry to the church were stacks and stacks of food and other garbage. She unlocked inner doors to another room. Inside this room there were roughly 88 cats. We stopped counting at 88.

The majority of the cats were caged. Roughly 18-20 cats were running free. The water in the cages was filthy. The smell of feces and ammonia was very evident. The cages were coated in fur, rust and debris. Many of the cats I recognized from our visit in 2018. Many had diarrhea in their litter boxes, crusted eyes, and dirty fur. Along the back left wall, the floor was covered in feces. Additionally, we noticed many piles of regurgitated food all along the floor area. The ceiling above was clearly water damaged from the damaged roof. Chris moved all the cats to the center of the room so that they were not under the water leaking from the ceiling.

Chris took Kelly Proudfit up into the main area of the church so she could see the damage to the roof. She once again told Kelly that she has approximately another 40 cats in her house and four dogs.

After we left the church we went outside. Chris Harr's father was gone. She then offered to take us to her new house she purchased in Monessen 10 miles away to show us how she is moving these cats to the new location. We agreed and followed her. Upon arrival at 676 Reed Ave, Monessen PA 15062 Chris took us inside her home. When we entered there were 15 cat carriers with cats inside. None of the cats had water or food. Some carriers had 2-3 kittens. We heard a dog barking upstairs. One of the cats looked familiar. Kelly asked if it was Linus. Chris answered yes and took him out of the cat carrier. He was coated in mucus and filth and appeared very sick. Chris had brought Linus to us a year prior to have neuter surgery. He was very sick and we tried to get her to surrender him in 2018 without success. Chris said he was doing great and just needed a bath. On leaving the Reed Avenue home we heard a dog barking from upstairs. Chris told us that was one of her dogs she has who she keeps upstairs.

The front room of the new house was filled with piles of junk. When we asked what it was all for Chris said it was her office for her rescue and all her fundraising items.

_____
(Signature of Affiant)

AOPC 411C – Rev. 07/18

Page __ of __

**POLICE CRIMINAL COMPLAINT**
**AFFIDAVIT CONTINUATION PAGE**

| Docket Number: | Date Filed:<br>3/5/2020 | OTN/LiveScan Number | Complaint/Incident Number<br>300-2019 |
|---|---|---|---|
| Defendant Name: | First:<br>CHristie | Middle:<br>Dee | Last:<br>Harr |

## AFFIDAVIT of PROBABLE CAUSE CONTINUATION

We asked if she had moved the animals to the new location and she said they were moving them that day. We felt it was staged to look that way but nothing in the house suggested the property was ready.

Chris told Kelly on a prior phone call that the county code enforcement hadn't approved her to move in to the new property yet. AORA posted a comment on Facebook that apparently confirmed this statement

October 27th, 2019 Chris Harr posted on her website that she still needed cages for her rescue and no one had purchased items for her rescue. She could no longer operate if she didn't get new cages and needed items. The address the wish list ships to is the 676 Reed Avenue, Monessen, PA. Additionally the address listed as the rescue address on her Facebook page is the Reed Avenue address.

October 28, 2019, Donora Code enforcement officer Kenny went to the church property to do a routine inspection. The code enforcement officer reported a strong odor of urine and feces outside the church. He also saw a gray tabby cat and an orange tabby cat roaming the property. Chris Harr was not answering the door but her car was there. He took photos of the roof that showed no improvement or efforts to fix. Later that day director Kelly Proudfit and this affiant drove by the church property. We saw a gray tabby cat run from direction of the Victorian house, stop and look at us, and then run into the bushes. We also noticed a large amount of white garbage bags piled on her front porch. These were the same type we saw when we went in August 2019, and they were full of metal cat food tins empty. Immediately leaving the Donora property we drove to 676 Reed Avenue, Monessen, PA 15062-1031. We did not see any activity at this property, although we observed all windows were covered and a camera points at front door. Neighbors were outside directly across the street at 689 Reed Avenue. We drove down and spoke to the owner and his daughter. She was busy getting her young child on a bus. She told us she hears cats meowing as recent as last week. She said they meow loudly from inside the house. She said that sometimes it sounds like they are fighting in the house or the sound of cats fighting. She said she heard it is a cat rescue, but has not seen the owner at all.

On Oct. 30, 2019, search warrants were executed at properties owned and/or occupied by Christie Harr located at 320 2nd St., Donora, PA 15033-1551 in Washington County; and, 676 Reed Ave., Monessen, PA 15062-1031 in Westmoreland County. When the search warrants were executed, over 200 mistreated animals were seized from Christie Harr.

_____
(Signature of Affiant)

**POLICE CRIMINAL COMPLAINT**
**AFFIDAVIT CONTINUATION PAGE**

| Docket Number: | Date Filed: 3/5/2020 | OTN/LiveScan Number | Complaint/Incident Number 300-2019 |
|---|---|---|---|
| Defendant Name: | First: Christie | Middle: Dee | Last: Harr |

## AFFIDAVIT of PROBABLE CAUSE CONTINUATION

Upon arrival at the house occupied by Christie Harr, 320 2nd St. Donora, PA. 15033, There were several piles of garbage and other debris on the front porch. When entering the residence, there was an immediate odor of urine and feces emanating from the interior of the house. The odor was so offensive multiple officers got physically sick on the spot. The first floor of the house was filled with piles of debris. There were narrow pathways to get from room to room. The sections of flooring that was clear, was sticky, soaked with urine, and had scattered piles of feces/diarrhea from dogs, cats, and chickens. There were two mice sized animals in a cage by the front door, one large breed mixed dog that was loose, two loose chickens, which were roaming from the main floor to the basement, and three cats in crates in a living room of the first floor. The conditions of the three crates were the same: litter boxes overflowing with feces, there were multiple piles of regurgitated food, and what little amounts of water there was, was dirty.

The basement of the house contained the bulk of the animals from the Donora address. Not counting the two loose chickens that roaming between floors, there were sixteen more chickens. All were in a dungeon type room with what appeared at first to be a dirt floor but was several coatings of animal waste that was packed down. Fourteen of these chickens were loose and two were in cages. The odor from the waste emanating from this room was strong. The room appeared as though it was never cleaned. There was a small amount of water available to the chickens, but it was dirty and mixed with animal waste. The room next to this was gated off so animals could not come and go freely. There was one dog in this basement room with no apparent source of food or water. There were also several stacked crates throughout the room containing twenty-three cats. The conditions of these cages were deplorable: litter boxes filled with excess waste to point of overflowing, several piles of regurgitated food, and little to water or food. The water that was available was dirty and mixed with litter animal waste. The cats in the lower crates were in the same conditions but also had feces and regurgitated food falling from the cages stacked on top. The odor throughout the basement was much worse than the rest of the house due to not having proper ventilation.

The second floor was relatively the same as the first floor. There were narrow pathways to get from room to room and there was a strong odor of urine in the air as well as several piles of feces in various rates of decay. Only one room, the master bedroom, contained animals on this floor. There were four cats and one dog. These animals were all loose. The conditions of this room were much the same as the rest of the house: narrow pathways to maneuver and several piles of debris. There were also several piles of feces scattered around the floor as well as on the bed. The odor of urine was also strong on this floor.

_____
(Signature of Affiant)

AOPC 411C – Rev. 07/18                                      Page ___ of ___

**POLICE CRIMINAL COMPLAINT**

**AFFIDAVIT CONTINUATION PAGE**

| Docket Number: | Date Filed: 3/5/2020 | OTN/LiveScan Number | Complaint/Incident Number 300-2019 |
|---|---|---|---|
| Defendant Name: | First: *Christie* | Middle: *Dee* | Last: *Harr* |

## AFFIDAVIT of PROBABLE CAUSE CONTINUATION

The church, located at 320 2nd St, Donora, PA. 15033, was being used as a non-profit rescue by Christie Harr. To enter, you must go through the basement. There is just a small walkway in between piles of debris to get to the area where the cats are housed. The roof to the church was significantly damaged during a storm several years ago and never fixed. For several years' rainwater has been coming through the roof and soaking the floor/ceiling that is directly above the cats. This area was not safe to walk on and looked like it could collapse any minute. There were 27 cats in this area. Twenty of these cats were running loose, the remainder were in crates. The crates in the church were in the same condition as the house. The litter boxes were overflowing with waste and there was little to no food or water available to the animals. What little food and water was there, was dirty and mixed with litter and animal waste. The floor in the church basement was littered with piles of feces/diarrhea and regurgitated food. There were also piles of dirty towels that had a bad odor emanating from them. The floors in several of the cages had feces packed down on the bottom about an inch thick. These cages were also rusty and covered with fur. There did not appear to be any running water for the church.

The house at 676 Reed Ave. Monessen, PA. 15062, occupied Ms. Harr, was a second and newer location for her non-profit rescue. This house contained the majority of Ms. Harr's cat rescue population at more than 120 cats. Although it was a new location compared to the Donora locations, the odor of urine and feces was so overwhelming due to poor ventilation that workers could not remain in the rooms for long periods of time. The ammonia in the air in one room was burning the eyes to a point of having to leave the room in less than 1 minute. The conditions of these crates were the same as the crates in Donora. The litter boxes were overflowing with feces/diarrhea and had little to no food available for the animals. Many cages were coated in fur and rusty. The little bit of water and food that was available was dirty and mixed with litter and animals waste. A large amount of debris and items were stacked in the front room similar to the Donora home.

_____

(Signature of Affiant)

 **CONFIDENTIAL**



# Confidential Information Form
# Criminal Complaint

**Complete the defendant's SSN information if known. If this form is submitted as part of a Police Criminal Complaint, the NCIC Cautions/Medical Conditions and Scars/Marks/Tattoos sections should also be completed if known.**

| Docket Number: | Date Filed: / / | OTN/LiveScan Number *(LiveScan number preferred)* | Complaint/Incident Number 300-2019 |
|---|---|---|---|
| **Defendant Name** | First: Christie | Middle: Dee | Last: Harr |

| NCIC Cautions and Medical Conditions *(check up to 9)* | | | | |
|---|---|---|---|---|
| ☐ 00 | ☐ 20 | ☐ 50 | ☐ 70 | ☐ 01 |
| ☐ 05 | ☐ 25 | ☐ 55 | ☐ 80 | |
| ☐ 10 | ☐ 30 | ☐ 60 | ☐ 85 | |
| ☐ 15 | ☐ 40 | ☐ 65 | ☐ 90 | |

| Scars, Marks, Tattoos (NCIC Codes) | |
|---|---|
| | |

Pursuant to the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania*, the Confidential Information Form shall accompany a filing where confidential information is required by law, ordered by the court, or otherwise necessary to effect the disposition of a matter. This form, and any additional pages, shall remain confidential, except that it shall be available to the parties, counsel of record, the court, and the custodian. This form, and any additional pages, must be served on all unrepresented parties and counsel of record.

| This Information Pertains to: | Confidential Information: | Reference in Filing: |
|---|---|---|
| Christie Dee Harr _____ (full name of adult) OR This information pertains to a minor with the initials of _____ and the full name of _____ (full name of minor) and date of birth: _____ | Social Security Number (SSN): | Alternate Reference: SSN1 |
| | Financial Account Number (FAN): | Alternate Reference: FAN1 |
| | Driver License Number (DLN): | Alternate Reference: DLN1 |
| | State of Issuance (DLN): | |
| | Expires (DLN): | |
| | State Identification Number (SID): | Alternate Reference: SID1 |

Additional page(s) attached. _____ total pages are attached to this filing.

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Signature of Attorney or Affiant

Date: 03/10/20

Name: Glen Thomson

Attorney Number: (If applicable) _____

Address: 1527 Route 136

Telephone: (724) 470-9711

Eighty Four, PA 15330

Email: _____

**NOTE: Parties and attorney of record in a case will have access to this Confidential Information Form. Confidentiality of this information must be maintained.**

AOPC 412A – Rev. 07/18

Page ___ of ___

*CONFIDENTIAL*