**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTIE HARR, | ) | Case 2:21-cv-1560 WSH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON AREA HUMANE, | ) | RE:  Entries 187/188 |
| SOCIETY, et al, | ) | |
| Defendants. | ) | |

**RESPONSE AND DECLARATION IN OPPOSITION TO THE DONORA BOROUGH
DEFENDANTS' MOTION TO DISMISS**

Plaintiff Christie Harr ("Harr") opposes the motions to dismiss filed by the Donora

Defendants including the Ken Jericho, Steven Toprani, and the City of Donora.

**DISCUSSION**:

The facts from the Second Amended Complaint are incorporated by reference, including

the introductory facts.  As to the Second Amended Complaint as it relates to Jericho, Toprani, and

the City of Donora, it is alleged at count IV, paragraphs 267 to 323 that:

Before and after the searches, the WAHS and HSUS defendants contacted Ken Jericho,

ordinance officer for Donora, Pennsylvania, and/or Steven Toprani, Solicitor for Donora,

Pennsylvania, and asked them to help make sure that Plaintiff cannot access her residence and

buildings in Donora, Pennsylvania. *See Second Amended Complaint* at 267.  Plaintiff lawfully

possessed and occupied the residence and church under an arrangement with her prior partner in

effect for the prior twelve years.  *Id* 268.

Pursuant to the understanding and arrangement, Plaintiff paid the utilities, mortgage, and expenses.

However, during certain times, the listed owner of the property assisted Plaintiff with some

payments. *Id* at 269.  After the search warrants were executed, the WAHS and HSUS defendants

left a chicken inside the Washington County buildings.*Id* at 270.  On or about October 30, 2019,

Jericho placed red notices on the property claiming it was "condemned" and that no person could

enter.  The notices cited the International Property Maintenance Code, which is a book not a law.

The Notice provided no right to seek review and no right to appeal.  Based on information, the

notice did not constitute a formal condemnation and was simply a sign that Jericho made and

posted.  In fact, later, Jericho admitted he never went inside the building. *Id* at 271.  The document

found at Entry 80-2 is incorporated by reference.  This document was not the notice posted on the

property.  Based on information, this document was a letter mailed to Gene Jeffries and not

provided to the Plaintiff who occupied the dwelling.  It is not believed that Mr. Jeffries received

the letter. *Id* at 272.

The Notice did not state how to cure any violations that warranted condemnation.  *Id* at

273.  The notices constituted a *per se* eviction of Plaintiff without due process.Jericho told Plaintiff

that he condemned the house she possessed and the church.  *Id* at 274.  The notice on the property

did not comply with the International Property Maintenance Code, Section 107(5), that required

notification to the occupant as to how to appeal.  (In addition, the letter sent to Gene Jeffries

similarly failed to comply as it did not contain a notification of the right to appeal). *Id* at 275.

Subsequently, Plaintiff spoke with Jericho. *Id* at 276.  Jericho, under color of law, verbally

provided Plaintiff with a trespass warning. *Id* at 277.  Jericho stated that Plaintiff could not obtain

her personal belongings from the premises and could not enter.  *Id* at 278.

On November 7, 2019, Plaintiff met with Jericho. *Id* at 279.  Jericho stated he would allow

Plaintiff limited access to obtain her personal effects if she returned at 8:30 a.m. the next day. *Id* at

280.  On November 8, 2019, Plaintiff again met with Jericho.  *Id* at 281.  During this meeting he

stated that he would allow only 20 minutes in the house to obtain Plaintiff's personal effects but it

would not occur that day. *Id* at 282. Plaintiff stated she wanted to clean the house and remove all of her property. *Id* at 283. Jericho stated she could not enter the house and made demands for a lease recorded with the Recorder of Deeds, and other non-existent documents. *Id* at 284.

Jericho threatened to have the utilities shut off to the house. *Id* at 285. Jericho called Toprani who reiterated the same position, that the house was condemned. *Id* at 286. Toprani told Plaintiff that the property was condemned and that she could not retrieve her belongings. *Id* at 287. Neither Jericho nor Toprani maintained any authority to prevent the Plaintiff from accessing her property. *Id* at 288. Both Jericho and Toprani, acting under color of law as solicitor and ordinance officer, to prevent Plaintiff from entering the property under the guise of a fake or informal condemnation. *Id* at 289.

On November 9 or 10, 2019, agents of the fire department cut the electrical wires to the house, following through on Jericho's threats.*Id* at 290. On November 10, 2019, Plaintiff reported the cut to the electrical company which repaired the cut. *Id* at 291. On November 11, 2019, agents of the Police Department advised Plaintiff that she had authority to enter the home to remove property and clean it, but at the direction of Jericho she could not live or sleep there. *Id* at 292.

Plaintiff subsequently entered and discovered that a chicken left in the building by the WAHS and HSUS was traumatized and could have perished. *Id* at 293. On November 19, 2019, while loading a U Haul with property, Jericho arrived and started threatening and yelling at Plaintiff's father. *Id* at 294. Jericho called Police Jimmy Bryce on speaker phone and told him, "I'm at the Harr residence and you need to come up and arrest that bitch because she's in the house." *Id* at 295. The police advised Jericho that Plaintiff was allowed in the house. *Id* at 296. The actions taken by Jericho and Toprani, in performing a verbal condemnation of the house, and without providing due process or a formal appealable notice, while harassing and threatening the

Plaintiff and preventing her from accessing the property she had a right to possess, constitutes a violation of the Plaintiff's due process and Fourth Amendment rights under the United States Constitution. *Id* at 297.

Plaintiff had a property interest in accessing the dwelling, cleaning it, and removing her personal items. In addition, Plaintiff lawfully possessed the property and had a property interest in being able to maintain quiet enjoyment of the premises without the arbitrary interference by the defendants. *Id* at 298.

Defendants Jericho and Toprani's verbal and informal condemnation of the premises without notice or an opportunity to be heard violated the relevant standards for a municipality taking such an action such as providing a notice of ordinance violations, a right to cure or appeal, a right to a hearing, or other steps to adjudicate the fitness of the dwelling. *Id* at 299.

Defendants Jericho and Toprani's actions in creating an informal condemnation and simply denying access to the property through threats and intimidation and cutting utilities without formal process or following established procedures, shocks the conscience. *Id* at 300.

Defendants Jericho and Toprani's actions exceeded their lawful authority. *Id* at 301. Defendants Jericho and Toprani's actions constituted a self-help eviction done for the purpose of appeasing the WAHS and HSUS, not for proper regulatory purposes. *Id* at 302.

To the extent that the so-called condemnation constituted an emergency measure under Section 109 of the IPMC of 2012, Section 109.6 provides that a hearing can be obtained by a petition to the appeals board. *Id* at 303.

However, there exists no appeals board for the Borough of Donora to file a petition for a hearing. *Id* at 304. Section 111.1 of the IPMC provides that an appeal can occur. The regulation states, "Application for appeal. Any person directly affected by a decision of the *code official* or a

notice or order issued under this code shall have the right to appeal to the board of appeals, provided that a written application for appeal is filed within 20 days after the day the decision, notice or order was served. An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply, or the requirements of this code are adequately satisfied by other means. [A] 111.2 Membership of board. The board of appeals shall consist of a minimum of three members who are qualified by experience and training to pass on matters pertaining to property maintenance and who are not employees of the jurisdiction. The *code official* shall be an ex-officio member but shall have no vote on any matter before the board. The board shall be appointed by the chief appointing authority, and shall serve staggered and overlapping terms. [A] 111.2.1 Alternate members. The chief appointing authority shall appoint a minimum of two alternate members who shall be called by the board chairman to hear appeals during the absence or disqualification of a member. Alternate members shall possess the qualifications required for board membership.  [A] 111.2.2 Chairman. The board shall annually select one of its members to serve as chairman.  [A] 111.2.3 Disqualification of member. A member shall not hear an appeal in which that member has a personal, professional or financial interest.  [A] 111.2.4 Secretary. The chief administrative officer shall designate a qualified person to serve as secretary to the board. The secretary shall file a detailed record of all proceedings in the office of the chief administrative officer. [A] 111.2.5 Compensation of members. Compensation of members shall be determined by law.  *Id* at 305.

Neither Jericho nor Toprani have any board to appeal to.  Specifically, there are no members of the appeals board, no secretary, and no chairman.  *Id* at 306.  There is no Secretary to file a petition or appeal with, only Jericho and Toprani who act unilaterally without the ability to be

reviewed.  *Id* at 307.  There is no address for the Board of Appeals to file a petition or appeal with, only Jericho and Toprani.   *Id* at 308.  Thus, actions by Jericho and Toprani are not reviewable because they have failed to comply with the provisions within the IPMC to notify persons of their right to appeal, to have an appeals board to file a petition or appeal with, to have independent persons. *Id* at 309.

Moreover, the notice posted and even the letter failed to specify how to resolve the condemnation and, by prohibiting any form of access to the property, deprived Plaintiff of the ability to make the necessary repairs.  *Id* at 310.  Rather, the letter – which was not received by Plaintiff – simply stated, that it was an unsafe structure because it is "in disrepair or lacks maintenance, is insanitary, vermin or rat infested…," all which appear to be issues that could be corrected if access to the property was allowed.   *Id* at 311.

The letter – which was not received by Plaintiff – identified roof and flooring issues that needed to be addressed, but could not be since Toprani and Jericho would not allow access to the property.  *Id* at 312.

It was the policy of the Borough of Donora to fail to establish any appeals procedure for persons affected by the Orders, notifications, and directives of Jericho and Toprani.  *Id* at 313.  It was the policy of the Borough of Donora, notwithstanding its adoptions of the IPMC, to fail to comply with Sections 109 and 111.1 thereof by failing to appoint a Board of Appeals, failing to appoint a secretary of said Board, failing to appoint a Chairperson of said board, and taking no action to have members to independently review the actions.   *Id* at 314.  Rather, it was the policy of the Borough of Donora to simply have no method to appeal, to ignore the due process requirements of the IPMC, and to have no form of review. *Id* at 315.  It was the policy of the Borough of Donora to have Jericho and Toprani not list any instructions to appeal on any

notifications because they did not have an appeals procedure. *Id* at 316. It was the policy of the

Borough of Donora to have no address, person, or location to file a petition or appeal under the

IPMC.  *Id* at 317.  It was the policy of the Borough of Donora to allow Jericho and Toprani to act

without any form of oversight. *Id* at 318.

As a result of the policy of the Borough of Donora, and the actions of Jericho and Toprani,

to not establish the appeals board required by the IPMC, having no location to file an appeal,

having no independent persons to adjudicate said appeals, the IPMC's could not possibly be

complied with, depriving the Plaintiff of due process. *Id* at 319.

Plaintiff remained ready, willing, and able to do the necessary repairs, but because of the

policies of the Borough of Donora, and the refusal of Jericho and Toprani to allow the property to

be inspected by Plaintiff, they impeded the ability to bring the property back up to code.  *Id* at 320.

Therefore, Plaintiff was denied both substantive due process and procedural due process by

the actions and policies of  the Borough of Donora, Jericho and Toprani. *Id* at 321.  The actions

were wilful, knowing, and intentional and done with a reckless disregard for the rights of the

Plaintiff. *Id* at 322. It is outrageous and shocks the conscience for a municipality, its solicitor, and

its building inspector to implement a complicated code of rules that include specific appeal and

petition requirements, the establishment of a board, and then to simply fail to advise persons of

how to file an appeal as required by the IPMC, fail to establish an appeals board leaving residents

without any form of redress, failing to establish an address or place to file a petition or appeal,

failing to appoint a secretary of the appeals board, failing to appoint a chairperson of the appeals

board, and failing to have any such board whatsoever.*Id* at 323.


I.     __Objection to Conversion to Motion for Summary Judgment__

The Donora defendants ask this Court to look at material outside of the record in this case. For example, they cite statements made at the plea colloquoy in the state case to infer that it was admitted that the Plaintiff did not have the money to repair the house and that it was unsafe.

This statement is vague,conclusory, non-specific, does not take into account the fact that three separate buildings were on the property, and cannot be used for judicial estoppel. *See* Declaration of Christie Harr, attached hereto.

It is reversible error for this Court to convert a 12(b)(6) or a 12(c) motion into a motion for summary judgment without sufficient notice to the parties. See *Castle v. Cohen*, 840 F.2d 173, 179-80 (3d Cir.1988); *Davis Elliott Int'l, Inc. v. Pan Am. Container Corp.*, 705 F.2d 705, 706-08 (3d Cir.1983); *Crown Cent. Petrol. Corp. v. Waldman*, 634 F.2d 127, 129 (3d Cir.1980).

If on a 12(b) motion to dismiss, a party "presents matters outside the pleadings, the district court must convert the motion to dismiss into a motion for summary judgment, and give all parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56." *In re Bayside Prison Litig.*, 190 F.Supp. 2d 755, 760 (D.N.J. 2002). In deciding a 12(b)(6) motion to dismiss, the district court may only consider the complaint and limited categories of documents in order to "protect plaintiffs against, in effect, summary judgment by ambush." Id.

When converting a 12(b)(6) motion to one for summary judgment, "all parties must be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).

II.   **F.R.E. 410(a)(2) and (3) Prohibits Defendants from Relying on the Statement Cited and Collateral Estoppel Cannot be Applied**

Defendants cite, albeit out of context, a statement made by the Plaintiff at a hearing that they describe as occurring "when she pled nolo contendre" and referred to it as a "plea and sentencing." *See* Entry 188, page 4.

Federal Rule of Evidence 410(a)(3) specifically prohibits the use of any statement at that hearing from being used.  Rule 410(a)(3) explains, "**Prohibited Uses.** In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions: * * * **(2)** a nolo contendere plea;  **(3)** a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure."

In this case, Defendants recognize it was both a "nolo contendere" plea hearing and a statement made during a proceeding on such a plea under a state procedure comparable to Fed. Crim. R. 11.

Similarly, this Court cannot apply collateral estoppel or res judicata based on the proceeding because the final judgment was a plea based on "nolo contendere" not any admission to the facts or a crime, and considering the specific prohibition found in F.R.E. 410(a).  In *Sharif v. Picone*, 740 F.3d 263 (3rd Cir. 2014), our court of appeals found that other courts including the Western District of Pennsylvania, not adhering to Rule 410(a) based on out of circuit precedence to be improper. *See also* FED. R. EVID. 803(22) (holding that "[e]vidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crimepunishable by death or imprisonment in excess of one year" is admissible as an exception to the rule against hearsay).

This same rules applies in Pennsylvania. *See* Pennsylvania Rule of Evidence 410(a).

Therefore, this Court must not consider this information.

III.    **<u>Requiring Plaintiff to appeal using a non-existent procedure violates due process</u>**

Courts usually require that the government give process before it deprives people of their property.  *Zinermon v. Burch*, 494 U.S. 113, 132 (1990). But if that is not "feasibl[e]," it may give process after the deprivation. Id. The core of due process is an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Harr alleged that she was deprived of a property interest and that the procedures available "did not provide 'due process of law'".  *Hill v. Borough of Kutztown*, 455 F3d 225, 233-34 (3rd Cir. 2006).

Harr must have taken advantage of the procedures "unless those procedures are unavailable."  *Alvin v. Suzuki*, 227 F3d 107, 116 (3rd Cir. 2000).  Here, the procedures did not exist and, therefore, were "unavailable."

In this case, the sole post-deprivation method outlined was the appellate procedure. However, as explained in the Second Amended Complaint, it did not exist.  There was no appellate board, no appointees to the board, no clerk, no office, no address, no rules, no procedure, no members, no staff, and no compliance with the so-called International Property Maintenance Code.

The Supreme Court's decision in *Logan v. Zimmerman Brush Company*, 455 U.S. 422 (1982), makes the problem clear.. There, the plaintiff's state-law cause of action was dismissed because the state's Fair Employment Practices Commission, through no fault of the plaintiff's, failed to hold a timely conference. *Id*. at 424–427. The Supreme Court explained that "the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances." *Id.* at 429. "The hallmark of property," the Court emphasized, "is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Id.* at 430. The Court explained the right to bring a cause of

action is just such an entitlement, and therefore "a species of property protected by the Fourteenth Amendment's Due Process Clause." *Id*. at 428.

Under *Logan,* then, Harr had a property interest in its statutory cause of action to challenge the condemnation. *See, e.g.*, *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988) (reiterating Logan's conclusion); *Gibbes v. Zimmerman*, 290 U.S. 326, 332 (1933) ("a vested cause of action is property and is protected from arbitrary interference"); *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33, 37 n.4 (1st Cir. 2006) (recognizing a cause of action is a property right protected by due process); *Webster v. City of Houston*, 735 F.2d 838, 844 (5th Cir.), on reh'g, 739 F.2d 993 (5th Cir. 1984) (same); *Holman v. Hilton*, 712 F.2d 854, 858 (3d Cir. 1983); *D.C. v. Beretta U.S.A. Corp.,* 940 A.2d 163, 173 (D.C. 2008) (same).

IV.    **Plaintiff does not need to ask Defendants how to utilize a non-existent appellate process**

As explained in the Complaint and the attached declaration, the Ordinance requires there to be an appeals board. However, the defendants never established this Board.

The Defendants argue that Plaintiff did not seek to appeal to this non-existent Board. However, she cannot seek to appear to something that does not exist. It is not her job to make them available, to ask Donora to form the Board, etc.

Defendants suggest that Harr needed to allege in her Complaint that she asked the defendants about how to appeal. This, again, is something for summary judgment. Rule 8, Fed. R. Civ. Proc., does not require this type of heightened pleading requirement. Moreover, Plaintiff had several interactions with the defendants and their responses were to seek her arrest, turn off the utilities, and refer to her as a "bitch." The clear allegation is that the non-existent Board was "unavailable" considering it did not exist.

V.    **Due Process Required Notification of the Right to Appeal**

The condemnation Notice at Entry 118-2 provides no information on how to obtain a hearing, how to appeal, or how to remedy the situation.  It simply states, "As of Wednesday, October 30th, Your property has been condemned and placard unsafe."  This notice was not served on Harr.  It is not what was posted on the property.

"Due process requires some indication that a procedure exists to protect one's exempt property and how, in general, either to trigger the process or to gain information regarding the process." *Aacen v. San Juan Cty. Sheriff's Dep't*, 944 F.2d 691, 699 (10th Cir. 1991); *see DiCesare v. Stuart*, 12 F.3d 973, 978 (10th Cir. 1993). Those cases relied on the Supreme Court's decision in *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1 (1978). In *Memphis Light*, the Supreme Court held due process required a municipal utility to provide customers notice of how to contest the termination of the utility service. *Id.* at 22.

Other courts have recognized that *City of West Covina v. Perkins*, 525 U.S. 234 (1999), limited *Memphis Light's* holding. See *Gates v. City of Chicago*, 623 F.3d 389, 398 (7th Cir. 2010); *Arrington v. Helms*, 438 F.3d 1336, 1351 n.16 (11th Cir. 2006). The West Covina Court specifically distinguished Memphis Light, explaining that case "does not support a general rule that notice of remedies and procedures is required." *West Covina*, 525 U.S. at 242. Instead, the *Memphis Light* rule only applies when "the administrative procedures at issue" are "arcane and are not set forth in documents accessible to the public." Id. Where, by contrast, "state-law remedies" are "established by published, generally available state statutes and case law," the *Memphis Light* rule does not apply. Id. at 241.

In this case, *Memphis Light* applies because the Defendants' procedures are contained not in a law, but in a privately published book called the *International Property Maintenance Code*

that is not readily available.  Moreover, the Board of Appeals created by the IPMC does not appear to exist.  There is no address, no phone, no form, no published procedures, and no rules for this alleged Board of Appeals.  It exists only in the privately published book, but the Defendant never implemented an appeals procedure or Board.

For this reason the "arcane" non-existent procedure is "not set forth in documents accessible to the public."  As a result, the Notice at 118-2 denied due process by not explaining any appellate procedure or right to cure.  *See also Brody v. Vill. of Port Chester*, 434 F.3d 121, 132 (2d Cir. 2005)(analyzing Supreme Court precedents).

**VI.      Condemning the Property and Disallowing Access to Personal Effects Denied Due Process Without Pre-Deprivation Notice or a Right to Cure**

The so-called Condemnation Notice at Entry 118-2 cites unsanitary conditions, a need for maintenance, lighting, ventilation, and other deficiencies as to the house.  As to the church, the notice cites roof repairs.

However, the Notice provided no ability or time to cure the deficiencies.  On the contrary, the Defendants simply took the property without advance notice.  Due process required notice of right to contest condemnation when tenants were provided with just thirty-six hours to vacate their homes.  *Grayden v. Rhodes,* 345 F.3d 1225, 1243 (11th Cir. 2003).  Here, no opportunity to enter the premises, retrieve effects, or clean and repair the structure was provided.

In *M.A.K Investment Group, LLC v. City of Glendale*, 889 F.3d 1173 (10th Cir. 2018), no matter if a property owner "should have been more diligent,' that fact [or presumption] 'does not excuse the government from complying with its constitutional obligation of notice [per Mullane]' " before taking private property. *Id*, 889 F.3d at 1182, 1186 (quoting *Jones v. Flowers*, 547 U.S. 220, 232, 234 (2006)). Other circuits also enforce pre-deprivation notice requirements. See, e.g., *Brody*

*v. Vill. of Port Chester*, 434 F.3d 121, 132 (2d Cir. 2005) (concluding due process requires condemnors to give as much notice practicable to inform affected property owners of proceedings that threaten to deprive owners of property interests).

The M.A.K. case fully analyzes Supreme Court precedent as to why pre-deprivation notice is required to comply with due process in blight cases.

to how to file the appeal is provided.  No information about the Board's creation exists.

As shown by the attached Declaration of Christie Harr, it does not appear that such an appellate process – although required by the Ordinance – exists.  Furthermore, the "Board of Appeals" is not mentioned on Donora's website, no appeal forms are on the website, no address for the Board of Appeals exists, and no procedure on how to file an appeal is listed.

In other words, the IPMC requires the defendants to set up an appellate procedure, but they failed to comply with their own ordinance.

Therefore, no "post-deprivation" due process exists.  It cannot be said that the rule requiring a Board of Appeals, when the defendants did not create such a Board and no information about the Board exists, complies with due process.

This, in itself, constitutes a due process violation by both the Defendants who brazenly condemned the property without any review procedure, ignoring the requirements of their own incorporated *IPMC* book.

Yet the Defendants denied this appellate procedure by not notifying her of it, not establishing an appeals form, not creating the Board of Appeals, not appointing members to the Board of Appeals, not having an address to file the appeal, and not establishing an office for the Board of Appeals.

Certainly, where the *IPMC* book that Donora adopted as its law required a Board of Appeals, and where the letter does not mention the appeals procedure, and indeed no appeals procedure or board existed in reality but only in the *IPMC* book, the Defendants denied the proper appellate procedure.

VII.     **Pennsylvania's Mandamus procedure does not cure the pre and post-deprivation violations of due process**

In this case, the defendants' unilateral actions in simply posting a condemnation notice on the property, with no information or references, and sending the property owner (at an address other than the property address) but not the person processing the property a letter (which it is unknown if it was delivered), without any notification of how to appeal or what to do to cure the matter, violated pre-deprivation due process. There was an appeals procedure in the rules, not the mandamus procedure now cited, which specifically required the establishment of an appeals board and a form to file appeals. None of this existed. There was no address of the appeals board, no appointees, no clerk, no form, and no information as to how to file.

VIII.     **Defendant Steven Toprani Participated and Denied Due Process**

The Complaint and the Declaration of Christie Harr explains that the appeal procedure conveyed to her by Defendant Ken Jericho was the review by Steven Toprani. Mr. Toprani affirmed the decision of Defendant Jericho. Mr. Toprani clearly participated in the denial of due process and the property deprivation. The allegations in the Complaint clearly identify Mr. Toprani's participation.

### IX..  <u>The Donora Defendants are Not Entitled to Qualified Immunity</u>

Plaintiff does not concede that "qualified immunity" exists in any way.  Rather, the Supreme Court decisions judicially creating the defense were wrongly decided.  *See Baxter v. Bracey*, 590 U.S. ___ (2020)(Thomas, dissenting).

The Defendants should have known that they could not simply send a letter to the property owner, without notifying the occupants, stating that the property has been "condemned" and "placard unsafe" and deny any ability to cure the deficiencies, repair the structure, clean it, retrieve personal effects, appeal the decision, have a hearing, etc.

There is a multitude of cases putting them on notice that due process, both pre-condemnation and post-condemnation, must exist.  In this case, no review procedure existed except for having Steven Toprani rubber stamp the unilateral decision of Ken Jericho.

"[D]eprivation of.. .property by adjudication [must] be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).  Notice is sufficient for due process purposes if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and <u>afford them an opportunity to present their objections</u>" or claims. *Id*, 339 U.S. at 314.

"[A] mere gesture is not due process." *Id*. at 315. Rather, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.*

Clearly established case lawgave the Defendants notice that they were required to provide pre and post-deprivation notice and an opportunity to cure or appeal, which they did not.

### X.  Donora's statute of limitations defense must fail

Statute of limitations is an affirmative defense to be raised in its answer.  It cannot be raised in a motion to dismiss. Federal Rule  of Civil Procedure 8 require a defendant to plead an affirmative defense, like a statute of

limitations defense, in the answer, not in a motion to dismiss. See *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002).

Regardless, the defense is easily defeated under the "shared attorney" doctrine.   The statute of limitations are tolled because the parties are represented by the same attorney, "the attorney is likely to have communicated to the latter party that they may be joined" *Garvin v. City of Phila.*, 354 F.3d 215, 222-23 (3d Cir. 2003).

Here, Donora, used the shared attorney.  Moreover, Donora is paying for the defense of its employees through its insurance policy.  Therefore, there are material facts in dispute as to this affirmative defense.

### XI.  Allegations of outrageous conduct have been included.

The Second Amended Complaint contains clear allegations of the outrageous conduct by the defendants curing any issue.

### XII.  The Second Amended Complaint Alleges Policies by Donora

The Second Amended Complaint clearly alleges that the pre-deprivation and post-deprivation actions were policies of Donora.  Obviously, Donora knew the extraordinary power it gave its officers and counsel when it empowered them to unilaterally lock residents out of their property, deny them access to their personal effects, not advise them of the method to appeal,

and by implementing an appellate procedure that did not exist despite enacting a requirement to do so.

## XI.  To the Extent the Complaint is Unclear, Leave to Amend is Requested

To the extent the Corrected Amended Complaint needs clarified, or the allegations need to be made more clear, leave to Amend is requested.   "Ordinarily where a complaint is dismissed for 'failure to plead with particularity' grounds alone, leave to amend is granted." *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1435 (3d Cir. 1997).  Unless an amendment would be futile, the Court must give the Plaintiff leave to amend to correct any failure to state a claim. *Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000).

### Conclusion

The motion to dismiss, which is really a motion for summary judgment, must be denied. Alternatively, it must be dismissed with leave to file a motion for summary judgment.  Discovery should proceed forthwith.

## DECLARATION OF CHRISTIE HARR

I, Christie Harr, declare and state under the penalty for perjury that the following is true and correct:

1.   I am the Plaintiff in this case.  I am over 18.

2.  The allegations in the Second Amended Complaint are true and correct.

3.  I object to the use of a motion to dismiss to grant summary judgment against me.

4.  The defendants cite a summary statement I made during a nolo contendere plea hearing, specifically not admissible under F.R.E.410(a)(2) and (3).  In this statement, I refer to the

conditions of a building.  However, there are three buildings on the property and defendants would not allow access to any of them.  The animals were held in a church building, and my personal effects were in a residential house.  Any statement made if it were admissible, would not be relevant to the defendants' prohibition on my obtaining my personal effects.

5.  I have reviewed the letter attached at Exhibit 118-2.  I note that it includes no information to obtain a hearing or to appeal.

6.  I have reviewed the website at www.donoraboro.org  including, but not limited to, the specific page "Code Enforcement/Zoning" at www.donoraboro.org/code-enforcement . Nothing about a Board of Appeals exists.

7.  I reviewed every form on the Code Enforcement / Zoning portion of the website, and no appeal form or form relating to a Board of Appeals exists.

8.  I then reviewed the "contact" page of the website at www.donoraboro.org/contact/ .  This page lists each and every department of Donoro.  It does not list any Board of Appeals.

9.  I did a Google search for "donora" and "board of appeals" and I could not locate any rules, forms, procedures, instructions, address, phone number, email, website or anything else for the Board of Appeals.

10. It does not appear that a Board of Appeals exists.

11. It does not appear that any procedures have been implemented by the defendants to establish a Board of Appeals.

12. I did find a reference on a Pennsylvania state website that lists "member of the Code Enforcement Board of Appeals" for Donora as contacts in 2018 for Gaming Act matters, found in 48 Pennsylvania Bulletin 3221, dated Saturday May 26, 2018, but it does not list any names, telephone numbers, addresses, or other information.

13. If there exists a Board of Appeals, it operates in complete secrecy without any information available to the public how to invoke the appellate procedures found in the privately published book, the *International Property Maintenance Code*.

14. The defendants have further denied due process by not complying with the procedures they allege is the remedy because they never established a Board of Appeals.

15. The appeal procedure that Defendant Ken Jericho outlined to me was his consultation with Steven Toprani and Mr. Toprani affirmed Mr. Jericho's refusal to allow me to clean, repair, enter, or obtain my personal property.

16. Neither Mr. Jericho nor Mr. Toprani advised me of any Board of Appeals.

17. I do not think a Board of Appeals has been created. I do not believe there are actual members of the Board of Appeals. I do not believe that a procedure to appeal to the Board of Appeals exists. I do not know where the Board of Appeals is located, what form to use to appeal, or the procedure to have the appeal heard.

18. I believe that the Defendants adopted the IPMC but never actually read it and that they did not even know that they were supposed to have a Board of Appeals.

19. The 20 minutes, which was promised but never provided, was a completely insufficient amount of time to retrieve personal effects.

20. The time period that it took to allow me into the property caused damage, the turning off of utilities, including the death of animal-property, spoilage of foodstuffs, among other things.

Respectfully submitted,

_____/s/ Christie Harr_____
Christie Harr
676 Reed Avenue
Monessen PA  15062

PLAINTIFF