**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTIE HARR, | ) | Civil Action No: 2:21-cv-1560 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Honorable W. Scott Hardy |
| | ) | |
| WASHINGTON AREA HUMANE SOCIETY, | ) | |
| et al, | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

The Humane Word for Animals, Inc. ("HWA") Defendants[1] filed a Motion to Dismiss Second Amended Complaint and Memorandum of Law in Support of its Motion to Dismiss on December 6, 2024. (ECF Nos. 172 and 173). Plaintiff, Christie Harr ("Harr"), filed a Response in Opposition to the HWA Defendants' Motion to Dismiss on April 7, 2025 (ECF 203). The HWA Defendants file the instant Reply Brief in further support of their Motion to Dismiss.

## I. ARGUMENT

### A. Even if it is assumed that all charges concerning the Westmoreland County property were withdrawn, Judge Neuman's ruling on Harr's suppression motion still has collateral estoppel effect.

The Court should reject Harr's attempt to evade collateral estoppel based on her contention that there was no final adjudication of the Westmoreland County charges.[2] Harr's argument rests on the assumption that an adjudication made by a criminal court cannot have collateral estoppel

[1] On February 19, 2025, the Court granted The Humane Society of the United States' Motion to Substitute Party and substituted Humane World for Animals for The Humane Society of the United States.

[2] Harr's attempt to separate the Westmoreland County and Washington County charges is at odds with representations she made in her Omnibus Pretrial Motion filed in the criminal case, where she argued: "Yet most of the evidence and the charges in these two cases originate from Westmoreland County. The charges are inextricably intertwined and linked." (ECF 114-3 at pp. 5-6).

effect if there is no conviction, guilty plea, or nolo contendere plea in that particular proceeding. However as previously recognized by the Court, Harr's assumption is contrary to law. (Sept. 5, 2024 Mem. Op., ECF 153, at p. 21) (recognizing that collateral estoppel "does not require the entry of a judgment, final in the sense of being appealable.") (quoting *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 210 (3d Cir. 2001) (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)) *See also In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997) (quoting Restatement (Second) of Judgments § 13 (1982) ("[F]or purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.")). In *Henglein*, the Third Circuit recognized that for purposes of collateral estoppel, finality "is a more 'pliant' concept than it would be in other contexts." *Henglein,* 260 F.3d at 210 (quoting *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980) (per curiam)). "'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id.* (quoting *Dyndul*, 620 F.2d at n. 8 (quoting *Lummus Co. v. Commonwealth Oil Refining Co*., 297 F.2d 80, 89 (2d Cir. 1961))).

As noted by this Court in its Memorandum Opinion, courts have held that collateral estoppel may bar a Section 1983 claim based on a criminal court's ruling on a pretrial suppression motion. (Sept. 5, 2024 Mem. Op., ECF 153, at pp. 18-9). For instance, in *Doswell v. City of Pittsburgh*, 2009 WL 1734199, the court gave collateral estoppel effect to the criminal court's determination that probable cause existed following a suppression hearing on a photo array, even though the criminal case resulted in a conviction that was vacated 19 years later because the criminal defendant was exonerated by DNA evidence. The court reasoned:

> Doswell's conviction was vacated on other grounds—DNA evidence that was not available at the time of his conviction. The probable cause determination of the trial

> court and its affirmation by the Superior Court were in no way implicated by this new evidence. Nor is this a case where a presumption of probable cause stems solely from the fact of the criminal conviction. Rather, it was expressly held by the trial court and affirmed by the Superior Court that the photo array established probable cause to arrest Doswell.

*Id.* at *8.

In addition to the federal court cases previously cited by the HWA Defendants and this Court, Pennsylvania courts have also ruled that a criminal court's ruling on a suppression motion can have collateral estoppel effect. *See Com. v. Henderson*, 520 A.2d 1372 (Pa. 1987). In *Henderson*, the court denied the defendant's motion to suppress an inculpatory remark he made to the police. At the trial, the jury was unable to agree on a verdict. A mistrial was declared, and a new trial was ordered. The defendant renewed his motion to suppress. The court denied this motion without a hearing on the grounds that the issue had already been litigated and the defendant failed to allege the existence of any new evidence. On retrial, the defendant was convicted. He appealed, and the Superior Court affirmed. The Supreme Court of Pennsylvania granted leave to appeal on the issue of whether a defendant on retrial, who asserts no error or new evidence regarding a previously litigated suppression motion, is entitled to a rehearing of the same issues as part of his second trial. Citing collateral estoppel, the Court affirmed:

> Recently, we discussed the effect of collateral estoppel on pre-trial suppression decisions. In *Commonwealth v. Lagana*, 510 Pa. 477, 509 A.2d 863 (1985), we held that prior suppression court decisions could be given collateral estoppel effect, unless the person against whom the decision was rendered alleged new evidence not previously available. We also held that if the suppression ruling from the first proceeding is deemed binding, it becomes part of the record of the second proceeding, and therefore subject to appellate review.
>
> A similar analysis can be employed in this case. Prior to retrial appellant made a request for a new suppression hearing. However, he alleged no new evidence; nor did he assert any legal basis for his claim. The trial judge correctly denied his claim, and though he was operating without benefit of our decision in *Lagana, id*., the judge gave collateral estoppel effect to the prior suppression court decision.

On this record, with no allegation of new evidence, we find no error in this decision.

*Id.* at 1373.

Instantly, the Order which estops Harr from pursuing her claims is Judge Neuman's Order denying Harr's Omnibus Pre-Trial Motion, which included a Petition for Suppression of Evidence based on the validity of the search warrants. In Pennsylvania, a suppression motion is filed pursuant to Rule 581 of the Rules of Criminal Procedure, which permits a criminal defendant to make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights. This rule was "designed to provide one single procedure for the suppression of evidence alleged to have been obtained in violation of the defendant's rights," including Constitutional rights. Pa. R. Crim. P. 581, cmt; *Com. v. Metzer*, 634 A.2d 228, 233 (Pa. Super. 1993) (recognizing that suppression motions protect constitutional rights). "The concept of standing in a criminal search and seizure context empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution . . ." *Com. v. Hawkins*, 718 A.2d 265, 266 (Pa. 1998) (citations omitted).

Notably, Rule 581 of the Pennsylvania Rules of Criminal Procedure states if the court determines that the evidence shall not be suppressed, "such determination shall be final, conclusive, and binding at trial, except upon a showing of evidence which was theretofore unavailable, but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its suppressibility." Pa. R. Crim. P. 581(J). Under Pennsylvania law, the Commonwealth has an absolute right of appeal to test the validity of a pre-trial suppression order, but the criminal defendant does not have this right. The reason for this difference was explained by the Commonwealth Court in *Metzer:*

> From *Commonwealth v. Bosurgi*, [190 A.2d 304 (Pa. 1963)], we glean the proposition that, from both the Commonwealth's and the defendant's perspective, a pre-trial suppression ruling is final for purposes of the admissibility of evidence at trial. The Commonwealth's concern, of course, is whether it will be foreclosed entirely from prosecuting as a result of the suppression ruling or be so "substantially [handicapped]" as to be unable to present an effective prosecution. *Commonwealth v. Bosurgi, supra*. The trial would proceed, and if the Commonwealth did not prevail, it would be forever barred from challenging the pre-trial ruling. Thus, for purposes of fairness to the Commonwealth and in the interest of justice, the pre-trial suppression ruling must be final to allow the Commonwealth an opportunity to appeal. *Id*. 411 Pa. at 64, 190 A.2d at 308–09. Unlike the Commonwealth, the defendant may appeal post-trial from a pre-trial suppression ruling. Unless the Commonwealth appeals an adverse suppression ruling, the defendant proceeds with his case, basing his defense on the court's pre-trial ruling, knowing that the ruling may be challenged post-trial should the verdict be rendered in the Commonwealth's favor. *Bosurgi, supra*, at 64, 190 A.2d at 308.
>
> Thus, the finality of the court's pre-trial ruling plays a significant factor in both the Commonwealth's and the defense's trial strategy. Inherent in the finality of a pre-trial suppression ruling is knowing how to proceed therefrom. For the Commonwealth, an adverse ruling means it must immediately take an appeal. Likewise, the defense knows that it must either defend against the evidence and appeal post-trial or proceed in reliance upon suppression of the evidence.

*Metzer*, 634 A.2d at 233.

The central issue in this civil case is whether Judge Neuman's ruling on Harr's suppression motion in the criminal case is "sufficiently firm to be accorded conclusive effect." *In re Docteroff*, 133 F.3d at 216. The Court already answered this question in the affirmative. (Sept. 5, 2024 Mem. Op. at p. 21). The new allegations contained in Harr's Second Amended Complaint do not change this outcome. When Judge Neuman rejected Harr's constitutional challenges and denied her suppression motion, that determination was final and the evidence sought to be excluded by Harr was going to be permitted at the criminal trial. At that point, Harr could have challenged Judge Neuman's ruling if she: (1) came forth with new evidence that was unavailable; or (2) filed an appeal of this ruling post-trial.[3] Harr did not come forth with new evidence to present to Judge

[3] Additionally, an appeal before final judgment may be allowed in a criminal case when exceptional circumstances are present. *Com. v. Washington*, 236 A.2d 772, 775 (Pa. 1968).

Neuman or file an appeal. Instead, she chose to forfeit her right to appeal[4] by pleading nolo contendere to two counts of neglect of animals and was sentenced to probation, ordered to pay the costs of prosecution, ordered to submit to a mental health evaluation, and prohibited from owning any animals for a certain period of time.

Judge Neuman's ruling on Harr's suppression motion is sufficiently firm to be accorded conclusive effect. Even with the new allegations in the Second Amended Complaint, the ruling remains unchanged. As such, Harr is collaterally estopped from relitigating the validity of the search warrants, and all claims against the HWA Defendants related to those warrants should be dismissed, with prejudice.

**B. The collateral estoppel effect of Judge Neuman's adjudication applies to the claims against the HWA Defendants.**

The search warrants at issue expressly authorized the assistance of the HWA, then the Humane Society of the United States, given the amount of assistance that would be needed to complete the search. Harr clearly took issue with the Humane Society of the United States in her Omnibus Pretrial Motion:

(1) "Presently before this Court is a case of overreach by a private organization, the Washington Area Humane Society (WAHS), which acted as a police agency and the national Humane Society of the United States that maintains no lawful authority in Pennsylvania to act as police." (ECF 114-3 at p. 4).

(2) "During the searches . . . instead of simply using a trained officer certified in Pennsylvania, they arrived with a battery of civilians and unlicensed agents from the Humane Society of the United States, a Maryland corporation. The WAHS and HSUS used untrained civilians who are not certified police to rummage through property under Harr's control and to alter, use, modify, and damage electronic items with evidentiary value." (ECF 114-3 at p. 8).

[4] According to Harr's Colloquy, which is attached hereto as **Exhibit A**, Harr acknowledged that by pleading nolo contendere, she gave up certain rights of appeal. "[Y]ou would have the right to appeal any errors that might arise in your case to the Superior Court of Pennsylvania. However, when you plead *nolo contendere*, you limit the grounds for those appeals to four (4) specific reasons: (1) that this Court did not have jurisdiction in your case. . . (2) that the sentence or probation imposed by this Court is illegal; (3) that your plea was not knowingly, intelligently, and voluntarily made; and (4) the incompetence or ineffectiveness of the attorney who represents you. All other grounds for appeal are given up. Do you fully understand this? 'Yes'" (**Ex. A** at p. 5).

(3) "Here, the police are the WAHS and HSUS, private organizations that still maintain a duty to disclose the exculpatory information, emails, etc., as they acted under color of law." (ECF 114-3 at p. 10).

(4) "In this case, the Commonwealth is allowing the WAHS and unauthorized USHS (sic) to dictate what evidence to provide." ECF 114-3 at p. 10).

(5) "Even though the Commonwealth, through the WAHS, applied for a search warrant allowing the agency to seize certain items, the WAHS brought agents from the Maryland-based Humane Society of the United States into the Commonwealth to take part in the raids. The HSUS maintains no authority in this Commonwealth, is not incorporated here, and lacks any credentials or authority under 22 P.S. 3701, et seq. Yet the Commonwealth allowed for their participation and for them to act as law enforcement agents." ECF 114-3 at pp. 13-4).

Judge Neuman denied Harr's Motion and ruled that the warrant was not illegally issued and that the scope of the warrants was not exceeded during execution. (*See* Sept. 5, 2024 Mem. Op., ECF 153, at p. 16) (quoting Judge Neuman's decision). Nothing provided in Harr's Second Amended Complaint alters this Court's prior conclusion that Harr is collaterally estopped from relitigating her arguments that the search warrants and their execution were unconstitutional. (*Id.* at p. 23).[5] As such, all claims against the HWA Defendants related to those warrants should be dismissed, with prejudice.

## II. CONCLUSION

For the reasons set forth herein, the HWA Defendants' Memorandum of Law in Support of Motion to Dismiss Second Amended Complaint, and the Court's September 5, 2024

[5] In her Omnibus Motions, Harr argued: "Because the judge signing the warrants never listed the items to be seized, only the locations, the warrants were improper general warrants. Because the law enforcement officials and private humane police officers seized medicine, medical supplies, lawfully possessed weapons, armor, tools, and other items not related to animal cruelty, all of the warrants must be quashed and the evidence suppressed." (ECF 114-3 at p. 7). Judge Neuman rejected her argument and ruled that the search warrants were not illegal general warrants. (ECF 114-4 at p. 6). In her Response in Opposition to the instant Motion to Dismiss, Harr argues that the "guns, ammunition, knives, clothing, medical supplies, personal medication, a social security card, a box of miscellaneous items, a magazine," were not going to be used in the criminal case and therefore do not implicate collateral estoppel. Harr does not cite any legal authority in support of this position, but Judge Neuman's ruling is clear that the warrants were not illegal general warrants.

Memorandum Opinion (ECF 153), all claims against the HWA Defendants should be dismissed, with prejudice.

Respectfully Submitted,

ROBB LEONARD MULVIHILL LLP

Dated: April 28, 2025

*/s/ Bruce E. Rende*

Bruce E. Rende, Esquire
PA ID #52714
William C. Robinson, III, Esquire
PA ID #327457
Robb Leonard Mulvihill LLP
BNY Mellon Center
500 Grant Street, Suite 2300
Pittsburgh, PA 15219
P: (412) 281-5431
F: (412) 281-3711
Email: brende@rlmlawfirm.com
Email: wrobinson@rlmlawfirm.com