**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHRISTIE HARR,                                )
                                              )
             Plaintiff,                       )
                                              )
      v.                                       )        Civil Action No. 21-1560
                                              )
WASHINGTON AREA HUMANE  SOCIETY;              )
MARANDA COOMBS (JOHN DOE 1); BARB             )
LYLE (JOHN DOE (2); CHELSEI FLEEGAL           )
NEHILLA (JOHN DOE 3); TERESA                  )
SALAMONE, EXECUTRIX OF THE ESTATE             )
OF GLEN L. THOMSON; KELLY PROUDFIT;           )
JOHN DOES 4-10, agents and employees of the   )
Washington Area Humane Society;               )
HUMANE WORLD FOR ANIMALS, INC.,               )
f/k/a Humane Society of the                   )
United States; SHALIMAR OLIVER;               )
LEANA STORMONT; LAURA KOIVULA;                )
JOHN DOES 11-20, agents and employees of the  )
Humane Society of the United States; HUMANE   )
ANIMAL RESCUE; JOHN DOES 21-30, agents        )
and employees of the Humane Animal Rescue;    )
KEN JERICHO; STEVEN TOPRANI;                  )
BOROUGH OF DONORA; MARVIN                     )
DAVIS; SAMUEL JENESKY; SARAH N.               )
TEAGARDEN; JOHN DOES 32-50,                   )
unknown law enforcement Officers;             )
                                              )
             Defendants.                      )


**MEMORANDUM OPINION**

## I. INTRODUCTION

Plaintiff Christie Harr ("Harr"), who is proceeding *pro se*, brings this action pursuant to

42 U.S.C. § 1983, alleging a variety of claims against numerous defendants for violations of her

rights under the Constitution of the United States, as well as tort claims under Pennsylvania law.

The defendants named by Harr in her Second Amended Complaint ("SAC") include the

following three groups (collectively referred to herein as the "Humane Defendants"): (1) the Washington Area Humane Society ("WAHS") and its alleged agents and employees including Teresa Salamone, Executrix of the Estate of Glen L. Thomson ("Officer Thomson"), Kelly Proudfit ("Proudfit"), Barb Lyle, Chelsea Fleegal,[1] Maranda Coombs,[2] and John Does 4-10 (collectively, the "WAHS Defendants"); (2) Humane World for Animals, Inc. ("HWA")[3] and its alleged agents and employees including Shalimar Oliver, Leana Stormont, Laura Koivula, and John Does 11-20 (collectively, the "HWA Defendants"); and (3) Humane Animal Rescue and its agents and employees including John Does 21-30 (collectively, the "Humane Animal Rescue Defendants").[4]  (Docket No. 159).  Harr's claims against the Humane Defendants, specifically, arise from an allegedly unconstitutional search and seizure operation that took place on or around October 30, 2019, involving properties in her possession in the City of Monessen in Washington County, Pennsylvania (the "Washington County property"), and in the Borough of Donora in Westmoreland County, Pennsylvania (the "Westmoreland County property"), which she was using to house animals in the course of operating an animal shelter  (*Id.*).  Harr alleges that in conducting the search and seizure at these properties, the Humane Defendants violated her constitutional rights and committed various violations of state tort law.  (*Id.*).

---

[1]    The WAHS Defendants indicate that Defendant Chelsea Fleegal is incorrectly identified in the SAC as "Chelsei Fleega."  (Docket No. 178 at 1).

[2]    It is not clear from the docket whether Defendant Maranda Coombs has been served in this case, and Harr indicated during the telephonic Status Conference held on September 25, 2025, that she did not know whether Ms. Coombs had been served.  (Docket No. 219).

[3]    On February 19, 2025, partway through the parties' briefing on the most recent round of motions to dismiss, the Court granted The Humane Society of the United States' Motion to Substitute Party and substituted Humane World for Animals, Inc. for the Humane Society of the United States, as the Humane Society of the United States notified the Court that it had recently changed its name.  (Docket Nos. 192, 194).  Although the parties' filings in this case refer to such Defendant at different times as the Humane Society of the United States (or the HSUS) or Humane World for Animals (or HWA), the Court will refer to such Defendant, herein, as HWA.

[4]    Harr also avers that certain John Doe Defendants, who are alleged to be agents and employees of WAHS, HWA, and Humane Animal Rescue, have not yet been identified but could be identified through discovery.  (Docket No. 159, ¶¶ 6, 10, 13).

Previously in this case, the Court issued a series of three lengthy, separate but related, Memorandum Opinions and Orders dismissing the claims in Harr's Amended Complaint, without prejudice to her ability to amend her claims.[5]  Plaintiff subsequently filed her SAC, which has now grown to 52 pages and 367 paragraphs in length.  (Docket No. 159).   The Court notes that Harr's SAC – like her Amended Complaint – once again alleges 16 separate counts (some of which appear to allege several unclear claims each) against a multitude of Defendants, in various combinations.  Pending before the Court are a number of motions to dismiss Harr's SAC filed by Defendants in this matter.

Presently, however, the Court is considering only the motions to dismiss the SAC and briefs in support filed by the HWA Defendants (Docket Nos. 172-74), the WAHS Defendants (Docket Nos. 177, 178), and Humane Animal Rescue (Docket Nos. 185, 186), along with Harr's briefs in opposition to the Humane Defendants' motions (Docket Nos. 202-04), and the replies filed by the WAHS Defendants (Docket No. 205) and the HWA Defendants (Docket No. 206). Additionally – and somewhat confusingly – the parties have incorporated by reference certain previously filed briefs in support of their prior motions to dismiss the Amended Complaint. After careful consideration of the parties' arguments and for the following reasons, the Humane Defendants' motions will be granted, and Harr's claims against the Humane Defendants will be dismissed without prejudice.

---

[5]      At that time, the Court also issued a Memorandum Opinion and Order dismissing with prejudice another case filed by Harr, involving the same underlying facts as in this case but a different defendant (at Civil Action No. 21-1555).

## II. **BACKGROUND**

As the parties are well-acquainted with the factual background of this case, the Court will present an abbreviated version of the facts alleged in the SAC,[6] in the light most favorable to Harr, that are relevant to the Humane Defendants' motions.  In the SAC, Harr avers that, at the time of the events from which her claims arise, she was operating a non-profit animal shelter on the Washington County property, which she lawfully possessed and occupied.  (Docket No. 159, ¶¶ 51, 61, 268, 269).  After a tornado caused damage on that property, Harr alleges that she was in the process of moving the shelter to the Westmoreland County property, when agents of the Humane Defendants engaged in a surreptitious investigation in which they, in conjunction with the Pennsylvania State Police (including Defendant Trooper Sarah N. Teagarden and Defendant Trooper Samuel Jenesky), entered both properties and seized her animals and other items located therein.  (*Id.* ¶¶ 51, 61, 64, 77, 85-91, 162, 173, 174).

The Humane Defendants' conduct that is at issue here occurred during the execution of two warrants that, together, authorized the search of both the Washington and the Westmoreland County properties.[7]  The warrants were signed and sealed by magisterial district judges in each

---

[6]      Harr contends that this Court has subject matter jurisdiction over her constitutional claims, asserted pursuant to 42 U.S.C. § 1983, because they involve a federal question under 28 U.S.C. § 1331, and that the Court has supplemental jurisdiction over her state claims pursuant to 28 U.S.C. § 1367.  (Docket No. 159, ¶ 22).

[7]      In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Simpson v. Sessions*, Civ. Action No. 16-1334, 2017 WL 1910141, at *2 (E.D. Pa. May 10, 2017) (noting that "'judicial opinions and docket sheets are public records, of which this court may take judicial notice in deciding a motion to dismiss'" (quoting *Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017))).  As Harr's claims against the Humane Defendants are based on certain documents from her criminal case, the Court will take judicial notice of and consider those relevant documents in deciding the Humane Defendants' motions to dismiss this matter.

In responding to the Humane Defendants' motions to dismiss, Harr objects to the Court's consideration of those documents, arguing that the Court should not consider them, and alternatively that if it does, it should convert the motions to summary judgment motions and consider other evidence (including evidence that is not a matter of public record) as well.  The Court notes that its consideration of certain matters of public record upon which Harr's claims are based, here in evaluating the Humane Defendants' motions to dismiss Harr's claims in her SAC, is in

county on October 29, 2019.  (Docket Nos. 178-1 (the "Washington County warrant"), 178-2 (the "Westmoreland County warrant")).  The warrants specifically authorized the search of each property and the seizure of animals and other items on the properties.  (*Id.*).  A lengthy Affidavit of Probable Cause supported the warrants and identified the areas and properties to be searched and the types of evidence to be collected.  (*Id.*).  The warrants were executed the following day, on October 30, 2019, when over 200 neglected animals were seized, including cats, dogs, chickens, and rodents.  (Docket No. 118-6 at 3 (Court of Common Pleas of Washington County Order, dated Apr. 4, 2022)).[8]  Personnel from WAHS, HWA, and Humane Animal Rescue were present at the properties to assist in the search and seizure.  (Docket No. 159).

As a result of the execution of the warrants, animal cruelty/neglect charges were filed against Harr in the Court of Common Pleas for Washington County on October 30, 2019, at Docket No. CR-205-2020, and on June 11, 2020, at Docket No. CR-1186-2020 (hereinafter, the "criminal case").  (Docket No. 118-6 at 3).  On October 29, 2021, Harr commenced the instant federal action in this Court by filing a motion for leave to proceed *in forma pauperis*, which the Court granted, and Harr's Complaint was filed on November 2, 2021.  (Docket Nos. 1, 2, 5).

Via an Omnibus Pre-Trial Motion filed in the underlying criminal case, Harr raised challenges to the warrants for the Washington and Westmoreland County properties, and she specifically sought to suppress the evidence that was uncovered in both searches.  (Docket No. 118-7).  On April 4, 2022, after a hearing was conducted, Harr's Omnibus Pre-Trial Motion was denied by Washington Court of Common Pleas Judge Brandon P. Neuman.  (Docket No. 118-6).

---

accordance with Rule 12(b)(6), just as the Court's consideration of such documents was proper in previously evaluating whether to dismiss Harr's claims against the Humane Defendants in her Amended Complaint.

[8]    Certain documents, which are matters of public record upon which Harr's claims are based, are attached to other Defendants' prior motions to dismiss and briefs in support (which those parties have incorporated into their present motions to dismiss the SAC), and are cited to herein for ease of reference.

In analyzing why the denial of Harr's motion was appropriate, Judge Neuman specified in his Order that:

> The Criminal Complaint in case 205-2020 was filed on October 30, 2019 and the Defendant was charged with aggravated cruelty to animals – torture and aggravated cruelty to animals – causing serious bodily injury or death with both charges stemming from a failure to obtain veterinary care for Linus the cat. A second criminal complaint was filed on June 11, 2020 for case 1186-2020 which charged the Defendant with two counts of aggravated cruelty to animals and six counts of neglect of animals. These charges encompassed activities taking place at both the Donora property and Monessen property after the Westmoreland County District Attorney's Office consented to Washington County handling both matters on March 4, 2020.

*Id.* at 3.

A Joint Motion by Defendants to Stay All Civil Proceedings was filed in the present case, which motion was granted by the Court on April 21, 2022. (Docket Nos. 43, 51). Therein, the Court ordered that this case be stayed and administratively closed until the conclusion of the state court criminal proceedings against Harr. (Docket No. 51).

On September 9, 2022, in the criminal case, Harr pled nolo contendere (no contest) to two counts of Neglect of Animal, 18 Pa. Cons. Stat. Ann. § 5532(a)(1). (Docket No. 118-9 (Pleas of Nolo Contendere at Docket Nos. CR-205-2020 and CR-1186-2020)). As part of her plea agreement, Harr was sentenced to two years of probation, and as special conditions of her probation, she was prohibited during that time from possessing any type of animal or having contact with any of the animals seized. (Docket No. 118-8 (Order of Sentence, dated Sept. 9, 2022)).

On December 14, 2022, the stay in this case was lifted and the case was reopened, and Defendants in this case were ordered to respond to Harr's Complaint. (Docket No. 61). After a number of Defendants filed motions to dismiss the Complaint, Harr filed an Amended

Complaint.[9]  (Docket No. 92).  Defendants again filed several motions to dismiss, which, as explained above, the Court granted via a number of lengthy, detailed Memorandum Opinions and Orders.  Harr then filed her SAC.  (Docket No. 159).

In her SAC, Harr re-alleges the claims set forth in her Amended Complaint.  The SAC includes both constitutional claims under Section 1983 as well as state tort claims against the Humane Defendants, among other Defendants, including:

> Count I: "Constitutional Violations . . . as to the Westmoreland County Property," against all the Humane Defendants, alleges a violation of Harr's Fourth and Fourteenth Amendment rights by obtaining and executing the search warrant for the Westmoreland County property (a Section 1983 claim).

> Count II:  "Intrusion Upon Seclusion . . . as to the Westmoreland County Property," against all the Humane Defendants, alleges the intrusion upon the Westmoreland County property (a state law claim).

> Count III:  "Trespass . . . as to the Westmoreland County Property," against all the Humane Defendants, alleges entrance onto Harr's Westmoreland County property and that photos were taken (a state law claim).

> Count IV:  "42 USC 1983 Supervisory Liability against WAHS as to the Westmoreland County Property," alleges supervisory liability for failure to train and for having a policy that its officers may represent themselves to be statewide Humane Police Officers (a Section 1983 claim).

> Count V: "Conversion . . . as to the Westmoreland County Property," against the WAHS Defendants and the HWA Defendants, alleges that the memory chip from Harr's video recorder was taken (a state law claim).

> Count VI:  "Constitutional Violations . . . as to the Washington County Property," against all the Humane Defendants, alleges the violation of Harr's Fourth Amendment rights by searching her Washington County property (a Section 1983 claim).

> Count VII:  "Constitutional Violations for Deprivation of Property . . . and Conversion" against the HWA Defendants and the WAHS Defendants, alleges the violation of Harr's Fourth and Fourteenth Amendment rights by seizing

---

[9]    After the Court granted two motions for extensions of time, Harr filed an Amended Complaint (one day late) on March 29, 2023.  (Docket No. 91).  On April 6, 2023, without seeking leave of Court, Harr filed a Corrected Amended Complaint, which the Court (mindful of Harr's *pro se* status) treated as the operative complaint at that time.  (Docket No. 92).

and retaining certain items from her Washington County property (a Section 1983 and state law claim).

Count VIII: "Declaratory and Injunctive Relief Against HSUS," asks for the Court to declare that HWA engages in unconstitutional law enforcement functions by acting as Humane Police Officers, by "working with the WAHS to interfere with the corporate registration of Harr's non-profit organization by having their legal counsel routinely and repeatedly represent themselves to be Pennsylvania-wide animal police"; by continuing to hold "under the guise of being animal protection police, various property belong[ing] to Harr and organizations she controls"; and by engaging "in continued surveillance of Harr and her forthcoming business operations"; and requests an injunction regarding "such similar conduct" (a Section 1983 claim).

Count XI: "Conversion or Trespass to Chattels" against Proudfit and Officer Thomson, alleges that Proudfit and Officer Thomson deleted photographs and video from Harr's telephone (a state law claim).

Count XII: "42 USC 1983 Conspiracy" claims that all the Humane Defendants and other Defendants took collective action to violate Harr's Fourth, Fifth, and Fourteenth Amendment rights (a Section 1983 claim).

Count XV: "[Intentional] Infliction of Emotional Distress" claims that all the Humane Defendants, among other Defendants, left a chicken on Harr's property which could have perished (a state law claim).

(Docket No. 159). Harr seeks damages (including punitive damages), costs, attorney fees, injunctive relief, and any other relief that may be appropriate and just. (*Id.*).

As set forth, *supra*, the Humane Defendants, along with certain other Defendants, have once again filed motions to dismiss. Previously, the Court found that, as pled in the Amended Complaint, Harr's claims against the Humane Defendants alleging constitutional violations pursuant to Section 1983 (at Counts I, IV, VI, VII, and XII) were barred by application of the doctrine of collateral estoppel. Here again, the Humane Defendants argue that dismissal of these same claims is warranted because such claims, as pled in the SAC, are still barred by collateral estoppel. The Humane Defendants also restate, incorporating by reference their prior briefs,

arguments they previously made in moving to dismiss Harr's Amended Complaint.[10]
Additionally, the Humane Defendants argue that, if the Court dismisses the Section 1983 claims
against them, the Court should decline to exercise supplemental jurisdiction over the remaining
claims against them alleging violations of state law at Counts II, III, V, VII, XI, and XV. Officer
Thomson and Proudfit also argue that they are entitled to qualified immunity in this matter.
Furthermore, the HWA Defendants argue that the Court lacks subject matter jurisdiction to
address Harr's request for declaratory and injunctive relief at Count VIII. Harr filed her
responses opposing the Humane Defendants' motions, and the WAHS Defendants and the HWA
Defendants both filed replies. The matter is fully briefed and is now ripe for decision.

### III.  <u>STANDARD OF REVIEW</u>

#### A.  <u>Rule 12(b)(6)</u>

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil
Procedure, the factual allegations contained in the complaint must be accepted as true and must
be construed in the light most favorable to the plaintiff, and the court must "'determine whether,
under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips
v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings
Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,
563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain
statement of the claim showing that the pleader is entitled to relief," the complaint must "'give

---

[10]    The Court does not address herein all of the many arguments offered by the Humane Defendants in support
of their motions to dismiss, as it is not necessary to do so in order to grant their motions.

Nevertheless, to the extent the Humane Defendants incorporate by reference their previous briefs (filed in
support of motions to dismiss the Amended Complaint), those earlier briefs do not reference the present allegations
in the SAC (which are substantially changed from the Amended Complaint), and their present briefs do not comply
with the Court's Practices and Procedures regarding briefs in support of motions to dismiss, including permissible
page limits. The parties are advised that, going forward, they will not be permitted to incorporate portions of past
briefs into their filings, absent leave of Court.

the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).  Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  First, the Court notes the elements of a claim. *See id.* (citing *Iqbal*, 556 U.S. at 675).  Second, the Court eliminates conclusory allegations.  *See id.* (citing *Iqbal*, 556 U.S. at 679).  And finally, the Court assumes

the remaining well-pleaded facts are true and assesses "whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### B. <u>Rule 12(b)(1)</u>

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on account of the Court's "lack of subject-matter jurisdiction." "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007). Rule 12(b)(1) motions challenging jurisdiction are either facial or factual. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006). "A facial attack . . . is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court . . . ." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A facial attack asserts that a claim "is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Id.* at 358. A facial attack "can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint." *Id*. Conversely, a factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Constitution Party of Pa.*, 757 F.3d at 358).

Here, to the extent the HWA Defendants seek dismissal of Harr's request for declaratory and injunctive relief at Count VIII pursuant to Rule 12(b)(1), they make a facial challenge, arguing that the facts alleged do not show that Harr has standing to seek such relief. When

analyzing a facial attack on subject-matter jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Constitution Party of Pa.*, 757 F.3d at 358 (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)).

### C.  Qualified Immunity

The qualified immunity doctrine "shield[s] government officials performing discretionary functions . . . 'from liability [for] civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not a "mere defense to liability" but rather it is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It is thus important to "'resolv[e] immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). In considering a claim of qualified immunity, a court must determine both whether the plaintiff has shown a violation of a constitutional right, and whether the right was "clearly established" at the time of the alleged constitutional violation. *See id.* (discussing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

### D. *Pro Se* Pleadings

Although courts must generally construe *pro se* pleadings liberally pursuant to Rule 8(a)(2), courts are not required to accept legal conclusions disguised as statements of fact, unsupported conclusions, or unwarranted references.  *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (noting that allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers).  "[A] pro se complaint must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Wallace v. Fegan*, 455 F. App'x 137, 139 (3d Cir. 2011) (internal quotation marks and citation omitted).  Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "they cannot flout procedural rules – they must abide by the same rules that apply to all other litigants."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (internal citations omitted).

### IV.    DISCUSSION

As the Court previously explained in ruling on the motions to dismiss the Amended Complaint in this case, Harr brings her constitutional claims pursuant to 42 U.S.C. § 1983, which does not create any substantive rights, but rather provides a remedy for deprivations of rights created by the Constitution of the United States or federal law.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  Thus, "[t]o state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  Once again in the SAC – although her claims are still not entirely clear – Harr appears to assert that the Humane Defendants violated her rights under the Fourth, Fifth, and/or Fourteenth Amendments to the

Constitution, at Counts I, IV, VI, VII, VIII, and XII.  (Docket No. 159).  Harr also again alleges various claims against the Humane Defendants under the laws of the Commonwealth of Pennsylvania at Counts II, III, V, VII, XI, and XV.  (*Id.*).  As previously noted, Harr seeks both monetary and equitable relief.

### A.     <u>The Constitutional Claims Against the Humane Defendants and the Doctrine of Collateral Estoppel</u>

Harr's Section 1983 constitutional claims allege violations of her Fourth, Fifth, and Fourteenth Amendment rights related to what she describes as an unlawful search and seizure of her property and a denial of due process, all stemming from the Humane Defendants obtaining and executing the search warrants at issue for the Washington and Westmoreland County properties.  Although the claims, as alleged in the SAC, remain somewhat unclear, and although some of the Counts still appear to allege multiple claims, Counts I, VI, and VII again seemingly comprise Harr's primary constitutional claims, while Counts IV (supervisory liability of WAHS for the conduct at issue in the SAC), and XII (conspiracy by the Humane Defendants and other Defendants to act to deprive Harr of her constitutional rights) still appear to rely on and/or refer to the allegations of her primary constitutional claims.

### 1.     <u>The Claims in the SAC and the Proceedings in Harr's Criminal Case</u>

As in her Amended Complaint, in Count I of the SAC, which relates to the Westmoreland County warrant and which appears to contain her core claims, Harr alleges that the Humane Defendants (more specifically, the HWA Defendants and the WAHS Defendants) violated the Fourth Amendment by acting as humane police officers under color of law without authorization, engaging in actions "including conducting an unlawful criminal investigation, obtaining an illegal search warrant, seizing property, conducting an illegal search, pursuing unlawful criminal charges, and/or maliciously prosecuting the Plaintiff."  (Docket No. 159, ¶ 124).  Harr again also

avers that such conduct violated her Fourteenth Amendment due process rights, stating, "Specifically, a search warrant was issued by a judge after the HSUS and WAHS defendants collectively represented that Thomson was a statewide Humane Police Officer when he was not," and that the search and seizure at her Westmoreland County property and resulting prosecution occurred in violation of such rights. (*Id.* ¶ 125). As for Humane Animal Rescue, which had a more limited role in the events at issue, Harr claims that "the John Doe agents of Humane Animal Rescue were at the scene" and "assisted with the search" of the Westmoreland County property. (*Id.* ¶ 101).

In Count VI, which relates to the Washington County property, Harr again in the SAC alleges – largely similar to Count I, but in more general terms – that the Humane Defendants (here, specifically the HWA Defendants and the Humane Animal Rescue Defendants) violated the Fourth Amendment by acting as humane police officers under color of law without authorization, engaging in actions "including conducting an unlawful criminal investigation, entering the Washington County property, conducting a search, and seizing property." (Docket No. 159, ¶ 162). Harr also includes WAHS in a few supporting allegations in this Count.

In Count VII, brought against the HWA Defendants and the WAHS Defendants (but not the Humane Animal Rescue Defendants), Plaintiff again in the SAC appears to allege a taking of her property during the execution of the search warrants without due process under the Fourteenth Amendment, that the seizure of her property grossly exceeded the scope of the search warrants in contravention of her rights under the Fourth Amendment, and that such conduct also constituted conversion under Pennsylvania law. (Docket No. 159, ¶¶ 182, 183, 186).

At the core of Harr's SAC is her assertion that because the Humane Defendants (in various combinations) were not authorized to act under state law as they did, Harr was subjected

to an unreasonable search of her premises and an unreasonable seizure of her property under the Fourth Amendment, and that she also had her Fourteenth Amendment due process rights violated. Harr's claims appear to be based generally on her contention that, in obtaining the search warrant for the Westmoreland County property, Officer Thomson represented that he was a statewide humane police officer when he was actually a humane police officer registered in Washington County alone, and he was therefore not authorized to act as he did, and the resulting searches and seizures were improper. (Docket No. 159, ¶¶ 74, 125). Harr bases this underlying argument on Pennsylvania statutory law, citing 22 Pa. Cons. Stat. § 3708(a), which states in part, "An individual appointed as a humane society police officer in accordance with this chapter shall have power and authority to exercise the powers conferred under 18 Pa.C.S. Ch. 55 Subch. B (relating to cruelty to animals) in enforcement of animal cruelty laws only within the particular county whose court of common pleas issued the appointment." (*See* Docket No. 159, ¶ 23). Relatedly, Harr contends that the Westmoreland County District Attorney did not sign the Westmoreland County warrant, so the issuance of that warrant violated Pennsylvania statutory law providing that search warrant applications filed in connection with alleged cruelty to animals laws must have the approval of the district attorney in the county where the alleged offense occurred. (*See id.* ¶¶ 25, 83 (citing 22 Pa. Cons. Stat. § 3710)).

As discussed above, during her underlying criminal proceedings, Harr, who was fully represented by competent counsel, filed an Omnibus Pre-Trial Motion that sought, in part, suppression of all evidence obtained as a result of the searches of her Washington and Westmoreland County properties, based on arguments similar to those set forth in the SAC. Specifically, Harr challenged the validity of the search warrants themselves, as well as the authority of the Humane Defendants to secure and execute those warrants.

In the criminal case, upon consideration of Harr's argument that the Humane Defendants did not have authority to secure the Westmoreland County search warrant because Officer Thomson was not a registered humane police officer in that county, Judge Neuman disagreed based on the fact that Officer Thomson was not the only affiant on that warrant. (Docket No. 118-6 at 4-5). Rather, a Pennsylvania State Police officer, Defendant Trooper Teagarden, was a co-affiant on the warrant along with Officer Thomson. (*See id.*). As Judge Neuman explained:

> Corporal Teagarden served as a co-affiant on the search warrant obtained for Westmoreland County and therefore this Court finds there was no overreach of jurisdiction by coaffiant Officer [Thomson] and coaffiant Corporal Teagarden and the evidence will not be suppressed on this basis.

(*Id.*).

As to Harr's argument in the criminal case that the Westmoreland County warrant was illegal because it was not signed by Westmoreland County's District Attorney, Judge Neuman also ruled against Harr. (Docket No. 118-6 at 5). Specifically, Judge Neuman found:

> Therefore, because the Westmoreland County search warrant included Corporal Teagarden as a co-affiant, there was no requirement that approval from the Westmoreland County District Attorney's office be sought. For this reason, this Court finds that the warrant was not illegally issued and the evidence will not be suppressed on this basis.

(*Id.*).

Furthermore, in the criminal case, with regard to Harr's contention that the scope of the search warrants was exceeded during their execution, Judge Neuman also disagreed, holding:

> This Court finds that the description of the items to be seized in the affidavit of probable cause, when construed with the search warrant, provided a sufficiently particular description. Therefore, the warrants are not illegal general warrants and the scope was not exceeded during the execution of the warrant. Therefore, the evidence will not be suppressed on this basis.

(Docket No. 118-6 at 7).

Judge Neuman summarized his rulings on the search warrants as follows:

> This Court finds no merit to the Defendant's arguments that a) the Westmoreland County investigation was invalidated by the [WAHS] Police Officer overreaching his jurisdiction, b) the Westmoreland County search warrants were illegally issued, and c) the scope of the search warrants was exceeded and therefore they were illegal general warrants for the reasons listed above and therefore DENIES Defendant's Motion to Suppress.

(Docket No. 118-6 at 7).

After the Omnibus Pre-Trial Motion was denied, Harr pled nolo contendere to charges against her, she was sentenced to probation, and she did not file an appeal.

In the present Section 1983 action, Harr appears to seek relitigation of the constitutionality of these same search warrants and the accompanying search and seizure, alleging a violation of her rights under the Fourth and Fourteenth Amendments. In moving to dismiss the SAC, the Humane Defendants argue (as they previously asserted in moving to dismiss the Amended Complaint) that Harr already argued, albeit unsuccessfully, the merits of her constitutional claims during her criminal proceedings, and that, since Harr had the opportunity to litigate those issues in her prior state court proceeding, she is barred from making those same arguments again – this time, in federal court under the guise of a Section 1983 action. Thus, here again, the Humane Defendants contend that these constitutional claims are barred by the doctrine of collateral estoppel. Although the Court previously dismissed Harr's constitutional claims against the Humane Defendants in the Amended Complaint on the basis of collateral estoppel, Harr was given leave to amend her complaint further. The Humane Defendants assert that the new allegations in the SAC fail to cure the legal grounds for dismissal previously identified by the Court.

### 2. Whether Collateral Estoppel Applies to the Constitutional Claims Alleged in the SAC

As the Court previously explained in ruling on the Humane Defendants' motions to dismiss the Amended Complaint, Federal courts traditionally have adhered to the related doctrines of res judicata and collateral estoppel:

> Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Cromwell v. County of Sac*, 94 U.S. 351, 352 [(1876)]. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Montana v. United States*, 440 U.S. 147, 153 [(1979)]).

*Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Collateral estoppel, like res judicata, thus "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Id.* As the United States Supreme Court held in *Allen v. McCurry,* collateral estoppel applies in Section 1983 claims. *See id.* at 105. Accordingly, defendants in a Section 1983 suit are permitted to raise the issue of collateral estoppel where plaintiffs attempt "to relitigate in federal court issues decided against them in state criminal proceedings." *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986) (citing *Allen*, 449 U.S. at 101)).

Additionally, the Third Circuit held in *James v. Heritage Valley Fed. Credit Union* that "[c]ollateral estoppel, or issue preclusion, prevents a party who litigated an issue previously from rearguing that particular issue even if the other litigants were not party to the earlier proceeding." 197 F. App'x 102, 105 (3d Cir. 2006). Thus, "[a] finding in a prior criminal proceeding may estop an individual from litigating the same issue in a subsequent civil proceeding." *Id.* The Third Circuit explained that the plaintiff in *James* had "raised and argued in the trial court that

the evidence should be suppressed because the searches and seizures at issue presently [in the civil case] were constitutionally invalid," but that the "trial court ruled on the challenges and found no Fourth Amendment violations." *Id.* at 106. The Third Circuit noted in *James* that the plaintiff there was a party to the criminal proceeding, was represented by counsel, and had a full and fair opportunity to raise the issue on appeal, but failed to receive relief. *See id.* The Third Circuit therefore held that the plaintiff was precluded from reasserting his alleged violations of the Fourth Amendment that had been previously rejected in his criminal case. *See id.*

Other district courts in the Third Circuit have also held that collateral estoppel bars Section 1983 Fourth Amendment claims based on the propriety of a search that was challenged in underlying criminal proceedings. *See Aursby v. Auxter*, Civ. Action No. 19-4849, 2021 WL 3885122, at *8 (E.D. Pa. Aug. 30, 2021) (finding that collateral estopped barred the plaintiff's Section 1983 action, where the plaintiff had previously challenged the constitutionality of the search through a suppression motion in the underlying criminal matter); *Briggs v. Godby*, Civ. Action No. 08-5239, 2009 WL 4756390, at *6 (E.D. Pa. Dec. 10, 2009) (dismissing the plaintiff's Fourth Amendment claim based on the propriety of a warrantless search, because the plaintiff had unsuccessfully challenged the search through an omnibus pre-trial motion to suppress in the underlying criminal case); *see also Ingram v. Lupas*, 353 F. App'x 674, 676-77 (3d Cir. 2009) (holding that the district court correctly concluded that the plaintiff was barred from re-litigating the issue in question, since the denial of a suppression motion followed by a conviction is a final judgment for purposes of collateral estoppel).

In assessing whether a plaintiff is estopped from relitigating issues in a Section 1983 action, the Court "must give the state court's judgment the same preclusive effect as would be given the judgment by a court of that state." *James*, 197 F. App'x at 105. Here, under

Pennsylvania law, the doctrine of collateral estoppel applies when the following four elements are met:

> (1) An issue decided in a prior action is identical to one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Jones v. United Parcel Serv.*, 214 F.3d 402, 405 (3d Cir. 2000) (quoting *Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998)).

In moving to dismiss the constitutional claims in the SAC, the Humane Defendants again argue that all the requirements for application of the doctrine of collateral estoppel are met here, and that Harr is precluded from relitigating her constitutional claims in this Section 1983 action since: (1) the issues litigated in connection with the suppression motion (the Omnibus Pre-Trial Motion) are identical to the issues Harr raises here; (2) the denial of a suppression motion followed by a nolo contendere plea is a final judgment for collateral purposes; (3) Harr was the defendant in the criminal case; and (4) Harr had a full and fair opportunity to litigate the issues in the criminal case. The Humane Defendants contend that the new allegations in the SAC, which focus on attempting to challenge the finality of the state court matter, do not affect the Court's prior analysis of this issue, and the constitutional claims against them should be dismissed, this time with prejudice, on the basis of collateral estoppel.

In response, Harr argues that she has, in fact, added new allegations in the SAC that, if taken as true, clearly show that her constitutional claims against the Humane Defendants are not barred by collateral estoppel. The new allegations in the SAC, relevant to the claims against the Humane Defendants and to the issue of collateral estoppel, are as follows:

29. None of the charges originating in the Magisterial District Court resulted in any form of adjudication, final appealable judgment, or conviction.

30. The Washington County District Attorney took over the case and in the Court of Common Pleas of Washington County filed an information under two separate docket numbers.

31. At case CP-63-CR-0001186-2020, the District Attorney's Information filed on August 19, 2020, alleged various felony and misdemeanor Class 2 charges.

32. At Case CP-63-CR-0000205-2020, the District Attorney's Information filed on February 19, 2020, alleged various felony and misdemeanor Class 2 charges.

\* \* \*

34. None of the charges contained in the Information resulted in an adjudication, guilty verdict, or final appealable judgment.

35. Thereafter, the Commonwealth of Pennsylvania and Plaintiff entered into negotiations where Plaintiff asserted her innocence to all of the charges in question.

36. However, Plaintiff advised of a situation that occurred in Washington County that could be interpreted to be a violation of 18 Pa.C.S. § 5532 §§ A1 Neglect of Animals - Sustenance/Water and offered to enter a plea to that separate non-charged situation.

37. This separate situation did not occur or take place in Westmoreland County and the District Attorney understood that.

38. The District Attorney agreed that all of the charges existing against Plaintiff would be dropped via judgment of non-pros.

39. The District Attorney agreed that Plaintiff could enter a no contest plea to two wholly separate charges that occurred in Washington County, Pennsylvania, not Westmoreland County, Pennsylvania.

40. The District Attorney recognized that the factual basis for the new charges had nothing to do with the prior charges and involved a short period of time when water was scarce.

41. A written plea offer was created where Plaintiff waived certain rights as to the wholly new charges that would be read out.

42. In addition, Plaintiff and the District Attorney agreed in writing that it would be Washington County-based occurrences.

* * *

52. Based on that statement, the Court accepted the plea to the new charges that contained no factual basis, allowed the non-pros of the prior charges, and the hearing concluded.

* * *

56. There existed no ability to appeal to seek any clarification of the charges where the Commonwealth did not dispute at any time during the hearing that it withdrew all of the prior charges.

* * *

82. Based on information and belief, Teagarden merely initialed the warrant not because she had independent knowledge of the facts, but because WAHS asked her to for the sole purpose of creating jurisdiction when it did not exist.

(Docket No. 159).

Based on these additional allegations, Harr appears to challenge the second element necessary for the doctrine of collateral estoppel to apply, *i.e.*, whether the denial of her suppression motion, followed by her nolo contendere plea, is a final judgment for collateral estoppel purposes.  According to Harr's new allegations in the SAC, the charges that were pending when she filed her Omnibus Pre-Trial Motion were dropped entirely, and she then pled nolo contendere to new separate charges that did not relate to the search warrants at issue in the suppression motion.  Thus, Harr argues that collateral estoppel does not apply here because the ruling on the suppression motion is not, on its own, a final judgment, and the final judgment in her criminal case was based on her plea of nolo contendere to charges that were unrelated to the search warrants at issue and the denial of her suppression motion.

In reply, the Humane Defendants contend that the order that estops Harr from pursuing her claims here is Judge Neuman's Order denying Harr's Omnibus Pre-Trial Moton, which

included a request to suppress evidence based on the validity of the search warrants upon which Harr bases her claims – not her later plea discussions and proceedings. The Humane Defendants contend that the central issue in this case is whether Judge Neuman's ruling on Harr's suppression motion in her criminal case is "sufficiently firm to be accorded conclusive effect." *In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997) (internal quotation marks and citation omitted). In support, the Humane Defendants simply state that the Court has already answered this question in the affirmative in its previous Memorandum Opinion on Defendants' Motion to Dismiss the Amended Complaint (Docket No. 153 at 21), and the new allegations Harr has included in the SAC do not change that outcome.

With regard to whether there was a "final judgment on the merits" in Harr's criminal case, the Court previously noted that a criminal court's ruling on a suppression motion is considered to be sufficiently final for purposes of collateral estoppel, as that doctrine "'does not require the entry of a judgment, final in the sense of being appealable.'" *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 210 (3d Cir. 2001) (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)). The Third Circuit further noted that, for collateral estoppel purposes, a final judgment "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Id.* (internal quotation marks and citation omitted). Here, however, the criminal court denied Harr's suppression motion, but – according to the SAC – the related charges were subsequently dismissed. Then, Harr entered a plea of nolo contendere to other later-added unrelated charges, she was sentenced to probation, and she did not file an appeal. While the Third Circuit has held that a plea of nolo contendere "'has the same legal consequences as a plea of guilty and results in a conviction,'" Harr's nolo plea – according to the allegations in the SAC – was unrelated to the search warrants and the suppression motion

24

at issue. *Massey v. Pfeifer*, Civ. Action No. 1:17-cv-173, 2019 WL 3046131, at *9 (W.D. Pa. May 21, 2019) (quoting *United States v. Adedoyin*, 369 F.3d 337, 344 (3d Cir. 2004) (additional internal quotation marks and citation omitted)).

Therefore, based on the factual averments in the SAC, the Court finds the criminal court's ruling on the suppression motion alone <u>not</u> to be sufficiently firm to be accorded conclusive effect, and the Court finds that the "final judgment on the merits" element of collateral estoppel is <u>not</u> met here. *Cf. Berry v. Chaves*, No. Civ.A. 02-893, 2003 WL 21497557, at *2 (E.D. Pa. June 30, 2003) (stating that "denial of a suppression motion followed by a conviction is a final judgment for collateral estoppel purposes"); *see also Aursby*, 2021 WL 3885122, at *8 (holding that where the plaintiff's suppression motion was denied and he was subsequently convicted, he was collaterally estopped from relitigating the same constitutional challenges via a Section 1983 action).[11]  Accordingly, Harr's constitutional claims against the Humane Defendants in the SAC are not barred by the doctrine of collateral estoppel.

### B.    <u>Constitutional Claims Against HWA and Humane Animal Rescue:  Whether the SAC Adequately Avers that They Are State Actors</u>

In addition to renewing their collateral estoppel argument, the Humane Defendants each incorporate by reference arguments they previously raised in moving to dismiss Harr's Amended Complaint.  Thus, both the HWA Defendants and Humane Animal Rescue re-raise their contention that Harr does not adequately allege that they are state actors, as is required to state a claim under Section 1983, while the WAHS Defendants do not dispute that the SAC sufficiently alleges state action on their part.

---

[11]    Harr also remarks without much elaboration, as to the fourth element required for the application of collateral estoppel, that the state court decision cannot be relied upon because she did not have a "full and fair opportunity to litigate the issue."  (Docket No. 196 at 11).  The Court notes that the record in the criminal case is not conclusive on this point, but the Humane Defendants do not dispute Harr's version of the events in their briefing. The Humane Defendants instead simply argue that Judge Neuman's ruling was sufficiently firm, Harr entered a nolo plea, and she did not appeal.

As indicated, *supra*, in order to state a claim under Section 1983, a plaintiff must allege that a right secured by the Constitution of the United States was violated, and that the deprivation was committed by a person acting "under color of state law." The United States Supreme Court has established multiple approaches for determining whether "'seemingly private behavior may be fairly treated as that of the State itself.'" *Mort v. Lawrence Cnty. Child. & Youth Servs.*, No. 2:10cv1438, 2011 WL 3862641, at *13 (W.D. Pa. Aug. 31, 2011) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (additional internal quotation marks and citation omitted). Regardless of which approach is undertaken, the Third Circuit directs this Court to "focus on the fact-intensive nature of the state action inquiry, mindful of its central purpose: to 'assure that constitutional standards are invoked when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains.'" *Crissman v. Dover Downs Entertainment Inc.*, 289 F.3d 231, 239 (3d Cir. 2002) (quoting *Brentwood*, 531 U.S. at 295 (emphasis in original)) (additional internal quotation marks and citation omitted); *see Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 171 (3d Cir. 2004) (citing *Brentwood*, 531 U.S. at 295). As the Supreme Court explained:

> What is fairly attributable [to the State] is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.

*Brentwood*, 531 U.S. at 295-96.

Thus, while there is no "simple line" between state and private actors, the Third Circuit has "explained that '[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Leshko v.*

*Servis*, 423 F.3d 337, 339 (3d Cir. 2005)).  The Third Circuit has outlined three tests derived

from Supreme Court jurisprudence that may be used in determining whether state action exists,

all of which the parties address in their briefing:

> (1) "whether the private entity has exercised powers that are traditionally the
> exclusive prerogative of the state" [here, the "public function test"];
> (2) "whether the private party has acted with the help of or in concert with
> state officials" [here, the "close nexus test"]; and (3) whether "the [s]tate has
> so far insinuated itself into a position of interdependence with the acting party
> that it must be recognized as a joint participant in the challenged activity"
> [here, the "symbiotic relationship test"]. *Mark* [*v. Borough of Hatboro*, 51
> F.3d 1137, 1142 (3d Cir. 1995)] (other alterations, internal quotation marks
> and citations omitted).

*Kach*, 589 F.3d at 646.  It is unclear, however, "whether any of these various approaches are

different in operation or simply expressive of the 'different ways of characterizing the

necessarily fact-bound inquiry' this Court is required to undertake."  *Harrington v. UPMC*, Civ.

Action No. 20-497, 2022 WL 1606422, at *6 n.2 (May 20, 2022) (quoting *Mort*, 2011 WL

3862641, at *14 n.4 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982))).

The HWA Defendants and Humane Animal Rescue argue that the SAC fails to allege that

they are state actors taking into consideration *any* of these tests.  Harr, on the other hand, argues

that the Humane Defendants generally "obviously" are all state actors under *all three* of the tests

listed in *Kach*.  (Docket Nos. 202 at 11, 203 at 12).  However, Harr does not cite to any specific

allegations in the SAC to show how the various Humane Defendants meet any particular test.

Moreover, for the most part, Harr does not differentiate among the three groups of Humane

Defendants or among the individually named Humane Defendants in her pleading.  Instead,

throughout the SAC, she loosely refers to the Humane Defendants together as a group, even

though the HWA Defendants – and, even more so, the Humane Animal Rescue Defendants – are

alleged to have played a less prominent role than the WAHS Defendants in the events at issue.

Notably, Officer Thomson of WAHS was the humane police officer who signed the affidavit of probable cause and indicated that WAHS had requested that HWA and Humane Animal Rescue provide law enforcement with "aid and assistance in executing the warrant," which would involve "the potential seizure of more than a hundred animals in need of immediate and urgent intervention." (Docket No. 118-4 at 12). Nevertheless, in arguing that she adequately alleges state action, Harr merely notes her allegations that the WAHS Defendants and the HWA Defendants drafted the search warrant that contained the false claim that Officer Thomson was a "statewide" humane police officer; and that WAHS, HWA, and Humane Animal Rescue conducted searches and seized the items.

Upon consideration of the allegations in the SAC, the Court agrees with the HWA Defendants that Harr does not adequately allege that HWA is a state actor in order to allege plausible constitutional claims against it under Section 1983.[12] Among the many allegations in the SAC, Harr concedes that HWA is not registered anywhere in Pennsylvania to act as humane police officers (pursuant to 22 Pa. Cons. Stat. § 3708). (Docket No. 159, ¶ 8). Instead, she alleges that the HWA Defendants performed investigations and acted "as" humane police officers. (*Id.* ¶ 60). Then, more specifically, Harr alleges that the HWA Defendants took part in writing the search warrant applications along with the WAHS Defendants (although she alleges that Defendant Trooper Teagarden and Officer Thomson signed them), that Defendant Trooper Teagarden allowed the HWA Defendants to enter the Westmoreland property, and that the HWA Defendants assisted in the search and seizure of animals and property in executing the search warrant. (*Id.* ¶¶ 64, 66, 73, 87, 92, 94).

---

[12]     The Court notes that to the extent Harr is alleging constitutional claims against the individual defendants in their official capacities as agents or employees of the humane organizations, such claims are brought against the organizations themselves. *See* discussion, *infra*.

However, the Court finds that the mere assistance that the HWA Defendants offered to law enforcement – the Defendant Troopers and the WAHS Defendants – as averred in the SAC is not sufficient, considering the tests set forth above, to allege that HWA is a state actor under Section 1983. As to whether the HWA Defendants' alleged actions satisfy the public function test, while HWA is alleged to have helped write the search warrant application and to have assisted in searching and seizing animals and property during the execution of the search warrant, providing assistance with such activities is not exclusively the prerogative of the state. Here, the Court notes – in light of the fact-based inquiry required here – that the HWA Defendants were not humane police officers and did not solely execute the search warrant; rather, they assisted in the search warrant's execution by the Defendant Troopers and Officer Thomson,[13] as such assistance was noted to be necessary (in order to seize the large number of animals in need of intervention) in the affidavit of probable cause attached to the search warrant. (Docket No. 118-4 at 12). "Assisting police officers does not automatically transform a person or entity into a state actor." *Hughes v. Meadows*, Civ. Action No. 1:17-CV-28, 2017 WL 3083257, at *3 (M.D. Ala. July 19, 2017) (citing *Proffitt v. Ridgway*, 279 F.3d 503, 508 (7th Cir. 2002) (noting that, although the line is vague, assisting the police does not turn the performer into that officer)); *see also Cruz v. Donnelly*, 727 F.2d 79, 81-82 (3d Cir. 1984) (explaining that, in considering whether the state "has established a formal procedure or working relationship that drapes private actors with the power of the state," the "absence of any allegation of an agreement subordinating the policemen's judgment" to that of the defendants foreclosed liability under Section 1983). *Cf. Madero v. Luffey*, No. 22-1705, 2024 WL 3066038, at *2 (3d Cir. June 20,

---

[13]    Although Harr also alleges that the HWA Defendants participated in drafting the search warrant containing the "brazenly false claim" that Officer Thomson was a "statewide" humane police officer, and that "joining with [Officer] Thomson's acting under color of law as a humane police officer exceeding his boundaries" *made* them "acting under color of law" (Docket No. 202 at 11-12), such conclusory statements without factual support are not entitled to deference by the Court and do not show that the HWA Defendants' actions satisfy any of the state action tests. *See Iqbal*, 556 U.S. at 678.

2024) (finding that a private humane animal organization was alleged to be a state actor when it served under contract as an evidence-retention facility for the city); *Allen v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 488 F. Supp. 2d 450 (M.D. Pa. 2007) (finding that two humane police officers were adequately alleged to be state actors where they alone wrote and executed a search warrant involving the seizure of animals; and that, to the extent one officer was not properly registered, she was alleged to be acting as an employee/agent of an organization statutorily authorized to enforce Pennsylvania's cruelty-to-animals violations).

As to whether the alleged actions of the HWA Defendants satisfy the close nexus test, the SAC does not aver facts showing that "the State has exercised coercive power or provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (internal quotation marks and citation omitted). Notably, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Id.* Here, the allegations of the HWA Defendants' actions in the SAC, together with the warrants' language, does not show that the state was "putting its weight" behind the HWA Defendants in such warrants. Rather, the affidavits of probable cause attached to the search warrants specifically noted that WAHS had requested that HWA provide law enforcement "aid and assistance in executing the warrant," given the "scope and scale" of the operation and the inability of a "lone humane police officer" to safely carry out such an operation. (Docket No. 118-4 at 12). Although the warrants note that civilian participation in the seizure was to be done "under the supervision and direction of law enforcement," the HWA Defendants' participation as alleged in the SAC is not sufficient to convert the HWA Defendants' actions to state action under the close nexus test. *See, e.g., Hughes*, 2017 WL 3083257, at *2-3 (finding that the plaintiff had not alleged adequate facts for

the defendant Humane Society to satisfy any test that would make a private entity a state actor, where officer defendants had permitted, requested and/or directed the Humane Society to participate in the seizure and to take actual possession of a plaintiff's dogs, and where such organization did not execute the search warrant itself but merely participated in the execution of the warrant by police officer defendants).

Finally, as to whether the HWA Defendants' alleged conduct satisfies the symbiotic relationship test, such relationship requires a close association of mutual benefit between the state and the private actor. *See Benn*, 371 F.3d at 173. The Court finds that the SAC does not allege facts showing such interdependence between HWA and the state here.

Similarly, the Court agrees with Humane Animal Rescue that the SAC does not adequately allege that it is a state actor either. Humane Animal Rescue notes that Harr has not alleged that its actions in running a non-profit animal welfare organization constitute state action, and that Harr only alleges that Humane Animal Rescue was "at the scene" and "assisted with the search" on her Westmoreland County property. (Docket No. 159, ¶ 101). Although Harr argues that Humane Animal Rescue "obviously" qualifies as a state actor under the tests cited, *supra*, the Court finds that, for the same reasons set forth above with regard to the HWA Defendants, mere presence at the scene and assisting law enforcement with the search and seizure as alleged here is not sufficient to plead state action by Humane Animal Rescue in this matter.

The Court therefore finds that the SAC does not adequately allege that the HWA Defendants and the Humane Animal Rescue Defendants were state actors, and that Harr has failed to state constitutional claims against them.

C. **Constitutional Claims Against the WAHS Defendants**

As previously noted, unlike the HWA Defendants and Humane Animal Rescue, the WAHS Defendants do not argue that the SAC fails to allege adequately that they were state actors. However, like the other Humane Defendants, in addition to renewing their collateral estoppel argument, the WAHS Defendants also reference their previous briefing to incorporate into their present motion other arguments they previously raised in moving to dismiss Harr's Amended Complaint.

First, the WAHS Defendants note that Harr appears to be suing WAHS directly and under a theory of *respondeat superior*, alleging that various individually named WAHS Defendants acted in their respective capacities as agents and employees of WAHS (citing Counts I & IV). The WAHS Defendants note that the Third Circuit "has consistently rejected *respondeat superior* liability and established *Monell* as the only basis for organizational liability under § 1983." *Kauffman v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 766 F. Supp. 2d 555, 562 (E.D. Pa. 2011) (referring to *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In response, Harr states that it is improbable that "*respondeat superior* defenses" can be raised by a private entity, and that "the private entity defendants were operating through a policy of the organizations and via the directive of the executives of said organizations allowing the case to move forward to discovery." (Docket No. 204 at 14-15).

As the Court previously indicated, private party actors are not liable under Section 1983, and to maintain an action under Section 1983, a plaintiff must allege that she was deprived of a federal constitutional or statutory right by a state actor. *See Leshko*, 423 F.3d at 339. Although in briefing Harr continues, at times, to label the Humane Defendants private entities, she also notes that "WAHS is equal to a municipal corporation with police officer employees" (Docket

No. 159, ¶ 149), and she appears to argue that she has adequately pled constitutional violations by the Humane Defendants (which includes WAHS) caused by a policy or custom in accordance with *Monell.  See* 436 U.S. at 694; *Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019).  Again, WAHS – whose agent/employee, Officer Thomson, was allegedly a humane police officer registered with the State – does not argue that it is not a state actor, so the Court presumes here that the SAC adequately alleges that WAHS is a state actor.

In sum, to state plausible constitutional claims against WAHS, Harr must allege more than violations of her rights caused by a WAHS agent or employee; she must also sufficiently plead that those alleged violations are attributable to WAHS.  A defendant "'cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.'"  *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 197-98 (3d Cir. 2018) (quoting *Monell*, 436 U.S. at 691)).  Rather, the alleged violation of rights must have been caused by actions taken pursuant to a "policy" or "custom," as set forth in *Monell*.  *See id.* at 198; *see also Monell*, 436 U.S. at 690-94.  Thus, liability is imposed "when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)).

Notably, a "policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'"  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)).  An employee's acts may be deemed the result of his employer's policy in three situations:  (1) where the individual acted pursuant to a

formal policy or standard operating procedure long accepted within the organization; (2) where the individual himself has final policy-making authority such that his conduct represents official policy; or (3) where a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the entity, or by ratifying the conduct after it has occurred. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006); *Jones v. Pittston Area Sch. Dist.*, No. 3:18-CV-1919, 2021 WL 3673840, at *5 (M.D. Pa. Aug. 18, 2021); *Wright v. City of Phila.*, 229 F. Supp. 3d 322, 335-36 (E.D. Pa. 2017). Whereas, a "custom" involves practices of officials "'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). Furthermore, "[a] *Monell* claim cannot survive a motion to dismiss where it merely repeats the necessary *Monell* elements and contains no factual support as to a policy, custom, or policymaker responsible for the alleged constitutional violation." *Smith v. Washington Area Humane Soc.*, Civ. Action No. 2:19-cv-1672, 2020 WL 6364762, at *3 (W.D. Pa. Oct. 29, 2020) (citing *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014)).

Here, the WAHS Defendants argue that Harr does not adequately allege a policy or custom to support a *Monell* claim against them, noting that Harr does not plead any facts to establish that they engaged in a "pattern of constitutional violations," as would commonly be necessary to substantiate such civil rights claims. The WAHS Defendants contend that Harr instead sets forth a number of bald assertions, without any specific factual support, that there was a policy, custom, or practice that existed and caused a constitutional violation. For instance, the WAHS Defendants point out Harr's allegation that they "acted with deliberate indifference to the consequences and they maintained a policy, practice, and custom by acting in excess of their law

enforcement authority . . . which directly cause[d] the constitutional harm outlined above." (Docket No. 159, ¶ 130). Such allegation is indeed general and is simply a threadbare recital of elements of a *Monell* claim.

In response to the WAHS Defendants' argument, Harr asserts that the SAC also alleges with more particularity that: WAHS's failure to train its humane police officers that they were not statewide officers and had no authority to act in a county where they were not registered amounts to a deliberate indifference to her rights and caused her injuries; and WAHS had a policy of allowing its officers to obtain warrants without the approval of the District Attorney in Westmoreland County, and by concealing or not revealing to the District Attorney and the judge that they had no authorization in Westmoreland County, also caused her constitutional injuries. Additionally, Harr asks that the Court grant her permission to amend her allegations once more.

Based on review of the SAC and Harr's response to WAHS's argument, it is not clear whether she is attempting to establish a *Monell* claim against WAHS based on an alleged official policy that was violative of her rights (as she cites a WAHS policy of allowing its officers to obtain warrants without the approval of the District Attorney in Westmoreland County), or based on a custom or practice (as she cites the WAHS humane officers concealing or not revealing to the District Attorney and the judge that they had no authorization in Westmoreland County, and WAHS failing to train its humane police officers that they are not statewide officers). To the extent Harr is alleging a policy of WAHS, based on averments in the SAC it is not clear whether Harr is alleging: (1) that Officer Thomson and/or others acted pursuant to a formal policy or standard operating procedure long accepted within WAHS; (2) that Officer Thomson and/or others had final policy-making authority such that their conduct represented official WAHS policy; or (3) that a final policy-maker within WAHS rendered Officer Thomson's (or others')

conduct official for liability purposes by having delegated to them authority to act or speak for the entity, or by ratifying the conduct after it occurred. *See Hill v. Borough of Kutztown*, 455 F.3d at 245. To the extent that Harr is alleging a custom of WAHS, as the WAHS Defendants point out, the SAC's allegations do not include additional factual support that such practices were sufficiently widespread as to be ascribed to WAHS policymakers. *See, e.g., Wright*, 229 F. Supp. 3d at 336-37 (noting that "Mr. Wright's Complaint sets forth at least eight separate instances in the years immediately before and after the investigation into Mr. Wright in which officers from the Philadelphia Police Department, including some of the same officers named in this case, engaged in the type of misconduct that is alleged to have occurred here."). Instead, the averments in the SAC cited by Harr simply re-state the actions allegedly taken by Officer Thomson as "policies" of WAHS, and remark that such policies violated her rights.

Therefore, upon consideration of such averments, the Court concludes that the SAC fails to assert a plausible *Monell* claim against WAHS.[14] Accordingly, the Court finds that Harr's threadbare *Monell* allegations as to WAHS are insufficient under *Iqbal*, and Harr's constitutional claims against WAHS will therefore be dismissed without prejudice.

### D.    Constitutional Claims Against Individuals Named as Humane Defendants

As to the constitutional claims against the individuals named as Humane Defendants, the allegations in the SAC regarding such individuals also remain somewhat unclear, as do the parties' arguments regarding dismissal of those claims. Upon review of the SAC, Harr appears to indicate that some of these individuals are being sued either in their individual capacities or in their official capacities, while as to other individuals, there is no indication in the SAC as to the capacity in which they are being sued. Also, other that re-raising collateral estoppel, the Humane

---

[14]    Additionally, even if the Court were to find that the SAC does adequately allege that the HWA Defendants and/or the Humane Animal Rescue Defendants are state actors, Harr similarly has not asserted legally tenable *Monell* claims against either of these Defendants.

Defendants do not make additional specific arguments in their briefs in support of their motions to dismiss the SAC.  Instead, as noted, *supra*, they simply incorporate by reference their previous briefs, in full or in part, that were filed in support of their motions to dismiss the AC.  Those earlier briefs, however, do not reference the present allegations in the SAC (which are substantially changed from the AC), nor do the present briefs thereby comply with the Court's Practices and Procedures regarding briefs in support of motions to dismiss (including permissible page limits).  Harr, too, is not without fault in filing appropriate responses to the present motions to dismiss.  Despite the Court ordering her to respond separately to the various Defendants' motions to dismiss, she filed separate responses that respond broadly to the Humane Defendants' motions collectively, but such general responses do not directly address all of the arguments raised by each Humane Defendant specifically – including with regard to her claims against the individuals named as Humane Defendants.

In light of both the plaintiff's and the defendants' briefing shortcomings, as well as the overall lack of clarity in the SAC regarding Harr's claims against the individuals named as Humane Defendants – and since the Court is going to permit further amendment of the complaint – at this juncture the Court considers the constitutional claims against the individual Humane Defendants as being raised in those individuals' official capacities.  As such, those claims are redundant of the claims lodged against the various Humane Defendants of which each individual Defendant is an agent or employee, and the Court will dismiss those claims for the reasons set forth, *supra*, again without prejudice.  *See, e.g., Foglesong v. Somerset Cnty.*, Civ. Action No. 3:12-CV-77, 2013 WL 795064, at *9-10 (Mar. 4, 2013) (explaining that a Section 1983 official capacity claim asserted against an individually named defendant, where such a claim is also asserted against the entity of which the individual defendant is an agent, are redundant and may

be dismissed as they unnecessarily clutter a case).  <u>In her next amended complaint, if she chooses</u> <u>to file one, Harr is instructed to clarify, as to each claim alleged, the capacity in which each</u> <u>named Defendant is being sued, supported by specific allegations regarding each named</u> <u>Defendant.</u>

**E.    <u>Whether the Court Lacks Jurisdiction to Grant Declaratory and/or</u>** **<u>Injunctive Relief</u>**

The Court previously dismissed Count VIII of the Amended Complaint, which sought declaratory or injunctive relief against HWA, for lack of subject-matter jurisdiction, since Harr did not allege facts to suggest that she would suffer injury in the future absent the requested relief, nor did she allege that the conduct of which she complained was presently ongoing. (Docket No. 153 at 25).  The Court further noted that, although Harr alleged that she planned to create a new animal shelter in Westmoreland County beginning in January 2025, such allegation alone did not aver facts to suggest that HWA obtaining and executing a search warrant for the referenced shelter is imminent in the future.  (*Id.*).

In Count VIII of the SAC, Harr includes several new allegations, including the following:

> 194. Defendant HSUS has been working with the WAHS to interfere with the corporate registration of Harr's non-profit organization by having their legal counsel routinely and repeatedly represent themselves to be Pennsylvania-wide animal police.

> 195. Defendant HSUS has and continues to hold, purportedly under the guise of being animal protection police, various property belong[ing] to Harr and organizations she controls.

> 196. There exist various controversies and ancillary matters between the parties that require an adjudication, once and for all, as to whether the HSUS may act as a law enforcement agency in Pennsylvania without any form of registration, whether it may go into the private property of persons, whether it may seize and take items, or possess items taken, under the guise of assisting animal rights organizations when it is not a registered animal protection agency.

197. The HSUS has engaged in continued surveillance of Harr and her forthcoming business operations.

(Docket No. 159).

Again at Count VIII of the SAC, Harr asks the Court to declare that HWA engages in unconstitutional law enforcement functions by acting as humane police officers without complying with state statutory requirements, when it:

(1) Participates in the drafting of search warrants; (2) Has its agents enter private property when executing or assisting other animal rights organizations execute a search warrant; (3) Invites news media to enter the private property of persons; and (4) Video records the private property of persons without their authorization and places it on social media in an effort to obtain donations or for other publicity purposes.

(Docket No. 159 at 30-31). Harr also asks the Court to "enjoin all such similar conduct." (*Id.* at 31).

In response to the SAC, the HWA Defendants assert that the allegations added by Harr do not cure the deficiencies previously identified by the Court. The HWA Defendants therefore again argue that Harr has no standing to seek the declaration and injunction requested in Count VIII since she has not alleged facts to suggest that she would suffer injury in the future, so that claim should again be dismissed.

"Standing is a jurisdictional matter," and without Article III standing, a federal court lacks "subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (internal quotation marks and citation omitted). In order to satisfy the standing and "case or controversy" requirements of Article III, "a party seeking a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Blakeney v. Marsico*, 340 F. App'x 778, 780 (3d Cir. 2009) (internal quotation marks and citation omitted). Additionally, "[p]ast

exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Upon review of the additional allegations in the SAC, the Court agrees with the Humane Defendants that Harr does not allege facts to suggest that she will suffer injury in the future absent the requested declaratory and injunctive relief, nor does she adequately allege ongoing problematic conduct. More specifically, she does not allege facts to substantiate her boilerplate, conclusory statement that HWA has been working with WAHS to interfere with her corporate registration process. She also does not identify any specific property of hers that HWA currently possesses, nor does she allege any facts to substantiate her conclusory allegation that HWA has engaged in continued surveillance of her. Additionally, she has not identified the "various controversies and ancillary matters" that she alleges exist "between the parties." Thus, the boilerplate allegations, unsupported by specific facts, added by Harr at Count VIII do not cure the deficiencies previously identified by the Court.

Therefore, the Court finds that Harr lacks standing to seek the requested declaratory and injunctive relief and there is no Article III case or controversy. As the Court lacks subject matter jurisdiction to address Harr's request for declaratory and injunctive relief, Count VIII of the SAC will, once again, be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

### F.    Whether to Permit Further Amendment

For the reasons set forth, *supra*, the Humane Defendants' motions to dismiss the SAC will be granted, and Harr's claims against the Humane Defendants at Counts I, IV, VI, VII, and XII will be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and her claim at Count VIII will be dismissed pursuant to Rule 12(b)(1) for lack of

subject-matter jurisdiction. Because the Court does not find that permitting Harr another opportunity to amend her claims would be futile, the Court will provide her with one final opportunity to amend her claims. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). Therefore, Harr's claims at these Counts will be dismissed without prejudice.

G.    **State Law Claims**

In her SAC, like in her previous complaints, Harr again alleges state law claims against the Humane Defendants for intrusion upon seclusion, trespass, conversion and/or trespass to chattels, and intentional infliction of emotional distress. (Docket No. 159). As the Court previously explained in granting the Humane Defendants' motions to dismiss the Amended Complaint, even if the SAC contained sufficient allegations to state claims for such torts under Pennsylvania law (regarding which the Court expresses no opinion), the Court could only consider these claims under its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. However, 28 U.S.C. § 1367(c) provides that district courts "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." Furthermore, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

Upon consideration of the SAC, the Court finds that there is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction over Harr's state law claims.

Accordingly, in this instance, the Court will decline to exercise supplemental jurisdiction over Harr's state law claims at Counts II, III, V, VII (to the extent it alleges conversion), XI, and XV of the SAC.

**V.    <u>CONCLUSION</u>**

For the reasons stated, the Humane Defendants' motions to dismiss Harr's SAC are granted.   Harr's Section 1983 claims alleging constitutional violations against the Humane Defendants at Counts I, IV, VI, VII, and XII of the SAC will be dismissed without prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.   Harr's request for declaratory and injunctive relief at Count VIII of the SAC will be dismissed without prejudice pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.   Furthermore, the Court will decline to exercise supplemental jurisdiction over Harr's state law claims at Counts II, III, V, VII (to the extent it alleges conversion), XI, and XV of the SAC.

An appropriate Order follows.


Dated:  September 30, 2025                             <u>*s/ W. Scott Hardy*</u>
                                                       W. Scott Hardy
                                                       United States District Judge


cc/ecf: Christie Harr (via U.S. Mail)
           All counsel of record