**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTIE HARR, | ) | Civil Action No: 2:21-cv-1560 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Honorable W. Scott Hardy |
| | ) | |
| WASHINGTON AREA HUMANE SOCIETY, ET AL., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**HWA DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**

## I. INTRODUCTION

After three prior attempts to state viable causes of action against the various named defendants in her pleadings, Plaintiff Christie Harr ("Harr") has put before this Court her Third Amended Complaint ("TAC"). This is her "final opportunity" to shore up the legal shortcomings of her constitutional claims. Dkt.No.220 at 41 (mem. op.). But the facts contained within the TAC as well as other relevant documents on which this Court may permissibly rely show that Harr has failed to overcome the twin barriers of estoppel and the need to demonstrate state action. Beyond this, she has failed to sufficiently state plausible constitutional claims upon which relief can be granted, nor has she identified claims against HWA Defendants in their individual capacities. Therefore, Harr's TAC should be dismissed with prejudice.

## II. FACTUAL BACKGROUND

### A. From the Seizure of Over 200 Neglected Animals in 2019 to the Dismissal of Harr's First Amended Complaint in 2024

The scenario underlying the TAC is well known to this Court. In 2019, search warrants were approved by magisterial district judges in Washington and Westmoreland counties in

Pennsylvania for the search and seizure of animals (and other evidence) at Harr's properties, which were situated in both counties. Dkt.No.220 at 4-5. These warrants were executed and "over 200 neglected animals were seized," which ultimately led to criminal charges against Harr in the Court of Common Pleas for Washington County in two criminal cases: 205-2020 and 1186-2020. *Id*. These cases were later consolidated. In 2022, they were resolved by Harr's pleas of no contest to misdemeanor charges and the imposition of a probationary sentence. *Id*. at 6. The "Humane Defendants" – the Washington Area Human Society, Humane World for Animals, Inc. (formerly the Humane Society of the United States), and Humane Animal Rescue, as well as agents and employees of all three groups – were all allegedly involved to some extent in the process leading up the issuance of the warrants and the collection of the animals during the execution of the warrants. *Id*. at 2-6.

In 2021, Harr sued the Humane Defendants and others, asserting various constitutional claims under 42 U.S.C. § 1983 and state tort claims. She later amended the Complaint in 2023, but, as to the claims against the Humane Defendants, this Court dismissed it on the basis of collateral estoppel. Dkt.No.153 at 13-23 (mem.op.). Specifically, through this civil action, Harr was seeking to relitigate the constitutionality of the search warrants, which she previously had the opportunity to litigate before the trial court through an omnibus motion in her consolidated criminal actions that was unsuccessful. *Id*. at 23 ("Harr is therefore estopped from relitigating her arguments that the search warrants and their execution were unconstitutional, as those issues have been judicially determined in the criminal case in state court and she cannot now assert claims based on those same arguments via a Section 1983 action in federal court."). This Court, however, granted Harr leave to amend.

B. This Court Dismisses Harr's Second Amended Complaint in 2025, Finding That New Allegations Overcame Estoppel but That She Failed to Identify State Action

Harr's Second Amended Complaint, Dkt.No.159 ("SAC"), was largely the same, but contained some new averments that this Court found critical. "According to Harr's new allegations . . . the charges that were pending when she filed her Omnibus Pre-Trial Motion were dropped entirely, and she then pled nolo contendre to new separate charges that did not relate to the search warrants at issue in the suppression motion." Dkt.No.220 at 23 (discussing SAC). On the basis that Harr may have pleaded no contest to charges completely "unrelated to the search warrants and the suppression motion at issue," this Court declined to apply collateral estoppel to the constitutional claims. *Id*. at 24-25.

Instead, this Court dismissed the constitutional claims as to the HWA Defendants on the basis that Harr had failed to identify the necessary "state action" to sustain a claim under Section 1983 under any of the possible tests promulgated by the Supreme Court. *Id*. at 25-28. In particular, the Court noted that Harr "concedes that HWA is not registered anywhere in Pennsylvania to act as humane police officers," *id*. at 28, and found that the "mere assistance that the HWA Defendants offered to law enforcement" is not sufficient to establish them as a state actor. *Id*. at 29 (citing cases). Additionally, the SAC did not allege facts to satisfy any of the standards to demonstrate state action, such as the close nexus test or the symbiotic relationship test. *Id*. at 29-31 (citing cases).

C. Harr Files the Third Amended Complaint in 2026

Harr's newest complaint expands the SAC with 29 new pages. *See* Dkt.No.254. The claim for declaratory relief against HWA has been dropped and new substantive counts have been inserted into the middle of the TAC. *See* Exhibit A (demonstrative table summarizing the various counts of the TAC as well as organizational changes from the SAC).

It is worth noting, however, that the initial section setting forth the factual background remains materially unchanged; indeed, as it relates to the recitation of the criminal proceedings, the averments are virtually identical save for the insertion of two new paragraphs. *Compare* SAC ¶ 39 (discussing plea to "wholly separate charges") *with* TAC ¶ 41 (same); SAC ¶ 53 ("no adjudication occurred as to Westmoreland County conduct") *with* TAC ¶ 55 (same). The new averments added to the various constitutional claims will be discussed *supra*.

## III. Legal Standard

A complaint may be properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) where, as here, it does not allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

*Twombly* and its progeny require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp*., 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id*. (quoting *Iqbal*, 556 U.S.

at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quoting *Iqbal*, 556 U.S. at 679). The Court should "construe truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id*. at 791.

In deciding a motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick,* 502 F.3d 263, 268 (3d Cir. 2007). Courts in the Third Circuit may take judicial notice of dockets or other court opinions at the motion to dismiss stage. *See Hadesty v. Rush Twp. Police Dep't*, 2016 WL 1039063, at *5 (M.D. Pa. Mar. 15, 2016) (citing *In re Congoleum Corp*., 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court proceedings insofar as they are relevant.")). In addition, this Court may utilize facts outside of the Complaint if they are contained within documents that are integral to the Complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993).

Here, Harr has made explicit reference to her criminal proceedings – in particular, the plea and sentencing hearing – so the HWA has attached the relevant documents reflecting those proceedings to its Motion to Dismiss. *See* **Exhibit B** (opinion denying omnibus motion); **Exhibit C** (transcript of plea hearing); **Exhibit D** (order of sentence).

## IV. ARGUMENT

### A. Harr's claims related to the securing and execution of the Westmoreland County search warrant and the execution of the Washington County search warrant are barred by collateral estoppel.

Under Pennsylvania law, collateral estoppel applies when the following are met: (1) the issue decided in the prior action is identical to the one presented in the present action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is

asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Jones v. United Parcel Serv*., 214 F.3d 402, 405 (3d Cir. 2000). Here, there is no dispute that Harr was the defendant in the prior criminal action. Further, there is no dispute that the arguments she makes in the TAC regarding the validity of the search warrants are nearly identical to those previously litigated in her omnibus motion. *See* Dkt.No.220 at 16 (noting that Harr sought "suppression of all evidence . . . based on arguments similar to those set forth in the SAC").

The primary question now before this court goes to the second prong: final judgment on the merits. In ruling on the First Amended Complaint, this Court previously found that collateral estoppel applied to bar Harr's arguments as to the search and seizure of her property. Dkt.No.153 at 22 ("the Court finds that Harr had a full and fair opportunity to litigate the issues raised in her suppression motion in the criminal case"). But in the SAC, Harr added several new facts for the proposition that she pleaded nolo contendre to "wholly separate charges" and argued that these "separate charges" were unrelated to the search warrants. Dkt.No.220 at 23 (mem. op.) (summarizing argument). This Court accepted that proposition, reasoning that the apparent lack of relationship between the warrants and ultimate charges called into question whether the suppression ruling was "sufficiently firm" to have a preclusive effect. *Id*. at 23-24 (citing cases).

The filing of the Third Amended Complaint gives an opportunity to revisit this conclusion. It is undisputed that the informations filed against Harr in her consolidated criminal cases alleged "various felony and misdemeanor charges" related to the alleged abuse or neglect of animals, and

that these related to conduct in both Washington and Westmoreland Counties. TAC ¶¶ 33-35.[1] These charges are all part of the same "criminal episode." Ex.B at 7; *see also* Ex.B at 2 ("These charges encompassed activities taking place at both the Donora property and the Monessen property[.]"). Harr asserts that she pleaded no contest to neglect of animals based on new, unrelated facts, such that the original charges ceased to exist. *Id.* ¶ 41 ("wholly separate"), ¶ 43 ("wholly new"), ¶ 54 (discussing non-pros of the "prior charges"). But the TAC is immediately at odds with itself, as Harr concedes that the original informations were "amended" to remove the felony charges and state the neglect misdemeanors. *Id.* ¶¶ 46-47. The relevant documents show a further contradiction. The plea transcript demonstrates that Count I of the information at 205-2020 was amended from felony cruelty to misdemeanor neglect. Ex.C at 2-3. Meanwhile, "at Docket No. 1186-2020, the Defendant will be pleading No Contest to Count 3, Neglect of Animals[.]" Ex.C at 3. No change or amendment to the 1186-2020 information was noted; thus, Harr pleaded guilty to Count 3 ***as it was originally charged***, while the remaining charges in both informations were nolle prossed. *See generally* Ex.C; *see also* Ex.D at 1-2. *Compare with* Ex.B at 2 (noting that original charges included misdemeanor animal neglect).

Accordingly, it cannot be said as a factual matter that the charges are "wholly new." Whilst many of the "prior charges" were dropped, Harr pleaded no contest to one original charge and one amended charge. This makes sense tracing the path of the criminal case: one "criminal episode" led to two warrants, which led to two (ultimately consolidated) informations. These in turn led to Harr's ultimately unsuccessful omnibus motion, and when that was unsuccessful, plea bargaining followed which resulted in the disposition above. The plain language of Exhibits B, C, and D

[1] The ruling on the suppression motion describes the charges thusly: in 205-2020, Harr was charged with two counts of aggravated cruelty to animals. In 1186-2020, Harr was charged with two counts of aggravated cruelty of animals and six counts of neglect of animals. Ex.B at 2.

confirm the continuity of events as part of the same charges in the same cases, and Harr's contradictory allegations of unrelatedness should not be afforded any weight. *See, e.g., Riley v. Miller*, No. 21-01647, 2025 WL 3515256, at *8 (M.D. Pa. Dec. 8, 2025) ("An undisputedly authentic document attached as an exhibit to a motion to dismiss by a defendant may be the basis to grant the motion to dismiss if the contents of the document contradict the plaintiff's allegations.") (citation omitted).

Additionally, as a matter of law, Harr's efforts to marry the preclusive effect of the suppression hearing on the previously-argued constitutional issues to the exact charges in her plea are unavailing. The is so because the dimensions of collateral estoppel are different depending upon what aspect of the prior proceedings the proponent is trying to block. As the Third Circuit noted in, Pennsylvania law distinguishes an effort to use collateral estoppel where the operative fact is a ***conviction*** versus where the operative fact is the ***plea***. *Smith v. Susquehanna Univ.*, 701 F. App'x 147, 150 (3d Cir. 2017) (discussing *United States v. Poellnitz*, 372 F.3d 562, 569 (3d Cir. 2004) (distinguishing "evidence of the fact of conviction as opposed to evidence of the commission of the underlying crime")). Here, Harr's nolo plea cannot be used as evidence of the commission of any underlying crimes because she did not admit to any. *Poellnitz*, 372 F.3d at 569.

But that is no problem, as Harr's nolo plea is only necessary insofar as it establishes the existence of a conviction. *See Ingram v. Lupas*, 353 F. App'x 674, 677 (3d Cir. 2009) ("the denial of a suppression motion followed by a conviction is a final judgment for collateral estoppel purposes"); *see also Brewer v. Hopple*, No. 15-0942, 2015 WL 3754548, at *7 (M.D. Pa. June 16, 2015) (similar); *accord Jackson v. Logan*, No. 02-1355, 2005 WL 8259731, at *6 (W.D. Pa. Nov. 9, 2005) ("The second prong requires that there was a final judgment on the merits. This court finds this prong met as well. Judge Manning denied the suppression motion from the bench at the

suppression hearing. Plaintiff, thereafter, entered a guilty plea and was sentenced."). Here, Harr's nolo contendre plea was just such a conviction: as the Third Circuit has explained, the "acceptance of [a] nolo plea and [the] subsequent conviction rendered the denial of the suppression motion a final judgment entitled to preclusive effect." *Smith*, 701 F. App'x at 150-151. To exactly which charge Harr pleaded to is essentially irrelevant: it is the fact that she was convicted ***at all*** which is the operative fact for present estoppel purposes. *Id*. at 150-51 & n.4. *See also Serrano-Munoz v. Rogers*, No. 18-4983, 2021 WL 4288582, at *5 (E.D. Pa. Sept. 21, 2021) (Where a civil plaintiff had pleaded guilty and "the criminal trial court issued a final judgment on the merits of" his Fourth Amendment claims, "this satisfies the second element for collateral estoppel.") (internal quotation omitted).

Thus, because HWA only seeks to estop Harr from relitigating the constitutional issues and not the facts of the crimes underlying her plea, the above-cited cases show that no factual relationship or categorical match between the original charges and the ultimate charges are necessary. This makes sense, because plea bargaining as a general matter often results in material changes to charging documents to reflect the parties' stipulations as to the factual circumstances and consideration of lesser-included offenses. Likely for this reason, research reveals no authority that the second element of collateral estoppel requires a specific finding of a relationship between the contents of a plea in the context of estopping Harr's instant constitutional claims related to her prior suppression arguments.[2] To hold otherwise would mean that criminal defendants who plead

[2] This result may be different if Harr was pressing a claim related to sufficiency of the evidence of the charges that were ultimately dismissed. In *Thomas v. Stanek*, No. 14-1415, 2015 WL 757574 (W.D. Pa. Feb. 23, 2015), the Honorable Judge McVerry held that collateral estoppel would not apply where "[t]he issue of sufficiency of the evidence to charge Plaintiff with homicide was mooted by Plaintiff's acquittal" on that particular charge, even if she was later found guilty of drug paraphernalia charges. *Id*. at *7. But Harr's instant civil claims are not related to evidence sufficiency. Moreover, as discussed above, Harr pleaded to one amended charge and one original

to charged offenses as-is are vulnerable to estoppel as to constitutional claims, but those who obtain a bargain that modifies the charging instrument are not. That would be an arbitrary result.

Indeed, no requirement of such a rule appears in other authorities previously relied on by this Court for its ruling on the SAC. In *Berry v. Chaves*, No. 02-893, 2003 WL 21497557, at *2 (E.D. Pa. June 30, 2003) and *Aursby v. Auxter*, No. 19-4849, 2021 WL 3885122, at *8 (E.D. Pa. Aug. 30, 2021), the specifics of the ultimate charges of conviction (after trial) were not considered in the estoppel analysis. Meanwhile, in *Massey v. Pfeifer*, No. 17-173, 2019 WL 3046131, at *9 (W.D. Pa. May 21, 2019), *report and recommendation adopted*, 2019 WL 3037493 (W.D. Pa. July 11, 2019), *aff'd as modified*, 804 F. App'x 113 (3d Cir. 2020), a defendant's nolo contendre plea to some but not all charges conclusively established probable cause for the purposes of a false imprisonment/false arrest claim. Nothing in *Massey* upsets the straightforward formula of *Smith*, and in any event would appear to support the use of collateral estoppel in these circumstances. 701 F. App'x at 150-151. This comports with the Third Circuit's decision in *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 210 (3d Cir. 2001), wherein it rejected an "unduly rigid" formulation of finality and instead embraced a more "pliant" view of when a decision has sufficient firmness to be considered final. *Id*. at 209-210 (citations and quotations omitted). Here, the trial court ruled against Harr on her omnibus motion and she was later convicted after her nolo contendre plea. As the above cases indicate, these two facts alone give the trial court's decision conclusive effect and nothing more is required.

The fourth element of collateral estoppel is satisfied as well. In the TAC, Harr alleges that after her plea, Harr purportedly had "no ability" to appeal the results of the suppression hearing,

---

charge of animal neglect. Exs. C, D. Thus, it is not possible to say that the pretrial proceedings were fully "mooted" by the disposition of Harr's criminal case.

stripping it of preclusive effect. *Id.* ¶ 57. But this allegation misses the mark. It is true that where a criminal defendant is completely acquitted of all charges, that would effectively moot the denial of suppression and thereby negate the fourth element of collateral estoppel. *E.g., Glover v. Hunsicker*, 604 F. Supp. 665, 666 (E.D. Pa. 1985); *Gass v. Murphy*, No. 11-1584, 2013 WL 5488712, at *15 (M.D. Pa. Sept. 30, 2013) (quoting with approval Restatement (Second) of Judgments § 28(1) cmt. a (1982) ("If review is unavailable because the party who lost on the issue obtained a judgment in his favor, the general rule of [collateral estoppel] is inapplicable by its own terms.")). *See also Murphy v. Andrews*, 465 F. Supp. 511, 514-16 (E.D. Pa. 1979) (where a defendant was fully acquitted on murder charge, "there was "nothing whatever to gain by appealing" a suppression ruling, so the suppression order at issue amounted to a "mere procedural step" with "no effect beyond the criminal case").

Here, while Harr's plea bargain can certainly be described as favorable to the extent it reduced her exposure to greater penalties, it cannot be said that the court's judgment against Harr was in wholly in her favor. As the relevant transcript shows, the trial court discussed with Harr the penalties to be imposed on her as well her appellate rights, demonstrating an adverse judgment from which she theoretically stood to gain something from an appeal. *See* Ex.C. Research reveals no cases where a criminal defendant who pleads to at least some criminal charges has been afforded the benefits of the rule in *Hunsicker* which apply to fully acquitted defendants.

This dearth of cases makes sense based on the well-settled principle that while a convicted defendant ordinarily has the right to appeal an adverse result from a suppression hearing, *see Jones v. Saunders*, 422 F. Supp. 1054, 1055 (E.D. Pa. 1976), a defendant who knowingly, voluntarily, and intelligently pleads to criminal charges loses that right. *United States v. Porter*, 933 F.3d 226, 229 (3d Cir. 2019); *see also Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007) ("It is well

established that a criminal defendant's unconditional, knowing and voluntary plea of guilty waives all non-jurisdictional issues.") (citation omitted). Harr could have negotiated a conditional plea that would have preserved the right to appeal suppression issues but did not do so. *Porter*, 933 F.3d at 230. Thus, unlike acquitted defendants or defendants convicted after a trial, here the only thing standing in the way of Harr's ability to appeal was Harr's own choices: both to plead nolo contendre and to elect not to bargain for a conditional plea.

Accordingly, the suppression ruling in Harr's criminal case was "actually litigated," *Linnen v. Armainis*, 991 F.2d 1102, 1105 (3d Cir. 1993), and her plea and its attendant consequences plainly gave that ruling preclusive effect. *See Smith*, 701 F. App'x at 151. Therefore, the suppression ruling should be considered "sufficiently firm" for estoppel purposes, *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991), and Harr's various constitutional claims should be dismissed on that basis alone.

**B. Harr's Section 1983 claims are barred for failure to allege the HWA Defendants were state actors.**

To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and that the deprivation was committed by a "person acting under color of state law." *Harvey v. Plains Tp. Police Dept.*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). This Court's prior opinion explained that determining whether "the State is responsible for the specific conduct of which the plaintiff complains" is a highly fact-intensive inquiry. Dkt.No.220 at 26 (mem. op.) (quoting, inter alia, *Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231, 239 (3d Cir. 2002)). Several different tests derived from Supreme Court cases have been used to determine whether state action has occurred: the "public function test," the "close nexus test," and "the symbiotic relationship test." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). *See also* Dkt.No.220 at 27 (contemplating

whether these tests are truly different in operation or express different ways of the same fact inquiry) (citing cases).

The HWA Defendants previously argued, and this Court agreed, that Harr failed to adequately allege that HWA was a state actor under any of the tests. Dkt.No.220 at 28. This was for several reasons:

- Harr conceded that HWA is not registered in Pennsylvania to act as humane police officers under statute.
- Mere assistance offered by HWA to law enforcement – whether related to the searching and seizing of animals and property or writing the search warrant application – was not sufficient to demonstrate state action.
- The SAC did not aver facts showing that the State exercised coercive power over the HWA or provided significant encouragement simply by its participation in the search and seizure operation.
- There was no allegation of a symbiotic relationship – a close association of mutual benefit between the HWA and the State.

Dkt.No.220 at 27-31. To survive this motion to dismiss, then, the TAC needed to set out sufficient to overcome these deficiencies.

It did not. Count I of the TAC adds the alleged testimony of various WAHS and HWA agents regarding the involvement of HWA in the investigation and seizure of the animals. TAC ¶¶ 126-145. But nearly all of these allegations simply reinforce what was already known: that HWA allegedly planned, communicated, and assisted law enforcement with a large animal-related matter. Further, in Paragraph 140, the allegations indicate that HWA committed its own financial resources for the care of the animals, and not, as would be required to demonstrate state action,

receiving payment from the State for its services. Dkt.No.220 at 28-29 (distinguishing *Madero v. Luffey*, No. 22-1705, 2024 WL 3066038, at *2 (3d Cir. June 20, 2024), as amended, No. 22-1705, 2024 WL 4563257 (3d Cir. Oct. 24, 2024) (finding existence of state action based on existence of contract and receipt of monetary payments)).

One bolded statement in Paragraph 143 would seem to suggest that HWA "took over" the search at one point in service of the allegation that they were acting under color of state law. *See* TAC ¶ 153. However, in the full context of Paragraph 143, it is clear that the speaker is describing order-of-operations protocol: law enforcement cleared the property for safety before allowing the humane workers to enter and undertake the animal rescue. *Id.* ¶ 143. This fact thus comports entirely with the previously produced warrants, which note that civilian participation was subject to law enforcement oversight. Dkt.No.220 at 30 (discussing warrants). There is no factual support for the proposition that law enforcement ceded authority over the criminal investigation to the HWA Defendants after the initial sweep such that they became "clothed with the authority of state law." *See Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981).

Harr makes an effort to elevate HWA's conduct from mere participation by averring that HWA assumed complete control of her criminal proceedings. *See* TAC ¶ 152 ("HWA maintained ***all*** authority and decision making in the criminal case.") (emphasis added). But this averment is undercut by two things. First, elsewhere in the TAC, Harr avers that HWA put "pressure" on the prosecuting attorney, which it would not have needed to do if it had complete control. *See* TAC ¶ 159. Second, from a review of the available documents related to the criminal case, as well as Harr's own averments regarding her plea bargain with the district attorney, there is no factual support whatsoever for HWA's involvement in any capacity, much less complete control. *See generally* TAC ¶¶ 46-53; Exs. B, C, D. It is true that at this stage the allegations in the Complaint

must be construed in a light favorable to Harr; however, this Court is not required to draw unreasonable inferences from the facts presented. *Saterstad v. Derry Twp.*, No. 20-00765, 2021 WL 199375, at *3 (M.D. Pa. Jan. 20, 2021). Here, nothing has been presented that could support an inference that an animal welfare group had fully usurped the county government's criminal prosecution apparatus, somehow escaping judicial oversight in the process.

The TAC's Count IV, as before, re-alleges the same constitutional violations but with a theory of HWA's leadership's alleged failure to train and supervise its members. The only material difference is the allegation that it "is the custom and practice of HWA to participate in searches, execute search warrants, 'take of the scene [sic],' seize property, and conduct other unauthorized law enforcement activities in Pennsylvania where it is prohibited by law from doing so." TAC ¶ 183. But this allegation runs headlong into the same problems identified above: HWA is not an official law enforcement body in Pennsylvania, and its mere participation or assistance in a search and seizure operation is not enough to make it so. And the "'absence of any allegation of an agreement subordinating the policeman's judgment' to that of defendants foreclose[s] liability under Section 1983." *Cruz v. Donnelly*, 727 F.2d 79, 81-82 (3d Cir. 1984). Here, there is no allegation that law enforcement's authority was so circumscribed by agreement or otherwise.

It is noted that the allegations in Count IV – as well others – suffer from an additional defect insofar as they attempt to allege a constitutional injury caused by a policy or custom: a "*Monell* claim." *See Kauffman v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 766 F. Supp.2d. 555, 562 (E.D. Pa. 2011) (discussing *Monell v. Dept. of Soc. Servs*., 436 U.S. 658, 694 (1978)). This Court has explained that a *Monell* claim cannot be sustained by threadbare references to policies and customs and must instead be supported by additional factual support identifying the policy's relationship to the conduct alleged or the custom's status as "sufficiently widespread"

such that it could be "ascribed to . . . policymakers." Dkt.No.220 at 34-36 (citing cases). Thus, to the extent Harr relies on generalized allusions to policies and customs, *e.g.,* TAC ¶¶ 147-151, 183-84, 187, she has failed to sufficiently state a *Monell* claim.

The TAC's Count VI bears more or less the same flaws. It avers in conclusory fashion that HWA seized control of the scene of the search, the "criminal proceedings," and "direct[ed] the district attorney." TAC ¶ 197. This conclusory allegation without factual support is not entitled to deference by the Court, Dkt.No.220 at 29 n.13, especially as it has already been noted that – as to the search – the warrants at issue directed that law enforcement would supervise and direct all civilian participants. *Id*. at 30. But this Count takes the wind from its own sails by also averring that HWA had "no authority" and was "not entitled" to do any of the things alleged. *Id*. ¶¶ 197, 201. As this Court previously recognized, Harr needed to allege that the State was "putting its weight" behind the HWA, not merely that HWA took actions to which the State ultimately acquiesced. Dkt.No.220 at 30 (discussing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)); *accord Crooker v. Tessitore*, No. 20-1695, 2023 WL 8548847, at *6 (M.D. Pa. Dec. 11, 2023) ("Neither the complaint's factual allegations nor the preliminary hearing transcript on which the Complaint relies demonstrates that the State coerced, encouraged, or even weighed in on the decision[.]"). Thus, none of Count VI's new allegations move the needle.

Count VII, relating to the alleged constitutional violations for the deprivation of property, have not materially changed from how they were presented in the SAC, so these require no further consideration at this time. *Compare* TAC ¶¶ 207-221 *with* SAC ¶¶ 172-187. Count XIV, which is newly added to the TAC, is a nearly verbatim copy of Count VII. *Compare* TAC ¶¶ 207-221

with TAC ¶¶ 279-293.[3] Count XVIII repleads everything through the lens of an alleged conspiracy among HWA, state law enforcement, and others to explicitly violate Harr's rights. TAC ¶¶ 346-353. But again, these eight paragraphs merely rehash the exact same conclusory statements from their former iteration in the SAC. *See* SAC ¶¶ 243-250. *See also* Ex.A (noting reorganization of counts). With nothing new to consider, nothing in these counts establishes state action where they did not before.

Accordingly, Harr's Section 1983 claims against the HWA Defendants (Counts I, IV, VI, VII, XIV, and XVIII) all fail for lack of a plausible showing of state action, and should be dismissed with prejudice.

**C. Alternatively, the constitutional claims fail to sufficiently state a claim entitling Harr to relief.**

Harr bases the various constitutional claims in the TAC on allegations that the HWA Defendants violated her rights under the Fourth, Fifth, and/or Fourteenth Amendments to the Constitution. Assuming that her claims are not collaterally estopped and that the HWA Defendants are state actors, these claims still fail substantively.

*1. Fourth Amendment*

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. As the text indicates, the Fourth Amendment only prohibits "unreasonable" searches. *United States v. Katzin*, 769 F.3d 163, 169 (3d Cir. 2014); *Vernonia Sch.*

---

[3] As far as can be gleaned, Count VII extends to property in both Washington and Westmoreland Counties, and Count XIV appears to only reference Washington County.

*Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995) ("[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.'"). Similarly, a "seizure" must be unreasonable to impose § 1983 liability. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989).

Where, as was the case here, a search and seizure of a property was conducted via a warrant, the existence of that warrant issued by a neutral magistrate is the "clearest indication that the officers acted in an objectively reasonable manner." *Johnson v. Hitesman*, No. 25-01422, 2026 WL 1047093, at *11 (M.D. Pa. Apr. 17, 2026) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). This fact, however, is not entirely dispositive, and a plaintiff may still challenge the reasonableness of the warrant in one of two ways: (1) that it is facially deficient because it is so lacking in indicia of probable cause, or (2) "the officer soliciting the warrant provided materially false or incomplete information knowingly or with a reckless disregard for the truth." *Id*. (citing cases).

Here, setting aside that the search warrants at issue were determined to be valid by the trial court when it ruled upon Harr's omnibus motion, *see* Ex.B, any instant challenge to the warrants are contradicted by Harr's own admissions of fact. In the TAC, she repleads her statements made during the plea hearing: while not admitting guilt to any crime, she admitted, in relevant part, that there was sufficient evidence "to possibly convince a jury that the animals in question were neglected." TAC ¶ 53. She further stated that, for reasons apparently beyond her control, "the condition of the property was less than favorable" but she was, at the time of the search, "doing my very best to remedy this situation." *Id*. Thus, Harr has previously admitted (and does not now refute) that there was factual information available at the time of the execution of the warrants that could have been potentially viewed as animal neglect. These facts (and more) are reflected in the "lengthy Affidavit of Probable Cause" which supported the warrants, which were duly prepared

and executed by law enforcement. *See* Dkt.No.220 at 5 (mem. op.) (discussing warrants at Dkt.Nos.178-1 & 178-2). *See also* Ex.B at 3-4 (noting that Officer Teagarden was an affiant).

It is well-settled that probable cause for a search exists where there is a fair probability that evidence of a crime will be found in a particular place. *See Illinois v. Gates*, 462 U.S. 213, 238, (1983). Probable cause is a practical, common-sense standard, *id*., that requires only a chance of criminal activity and not an actual showing of it, so it presents a "relatively low bar" to clear. *Givens v. Wal-Mart Stores, Inc*., No. 22-2989, 2023 WL 7144628, at *2 (3d Cir. Oct. 31, 2023). Indeed, there are "very few situations" where a warrant is so lacking in probable cause such as to render it unreasonable. *United States v. Sarraga-Solana*, 263 F. App'x 227, 231 (3d Cir. 2008). Harr, in light of her own pleaded, on-the-record admissions about the "situation" of her own property and the animals within, cannot be heard now to say that the contents of the warrants seeking to search her properties were so devoid of facts to be objectively unreasonable.

For the same reason, it cannot be said that the contents of the affidavits – in regard to statements that one or more persons were statutory "humane police officers," *e.g.,* TAC ¶ 167 – were "materially" false; that is, if they were excised from the affidavit, what remained would not have shown probable cause. *E.g., Gower v. All But Furgotten Humane Rescue*, No. 18-953, 2019 WL 430505, at *5 (W.D. Pa. Feb. 4, 2019); *accord Vonville v. Pocono Mountain Reg'l Police*, No. 21-1603, 2022 WL 8287598, at *4 (M.D. Pa. June 21, 2022), *report and recommendation adopted*, 2022 WL 4553128 (M.D. Pa. Sept. 29, 2022). Any misstatements about the status of Officer Thomson, if excised, would not affect the veracity of the remainder of the warrant.

And to the extent Harr alleges that the warrant was overbroad, this Court has already stated that the warrants "identified the areas and properties to be searched and the types of evidence to be collected." Dkt.No.220 at 5. Thus, it plainly did not "vest the executing officers with unbridled

discretion to conduct an exploratory rummaging through [Harr's effects] in search of criminal evidence." *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982).

Accordingly, Harr has not alleged a plausible Fourth Amendment claim based on an unreasonable search and seizure of her property.

*2. Fifth Amendment*

As relevant here, the Fifth Amendment prohibits the taking of private property "for public use, without just compensation." U.S. Const. amend. V; *see also Newark Cab Ass'n v. City of Newark,* 901 F.3d 146, 151 (3d Cir. 2018) (discussing *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012)). Harr avers such a taking occurred related to property seized during the execution of the warrants. TAC ¶¶ 289-290. But "there can be no cognizable Fifth Amendment 'takings' claim when property is seized pursuant to a lawful search warrant. Property seized pursuant to the criminal laws is not a 'taking' justifying compensation." *McKenna v. Portman*, 538 F. App'x 221, 224 (3d Cir. 2013). Thus, to the extent that Harr's claim relies on allegations that the HWA Defendants were exercising the power of the State, their seizure of items pursuant to a valid warrant is not a Fifth Amendment taking. *Id*. at 224; *Zitter v. Petruccelli*, 744 F. App'x 90, 96 (3d Cir. 2018) (discussing seizure of oysters, boats, and boating equipment relating to violation of New Jersey law) ("Zitter lacks a viable Takings claim because Defendants acquired the property pursuant to a lawful search warrant.") (citing *Bennis v. Michigan*, 516 U.S. 442, 452 (1996)). Harr's claims relating to retention of property are discussed below.

*3. Fourteenth Amendment*

As relevant here, the Fourteenth Amendment's "due process clause" provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." However, it is

well-settled that in the context of a suit under § 1983, "when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate." *Hall v. Nisbit*, No. 21-2139, 2022 WL 910339, at *2 (3d Cir. Mar. 29, 2022) (quoting *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000)). Nearly all of the claims relate to her allegations of an unconstitutional search and seizure, and are thus appropriately considered under the Fourth Amendment, not a Fourteenth Amendment due process analysis. *Berg*, 219 F.3d at 268-69. *See also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). Thus, any effort by Harr to bring a standalone due process claim on Fourteenth Amendment concerns is not cognizable and should be dismissed.

Nor can Harr pursue a Fourteenth Amendment procedural due process claim based on the alleged retention of her property described above. *See Kauffman v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 766 F. Supp. 2d 555, 571 (E.D. Pa. 2011) (identifying that claim for return of property no longer needed for prosecution purposes falls under the Fourteenth Amendment). Pennsylvania has "an adequate post-deprivation remedy when police seize property pursuant to an investigation," *McKenna*, 538 F. App'x at 225 (citing Pa. R.Crim. P. 588(A)), but Harr has not alleged that she availed herself of the remedy as to all of the property she asserts is unreturned, nor has she alleged the remedy was unavailable to her. This forecloses a due process claim. *Kauffman*, 766 F. Supp. 2d at 571.

*4. Conspiracy*

Count XVIII of the TAC alleges a conspiracy among various defendants to deprive Harr of constitutional rights. But a claim of a constitutional conspiracy requires the plaintiff to set forth a specific factual basis to support it; bare assertions that defendants conspired against someone in the course of their arrest and prosecution are insufficient to state a claim. *See Cromwell v. Fichter*,

No. 22-3169, 2023 WL 3734969, at *1 (3d Cir. May 31, 2023); *Blank v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, No. 10-3222, 2010 WL 3927590, at *5 (E.D. Pa. Oct. 5, 2010), *aff'd*, 434 F. App'x 147 (3d Cir. 2011). That is precisely what Harr has done here. *E.g.*, TAC ¶ 348 ("All of the actions above were done in concert and with the knowledge of each other[.]"). Accordingly, Harr has failed to state a sufficient conspiracy claim.

**D. Harr has failed to identify specific constitutional claims against individual defendants.**

In this Court's memorandum opinion, Harr was instructed to "clarify, as to each claim alleged, the capacity in which each named Defendant is being sued, supported by specific allegations regarding each named defendant." Dkt.No.220 at 37-38. This was in service to the "well established practice in the Third Circuit to dismiss redundant § 1983 claims against public officers in their official capacities where a claim has also been made against the public entity that employs them." *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F.Supp. 3d 412, 419 (M.D. Pa. 2014) (internal quotations omitted).

In the opening paragraphs of the TAC, Harr identifies several defendants whom she seeks to sue in their individual capacities. *See* TAC ¶¶ 3-4, 12-17. Harr identifies the following individuals as being affiliated with HWA: Leana Stormont, Laura Koivula, Shalimar Oliver, and John Does 11-20. *Id.* ¶¶ 8-11. But none of these individuals are stated to be sued in an individual capacity. Indeed, Harr does not include any specific allegations or legal theories in Counts I, IV, VI, VII, XIV, or XVIII so as to establish individual constitutional liability against any of these named individuals. For this reason, it is believed that Harr has abandoned any claims against these defendants in their individual capacities in accordance with this Court's instruction.

To the extent that she has not abandoned them, she has failed to sufficiently state any such claims. All of the allegations against the HWA Defendants are made in the same way: Harr states

that HWA and its individual agents all performed the same acts and are all liable for those acts. *E.g.*, ¶¶ 161-167, 197-206, 218-220. But, as this Court noted, naming the entity and the agent in the same averments without distinguishing the two is the very redundancy that it seeks to avoid. Dkt.No.220 at 37 (citing *Foglesong v. Somerset Cnty.*, No. 12-77, 2013 WL 795064, at *9-10 (W.D. Pa. Mar. 4, 2013)). Accordingly, all of the claims against Leana Stormont, Laura Koivula, Shalimar Oliver, and John Does 11-20 should be dismissed.

**E. This Court should refuse to exercise supplemental jurisdiction over the state tort claims against the HWA Defendants.**

Because Harr's § 1983 claims against the HWA Defendants should be dismissed for the reasons set forth above, even if the Court determines that she has properly stated state tort claims against the HWA Defendants, this Court should refuse to exercise supplemental jurisdiction over these claims under 28 U.S.C. § 1367(c)(3). "[I]f it appears that the federal claim is subject to dismissal . . . then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976). As this Court has previously noted, Harr's prior complaints did not present any unique factors that would compel the exercise of supplemental jurisdiction. Dkt.No.220 at 4; *see also* Dkt.No.153 (same). Nothing in the TAC militates in favor of a different outcome. *See Brooks v. Kingsboro*, No. 25-545, 2026 WL 1165783, at *6 (M.D. Pa. Apr. 29, 2026) (citing cases). Accordingly, Counts II, II, V, and XXII against the HWA Defendants should be dismissed.[4]

[4] In the first motion to dismiss, the HWA Defendants levied a number of substantive arguments in favor of dismissing the state law tort claims. Owing to the length of this brief and the number of parties involved, and in the interest of judicial economy, rather than state those arguments now when they are likely to be moot, the HWA Defendants would request the opportunity to re-raise the same via supplemental briefing, of a length no greater than five pages, should the need arise.

## V. CONCLUSION

For the reasons set forth in this Brief, all claims against the HWA Defendants should be dismissed, with prejudice.

Respectfully Submitted,

ROBB LEONARD MULVIHILL LLP

Dated: June 30, 2026

*/s/ Bruce E. Rende*

Bruce E. Rende, Esquire
PA ID #52714
BNY Mellon Center
500 Grant Street, Suite 2300
Pittsburgh, PA 15219
P: (412) 281-5431
F: (412) 281-3711
Email: brende@rlmlawfirm.com