**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHRISTIE HARR,

Plaintiff,

v.

WASHINGTON AREA HUMANE SOCIETY, MARANDA COOMBS (JOHN DOE 1), BARB LYLE (JOHN DOE 2), CHELSEI FLEEGAL NEHILLA (JOHN DOE 3), TERESA SALAMONE EXECUTRIX OF THE ESTATE OF GLEN L. THOMSON, KELLY PROUDFIT, JOHN DOES 4-10 agents and employees of Washington Area Humane Society, HUMANE WORLD FOR ANIMALS, SHALIMAR OLIVER, LEANA STORMONT, LAURA KOIVULA, JOHN DOES 11-20 agents and Employees of the Humane World for Animals, STEVEN TOPRANI, BOROUGH OF DONORA, SAMUEL JENESKY, SARAH N. TEAGARDEN JOHN DOES 32-50 unknown law enforcement officers,

Defendants.

Case No. 2:21-cv-1560

*Honorable W. Scott Hardy*

**DONORA BOROUGH DEFENDANTS' BRIEF
IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**

AND NOW COME Defendants STEVEN TOPRANI and the BOROUGH OF DONORA (herein, "Borough Defendants"), by and through their attorneys, CHARLES H. SAUL, ESQUIRE, and MARGOLIS EDELSTEIN, and hereby submit their Brief in Support of their Motion to Dismiss Third Amended Complaint, as follows:

## I. INTRODUCTION

The original Complaint was filed on November 2, 2021, by Christie Harr, *pro se* (ECF Doc. 5). After a stay of this case pending a concurrent, related state court case and after Motions to Dismiss were filed by all the Defendants subsequent to the lifting of the stay, Plaintiff filed a corrected Amended

Complaint on April 6, 2023 (ECF Doc. 92). A Second Amended Complaint was filed on November 21, 2024 (ECF Doc. 159), which was also followed by Motions to Dismiss by the Defendants. Subsequent to this Court's Memorandum Opinion on September 30, 2025 (ECF Doc. 220), the instant Third Amended Complaint was filed by Plaintiff on June 6, 2026 (ECF Doc. 254) (*herein, "Complaint").*

Plaintiff alleges at Count XX that the Borough Defendants violated her 4th and 14th Amendment rights by seizing her property without procedural due process, which she alleges also violated substantive due process under the 14th Amendment.

The Complaint also alleges violations of the 4th, 5th, and 14th Amendments of the U.S. Constitution and certain state tort violations by the Washington Area Humane Society ("WAHS") and certain representatives thereof; the Humane World of Animals ("HWA") and certain representatives thereof; and certain members of the Pennsylvania State Police.

## II. THE FACTUAL ALLEGATIONS IN THE COMPLAINT AGAINST THE DONORA BOROUGH DEFENDANTS

Plaintiff alleges that before and after searches of her residence and buildings in Donora by the WAHS and HWA Defendants, the WAHS and HWA Defendants contacted Ken Jericho, ordinance officer for Donora, Pennsylvania, and/or Steven Toprani, Solicitor for Donora, Pennsylvania, and asked them to help make sure that Plaintiff cannot access her residence and buildings in Donora (Complaint, ⁋ 371).[1]

According to Plaintiff, she operated a non-profit animal shelter in Donora, Washington County, Pennsylvania (Complaint, ¶¶ 63). A tornado caused damage to the shelter, and Plaintiff was in the process of moving the shelter to Westmoreland County when agents of the WAHS

[1] Jericho was named as a Defendant in Plaintiff's original pleading (ECF Doc 5).. He later passed away and was then dismissed from the case by Order of Court dated February 4, 2026 pursuant to a Suggestion of Death (ECF Doc. 241). Although described as a Defendant at ¶14 of the instant Complaint, he is not listed as a Defendant at the heading of Count XX or any other Count, nor in the prayer for relief. Therefore, it is concluded thar Plaintiff no longer alleges Jericho as a Defendant.

engaged in a surreptitious investigation in which they entered her property in Westmoreland County and seized her animals and other property (Complaint, ¶ 63).

In October 2019 the WAHS Defendants and the HWA Defendants drafted a search warrant (Complaint, ¶ 75). Based upon false representations by the WAHS Defendants and the HWA Defendants, a Magisterial District Judge approved the search warrant for Plaintiff's location in Westmoreland County (Complaint, ¶ 86). On or about October 30, 2019, the WAHS Defendants and the HWA Defendants searched Plaintiff's location in Westmoreland County. The WAHS Defendants then arrested Plaintiff based upon a cat in the Westmoreland property (Complaint, ¶ 91). In addition, the HWA Defendants entered the Westmoreland County property and seized the property of Plaintiff (Complaint, ¶ 118).

The WAHS Defendants and HWA Defendants also arranged for various law enforcement officers to execute search warrants at the Washington County property (Complaint, ¶ 208). The WAHS Defendants and HWA Defendants entered the property and seized various items, including ammunition, weapons, clothing, medical supplies, personal modification, and other items (Complaint, ¶ 209).

On September 9, 2022, Plaintiff pled no contest to charges of Neglect of Animals, 18 Pa. C.S. 5532(a)(1), a third-degree misdemeanor in regard to animals that Plaintiff had stored at her Donora residence (Complaint, ¶¶ 45-49).

In entering her plea, Plaintiff testified that due to the damage to the Donora property from a tornado in August 2016 and her inability to raise necessary funds for the repairs, the condition of the property was ***"less than favorable"*** and that she was in the middle of moving animals to ***"a new, safe location"*** and had 75% of them already removed when the search and seizure occurred at the Donora property (Complaint, ¶ 53).

Plaintiff lawfully possessed and occupied the residence and church located in Donora (Complaint, ¶ 372). On or about October 30, 2019, Jericho placed red notices on her Donora property, claiming it was "condemned" and that no person could enter (Complaint, ¶ 375). The notices cited the International Property Maintenance Code (Complaint, ¶ 375).

Subsequently, Plaintiff spoke with Jericho, who stated that Plaintiff could not obtain her personal belongings from the premises and could not enter (Complaint, ¶ ¶ 382, 391).

On November 7, 2019, Plaintiff met with Jericho, who stated he would allow Plaintiff limited access to obtain her personal effects if she returned at 8:30 a.m. the next day (Complaint, ¶¶ 383-384).

On November 8, 2019, Plaintiff again met with Jericho. During this meeting he stated that he would allow only 20 minutes in the house to obtain Plaintiff's personal effects but it would not occur that day. Plaintiff stated she wanted to clean the house and remove all of her property. Jericho stated she could not enter the house and made demands for a lease recorded with the Recorder of Deeds, and other non-existent documents. Jericho threatened to have the utilities shut off to the house (Complaint, ¶¶ 385-389). Toprani also told Plaintiff that the property was condemned and that she could not retrieve her belongings (Complaint, ¶ 391).

On November 11, 2019, agents of the Police Department advised Plaintiff that she had authority to enter the home to remove property and clean it, but at the direction of Jericho she could not live or sleep there (Complaint, ¶ 396).

On November 19, 2019, while Plaintiff was loading a U Haul with property from the Donora property, Jericho arrived and started threatening and yelling at Plaintiff's father (Complaint, ¶ 398). Jericho called the police and said, "I'm at the Harr residence and you need to come up and arrest that bitch because she's in the house" (Complaint, ¶399). However, the police advised Jericho that

Plaintiff was allowed in the house (Complaint, ¶400).

## III. STANDARD OF REVIEW

The United States Court of Appeals for the Third Circuit has restated the standard for evaluating Complaints at the Motion to Dismiss stage, as follows:

> The plausibility of claims challenged at the motion-to-dismiss stage is analyzed through a three-step process. See *Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 787 (3d Cir. 2016). The first step is the articulation of the elements of the claim. See Id. (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 675, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The second step involves reviewing the complaint to disregard any "'formulaic recitation[s] of the elements of a … claim' or other legal conclusion," Id. at 789 (alteration in original) (quoting Iqbal, 556 U.S. at 681), as well as allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual," Id. at 790 (citation omitted). The third step evaluates the plausibility of the remaining allegations – after assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor. See Id. at 787, 790; see also *Iqbal,* 556 U.S. at 679; *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d
>
> If, after completing this process, the complaint alleges "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of a claim, then it plausibly pleads a claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). But if "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted).

*Lasche v. New Jersey,* No. 20-2325, 2022 U.S. App. LEXIS 5364, 2022 WL 604025, at *3-4 (3d Cir. Mar. 1, 2022; non-precedential); see also, *Tatel v. Mt. Lebanon Sch. Dist*., 2022 U.S. Dist. LEXIS 19608 at * 19-20 (W.D. Pa. 2022, J. Conti); *Smith v. DeJoy*, 2022 U.S. Dist. LEXIS 207142 *3-6 (W.D. Pa. 2022, J. Hardy).

In deciding whether a plaintiff has pled a claim upon which relief may be granted, the Court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Extrinsic evidence is usually not permitted to be considered in ruling on a motion to dismiss. However, "a document integral to

or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

In addition, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). A court may also consider indisputably authentic documents. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Golden v. Cook,* 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publicly available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted). Thus, the Court may take judicial notice of state court records without converting a 12(b)(6) motion to dismiss into a motion for summary judgment. See, e.g., *Pristas v. Esper*, 2018 U.S. Dist. LEXIS 47080 (W.D. Pa. Mar. 22, 2018).

## IV. SUMMARY OF ARGUMENT

The original pleading by Plaintiff was filed against Jericho and Toprani on November 2, 202 (ECF Doc. 5). As described above, Jericho has died and is no longer a Defendant. The Borough was not named as a Defendant until after the two-year statute of limitations for Section 1983 actions, and, therefore, must be dismissed from the Complaint. That leaves the Borough's Solicitor, attorney Steve Toprani, as the sole Donora-related Defendant. Plaintiff has not alleged a plausible cause of action against Toprani. Therefore, the entire Complaint should be dismissed, with prejudice.

## V. ARGUMENT

### A. The Borough was not named as a Defendant by Plaintiff until after the two-year statute of limitations for Section 1983 cases, and, therefore, must be dismissed from the case.

The original pleading filed by Plaintiff was filed on November 2, 2021 (ECF Doc. 5). The Borough of Donora was not added by Plaintiff as a Defendant until November 21, 2024, when Plaintiff filed her Second Amended Complaint (ECF Doc. 159). The alleged violations by the Borough set forth in the Second Amended Complaint occurred in October and November 2019 (Second Amended Complaint, ECF Doc, 159, at ¶¶ 267-323). The Second Amended Complaint was not filed until November 21, 2024, which was more than two years after the alleged violations, and, thus, beyond the two-year statute of limitations for Section 1983 actions. *Kost v. Kozakiewicz*, 1 F.3d 176, 189-190 (3d Cir. 1993).[2] Accordingly, the Borough must be dismissed from the case, with prejudice.

**B. Plaintiff's procedural due process claim under the Fourteenth Amendment does not state a plausible cause of action against Toprani, the only remaining Borough Defendant.**

The gist of Plaintiff's allegations against Solicitor Toprani, against Jericho (originally, prior to his death and dismissal from the case), and against the Borough (untimely filed), is an allegedly unjustified, "informal" condemnation issued without prior notice and hearing and without a meaningful post-deprivation process (Complaint, ¶ 403).

As to Toprani, the Borough's Solicitor, the Borough Code does not give a Solicitor the authority to condemn properties (Pennsylvania Borough Code, Title 8, § 1117(a) ("Boroughs and Incorporated Towns")). And under the IPMC, which, as described below, was adopted by Ordinance by the Borough, it is the "code official," in this case, Jericho, who is the one who has the authority to decide whether a property is unsafe for habitation and condemn property (IPMC, § 108, Unsafe Structures and Equipment). Indeed, as admitted by Plaintiff, it was Jericho, who was the one on

[2] Even removing the period of the stay of the case from April 21, 2022 to December 14, 2022, the Second Amended Complaint was filed beyond the two-year statute of limitations for Section 1983 actions (ECF Docs 51, 61).

October 30, 2019, who placed placards on the property condemning the property so no person could enter (Complaint, ¶ 375), and it was Jericho who sent the letter to the property owner notifying him that the property had been condemned (Complaint, ¶ 376; Exhibit A).

Accordingly, assuming, *arguendo*, that there was any Constitutional violation by the condemnation of the property, the violation would have been committed by Jericho and possibly the Borough, but not Toprani. Plaintiff's bare claims that Toprani condemned the property are merely baseless statements without any factual or legal basis alleged or supported in the Complaint.

Further, even assuming, *arguendo,* that Jericho's condemnation of the property constituted a procedural due process violation due to the alleged lack of an appellate board of review to promptly hear an appeal of the condemnation, under the Borough Code the Solicitor has no authority to create or appoint a board of review (Pennsylvania Borough Code, Title 8, § 1117(a) ("Boroughs and Incorporated Towns")). Therefore, any possible procedural violation arising out of a lack of a board of review would fall on the Borough and possibly Jericho, but not on Toprani.

For these reasons alone, the Complaint allegations against Toprani should be dismissed, with prejudice.

Moreover, even assuming that Toprani was somehow responsible for the condemnation and lack of board of review, there was no procedural due process violation by Jericho, Toprani, or the Borough.

The United States Court of Appeals for the Third Circuit uses a two-step analysis in evaluating a Section 1983 failure to provide procedural due process claims. The 1st step questions whether the asserted individual interests are within with the Fourteenth Amendment's protection of "life, liberty, or property." The second step questions whether the procedures available to the plaintiff provide the plaintiff with "due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116

(3d Cir. 2000). Assuming, *arguendo,* that Plaintiff had a property interest, it is the 2nd prong that is at issue herein.

As to the afforded procedures, "[a] fundamental requirement of due process is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

Although a pre-deprivation hearing is generally required before a state actor deprives someone of a property interest, there are circumstances in which a pre-deprivation process is not required, as long as there is some meaningful post-deprivation process. *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008). Thus, a pre-deprivation process is not required if there is a need for "quick action by the State." Id. Accordingly, a pre-deprivation hearing is not required in emergency situations. Id. To establish whether there is an emergency, the Third Circuit uses a deferential standard. Id. at 418. The government must have "competent evidence supporting the reasonable belief" that an emergency exists. Id.

In the instant case, Plaintiff objects to the condemnation of the Donora property by the Borough Defendants. The condemnation notice, therefore, is integral and explicitly relied upon by Plaintiff in her Complaint allegations against the Donora Borough Defendants. The condemnation notice in question was issued on October 30, 2019, by Jericho, Borough Code Enforcement Officer, and was sent to the property owner (Complaint, ¶ 376) (A true and correct copy of this condemnation notice is contained at Exhibit A).

The condemnation notice stated that the property was condemned pursuant to "Ordinance 1390; Section 108.1.3 – Unsafe Structures and Equipment."

Ordinance 1390 (attached hereto as Exhibit B) is a Donora Ordinance adopting the 2012 Edition of the International Property Maintenance Code ("IPMC") (Exhibit C contains relevant sections of the IPMC").

Section 108 of the IPMC is entitled, "UNSAFE STRUCTURES AND EQUIPMENT."

"Section 108.1 General," provides:

> When a structure or equipment is found by the *code official* to be unsafe, or when a structure is found unfit for human *occupancy*, or is found unlawful, such structure shall be *condemned* pursuant to the provisions of this code (emphasis in original). Id.

The Borough's condemnation notice issued by Jericho specifically quoted Section 108.1.3 of the IPMC:

> **Structure unfit for human occupancy:** A structure is unfit for human occupancy whenever the code official finds that such structure is unsafe, unlawful, or, because the degree to which the structure is in disrepair or lacked maintenance, is unsanitary, vermin or rat infested, contains filth and contamination, or lacks ventilation, illumination, sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes a hazard to the occupants of the structure or to the public." Id.

A further basis cited in the notice was: "Section 309 – Pest Elimination – All structures shall be kept free from insect and rodent infestation." Id.

Finally, with respect to an abandoned church on the property, the notice cited to and quoted the following IPMC provision:

> **Section 304 – Exterior Structure, 304.1.1.8 – Unsafe conditions:** Roofing or roofing components that have defects that admit rain, roof surfaces with inadequate drainage, or any portion of the roof framing that is not in good repair with signs of deterioration, fatigue or without proper anchorage and incapable of supporting all nominal loads and resisting all load effects.
>
> **304.1.9** Flooring and flooring components with defects that affect serviceability or flooring components that show signs of deterioration or fatigue, are not properly anchored or incapable of supporting all normal loads and resisting all load effects. Id.

Section 109.1 of the IPMC empowers the code official as follows:

> **EMERGENCY MEASURES 109.1 Imminent Danger.** When, in the opinion of the code official, there is imminent danger of failure or collapse of a building or structure which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure, or when there is actual or potential danger to the building occupants … the code official is hereby authorized and empowered to order and require the occupants to vacate the premises

forthwith. The code official shall cause to be posted at each entrance to such structure a notice reading as follows: "This Structure Is Unsafe and Its Occupancy Has Been Prohibited by the Code Official." It shall be unlawful for any person to enter such structure except for the purpose of securing the structure, malting the required repairs, removing the hazardous condition or of demolishing the same. Id.

Thus, under the IPMC, Jericho, as the code official, has the authority to condemn and placard property pursuant to the above Ordinance's criteria.

Significantly, Section 111 of the IPMC sets forth a detailed post-deprivation appeal procedure from a condemnation, as follows, in pertinent part:

**SECTION 111. MEANS OF APPEAL:**

**111.1 Application for appeal.** Any person directly affected by a decision of the code official or a notice or order issued under this code shall have the right to appeal to the board of appeals, provided that a written application for appeal is filed within 20 days after the day the decision, notice or order was served. An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply, or the requirements of this code are adequately satisfied by other means.

**111.2 Membership of board.** The board of appeals shall consist of a minimum of three members who are qualified by experience and training to pass on matters pertaining to property maintenance and who are not employees of the jurisdiction. The code official shall be an ex-officio member but shall have no vote on any matter before the board. The board shall be appointed by the chief appointing authority, and shall serve staggered and overlapping terms.

**111.3 Notice of meeting.** The board shall Inset upon notice from the chairman, within 20 days of the filing of an appeal, or at stated periodic meetings.

**111.6 Board decision.** The board shall modify or reverse the decision of the code official only by a concurring vote of a majority of the total number of appointed board members.

**111.6.1 Records and copies.** The decision of the board shall be recorded. Copies shall be furnished to the appellant and to the code official.

**111.6.2 Administration.** The code official shall take immediate action in accordance with the decision of the board.

**111.7 Court review.** Any person, whether or not a previous party of the appeal, shall have the right to apply to the appropriate court for a writ of certiorari to correct errors

> of law. Application for review shall be made in the manner and time required by law following the filing of the decision in the office of the chief administrative officer. Id.

These post-deprivation procedures provided Plaintiff with a meaningful post-deprivation process. If Plaintiff believed the condemnation was not supported by competent evidence, then her remedy was to file an appeal to a board of appeals.

Further, there was ample evidence from which Jericho could conclude that an emergency condition existed such that the property needed to be condemned and placarded. In this regard, there were two criminal complaints filed against Plaintiff for aggravated cruelty to animals in the Court of Common Pleas of Washington County at docket numbers CR-0205-2020 and CR-1186-2020. The criminal charges resulted from searches of Plaintiff's properties located in Monessen and Donora, Pennsylvania. The search warrants were signed by Magistrate Judges on October 29, 2019, and are attached hereto as Exhibits D and E. The warrants, which authorized the search of her properties and seizure of animals, written and electronic documents, communications, and other properties, were executed on the following day. See April 4, 2022 Order of the state criminal court, attached hereto as Exhibit F.

Plaintiff filed an Omnibus Motion with the Court of Common Pleas of Washington County seeking suppression of the evidence gathered with the October 30, 2019, searches and seeking the return of the property seized in the searches. A copy of Plaintiff's Omnibus Motion is attached hereto as Exhibit G. A hearing on the Motion was held on January 25, 2022 (Exhibit F, p.2). The state court found that on June 22, 2018, 104 cats were found at the Donora property, and on August 25, 2019, it was observed that the Donora property had deteriorated. Id.

The search warrants were supported by Affidavits of Probable Cause signed by co-Defendant Glen Thompson(deceased), Humane Animal officer, and a Pennsylvania state police officer. In addition to describing the mistreatment of over 100 cats in cages and the unsanitary condition, the

Affidavit described the substantially deteriorated property, the overwhelming smell of feces and ammonia from inside the residence, the piles of garbage both inside and outside the buildings, piles of regurgitated food on the floor, the damaged roof of the church property, and the water leakage from the church roof (Exhibit D, Application for Search Warrant and Affidavits of probable Cause).

On September 9, 2022, Plaintiff pled nolo contendere to two counts of Neglect of Animals, 18 Pa. C.S.A. § 5532(a)(1). The Pleas of Nolo Contendere are attached hereto as Exhibit I). The Order of Sentence of September 9, 2022, is attached hereto as Exhibit H). Pursuant to the Order of Sentence, Plaintiff was not permitted to possess any type of animal and is not permitted to have any contact with the animals seized from her residences on October 30, 2019.

At the September 9, 2022, Plea and Sentencing hearing, Plaintiff testified that she had not intended to harm any of the animals. She then admitted, however, that due to the damage to the property from a tornado and her inability to raise funds for the repairs, "the condition of the property was less than favorable" (Certified transcript of Plea and Sentencing Hearing, at pp 9-10, attached hereto as Exhibit J). Indeed, she further admitted that due to the deplorable conditions, she had been in the midst of moving the animals "to a new, safe location." Id. at p.10. Thus, by her own admission, the damaged, "less than favorable" Donora property, which was in disrepair, was *not even safe for animals.*

It is submitted that Plaintiff's admissions as to the property condition and the state court Judge's findings in denying Plaintiff's Omnibus Motion to suppress the evidence, including his reliance on the Affidavit of Probable Cause's evidence as to the condition of the property, establish that there was "competent evidence" supporting Jericho's reasonable belief that the property needed to be condemned and placarded. Accordingly, a pre-deprivation hearing was not required in such circumstances, where there was a need for quick action by Jericho and a meaningful post-deprivation

process available to Plaintiff. Therefore, the condemnation and placarding of the Donora property did not violate Plaintiff's procedural due process rights under the 14th Amendment. *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008); *Parratt v. Taylor,* 451 U.S. 527, 539 (1981)).

The reliance on the factual findings and legal conclusions of the state court judge are justified upon the doctrine of collateral estoppel. The 3rd Circuit has held, "Collateral estoppel operates to bar 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination.'" *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,* 571 F.3d 299, 310 (3d Cir. 2009) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49, 121 S. Ct. 1808 (2001)). Further, "Although res judicata and collateral estoppel are affirmative defenses, they may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Walzer v. Muriel, Siebert & Co.,* 221 F. App'x 153, 155 (3d Cir. 2007).

Collateral estoppel precludes a party from raising an already-litigated issue if: 1) the issue is identical to the one decided in a prior case; 2) there was a final judgment on the merits in the prior action; 3) the party raising the issue was a party to the prior action or is in privity with such a party; and 4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Nationwide*, 571 F.3d at 310. See also, *Rue v. K-Mart Corp*.. 713 A.2d 82, 84 (Pa. 1998). Furthermore, in a § 1983 case defendants can rely upon collateral estoppel where a plaintiff attempts to relitigate in federal court issues that were decided in the state criminal proceedings. *Anela v. City of Wildwood*, 790 F. 2d 1068 (3d Cir. 1986).

In the instant case, the issue of whether the condition of Plaintiff's property justified the condemnation of the Donora property is identical to the issue of whether the condition of the property justified the search warrants. Plaintiff had a full and fair opportunity to litigate the issue in

the criminal proceeding. Further, her criminal court proceedings are final, as she has failed to appeal the Judge's Order or rescind her nolo plea. Therefore, the findings of fact and legal conclusions of the state court judge can be relied upon in establishing the existence of competent evidence for Jericho to believe there was a need for immediate action pursuant to the IPMC. Further, Plaintiff's own admissions at her plea hearing in and of themselves establish that there was competent evidence from which Jericho could justify his issuance of the condemnation notice and placarding of the property pursuant to Donora local Ordinance 1390 and the IPMC. Therefore, Plaintiff's procedural due process rights were not violated by the condemnation and placarding of the property by Jericho.

Plaintiff argues therein that there was no post-deprivation appeal procedure, because there was no board of appeals to hear a post-deprivation appeal as provided in the IPMC (Ecf Doc 254, ¶¶ 407-408). Therefore, she claims, since there was no post-deprivation remedy, the prohibition against her entering the property without a prior hearing violated her procedural due process rights.

Assuming, *arguendo*, that no board of appeals existed, the Complaint is, nevertheless, deficient and does not state a potential cause of action against Jericho and the Borough – and thereby against the remaining Defendant, Solicitor Toprani.

First, Plaintiff has not alleged in her Complaint that she ever made any attempt to appeal the "condemnation" of the property. She does not allege that she asked Toprani, Jericho, or the Borough Council as to how to appeal the condemnation or ever inquired of anyone within the required twenty (20) days of the condemnation as to whether there existed a board of appeals. She merely baldly claims that no board of appeals existed. However, assuming none existed, there is no law that requires a Borough to maintain a permanent board of appeals, and had she so requested, the Borough Council could have readily appointed a board of review. Without allegations that Plaintiff attempted to invoke whatever procedures existed, requested a hearing, submitted a written appeal, or took any

steps to pursue administrative relief, Plaintiff has not pled a plausible procedural due process claim.

Further, assuming there was no board of appeals and no Borough Council procedure to appoint a board of appeals to hear her appeal, then Plaintiff would not have had any requirement to exhaust her administrative remedies before filing an appeal to the Court of Common Pleas. In other words, Jericho's condemnation decision would have been a final adjudication appealable directly to the Court of Appeals under the Local Agency Law, which provides:

> Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

2 Pa. C.S. § 752.

Thus, Plaintiff had the right to appeal the final adjudication by Jericho to the Court of Common Pleas within thirty (30) days pursuant to 42 Pa.C.S. § 5571(b), and, therefore, there was a post-deprivation appeal procedure that was available to Plaintiff.

Thus, Plaintiff could have either inquired as to how to file an appeal with a board of appeals or, alternatively, she could have filed an action appealing Jericho's decision with the Court of Common Pleas. Plaintiff did neither.

In sum, Plaintiff had the right under Section 111.1 0f the IPMC, which was adopted by the Borough, to file an appeal of a zoning code official's finding that a property was unsafe. And even if that post-deprivation appeal avenue did not exist, then she would have had the post-deprivation right to appeal Jericho's decision directly to the Court of Common Pleas. Thus, Plaintiff's procedural due process rights were not violated by Jericho and the Borough, even if the Borough never established a board of appeals. It follows that whatever advice the Solicitor gave to Jericho, it did not violate Plaintiff's procedural due process rights.

Although Plaintiff alleges that Jericho did not have the authority to prevent her from entering the property (Ecf Doc 254, ¶ 392), the IPMC, in fact, gives the code official the specific right to do

so at Section 109.1 (Ecf Doc 118-3).

Plaintiff also claims that she was "ready, willing, and able to do the necessary repairs" to the property, but that Jericho's and Toprani's refusal to allow her to inspect the property "impeded her ability to bring the property back up to code" (Ecf Doc 254, ¶ 424).

This claim is directly contrary to Plaintiff's own testimony under oath before the Court of Common Pleas of Washington County when she pled nolo contendre to two counts of Neglect of Animals, 18 Pa.C.S.A. §5532(a)(1). As previously cited, at the Plea and Sentencing hearing she testified to the Court that ***due to the damage to the property from a tornado and her inability to raise the funds to repair it, the "condition of the property was less than favorable" and she was in the midst of moving the animals out of the property due to its unsafe condition, and had already moved out 75% of the animals*** (Certified transcript of Plea and Sentencing Hearing, Ecf Doc 118-10).

Accordingly, Plaintiff admitted under oath in a court of law that she did not have the funds to repair the property; the property was too unsafe even for animals; and she was in the midst of moving the animals out due to the unsafe condition of the property, when Jericho posted the signs that the property was too unsafe for anyone to enter. Therefore, her claim that Jericho and Toprani's actions impeded her ability to make necessary repairs and bring the property up to code is a false, conjured-up statement to this Court in order to try to avoid another dismissal of her case

Plaintiff also claims that Toprani told her that the property was properly condemned and she could not retrieve her belongings (Complaint, ¶ 391). She does not state when he purportedly made this statement. In any event, she admits that on November 11, 2019, the police told her that she could enter the house to clean it and remove her property and that she did so on November 19, 2019 (ECF Doc. ¶¶ 396, 399-400). Therefore, even if Toprani made the statement, it did not prevent Plaintiff

from retrieving her property from what she admitted was unsafe and from which she was in the process of moving out.

### C. The Complaint does not set forth a plausible claim that Toprani violated Plaintiff's 4th Amendment rights.

When the Government seizes property within the meaning of the Fourth Amendment, the Fourt Amendment, "not the more generalized notion of 'substantive due process,'" sets forth the standard for assessing the constitutionality of the government's conduct. *Win & Son, Inc. v. City of Philadelphia*, 162 F. Supp. 3d 449, 462 (E.D. Pa. 2016) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 ). The undersigned has not found any cases in which a code official condemning a property and precluding the possessor from entering the property violates the 4th Amendment. But assuming that such could constitute a 4th Amendment violation, Plaintiff must show that the seizure was unreasonable. *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 71 (1992).

First, as described above, Toprani did not seize any property. He had no authority to condemn the property, nor did he have the authority to establish a board of appeals. If a seizure occurred, it was by Jericho or the Borough, not Toprani. Moreover, in the face of the admittedly unsafe condition of the property, the over 100 cats in cages, unsanitary conditions, substantially deteriorated property, overwhelming smell of feces and ammonia from inside the residence, piles of garbage both inside and outside the buildings, and piles of regurgitated food on the floor, it was not unreasonable for Toprani to state to Plaintiff that the property was properly condemned and she could not enter the property (Complaint, ¶ 391).

Accordingly, Plaintiff has not pled a plausible 4th Amendment violation by Toprani.

### D. Plaintiff has failed to state a plausible claim against Toprani for a Fourteenth Amendment substantive due process violation

The legal standards governing substantive due process claims are exacting. Thus, "The

Supreme Court has emphasized that the 'touchstone of due process' is protection against arbitrary government action. Government action is 'arbitrary in the constitutional sense' when it is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *L.R. v. Sch. Dist. of Philadelphia,* 836 F.3d 235, 246 (3d Cir. 2016). Accordingly:

> To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience ... Deprivation violates due process only when it shocks the conscience, which encompasses only the most egregious official conduct ... while the meaning of the [shocks the conscience] standard varies depending upon factual context, merely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision. *Chainey v. Street,* 523 F.3d 200, 219-20 (3d Cir. 2008) (internal citations and quotations omitted).

*L.H. v. Pittston Area Sch. Dist*., 130 F.Supp.3d 918, 928-29 (M.D. Pa. 2015), aff'd, 666 F. App'x. 213 (3d Cir. 2016).

In the instant case, the property admittedly had suffered from a tornado and was unsafe; indeed, so unsafe that she was moving the animals out of the house. The utterly deplorable condition of the property has been repeatedly described above. Under these horrid conditions, it does not shock the conscience for Toprani to tell Plaintiff that the property had been properly condemned and that she could not enter the property. This is especially so when the deprivation was quite temporary, as Plaintiff was able to retrieve her property shortly after Jericho had placarded the property. Plaintiff has not pled any evidence of hostility, animus, or other conscience-shocking conduct on the part of Toprani to satisfactorily plead a 14th Amendment substantive due process claim. And once again, if there was any action that shocked the conscience, which is strenuously denied, it would have been on the hands of Jericho and the Borough, not Solicitor Toprani.

## VI. CONCLUSION

In sum, the Complaint claims against the Borough of Donora should be dismissed, with prejudice, as Plaintiff did not file the claims against the Borough until after the two-year statute of

limitations for Section 1983 claims had expired. The claims against the remaining Donora Defendant, Solicitor Steve Toprani, should be dismissed, with prejudice, as Plaintiff has not pled a plausible cause of action against him.

Respectfully submitted,

MARGOLIS EDELSTEIN

*/s/ Charles H. Saul*
CHARLES H. SAUL, ESQUIRE
PA I.D. No. 19938
csaul@margolisedelstein.com
Henry W. Oliver Building
535 Smithfield Street, Suite 1100
Pittsburgh, PA 15222
P: 412-281-4256 / F: 412-642-2380
*(Counsel for Defendants Borough of Donora and Steven Toprani)*